# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN


**AFT MICHIGAN,**

**Case No. 17-cv-13292**

**Plaintiff,**      **Hon. Linda V. Parker**

**v.**

**PROJECT VERITAS, AND**
**MARISA L. JORGE.**


**Defendants.**


## DEFENDANTS' BRIEF IN OPPOSITION
## TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES** ..................................................................... ii

**STATEMENT OF QUESTIONS INVOLVED** ..................................................... v

**CONTROLLING AND MOST APPROPRIATE AUTHORITY** ...................... vi

   **I.**    **The Relief that Plaintiff Seeks Violates the First Amendment.** ....................................................................... 1

  **II.**    **Plaintiff Hasn't Met the Requirements for a Preliminary Injunction Even Without Addressing the First Amendment.** ....................................................................... 7

  **III.**   **Standard of Review for Requests for Injunctive Relief.** ...................... 9

  **IV.**   **Plaintiff Has Not Met its Burden or Standard for Injunctive Relief.** ................................................................... 10

     a. Plaintiff Has Not Shown a Likelihood of Success on the Merits ............................................................................... 10

     b. Plaintiff Has Not Established Irreparable Harm ...................................... 22

     c. The Balance of Interests Weighs Against Injunctive Relief................... 23

     d. The Public Interest Would be Harmed by an Injunction ......................... 24

  **V.**    **Plaintiff Still Has Not Sufficiently Served Defendant Jorge.** ....................................................................... 25

**CONCLUSION** ..................................................................... 25

# INDEX OF AUTHORITIES

**Federal Cases**

*Allis-Chalmers Mfg Co. v. Continental Aviation & Engineering Corp.,*
255 F. Supp. 645 (E.D. Mich. 1966) ........................................................ 23

*Bank Julius Baer & Co. v. Wikileaks,*
535 F. Supp. 2d 980 (N.D. Cali. 2008) ...................................................... 9

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,*
270 F. Supp. 2d 943 (W.D. Mich. 2003) .................................................. 20

*Boddie v. ABC, Inc.,*
881 F.2d 267 (6th Cir. 1989) ..................................................................... 3

*Certified Restoration Dry Cleaning Network v. Tenke Corp.,*
511 F.3d 535 (6th Cir. 2007) ................................................................. 9, 10

*Citizens United v. Fed. Elec. Comm'n,*
558 U.S. 310 (2010) ................................................................................... 4

*Cty. Sec. Agency v. Ohio Dept. of Commerce,*
296 F.3d 477 (6th Cir. 2002) ..................................................................... 3

*Delphi Auto. PLC v. Absmeir,*
167 F. Supp. 2d 868 (E.D. Mich. 2016) .................................................. 22

*Dura Global Techs., Inc. v. Magna Donnelly Corp.,*
662 F. Supp. 2d 855 (E.D. Mich. 2009) .................................................. 15

*Electronic Planroom, Inc. v. Mcgraw-Hills Cos., Inc.,*
135 F. Supp. 2d 805 (E.D. Mich. 2001) .................................................. 19

*Elrod v. Burns,*
427 U.S. 347, 373 (1976) ......................................................................... 24

*Food Lion, Inc. v. Capital Cities/ABC, Inc.,*
194 F.3d 505 (4th Cir. 1999) ................................................................... 23

*Ford Motor Co. v. Lane,*
67 F. Supp. 2d. 745 (E.D. Mich. 1999) .............................................. passim

*Goncalves v. Trakul,*
2014 WL 1344510 (E.D. Mich. Apr. 4, 2014) ........................................ 24

*Guarino v. Brookfield Twp. Trustees,*
980 F.2d 399 (6th Cir. 1992) ................................................................... 11

*Innovation Ventures, LLC v. Aspen Fitness Prods, Inc.,*
2015 WL 11071470 (E.D. Mich. Mar. 31, 2015) .................................... 17

*Kelly Servs., Inc. v. Marzullo,*
591 F. Supp. 2d 924 (E.D. Mich. 2008) ................................................. 23

*Kleindienst v. Mandel,*
408 U.S. 753 (1972) ................................................................................ 24

*Leary v. Daeschner,*
228 F.3d 729 (6th Cir. 2000) ............................................................ 9, 10

*McLaren Reg'l Med. Ctr v. Completerx, Ltd.,*
2017 WL 3034615 (E.D. Mich. 2017) .................................................. 22

*Muglia v. Kaumagraph Corp.,*
64 F.3d 663 (6th Cir. 1995) ................................................................... 22

*Murray Energy Holdings Co. v. Bloomberg, L.P.,*
2016 WL 3355456 (S.D. Ohio 2016) ...................................................... 3

*Near v. Minnesota,*
283 U.S. 697, 707, 51 S.Ct. 625 (1931) ................................................. 6

*Neb. Press Ass'n v. Stuart,*
427 U.S. 539 (1976) .................................................................................. 2

*Nichols v. Moore,*
334 F.Supp.2d 944 (E.D. Mich. 2004) .................................................... 4

*NY Times Co. v. U.S.,*
403 U.S. 713 (1971) .................................................................................. 6

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't,*
305 F.3d 566, 573 (6th Cir. 2002) .......................................................... 9

*PrimePay, LLC v. Barnes,*
2015 WL 2405702 (E.D. Mich. May 20, 2015) ............................... passim

*Proctor & Gamble Co. v. Bankers Trust Co.,*
78 F.3d 219 (6th Cir. 1996) ........................................................... passim

*Ramirez v. Webb,*
787 F.2d 592 (6th Cir. 1986) ................................................................. 24

*Raymond James & Assocs. v. Leonard & Co.,*
411 F. Supp. 2d 689 (E.D. Mich. 2006) .......................................... 13, 17

*Rockwell Med., Inc. v. Yocum,*
2014 WL 2965307 (E.D. Mich. June 26, 2014) ............................... 21, 22

*Sampson v. Murray,*
415 U.S. 61, 94 S. Ct. 837 (1974) ......................................................... 23

*Taubman Co. v. Webfeats,*
319 F.3d 770 (6th Cir. 2002) ................................................................. 24

iii

*Utilase, Inc. v. Williamson*,
1999 WL 717969, *6 (6th Cir. Sept. 10, 1999) .................................... 15

*Vance v. Universal Amusement Co., Inc.*,
445 U.S. 308 (1980) .......................................................................... 3

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .............................................................................. 9

*Wysong Corp. v. M.I. Ind.*,
412 F. Supp. 2d 612 (E.D. Mich. 2005) ............................................ 17

## State Cases

*Bero Motors v. GMC*,
2001 WL 1167533 (Mich. App. Oct. 2, 2001) ................................... 21

*Bowens v. Ary, Inc.*,
489 Mich 851 (2011) ........................................................................ 12

*CMI Intern'l, Inc. v. Intermet Intern'l Corp.*,
251 Mich. App. 125 (2002) ............................................................... 20

*Dupuis v. Kemp*,
2006 WL 401125 (Mich. App. 2006) ................................................. 2

*Hayes-Albion v. Kuberski*,
421 Mich. 170, 364 N.W.2d 609 (1984) ..................................... 14, 15

*Horizon Painting, Inc. v. Adams*,
2007 WL 600686 (Mich. App. Feb. 27, 2007) ................................... 21

*Kubik, Inc. v. Hull*,
56 Mich. App. 335 (1974) ................................................................. 17

*People v. Warner*,
401 Mich. 186 (1977) ....................................................................... 13

## State Statutes

Mich. Comp. Laws § 445.1901, *et seq* ................................. v, 13, 17, 20

Mich. Comp. Laws § 750.539a ................................................... v, 12

## Federal Rules

Fed. R. Civ. P. 65 ................................................................................ v

## STATEMENT OF QUESTIONS INVOLVED

Whether this Court should issue a prior restraint on speech, in contravention of the First Amendment of the U.S. Constitution, by granting Plaintiff injunctive relief, and whether Plaintiff has met its burden in establishing entitlement to injunctive relief under the traditional four-part test, or whether Sixth Circuit and Eastern District of Michigan precedent mandates that the injunction be denied.

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

U.S. CONST. amend I

*Proctor & Gamble Co. v. Bankers Trust Co.*,
      78 F.3d 219 (6th Cir. 1996)

*Ford Motor Co. v. Lane*,
      67 F. Supp. 2d. 745 (E.D. Mich. 1999)

Mich. Comp. Laws § 750.539a


Mich. Comp. Laws § 445.1901, *et seq*


Fed. R. Civ. P. 65

Plaintiff wants this motion to be about personalities and politics. But it is not. It is about the law, constitutional rights, the facts pled, and Plaintiff's burden to obtain the extraordinary relief sought. Moreover, this Court's ruling on this motion will have widespread effects that can be used as a weapon against those from all points on the political spectrum (or those having no political affinity whatsoever). This response, therefore, will focus only on the facts relevant to this case and whether Plaintiff has met its burden.

## I.     The Relief that Plaintiff Seeks Violates the First Amendment.

The question is not whether the TRO granted by the state court should be continued or converted into an injunction, but whether it should have been granted in the first place. Under Sixth Circuit precedent, it was improper to issue an *ex parte* TRO without giving Defendants the opportunity to be heard.[1] Nor should the TRO have been kept in place for as long it has been.[2] The TRO should be dissolved and

---

[1] "While there is a place for *ex parte* issuance, without notice, of temporary restraining orders . . . there is no place for such orders in the First Amendment realm where no showing is made that it is impossible to serve or notify the opposing parties and give them an opportunity to participate." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). "[A] prior restraint issued prior to a full and fair hearing . . . faces an even heavier presumption of invalidity." *Id.*

[2] Noting that while the lower court's "natural instinct was to delay the matter temporarily so that a careful, thoughtful answer could be crafted" and thus "weeks passed with the 'gag order' in effect," such approach may be "proper in most instances" but "absent the most compelling circumstances, when that approach results in a prior restraint on pure speech by the press it is not allowed." *Proctor & Gamble*, at 225-226.

1

any request for injunctive relief denied.

Plaintiff concedes that it seeks a prior restraint on speech, colliding with the First Amendment, and that "[i]njunctions against publication may be disfavored as prior restraint." Plaintiff's Motion, ECF Dkt. #1, Page ID 31; citing *Dupuis v. Kemp*, 2006 WL 401125, at *2 (Mich. App. 2006) ("Prior restraints on speech and publication are the most serious and the least tolerable infringements on one's First Amendment rights.");[3] citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976).[4] In this isolated instance, Plaintiff is correct.

All applicable authority dictates that the TRO should not have been granted. Such extraordinary relief does *not* uphold the status quo. *See, Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (the status quo is to "publish news promptly that editors decide to publish. A restraining order disturbs the status quo . . . ."). This is particularly so where there is no confidentiality agreement or other contractual duties involved. *Ford Motor Co. v. Lane*, 67 F. Supp. 2d. 745 (E.D. Mich. 1999) (denying an injunction because "[i]n the absence of a confidentiality agreement or fiduciary duty between the parties, Ford's commercial interest in its trade secrets and Lane's alleged improper conduct in obtaining the

---

[3] All unpublished and foreign cases are attached hereto as **Exhibit 1** for the Court's convenience.
[4] *Nebraska Press Ass'n* at 559 ("If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it . . . .").

trade secrets are not grounds for issuing a prior restraint."). Prior restraints are rarely, if ever, permissible. *Cty. Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477 (6th Cir. 2002) (journalist could not be bound by TRO when he sought to publish confidential information about security guards, even though it could implicate their safety); *Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456 (S.D. Ohio 2016) (in Sixth Circuit, even the allegation of "improper conduct in obtaining the information is insufficient to justify a prior restraint"). Prior restraints on speech are only *potentially* permissible in cases of urgent national security or competing constitutional interests, not in "standard litigation filings," and a plaintiff's "interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint." *Proctor & Gamble*, 78 F.3d at 225.

Plaintiff avers that Defendants "cannot hide behind the First Amendment." Brief, ECF Dkt. # 7, p. 9. Fortunately, the First Amendment of the U.S. Constitution is not something that any citizen needs to "hide behind." Rather, it is a shield that protects our most vital rights. And to the contrary of Plaintiff's implication, if a law in question violates the First Amendment, then *that law* does not apply.[5]

Plaintiff attempts to disparage Defendants through *ad hominem* attacks. It

---

[5] *See, e.g.*, *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308 (1980) (statute permitting overbroad prior restraint is unconstitutional); *Boddie v. ABC, Inc.*, 881 F.2d 267 (6th Cir. 1989) (dismissing claim under wiretapping statute under the void-for-vagueness test because it conflicted with First Amendment rights).

3

slanders Defendants as "criminals" (they are not) and contrasts their work with "legitimate journalism of others." This, of course, is in the eye of the beholder,[6] and does nothing to aid Plaintiff in meeting its burden, nor does it nullify fundamental First Amendment principles. The Supreme Court has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 352 (2010).[7] By Plaintiff's allegations, Defendants gather and publish information related to matters of public concern.[8] This is often picked up by others and triggers further reports. Plaintiff's aspersions do not undercut Defendants' First Amendment rights.

Precedent from the Sixth Circuit and this Court clearly lays out the proper resolution of this matter. In *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), the Sixth Circuit applied the prior restraint doctrine to overturn

---

[6] One side of the proverbial aisle cries "Fake News" while the other side complains of "Faux News." The First Amendment, however, protects both. Regardless, Plaintiff has the burden of establishing that it is entitled to the relief it seeks.

[7] *See also Ford Motor Co.*, *supra* at 753 (denying injunction sought against a student with an online website, noting that "nothing in our jurisprudence suggests that the First Amendment is circumscribed by the size of the publisher or his audience.")

[8] "The scope of the subject matter which may be considered 'of public interest' or 'newsworthy' has been defined in the most liberal and far-reaching terms." *Nichols v. Moore*, 334 F.Supp.2d 944, 956 (E.D. Mich. 2004). "The privilege of enlightening the pubic is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational, and historical data . . . . [M]atters of public interest may and often do involve wholly private individuals and may still be reported or depicted." *Id.*

an injunction against the publication of trade secrets and other confidential information. In that case, parties to civil litigation stipulated to entry of a protective order, prohibiting disclosure of trade secrets. A journalist, however, obtained some of those documents. Proctor & Gamble sought an injunction prohibiting the disclosure of that information, and the district court enjoined its disclosure.

The Sixth Circuit reversed the district court, holding that publication of the documents did not constitute a grave threat to a critical government interest or to a constitutional right sufficient to justify a prior restraint. To justify a prior restraint, "publication must threaten an interest more fundamental than the First Amendment itself." *Id.* at 227. "Indeed, the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial." *Id.* The Court therefore overturned and dissolved the injunction.

This Court has since followed that precedent in the case of *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999). There, Ford sought an injunction against a student who published a website. The defendant obtained information leaked to him from Ford employees. He was aware of the confidential nature of the documents and knew they were given to him by individuals who were breaching confidentiality obligations and duties to Ford. In fact, the documents were marked "confidential," "property of Ford," "proprietary," or "copyright protected." *Id.* He obtained other information by "crashing" private meetings. *Id.*, n.2.

Ford filed a complaint alleging a trade secret claim, and a presiding judge issued a TRO.  Upon further briefing, the Court denied the preliminary injunction and held the TRO to be improper.  "Although Ford has presented evidence to establish that Lane is likely to have violated [MUTSA], the Act's authorization of an injunction violates the prior restraint doctrine and the First Amendment as applied under these circumstances."  *Id.* at 750.  "Even a temporary restraint on pure speech is improper absent the most compelling circumstances."  *Id.*

The Court held that "prior restraints may be issued only in rare and extraordinary circumstances, such as when necessary to prevent the publication of troop movements during time of war, to prevent publication of obscene material, and to prevent the overthrow of the government."  *Id.*; *Near v. Minnesota*, 283 U.S. 697, 707, 51 S.Ct. 625 (1931).  The Court acknowledged that while distinctions could be drawn between the case before it and other authority, "those distinctions are defeated by the strength of the First Amendment."  *Id.* at 752.  While Ford's interest in its trade secrets was strong, "they are certainly not more volatile than those at issue in the Pentagon Papers case."  *Id.*; *NY Times Co. v. U.S.*, 403 U.S. 713 (1971).

The fact that defendant obtained information improperly (by extortion and inducing others to breach confidentiality and fiduciary duties) may have given Ford recourse to other claims, but that did not mean it was entitled to a prior restraint on speech.  *Id.* at 753.  "[T]his Court is bound by existing precedent, and under the

broad holdings of the Pentagon Papers case and *Proctor & Gamble*, may not enjoin Lane's publication of Ford's trade secrets and other internal documents." *Id.* "Ford's commercial interest in its trade secrets and Lane's alleged improper conduct in obtaining the trade secrets are not grounds for issuing a prior restraint." *Id.*

The same holds true in the instant case. Whether or not Plaintiff has other redress for its allegations, that is not enough to obtain a prior restraint on speech and overcome the First Amendment. The state court should not have granted the TRO, this Court should immediately dissolve it, and Plaintiff's motion should be denied.

## II.    Plaintiff Hasn't Met the Requirements for a Preliminary Injunction Even Without Addressing the First Amendment.

In its supplemental brief, Plaintiff spent *pages* making *ad hominem* attacks on Defendants, discussing what it alleges Project Veritas has done in other instances, with other parties, and what has been alleged in other lawsuits. None of that is remotely relevant here. The only question is whether Plaintiff has met its burden to seek extraordinary relief in the form of an injunction.

Plaintiff lacks any actual evidence. Its papers are full of statements regarding what Defendants "likely" did, "appear certain" to have done, what it has "reason to believe" happened, and reference to facts that "strongly suggest" or "indicate" wrongdoing. Plaintiff consistently states that it does not have any evidence, but will

find it through discovery.[9]  It cites YouTube videos, relies on a "Snopes" article, and attaches documents pertaining to different matters, but no actual evidence.

Most glaring, Plaintiff refers to purported findings of an "expert in computer forensics" hired "to review computers located at the AFT Michigan offices," yet does not give the expert's name or attach the report.  A cynic might assume that it is purposely withholding the information so Defendants cannot review it, cannot have their own expert conduct a review, and is waiting until its reply brief or the hearing to spring this information on Defendants and the Court.  And, of course, Defendants cannot dispute the expert's standing under the *Daubert* standards or properly and effectively *voir dire* this person at the upcoming hearing because of it.

This is improper. There is no way of knowing whether the alleged expert or any report actually exists.  It certainly does not establish a likelihood of success.  The Court granted the parties time to draft briefs to properly address this important issue with potentially far reaching effects.[10]  Instead, Plaintiff either purposely withheld evidence or referred to evidence that does not exist.  Defendants request that any

_____   _____

[9] Plaintiff's original Motion for TRO, ECF Dkt. #1, Page ID 28 ("Plaintiff will show what documents or other material was taken by Defendant.  But that takes time.").

[10] In extending the TRO, Judge Borman stated: "I'm just trying to get quality briefing on an issue that is going to be, you know, a significant issue with regard to constitutional law and all these factors . . . ."  **Exhibit 2**, Tran. Of Oct. 10, 2017 Telephonic Hearing, p. 7.  When Plaintiff raised the prospect of introducing evidence of an expert report, the Court said it was 'looking forward to the briefs." *Id.*, p. 11.

such "report" not be permitted at the upcoming evidentiary hearing.

### III.      Standard of Review for Requests for Injunctive Relief.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The burden is on Plaintiff, and it is substantial. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[I]n seeking a preliminary injunction, a federal plaintiff has the burden of establishing the likelihood of success on the merits," and defendant need not even "counter" plaintiff's allegations. *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535 (2007).[11]

When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by

---

[11] *See also Bank Julius Baer & Co. v. Wikileaks*, 535 F. Supp. 2d 980 (N.D. Cali. 2008) (denying an injunction as a prior restraint on speech even where Defendant Wikileaks did not appear or oppose the plaintiff's motion).

granting the preliminary injunctive relief. *PrimePay, LLC v. Barnes*, 2015 WL 2405702 (E.D. Mich. May 20, 2015); citing *Certified Restoration, supra* at 540.

"The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary, supra* at 739. It must do more than just "create a jury issue," and must persuade the court that it has a *likelihood* of succeeding on its claims. *Id.* "This is because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Id.*

## IV.    Plaintiff Has Not Met its Burden or Standard for Injunctive Relief

### a.  Plaintiff Has Not Shown a Likelihood of Success on the Merits

#### i.   There is no Likelihood of Success on the Eavesdropping Claim

##### 1. Plaintiff Fails to Plead the Cause of Action

Plaintiff alleges violation of Michigan's Eavesdropping statute. Even taking its pleadings as true, Plaintiff fails to allege the elements of the cause of action and cites no wrongdoing that could be implicated under that act. *See* ECF Dkt. # 6, Second Amended Complaint, ¶¶ 57-64. Plaintiff alleges Defendant Jorge "engaged in interrogating persons," "entered private offices without authorization and reviewed files," and "is believed to have accessed electronic records of the Plaintiff." *Id.* Plaintiff then notes that it "fears" Defendants have an "intent" to publish

proprietary information. *Id.* None of those are wrongful acts under the statute. Notably *not* present is any allegation that Defendants eavesdropped, recorded private conversations, transmitted private discourse of others without permission, or engaged in surveillance by secretly observing activities of others for the purpose of spying. The pleading is conclusory and fails to allege acts prohibited by the statute.

The closest Plaintiff came to alleging anything within the statute was to allege that Defendant "wore large pearls, large glasses and clothing with buttons capable of hiding a camera," and that she "routinely carried a cell phone with her everywhere she went," and that the "cell phone is capable of recording both audio and video conversations." ECF Dkt. # 6, ¶¶ 37-38. This does not raise a plausible claim, let alone a likelihood of success sufficient for an injunction. If it did, nearly every citizen in the country could be subject to an injunction based on the same allegations.

Similarly, Plaintiff does not cite a single case or opinion analyzing or applying the Eavesdropping statute or granting an injunction of the type sought under the statute. Just as this Court is not required to search the record to determine facts not raised by a party, nor should a party be permitted to simply assert a likelihood of success without citing any authority. *See, e.g.*, *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (holding it is not the role of district courts to "develop legal theories and generally champion the position" of the parties).

## 2. The Statute Does Not Permit the Injunction Sought

11

Plaintiff states that Mich. Comp. Laws § 750.539a provides authority to grant an injunction. The express authority given in that statute, however, is for "an injunction by a court of record ***prohibiting further eavesdropping***." But that is not the relief that Plaintiff sought, nor what was granted by the state court. Rather, based solely on this statute, the state court granted an injunction restraining Defendants from "publishing, releasing to the public, or otherwise disclosing" ***any*** "information pertaining to or relating to the Plaintiff AFT Michigan, its officers, employees or affiliated location unions." ECF Dkt. # 1, Page ID 41. The injunction makes no reference to further eavesdropping or even to whether information was obtained improperly. The injunction is overly broad and not authorized by the statute.

### 3. Plaintiff Does Not Have Standing on this Claim

Plaintiff alleges it has reason to believe that video or audio was recorded, but does not say who was subject to the alleged recording, whether the subjects had a reasonable expectation of privacy,[12] or whether the subjects were AFT employees or agents. Plaintiff also alleges that Defendant Jorge attended "conferences," but does not state who was at those conferences. Plaintiff has not established that it has standing to bring the claim under the statute. *See People v. Warner*, 401 Mich. 186

---

[12] In order to prevail on a claim under the eavesdropping statute, a plaintiff must be able to show that it had a "reasonable expectation of privacy in the recorded conversation" at issue. *Bowens v. Ary, Inc.*, 489 Mich 851 (2011).

(1977) (holding that "defendant had no standing to request the suppression of the message" illegally intercepted "because there was no evidence that he was a party to that call and his rights to privacy therefore were not shown to be violated.").

### ii.   Plaintiff Has No Likelihood of Success on its MUTSA Claim

Plaintiff alleges violation of the Michigan Uniform Trade Secrets Act ("MUTSA").  To establish its claim Plaintiff must (1) "particularize and identify" the material it claims qualifies for trade secret protection, (2) establish the independent economic value of the material, (3) establish measures taken to protect the material and maintain its secrecy, and (4) establish that Defendants actually disclosed or used the information in question.  *PrimePay, LLC v. Barnes*, 2015 WL 2405702 (E.D. Mich. May 20, 2015).  Plaintiff cannot meet any of these factors.

Plaintiff has not even established that there are any trade secrets in question. Under MUTSA, a "trade secret" is defined as information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) derives independent economic value from not being generally known, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. MCL § 445.1902(d).  Plaintiff's information does not meet this definition.

Simply because information is confidential, or just because a plaintiff would like others not to know it, does not make it a trade secret. *Raymond James & Assocs. v. Leonard & Co.*, 411 F. Supp. 2d 689, 696 (E.D. Mich. 2006) (confidentiality

13

agreement does not by itself turn information into trade secrets). This Court has articulated the policies underlying MUTSA, noting that:

> [L]egislatures have passed trade secret laws to encourage business ethics and innovation. Such laws enable businesses to enter good faith transactions, form stable relationships, and share confidential information, which in turns assists in product development. Also, trade secret laws encourage research and development by supplementing the patent system and supporting innovators.

*Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 749 (E.D. Mich. 1999); *Hayes-Albion v. Kuberski*, 421 Mich. 170, 364 N.W.2d 609 (1984) (trade secrets are those "used in one's business, and which gives him an opportunity to obtain an advantage over competitors . . . . It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers."). As Michigan's Supreme Court noted, trade secrets "differ[] from other secret information in a business . . . . A trade secret is a process or device for continuous use in the operation of the business." *Hayes-Albion* at 181.

Plaintiff's information does not rise to the level of a trade secret. It references information regarding grievances relating to employee discipline, Second Amended Complaint, ECF Dkt. # 6, ¶ 16; bargaining sessions (presumably with other parties), *id.* at ¶ 18; unnamed and ambiguous "data bases, confidential conferences and the status of grievances," *id.* at ¶ 19; and non-descript "files and records." *Id.* at ¶ 22. Plaintiff also states in conclusory fashion that it "maintains private, confidential and proprietary information to permit Plaintiff to be able to engage in its efforts to

champion education, protect students and advance their right to a quality education, advocate for public employees and take positions on matters of public concern." *Id.* at ¶ 49. But none of that defines or describes a trade secret under MUTSA.

### 1. Plaintiff has not properly identified with specificity the trade secrets alleged to have been taken

Plaintiff claims that the information that Jorge may have been privy to "involved confidential information about members, politics, and new organizing campaigns." But Plaintiff does not even attempt to state with any particularly what information it keeps, what was allegedly or potentially taken, how it was confidential, or why it is valuable. All this Court knows is that the Plaintiff claims to have information that would be embarrassing if made public.

"A party alleging trade secret misappropriation must particularize and identify the purported misappropriated trade secrets with specificity." *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 662 F. Supp. 2d 855, 859 (E.D. Mich. 2009). "Thus, the claimed trade secret must be specifically identified, and its unique economic value explained." *PrimePay, LLC*, *supra* at *22; *Utilase, Inc. v. Williamson*, 1999 WL 717969, *6 (6th Cir. Sept. 10, 1999) (Michigan courts have held that an alleged trade secret must be identified "clearly, unambiguously, and with specificity").

Plaintiff has not specifically identified any trade secrets with particularity. And to the extent that Plaintiff proceeds on a theory of "threatened misappropriation," "the burden of establishing a violation of the MUTSA under such

a theory is *more* difficult to sustain." *Id.* (emphasis added).

## 2. The information has no independent economic value

Only information that derives "independent economic value" from not being known is protected as a trade secret. Plaintiff claims it is entitled to an injunction because the information alleged to have been taken "will be known to persons and entities who do not share a common interest with AFT Michigan or organized labor, stripping it of its use and value in a manner that is irreparable." Supplemental Brief, ECF Dkt. # 7, Page ID 133. But simply because people who do not have common interests may learn the truth does not make that information a trade secret.

Plaintiff argues that "disclosure would permit employers to know the position of a local affiliate [i.e., an organization *other* than AFT] regarding bargaining" and "members of the Legislature would know the Federation's private views on legislation." Plaintiff's Motion, ECF Dkt. # 1, Page ID 24. This also does not establish that the information derives any economic value from being secret.

In *PrimePay, LLC, supra*, the Court denied an injunction where the plaintiff claimed defendant took confidential information, but "[v]ery little evidence was presented . . . to establish that any of this information derives independent economic value from not being generally known or readily ascertainable by a competitor." *Id.* at *24 ("while it may or may not have violated other laws or contractual obligations, [this] does not, standing alone, amount to misappropriation of trade secrets.");

*Raymond James*, 411 F. Supp. 2d at 695 ("An interest in maintaining confidentiality may not, in itself, necessarily elevate information to the status of a trade secret.").

The same applies here.  Plaintiff has shown no evidence of independent economic value in its information.  It has no likelihood of success on this claim.

### 3.  Plaintiff's information is not the subject of reasonable efforts to maintain its secrecy.

"To obtain protection as a trade secret, information must, of necessity, be a secret." *Innovation Ventures, LLC v. Aspen Fitness Prods, Inc.*, 2015 WL 11071470 (E.D. Mich. Mar. 31, 2015); quoting *Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347 (1974).  A plaintiff must show that the information in question has "been subject to reasonable efforts to maintain its secrecy."  Mich. Comp. Laws § 445.1902(d). Sufficient measures include express agreements restricting or prohibiting disclosure; disclosure made in confidence with an understating that it is confidential; or security precautions utilized to ensure that only a limited number of authorized individuals have access to the information.  *PrimePay, LLC, supra* at *22; citing *Wysong Corp. v. M.I. Ind.*, 412 F. Supp. 2d 612, 626 (E.D. Mich. 2005); *Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347 (1974).

Plaintiff has not alleged that Defendants were subject to noncompete, nonsolicit, nondisclosure, or confidentiality agreements; that they were subject to or bound by any employee handbook or policy (or that any existed); that any contract, employment agreement, or internship agreement of any kind existed; or that any

directions pertaining to confidentiality were given, whether explicitly or implicitly.

Plaintiff freely concedes that Ms. Jorge "had access to a large amount of information because the Federation was not strict with regard to password control." Plaintiff's Motion, ECF Dkt. # 1, Page ID 25. Plaintiff asserts that it voluntarily gave access to an unpaid intern without conducting a background check or having a confidentiality agreement in place. It alleges that Ms. Jorge obtained access to "meetings and conferences," where presumably parties other than AFT were present. Second Amended Complaint, ECF Dkt. # 6, ¶ 72. It alleges that Ms. Jorge "was seen to photograph posters," without noting what the posters contained or if they were public (presumably they were displayed on a wall), or any other information that evinces any steps to maintain confidentiality. It notes that "Defendant secured access to the computer passwords of persons employed at the Plaintiff" in order to "secure information," but does not allege that she improperly or illegally secured those passwords, indicating that the passwords were freely given to her. *Id.* at ¶ 24.

Importantly, this Court has held that even the employer/employee relationship, standing alone, does not necessarily give rise to obligations of confidentiality. "To be sure, the case law speaks of an additional requirement that there be an explicit, at least verbal, warning that the information disclosed is confidential and/or not to be disclosed and/or used without authorization." *Electronic Planroom, Inc. v. Mcgraw-Hills Cos., Inc.*, 135 F. Supp. 2d 805 (E.D.

Mich. 2001).  No such explicit "additional requirement" was pled or is present.

### 4. Plaintiff has not alleged evidence of misappropriation.

Plaintiff has not alleged actual misrepresentation. It alleges that Defendant "had *access* to private, confidential and proprietary information," and made vague allegations that Jorge "always carried her phone," but offers no evidence of actual misappropriation. To the contrary, it only alleges that "it is likely" that Defendant obtained copies of information and that it "will show that it is highly likely" that wrongdoing occurred.  *See*, ECF Dkt. # 7, p. 19.  This is not enough.

This Court has denied injunctions in similar cases. In *PrimePay*, *supra*, plaintiff sought an injunction under MUTSA, alleging it had forensics that "suggested" the defendant "accessed" alleged trade secrets.  The Court held that "Plaintiff has failed to carry its heavy burden of convincing the Court that it will succeed on a claim of actual misappropriation" and that "Plaintiff must do more than argue that the forensics suggest" wrongdoing, but "must demonstrate a 'strong likelihood' of success on the merits of the claim." *Id.* "Rather than directing the Court's attention to evidence that establishes to a high degree of certainty" that misappropriation existed, plaintiff attacked the defendant.  "To support its request for the extraordinary remedy of injunctive relief, Plaintiff was required to do more." *Id.* The Court denied the injunction.  The same should apply in the instant case.

### iii.   There is no Claim for Breach of Duty of Loyalty

Ms. Jorge was, per Plaintiff's pleadings, a temporary intern.  Plaintiff does not allege that she was paid, signed any agreements, placed in a high position of trust, or subject to any employee handbook or policy.  Yet Plaintiff alleges that she violated an alleged "fiduciary duty" with regard to "matters and information to which she was exposed and to which she was given access."  Second Amended Compl., ECF Dkt. # 6 ¶ 80.  It alleges that she breached this duty by "accessing information outside her authorization," "accessing information unrelated to her assignment," and by "securing and copying information not generally available to the public for the purpose of sharing that information with Defendant PV." *Id.*, ¶ 82.

Section 8 of MUTSA, however, specifically displaces conflicting tort or other state laws providing civil remedies for misappropriating trade secrets.  Mich. Comp. Laws § 445.1908 ("this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

In *CMI Intern'l, Inc. v. Intermet Intern'l Corp.*, 251 Mich. App. 125, 129, 132 (2002), the Michigan Court of Appeals upheld dismissal of a breach of fiduciary duty claim because MUTSA "displaced conflicting tort remedies for misappropriation of a trade secret."  In *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003), it was held that "[i]n determining whether a claim is displaced, courts generally examine whether the claim is based solely upon the misappropriation of a trade secret," and "if so, the

20

claim ***must*** be dismissed."[13]   This Court has noted that to the extent a breach of

fiduciary claim is "premised on the same acts alleged to constitute misappropriation

of trade secrets, such claims are displaced by the MUTSA." *Primepay*, supra at *34.

Plaintiff's allegations of breach of fiduciary duty are that Ms. Jorge allegedly

copied information not generally available to the public for the purpose of sharing it

with the other Defendant.  But that is premised on the same acts alleged to constitute

its misappropriation claim.  Its breach of fiduciary duty claim is therefore displaced

by MUTSA and should be dismissed, meaning there is no likelihood of success.

Even if the claim was not displaced, Michigan law does not recognize a

fiduciary duty owed by interns.  Michigan courts have "been reluctant to extend the

cause of action for breach of fiduciary relationship beyond the traditional context."

*Rockwell Med., Inc. v. Yocum*, 2014 WL 2965307, *6 (E.D. Mich. June 26, 2014);

citing *Bero Motors v. GMC*, 2001 WL 1167533 (Mich. App. Oct. 2, 2001).  This is

so even when there is a contract between the parties or even in the case of

independent contractors.  *Horizon Painting, Inc. v. Adams*, 2007 WL 600686 (Mich.

App. Feb. 27, 2007).  This Court has held that this is so *even when* the employee has

signed a confidentiality agreement and a covenant not to compete, *Rockwell*, *supra*,

neither of which are present here.  *Rockwell* indicates that this claim must fail.

---

[13] The disputed status of information as a trade secret does not preclude a court from
determining whether a claim is displaced by MUTSA.  *Bliss*, *supra* at 946.

"[U]nless circumstances indicate otherwise, the employer/employee relationship is generally not a fiduciary one." *Id.*, quoting *Muglia v. Kaumagraph Corp.*, 64 F.3d 663 (6th Cir. 1995). *See also Delphi Auto. PLC v. Absmeir*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016) ("the general rule is that the employer-employee relationship does not give rise to a fiduciary relationship unless the employee is a high-level employee, or if there is a specific agency relationship."). Mere "conclusory allegations that [plaintiff] 'reposed trust, faith and confidence' in the defendant" does not suffice . . . ." *McLaren Reg'l Med. Ctr v. Completerx, Ltd.*, 2017 WL 3034615, *7 (E.D. Mich. 2017). Plaintiff is not likely to show that an unpaid intern with no contract or agreement had a fiduciary duty.[14]

### b. Plaintiff Has Not Established Irreparable Harm

Plaintiff fails to establish that it will suffer irreparable harm if an injunction is not granted. It alleges that "Defendant's purpose was to use private, proprietary information to attempt to embarrass the Plaintiff and adversely impact labor organizations representing public school employees." Second Amended Compl., ECF Dkt. # 6, Par. 34. But embarrassment is not recognized as irreparable harm. Nor is information being known to those who "do not share a common interest with

---

[14] Plaintiff only seeks injunctive relief based on its eavesdropping claim, MUTSA claim, and breach of fiduciary duty claim. Plaintiff also has no likelihood of success on its remaining claims, either. All of Plaintiff's alleged claims will be addressed in Defendants' answer or motion in lieu of an answer.

AFT Michigan or organized labor." ECF Dkt. # 7, Page ID 133.

Plaintiff has not pled any actual harm, but only its "fear" of Defendants' "intent." This Court has held that "fear" of some unarticulated harm is not enough. "A trade secret will not be protected by the extraordinary remedy of injunction on mere suspicion or apprehension of injury." *Allis-Chalmers Mfg Co. v. Continental Aviation & Engineering Corp.*, 255 F. Supp. 645, 654 (E.D. Mich. 1966); *see also Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 942 (E.D. Mich. 2008) ("It is well established that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural.").

Even if, *arguendo*, Plaintiff showed any harm, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 837 (1974); followed by this Court in *PrimePay, LLC, supra*.[15]

### c. The Balance of Interests Weighs Against Injunctive Relief

---

[15] Plaintiff does not cite one case in which a prior restraint argument was overcome and an injunction was granted prior to speech occurring, and even in other cases that it alleges are factually similar to the one at hand no injunctive relief was granted, but rather the plaintiff was permitted to seek potential monetary damages. *See, e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999).

While Plaintiff cannot establish irreparable harm, Defendants have already been irreparably harmed by prior restraints on their speech. "[I]n a First Amendment context, the loss of constitutional rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Ramirez v. Webb*, 787 F.2d 592 (6th Cir. 1986); *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Goncalves v. Trakul*, 2014 WL 1344510 (E.D. Mich. Apr. 4, 2014) (Hood, J.). Where a plaintiff's financial harm is weighed against a defendant's First Amendment rights, "due to the Free Speech concerns present, we find the potential for irreparable harm to [defendant] more likely . . . ." *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2002).

### d.  The Public Interest Would be Harmed by an Injunction

The Sixth Circuit has held that where there are "Free Speech concerns present," "the public would be negatively impacted, should we *not* dissolve the injunctions." *Taubman Co., v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2002). Plaintiff's own pleading makes reference to "instances of educators who supposedly engaged in 'sexting' with students" and "instances in which employees were suspected of or were disciplined for inappropriate sexual contact with students." Second Amended Complaint, ECF Dkt. # 6, ¶¶ 15, 17. Clearly, if this information exists the public has a strong interest in knowing it. Indeed, the public has the "right to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

The question is whether the public has an interest in upholding the First

Amendment or whether its interest is in protecting AFT Michigan from embarrassment due to disclosure of truthful information. Plaintiff did not even attempt to address this balancing analysis and thus did not meet this requirement.[16]

## V.      Plaintiff Still Has Not Sufficiently Served Defendant Jorge

Ms. Jorge has still not been properly served with process. Injunctive relief should not be granted where Plaintiff has not even properly served a Defendant.

## CONCLUSION

Plaintiff asserts that "Defendant here should not be permitted to rely on fundamental law to protect" themselves. Yet, that is *precisely* what citizens in a society and government of laws *must* be permitted to rely upon. Defendants have had their speech censored and frozen, based on nothing but Plaintiff's accusations and suppositions. This does not meet Plaintiff's high burden. Respectfully, Plaintiff's motion for a Preliminary Injunction should be denied.

/s/ Paul M. Mersino
**Butzel Long, P.C.**
Paul M. Mersino (P72179)
150 W. Jefferson, Suite 100
Detroit, MI 48226
mersino@butzel.com
313-225-7015

---

[16] Plaintiff's argument that the public has an interest in upholding UTSA and the eavesdropping statute fails because it is unable to show a likelihood of success on those claims. Additionally, Plaintiff must do more than merely point to the cause of action it alleged in circular fashion. Otherwise, this prong becomes nugatory.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **October 24, 2017**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

BUTZEL LONG, P.C.

s/ Paul M. Mersino_____
**Butzel Long, P.C.**
Paul M. Mersino (P72179)
150 W. Jefferson, Suite 100
Detroit, MI 48226
mersino@butzel.com
313-225-7015