UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

       Plaintiff,

v.                                  Civil Case No. 17-cv-13292
                                    Honorable Linda V. Parker

PROJECT VERITAS, a foreign
corporation, and MARISA L. JORGE,
a/k/a MARISSA JORGE, a/k/a
MARISSA PEREZ,

       Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 7)

## I.    Introduction

Plaintiff, AFT Michigan, initiated this lawsuit on or about September 28, 2017 in the Third Circuit Court for the County of Wayne, Michigan. (ECF No. 1 at Pg ID 1.) On October 6, 2017, Defendants Project Veritas ("Defendant PV") and Marisa L. Jorge, a/k/a Marissa Jorge, a/k/a Marissa Perez ("Defendant Jorge") filed a Notice of Removal to this Court. (*Id.*) Plaintiff filed an Amended Complaint in state court on October 5, 2017 and, with Defendants' consent, a Second Amended Complaint in this Court on October 17, 2017. (ECF No. 1 at Pg ID 2; ECF No. 6.)

Plaintiff alleges Defendant Jorge is a political actor for Defendant PV and gained access to AFT Michigan by fraudulently misrepresenting herself as a student at the University of Michigan. Plaintiff believes Defendant Jorge unlawfully accessed and transmitted proprietary and confidential information and engaged in unlawful and unauthorized surveillance of Plaintiff's employees. (ECF No. 6 at Pg ID 91.)

Presently before the Court is Plaintiff's Motion for Preliminary Injunction, filed on October 17, 2017. (ECF No. 7.) Defendants filed a response on October 24, 2017, and Plaintiff filed a reply on October 30, 2017. (ECF Nos. 24 & 25-1.) On November 30, 2017, the parties filed supplemental briefs in response to the preliminary injunction. (ECF Nos. 39 & 40.)

## II.     Background

According to Plaintiff, Defendant PV is an organization that uses its employees to infiltrate organizations for the purpose of securing proprietary information, which it distorts and publishes in the media. (ECF No. at Pg ID 95.) Plaintiff believes Defendant Jorge is a political operative for Defendant PV and gained access to AFT Michigan to advance Defendant PV's political agenda. (ECF No. 6 at Pg ID 96.)

In the spring of 2017, Defendant Jorge expressed interest to Plaintiff for a possible internship. (*Id*. at Pg ID 93.) Defendant Jorge identified herself as

Marissa Perez and represented that she was a student at the University of Michigan and interested in teaching the second grade. (*Id.*) Plaintiff interviewed Defendant Jorge, and she began her internship in May 2017. (*Id.*) Defendant Jorge was assigned to projects that were aligned with her interests in charter schools. (*Id.*) Sometime after the start of Defendant Jorge's internship, she began to seek information unrelated to her assignments, including employee grievances. (*Id.* at Pg ID 94.) Several of Plaintiff's employees witnessed Defendant Jorge sitting, without permission, at the computer terminals of other employees, accessing files and records without authorization, and working late in the office without supervision. (*Id.*) Also, Defendant Jorge would often ask the staff questions regarding information not available to the general public. (*Id.* at Pg ID 96.) Plaintiff's employees noticed Defendant Jorge would often carry her cellular phone wherever she went and believed she was recording meetings and Plaintiff's employees. (*Id.*)

Due to inconsistent statements Defendant Jorge made to various employees, Plaintiff soon discovered that Defendant Jorge was never a student at the University of Michigan, and Marissa Perez was not her real name. (ECF No. 7 at Pg ID 120.) Believing Defendants to be in possession of proprietary and confidential information, Plaintiff seeks injunctive relief to enjoin Defendants from publishing or disseminating any information Defendant Jorge unlawfully obtained.

Plaintiff initiated this lawsuit on September 28, 2017 in the Third Circuit Court for the County of Wayne, Michigan. (ECF No. 1.) On September 29, 2017, Third Circuit Court Judge Brian R. Sullivan issued a Temporary Restraining Order enjoining Defendants from publishing or disclosing confidential and/or proprietary information relating to Plaintiff, its employees, officers, or affiliates that was taken from Plaintiff without consent. (ECF No. 23). Defendants filed a Notice of Removal to this Court, and the case was assigned to Judge Paul D. Borman. During a teleconference on October 10, 2017, Judge Borman ordered the parties to brief the Court on the appropriateness of a temporary restraining order in light of the potential First Amendment implications. On October 20, 2017, this matter was reassigned to the undersigned. (ECF No. 10.)

After the conclusion of the parties' briefing, on November 15, 2017, this Court held a hearing on Plaintiff's request for a preliminary injunction. After hearing testimony from Plaintiff's forensic computer examiner, Kevin Smith, about the documents Defendant Jorge allegedly misappropriated, the Court ordered the parties to file supplemental briefs. On November 30, 2017, the parties filed supplemental briefs addressing whether the 221 documents Plaintiff produced were trade secrets under the Michigan Uniform Trade Secrets Acts ("MUTSA"). (ECF Nos. 37, 39 & 40.) Defendants further supplemented their brief on December 12,

2017, and Plaintiff filed a response, also, on December 12, 2017. (ECF Nos. 43 & 44.)

## III. Preliminary Injunction Standard

A court must balance four criteria in deciding whether to issue a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harms to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)) (brackets omitted).

## IV. Applicable Law & Analysis

### A. Plaintiff's Likelihood of Success on the Merits

Plaintiff states that it has a strong likelihood of success with respect to violations of MUTSA, the Michigan Eavesdropping Act, and Defendant Jorge's breach of fiduciary duty[1]. (ECF No. 7 at Pg ID 132-33.)

---

[1] Plaintiff's seventh cause of action in its Second Amended Complaint is titled "Breach of Fiduciary Duty." (ECF No. 6 at Pg ID 103.) However, Plaintiff alleges within this cause of action that Plaintiff also had a duty of loyalty.

### 1.    MUTSA

MUTSA protects against the misappropriation of trade secrets by improper means.  Plaintiff seeks injunctive relief pursuant to MUTSA, Mich. Comp. Laws § 445.1903(1), which provides injunctive relief for actual or threatened misappropriation.  MUTSA defines "misappropriation" as

> (i)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.
>
> (ii)  Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:
>
> > (A)  Used improper means to acquire knowledge of the trade secret.
> >
> > (B)  At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.
> >
> > (C)  Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws § 445.1902(b).  "Improper" is defined as "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy or espionage through electronic or any other means."  Mich. Comp. Laws § 445.1902(a).

Before a court can grant injunctive relief under MUTSA, Plaintiff must show the alleged misappropriated information is a "trade secret." MUTSA defines "trade secrets" as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d). Michigan courts apply the following factors when determining if information is a trade secret under MUTSA:

> (1) extent to which information is known outside of owner's business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information, (4) value of information to owners and competitors, (5) amount of effort and money expended in developing information, and (6) ease or difficulty with which information could be properly acquired or duplicated by other.

*PrimePay, LLC v. Barnes*, No. 14-11838, 2015 WL 2405702, at *21 (E.D. Mich. May 20, 2015) (quoting *Dura Global Techs., Inc. v. Magna Donnelly Corp.* 662 F. Supp. 2d 855, 859 (E.D. Mich. 2009)); *see e.g.*, *GeoLogic v. Comput. Sys. v. MacLean*, No. 10-13569, 2015 WL 5460644, at *2 (E.D. Mich. Sept. 17, 2015); *Stryker Corp. v. Ridgeway*, No. 13-cv-1066; 14-cv-889, 2015 WL 8759220, at *10

(W.D. Mich. Dec. 14, 2015); *Ajuba Intern., LLC v. Saharia*, No. 11-cv-12936, 2014 WL 3420524, at *6-7 (E.D. Mich. July 14, 2014).

Plaintiff produced 221 documents that it characterizes as either trade secrets or confidential and summarily states

> The Documents presented to the Court (excepting those listed) meet this definition [of trade secret].  First, the information is not generally known.  Much of the material was created by AFT Michigan (including some created by "Perez").  The information is not known throughout the public education community; it was assembled as part of the Federation's overall strategy regarding charter schools.  AFT Michigan engaged in reasonable efforts to safeguard the material; access to the Federation's office is restricted to those who are admitted—the public does not have access.  With certain of the materials, the Document was the product of several years of effort ("Who's Running This Place").  Considerable staff time has been expended to produce it.  While other entities might be able to produce similar Documents, they would have to start from the beginning.  The material is not easily duplicated.

(ECF No. 39 at Pg ID 1222.)  Plaintiff concedes that Nate Walker's resume, application and loan documents are not trade secrets.  (*Id*. at Pg ID 1221.)  Additionally, Plaintiff does not provide a description of documents numbered 167-171.  Therefore, documents numbered 14-16, Nate Walker's resume, 123-127, Nate Walker's resume with written correspondence, 156-166, mortgage loan application, and 167-171 will not be examined under MUTSA.

The Court will address Plaintiff's documents in turn.

**Documents Numbered 1-11**

According to Plaintiff, documents numbered 1-11 "reflect research performed at the Federation (including research performed by 'Perez') with respect to charter schools." (ECF No. 39 at Pg ID 1214.) Plaintiff asserts that these documents were used to develop strategy and to organize employees at charter schools. (*Id*.) The documents primarily consist of pie charts with no explanatory data and the personal contact information of a planning team.

It is unclear if the documents numbered 1-11 are known outside AFT and its employees, or if the information is generally known among the public education community. The documents appear to have no actual or potential independent economic value. It is difficult to determine if there would be any difficulty acquiring or duplicating the information because it is unclear as to what the information represents. Finally, the measures taken to guard the secrecy of the documents are insufficient. Although Plaintiff asserts that AFT's building is secured and not open to the public, Plaintiff gave Defendant Jorge unfettered access to its building and its alleged trade secrets without verifying her identity. Plaintiff allowed Defendant Jorge to work late without supervision. Also, as supported by a number of the documents provided to the Court, Plaintiff's employees regularly forwarded alleged trade secrets and confidential information to Defendant Jorge's personal email account. Most importantly, the computers of Plaintiff's employees were not password protected, which allowed Defendant

Jorge to access Plaintiff's information with little to no difficulty. Finally, there is no allegation that when Defendant Jorge was seen sitting, without permission, at another employee's computer terminal, she was either removed or asked to remove herself. In short, Plaintiff's conduct does not support a conclusion that it exercised extensive measures to guard the secrecy of its information.

Therefore, the Court does not find that documents numbered 1-11 are trade secrets.

**Documents Numbered 17-45**

Plaintiff describes documents numbered 17-38 as a presentation about charter schools developed by Defendant Jorge. (ECF No. 39 at Pg ID 1214.) The documents consist of a presentation outline with links to publicly available information, as well as a PowerPoint presentation. Plaintiff states that the information in the presentation was researched and developed solely by Defendant Jorge.

Documents numbered 39-45 are questions Defendant Jorge prepared to ask Nate Walker. There is no information before the Court to suggest how unanswered questions developed by Defendant Jorge are trade secrets. Likewise, Plaintiff has not stated to the Court how a presentation researched and developed by Defendant Jorge is a trade secret.

Therefore, Plaintiff has failed to show how documents numbered 17-45 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

**Documents Numbered 46-109**

Documents numbered 46-109 are titled "IFF Memo." Plaintiff alleges these documents were prepared in connection with plans to improve the Detroit Public Schools. The documents include information prepared by the Coalition for the Future of Detroit Schoolchildren ("CFDS") and IFF. These documents consist of an orientation packet for leadership team members, a memorandum dated June 2016 from Tonya Allen addressing a recap of previous legislative action and steps for moving forward, a memorandum dated March 2017 from Tonya Allen regarding CFDS expectations for a steering committee meeting, general questions for CFDS, an organizational flow chart, eight topics for community responses, a timeline for key activities with presentation instructions and deadlines with dates that have since passed, a pdf of "The Choice is Ours Report," and a third grade reading presentation, also prepared by CFDS.

According to Defendants, "The Choice is Ours Report" has been widely disseminated and published by MLive.com, Mackinac Center for Public Policy, and Detroit's NAACP. (ECF No. 40 at Pg ID 1287.) Plaintiff has not provided any information to dispute this assertion. Furthermore, the contents were not prepared by Plaintiff, and includes a statement, as Defendant correctly points out, that the study will be made public in the fall of 2017. (ECF No. 37 at Pg ID 959.).

Therefore, Plaintiff has failed to show how documents numbered 46-109 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

### Documents Numbered 110-122

These documents list the personal contact information for employees in the bargaining unit at Caesar Chavez Academy. Although this information may be confidential, a mere characterization of confidentiality does not fall within the meaning of a "trade secret" under MUTSA. Furthermore, these documents could be easily duplicated if the employees voluntarily shared their personal contact and employee information.

Therefore, Plaintiff has failed to show how documents numbered 110-122 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents as to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

### Documents Numbered 128-155

According to Plaintiff, documents numbered 128-155 are results from an accountability survey completed by charter school employees that Plaintiff believes can be used to counter its efforts. The documents consist of personal contact information with incomplete survey answers. However, there is no way of knowing what questions were asked in the survey. Although the information may be confidential, it does not fall within the meaning of a trade secret under MUTSA.

Therefore, Plaintiff has failed to show how documents numbered 128-155 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents as to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents

numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

### Documents Numbered 172-178

Plaintiff describes documents numbered 172-178 as strategy regarding legislation based on a presentation containing confidential information. The documents consist of questions, concerns, suggestions, and notes for the United Way Bill. Again, although the documents numbered 172-178 may be confidential that does not rise to the level of a trade secret under MUTSA. Plaintiff does not offer any support as to how the documents are trade secrets.

Therefore, Plaintiff has failed to show how documents numbered 172-178 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents as to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

### Documents Numbered 179-188

According to Plaintiff, documents numbered 179-188 is an article regarding teacher absenteeism, which was made available to a limited audience and not prepared by Plaintiff. Because the information was provided to a limited audience,

Plaintiff is either unaware or has no control of the extent to which the article has been disseminated or reproduced. Most importantly, the article was not prepared by Plaintiff.

Therefore, Plaintiff has failed to show how documents numbered 179-188 are trade secrets.

### Document Numbered 189

Plaintiff describes document 189 as notes Defendant Jorge made while observing a bargaining session at a charter school. However, although the email contains an attachment that Defendant Jorge appears to have sent to Nate Walker, the email itself does not have any content. Further, the Court does not have any information about the contents of the attachment that supposedly contain Defendant Jorge's notes. As such, the Court declines to characterize Defendant Jorge's personal notes as a trade secret.

### Documents Numbered 190-217

Documents numbered 190-217 is a pdf of "Who's Running this Place?" that Nate Walker sent to Defendant Jorge's personal email on June 12, 2017. It includes information about charter school closings in Michigan, and according to Plaintiff, includes Plaintiff's strategy for organizing and communicating with members of the Michigan legislature.

However, Plaintiff has failed to show how documents numbered 190-217 are trade secrets, including whether the specific information is generally known to the public or the public education community, the independent economic value, the value of the documents to competitors, and the difficulty in acquiring or duplicating the information. Finally, for the reasons stated for documents numbered 1-11, Plaintiff has failed to show the sufficiency of the measures taken to guard the secrecy of the documents.

Therefore, Plaintiff has not shown how documents numbered 190-217 are trade secrets.

### Documents Numbered 218-221

According to Plaintiff, documents numbered 218-221 consist of material relating to an employee grievance. The documents appear to be an email from Johnny Mickels to Defendant Jorge's personal email on August 23, 2017. Although the email could be perceived as being confidential, nothing in the email constitutes a trade secret.

Rather than specifically explaining to the Court how the 221 documents are considered trade secrets, Plaintiff provides a general and conclusory argument to support its claim. None of the documents Plaintiff produced fall within the meaning of a "trade secret" as defined by MUTSA.

Therefore, Plaintiff has not shown a likelihood to succeed on the merits of its MUTSA claim.

## 2. The Michigan Eavesdropping Act

Mich. Comp. Laws § 750.539d provides:

(1)  Except as otherwise provided in this section, a person shall not do either of the following:

(a)  Install, place, or use in any private place, without the consent of the person or persons entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place.

(b)  Distribute, disseminate, or transmit for access by any other person a recording, photograph, or visual image the person knows or has reason to know was obtained in violation of this section.

Mich. Comp. Laws § 750.539h expressly provides for the issuance of an injunction "prohibiting further eavesdropping."  Defendant Jorge's internship has since been terminated so an injunction pursuant to § 750.539d would be fruitless.  Again, Plaintiff alleges that "it is likely [ ] the Defendant obtained information by recording conversations without consent violating the Michigan Eavesdropping Act."  (ECF No. 7 at Pg ID 132.)  Plaintiff's conclusory allegations are insufficient to show that it has a likelihood to succeed on the merits.  Plaintiff speculates that Defendant Jorge violated § 750.539d but offers no factual support that Defendant Jorge actually installed, placed or used, without its consent, any device for "observing, recording, transmitting, photographing, or eavesdropping."  Further,

Plaintiff simply states that Defendant Jorge was often seen with her cell phone, but not once does Plaintiff allege that someone observed Defendant Jorge using her cell phone to record or photograph anything. Plaintiff further speculates that Defendant Jorge wore clothing and accessories that were capable of concealing cameras or recording devices. However, there is no allegation that Plaintiff's clothing or accessories actually concealed cameras or recording devices.

Therefore, Plaintiff has not shown a likelihood to succeed on the merits pursuant to Michigan's Eavesdropping Act.

### 3. Breach of Fiduciary Duty and Duty of Loyalty

Plaintiff alleges Defendant Jorge breached her fiduciary duty when she used her internship position to harm Plaintiff. In Plaintiff's Second Amended Complaint, Plaintiff alleges Defendant Jorge breached her fiduciary duty and duty of loyalty when she engaged in the following:

a) accessing information outside her authorization;
b) accessing information unrelated to her assignment;
c) securing and copying information not generally available to the public for the purpose of sharing that information with Defendant PV.

Pursuant to Mich. Comp. Laws § 445.1908, Defendants argue that Plaintiff's tort claims arising out of the misappropriation of a trade secret are displaced by MUTSA.

(1) Except as provide in subsection (2), this act displaces conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of trade secret.

(2) This act does not affect any of the following:

    (a) Contractual remedies, whether or not based upon misappropriation of a trade secret.

    (b) Other civil remedies that are not based upon misappropriation of a trade secret.

    (c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

*See Rockwell Med., Inc. v. Yocum*, 76 F. Supp. 3d 636, 647 (E.D. Mich. 2014) ("The plaintiffs' claims for misappropriation and wrongful disclosure of trade secrets are governed by the Michigan Uniform Trade Secrets Act, which expressly 'displace[d] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret'").

However, Plaintiff contends that its breach of fiduciary duty and breach of duty of loyalty claims are broader than its misappropriation claims. *See Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 623 (E.D. Mich. 2005) (rejecting defendant's argument that plaintiff's claims were displaced by MUTSA). Plaintiff contends Defendant Jorge breached her fiduciary duty and duty of loyalty by "reviewing data which was outside her assignment and authorization and forwarding to herself confidential information which was unrelated to her assignment." (ECF No. 25 at Pg ID 530.) Plaintiff further contends that "[s]he had an obligation to maintain the confidentiality of information to which she was

exposed; she had an obligation to not review data which was unrelated to her assignment. She ignored both." (*Id*.)

The Court does not find that Plaintiff's fiduciary duty claim applies in this case and declines to recognize a fiduciary duty in the context Plaintiff would like the Court to acknowledge. "A breach of fiduciary duty claim requires that the plaintiff reasonably reposed faith, confidence, and trust in the fiduciary." *Moross Ltd. P'ship*, 466 F.3d 508, 516 (6th Cir. 2006). Further, a fiduciary duty arises in the following contexts:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). Defendant Jorge's relationship with Plaintiff does not meet the definition of the conduct that would give rise to a fiduciary duty. Furthermore, under Michigan law, "[t]he general rule is that the employer-employee relationship does not give rise to a fiduciary relationship unless the employee is a high-level employee, or if there is a specific agency relationship. . . . [T]he concept of fiduciary duty generally does not apply to typical employees." *Dana Ltd. V. Am. Axle & Mfg. Holdings*, No. 10-cv-450, 2012 U.S. Dist. LEXIS 90064, at * 36 (W.D. Mich. June

20

29, 2012) (internal quotations and citations omitted); *see also Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016); *Stryker*, 2015 WL 8759220, at *3.

Notably, Plaintiff relies on a case from the District of Columbia to support its claim that a fiduciary duty applies to interns. However, the District Court for the District of Columbia specifically stated "the District of Columbia courts have deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances." *Council on Am.-Islamic Relations Action Network v. Gaubatz*, 793 F. Supp. 2d 311, 341 (D.D.C. 2011). However, this jurisdiction has not taken this position as it relates to a fiduciary duty to an intern, and Plaintiff has not provided case law to state otherwise. Therefore, Plaintiff has not shown that it has a likelihood to prevail on the merits for its breach of fiduciary duty claim.

Plaintiff also alleges a breach of duty of loyalty claim and asserts that as an intern Defendant "Jorge assumed the same duty of loyalty to AFT Michigan as full time employees." (ECF No. 7 at Pg ID 124.) Under a theory of breach of duty of loyalty, "[a]n employee breaches a duty of loyalty . . . by competing against his employer without fully disclosing his interest in the competing enterprise." *Wysong Corp.*, 412 F. Supp. 2d at 624 (citing *Kingsley Assocs., Inc. v. Del-Met, Inc.,* 918 F.2d 1277, 1283 (6th Cir. 1990). "The law will not permit an agent to act

in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal." *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, No. Civ. 14-10095, 2015 U.S. Dist. LEXIS 66967, at *6 (E.D. Mich. May 22, 2015) (quoting *Sweeney & Moore v. Chapman,* 295 Mich. 360, 294 N.W. 711, 712-13 (Mich. 1940).  Plaintiff alleges that Defendant Jorge breached her duty of loyalty by fraudulently misrepresenting herself, misusing and mishandling confidential information, and failing to disclose that she worked for an organization whose interests conflicted with Plaintiff.  Accordingly, the Court finds that Plaintiff has a likelihood to succeed on the merits of its breach of duty of loyalty claim.

### 4.      First Amendment Implications

In terms of granting a preliminary injunction, this case raises First Amendment concerns. The First Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law . . .  abridging the freedom of speech . . . ."  U.S. Const. amend. I; *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1250 (6th Cir. 1997) (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996)).  In a long line of cases, the Supreme Court has recognized that First Amendment protection extends to corporations and other associations.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010) (citing cases); *see also Pacific Gas & Elec. Co. v. Public*

*Util. Comm'n of Cal.*, 475 U.S. 1, 8 (1986) ("The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the discussion, debate, and the dissemination of information and ideas that the First Amendment seeks to foster.") (internal quotation marks and citation omitted).

Defendants argue that the injunction is effectively a prior restraint on speech. Plaintiff relies on case law from Michigan state courts that distinguish when injunctions are appropriate in a First Amendment context: an employee contract or breach of fiduciary duty. (ECF No. 7 at Pg ID 127-28.) Here, there is no evidence of any employee contract or any other agreement between Plaintiff and Defendant Jorge, and, as stated above, Plaintiff's breach of fiduciary duty claim fails under these facts.

For cases involving prior restraint, courts must consider if the publication "threaten[s] an interest more fundamental than the First Amendment itself and to forego the prerequisites from the realm of everyday resolution of civil disputes governed by the Federal Rules. Only if a plaintiff can meet this substantially higher standard can a court issue an injunction prohibiting publication of pure speech." *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 749 (E.D. Mich. 1999) (internal quotations and citations omitted). Plaintiff has not persuaded the Court that its

commercial interests are more fundamental than the Defendants' First Amendment

right.

The United States Supreme Court noted:

Although the prohibition against prior restraints is by no means absolute, the gagging of publication has been considered acceptable only in 'exceptional cases.' Even where questions of allegedly urgent national security, or competing constitutional interests, are concerned, we have imposed this 'most extraordinary remedy' only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures.

*CBS v. Davis*, 510 U.S. 1315, 1317 (1994); *see also Proctor & Gamble v.*

*Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) ("The private litigants'

interest in protecting their vanity or their commercial self-interest simply

does not qualify as grounds for imposing a prior restraint."); *Ford*, 67 F.

Supp. 2d at 751; *LL NJ, Inc.* v. *NBC-Subsidiary (WCAU-TV), L.P.*, No. 95-

4078, 2006 U.S. Dist. LEXIS 77431, at *4 (E.D. Mich. Oct. 6, 2006).

Plaintiff contends that Defendants should not be able to benefit from

the First Amendment protections on free speech because they unlawfully

obtained Plaintiff's information.  However, the Sixth Circuit "has held that

allegedly improper conduct in obtaining the information is insufficient to

justify imposing a prior restraint."  *Murray Energy Holdings Co. v.*

*Mergermarket USA, Inc.*, No. 2:15-cv-2844, 2016 U.S. Dist. LEXIS 79183,

at *27-28 (S.D. Ohio June 7, 2016) (citing *Proctor & Gamble Co.*, 78 F.3d

at 225 ("Weeks passed with the 'gag order' in effect, while the court inquired painstakingly into how *Business Week* obtained the documents and whether or not its personnel had been aware that they were sealed. While these might be appropriate lines of inquiry for a contempt proceeding or a criminal prosecution, they are not appropriate bases for issuing a prior restraint"). "Only when 'publication [would] threaten an interest more fundamental than the First Amendment itself' is such a restraint justified." *Proctor & Gamble Co.*, 78 F.3d at 225.

Therefore, in light of the potential First Amendment issues, a preliminary injunction most certainly will infringe upon Defendants' First Amendment right.

### B.     Irreparable Harm, Harm to Others & the Public Interest

Plaintiff will not suffer irreparable harm because there is no factual support that Defendants violated either the MUTSA or the Eavesdropping Act.  Moreover, there is no certainty that what could be published could harm Plaintiff.  *See CBS*, 510 U.S. at 1317; *Proctor & Gamble Co.*, 78 F.3d at 225.  As to the harm to Defendants, imposing an injunction would be a severe infringement on Defendants' First Amendment right.  The Supreme Court has held that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Finally, "it is

always in the public interest to prevent violations of a party's constitutional rights."

*Bays*, 668 F.3d at 825 (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).  Although the Court finds that Plaintiff will likely prevail on the merits of its breach of duty of loyalty claim, based on U.S. Supreme Court and Sixth Circuit precedent, the Court nonetheless finds that Plaintiff's commercial interests are not greater than the protections guaranteed by the First Amendment.

## V.      Conclusion

For the above reasons, the Court denies Plaintiff's request for preliminary injunction, and the temporary restraining order is vacated.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for preliminary injunction (ECF No. 7) is **DENIED**.

**IT IS FURTHER ORDERED**, that the temporary restraining order is **VACATED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 27, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 27, 2017, by electronic and/or

U.S. First Class mail.

s/ R. Loury
Case Manager