# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

AFT MICHIGAN,

                Plaintiff,

     v.

PROJECT VERITAS *et al.,*

                Defendants,

Civil Case No. 4:17-cv-13292

District Judge Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

Abigail V. Carter (DC Bar # 474454)
Joshua Rosenthal* (CA Bar # 325949)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
Phone: (202)-842-2600
Fax: (202)-842-1888
acarter@bredhoff.com
jrosenthal@bredhoff.com

*Counsel for Movant*
*\* Application for Admission Forthcoming*

# MOTION BY NON-PARTY MOVANT
# RHONDA WEINGARTEN FOR A PROTECTIVE ORDER

On January 24, 2020, Movant Rhonda Weingarten was served with a

subpoena to testify at a deposition in this matter. For the reasons detailed in the

attached brief, she now moves for a protective order, pursuant to Fed. R. Civ. P.

26(c)(1)(C) and (D), (1) limiting the subject matter of the deposition to the facts

underlying the current claims and defenses in this lawsuit, to exclude questions

regarding the motivations and financing underlying the litigation, the dismissed

trade-secret claim, and other AFT activities related to Project Veritas generally,

and (2) limiting the recording of the deposition to stenographic transcription.

Undersigned counsel certifies that Movant conferred in good faith with the parties

to resolve the dispute without court action. Plaintiff consents to Movant's

limitations. However, Movant and Defendants were unable to resolve the issue

without court action.

Respectfully submitted,

Abigail V. Carter
Joshua Rosenthal*
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
Phone: (202)-842-2600
Fax: (202)-842-1888
acarter@bredhoff.com
jrosenthal@bredhoff.com

*Counsel for Movant*
*\*Application for Admission*
*Forthcoming*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AFT MICHIGAN,

              Plaintiff,

        v.

PROJECT VERITAS *et al.,*

              Defendants,

Civil Case No. 4:17-cv-13292

District Judge Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

## BRIEF IN SUPPORT OF MOVANT RHONDA WEINGARTEN
## FOR A PROTECTIVE ORDER

Abigail V. Carter (DC Bar # 474454)
Joshua Rosenthal* (CA Bar # 325949)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
Phone: (202)-842-2600
Fax: (202)-842-1888
acarter@bredhoff.com
jrosenthal@bredhoff.com

*Counsel for Movant*
*\* Application for Admission Forthcoming*

i

**Issue Presented**

Shall the Court grant a protective order to preclude abuse of the discovery process
and prohibit the use of video recording of the deposition of a non-party witness?

## Controlling Authority

<u>Federal Rule of Civil Procedure 26</u>

(b)Discovery Scope and Limits.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*          *          *

(c) Protective Orders.

(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

*          *          *

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

# Table of Contents

Introduction ................................................................................................1

Background ................................................................................................3

  A. Defendants' Harassment Tactics ........................................................3

  B. Movant Weingarten's Role in the Case............................................7

  C. Efforts to Narrow the Subpoena ......................................................8

Argument..................................................................................................10

  A. Defendants' Proposed Deposition Seeks to Subject Movant to Annoyance, Harassment, Embarrassment, and Undue Burden ................................................12

  B. Movant's Proposed Limitations Would Protect Against Harassment Without Limiting Defendants' Legitimate Discovery Efforts............................................15

    1. This Court Should Limit Discovery to Questions Relevant to Present Claims and Defenses.........................................................................15

    2. The Court Should Order Only Stenographic Transcription of the Deposition...............................................................................................19

## Table of Authorities

**Page(s)**

**Cases**

*Bush v. Dictaphone Corp.*,
   161 F.3d 363 (6th Cir. 1998) ........................................................................18, 19

*E.E.O.C. v. New Breed Logistics*,
   2013 WL 10129246 (W.D. Tenn. Apr. 26, 2013) .............................................17

*Graves v. Bowles¸*
   419 F. App'x 640, 645-46 (6th Cir. 2011).........................................................18

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
   474 F.3d 288 (6th Cir. 2007) .......................................................................11, 20

*Johnson v. Washington Metro. Area Transit Auth.*,
   1993 WL 37445 (D.D.C. Feb. 3, 1993)............................................................22

*Kaplan v. S.A.C. Capital Advisors, LP*,
   2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) .................................................18

*Lewelling v. Farmers Ins. of Columbus, Inc.*,
   879 F.2d 212 (6th Cir. 1989) .......................................................................14, 18

*Long John Silver's Inc. v. Nickleson*,
   2013 WL 870443 (W.D. Ky. Mar. 7, 2013) .....................................................16

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
   294 F.R.D. 87 (S.D. Ohio 2013)......................................................................11

*MLC Intellectual Prop., LLC v. Micron Technology, Inc.*,
   2019 WL 118595 (N.D. Cal. Jan. 7, 2019).......................................................17

*In re: Nat. Prescription Opiate Litig.*,
   2018 WL 2127807 (N.D. Ohio May 7, 2018) ...................................................17

*Nemir v. Mitsubishi Motors Corp.*,
   381 F.3d 540 (6th Cir. 2004) .......................................................................11, 12

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)..........................................................................................17

iv

*Paisley Park Enters., Inc. v. Uptown Prods.*,
    54 F. Supp. 2d 347 (S.D.N.Y. 1999) ............................................................21, 22

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012) ..............................................................11, 19, 22

*Westmoreland v. CBS, Inc.*,
    584 F. Supp. 1206 (D.D.C. 1984), *aff'd in relevant part*, 770 F.2d
    1168 (D.C. Cir. 1985) ...................................................................................20, 21

## Other Authorities

Fed. R. Civ. P. 26 ..................................................................................*passim*

Fed. R. Civ. P 30 ................................................................................20, 22

Fed. R. Civ. P. 45 ....................................................................................8

## Introduction

As this Court knows, this case arises out of Defendants' fraudulent infiltration of AFT Michigan, during which Defendants obtained confidential documents from the union, and created recordings of union staff without their knowledge. AFT Michigan's lawsuit alleges a number of claims including false pretenses, trespass, and unlawful recording under Michigan and federal law.

Defendants have now subpoenaed Movant Rhonda Weingarten to appear for a videotaped deposition to provide testimony in this case. *See* Weingarten Subpoena, Ex. A.  Ms. Weingarten is the President of the American Federation of Teachers ("AFT"), which is located in Washington, DC.  Neither Ms. Weingarten, nor the AFT, are parties to this litigation.  Although the Federal Rules of Civil Procedure allow civil defendants to seek discovery that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), this does not create a blank check for them to undertake a fishing expedition from third parties for evidence to support a future lawsuit or to generate video footage for use outside the litigation.

As the discovery conducted in this case demonstrates, Ms. Weingarten has limited personal knowledge of the facts underlying the complaint and defenses in this case.  Ms. Weingarten is, however, the frequent target of Defendants' attacks based on actions and activities entirely unrelated to this case, and there is strong

1

evidence here that Defendants have noticed Movant's deposition not for reasons related to defending the underlying lawsuit in this Court, but rather to annoy, embarrass, oppress, and harass Movant, and to score political or fundraising points with its constituents.  Movant's concern that Defendants have noticed her deposition for such improper reasons is well-founded.  Defendants have already created and broadcast excerpts from the deposition, in this case, of David Hecker, the President of AFT Michigan, as part of a promotional or fundraising video that specifically advertises the forthcoming deposition of Ms. Weingarten as part of Project Veritas' plan of "fighting back."[1]  Added to this, Defendants' history of attacks on Ms. Weingarten generally, as well as Defendants' attempts to blur the distinction in its public statements regarding this case between AFT Michigan, the plaintiff, and Ms. Weingarten, the President of a separate, non-party legal entity, all support the conclusion that Defendants intend to use the discovery process in this case in an effort to annoy, harass, embarrass, and oppress Movant.

Notwithstanding Movant's well-founded and specific concerns of Defendants' improper motives in noticing her deposition, Movant is willing to

---

[1] Project Veritas, *PV Releases Deposition Showing American Federation of Teachers Wants to Bleed Us Dry* at 0:55-0:57, YouTube (Jan. 24, 2020), https://www.youtube.com/watch?v=X0kjaDxSUUU. Project Veritas explicitly sought to raise money with the distribution of this video over Twitter. *See* Project Veritas (@Project_Veritas), Twitter (Jan. 24, 2020, 12:40 PM). https://twitter.com/Project_Veritas/status/1220763237886693376.

provide deposition testimony on unprivileged matters that relate to the claims and defenses in this lawsuit. However, she is seeking this Court's assistance to ensure that the scope and use of the deposition is properly limited to the needs of this case and will not be used as a tool in Defendants' broader campaign against Movant. Accordingly, as set forth in more detail below, Movant asks this Court to limit the scope of the deposition to the claims and defenses in the existing case, *i.e.* the facts relating to Defendants' infiltration of AFT Michigan, their resulting communications, and those actions' effect on AFT Michigan. She also asks this Court to preclude Defendants from videorecording her deposition.

## Background

A. Defendants' Harassment Tactics

Movant Rhonda Weingarten is President of the American Federation of Teachers, AFL-CIO. AFT represents 1.7 million members across the country including employees of public and charter pre-K to 12 schools; higher education faculty and professional staff; public employees; and healthcare professionals. Plaintiff AFT Michigan is a state-federation affiliate of AFT, and the two organizations are separate legal entities. A licensed attorney and former New York City teacher, Ms. Weingarten has served in numerous roles on behalf of AFT and its New York City affiliated local. She is not, and has never been, an officer or employee of AFT Michigan.

Project Veritas is engaged in "an established project to attack labor organizations representing public school employees," including AFT and its state and local affiliates. Second Am. Compl. (Supp. Pld.) ¶ 6 (ECF No. 72). As part of its established project targeting teachers unions, Project Veritas has directed substantial attention to Ms. Weingarten. And, moreover, it has gone to great lengths to tie Ms. Weingarten to this lawsuit in its public communications, despite her limited connection to the litigation.

1.     To begin with, the public record makes clear that Project Veritas is fixated on Ms. Weingarten as a target for their public statements and fundraising efforts. Just a brief review of Defendant O'Keefe's Twitter feed makes this clear. *See* Selected O'Keefe Twitter posts ("tweets"), Ex. B. For example, there are tweets that fall into the category of general attacks on Ms. Weingarten:

- @rweingarten we are coming for you! @AFTunion @UFT #tcot (https://twitter.com/JamesOKeefeIII/status/745689999589376000)[2]
- @Project_Veritas has the attention @rweingarten pres of @AFTunion. She'll need a new PR team for what's coming next. (https://twitter.com/JamesOKeefeIII/status/743927072888885248)
- What's wrong @rweingarten? Are you mad because we exposed @AFTunion too? (https://twitter.com/JamesOKeefeIII/status/789971721579143168)
- Hey @rweingarten, tell your good friend @HillaryClinton we say hello. We're investigating her too. #BirdsofAFeather (https://twitter.com/JamesOKeefeIII/status/743929383124099072)

---

[2] A wider selection of tweets, including citations and hyperlinks are available on the attached Exhibit B.

4

- Who would like to see what @rweingarten and @AFTunion are hiding 2018? I know I sure would! (https://twitter.com/JamesOKeefeIII/status/946148170857418752)

Even more specifically, however, there are tweets that reveal Project

Veritas's desire to tie Ms. Weingarten to the Plaintiffs here and treat them as

interchangeable, a desire that existed even before discovery in this case had even

begun. These tweets include, for example, the following:

- Today is a great victory for @Project_Veritas and the First Amendment. The real question is, why does @rweingarten and @aftmichigan want to silence me so much? What are they hiding? - Read more: [Link to Website Post] (https://twitter.com/JamesOKeefeIII/status/946131633077354501)

- Here's the short version of what we just filed in US District Court in order to halt @aftmichigan @AFTunion attempts to restrain our First Amendment rights. Hearing today at 1PM. In other words, @rweingarten is doing everything within her power to keep you from knowing the truth. (https://twitter.com/JamesOKeefeIII/status/993491690118885378)

- Hey @rweingarten, you lost last time you tried to restrain our #1A rights. Why are you trying again? Are you hoping that your union presidents won't be suspended, like happened with two @NJEA presidents this week? (https://twitter.com/JamesOKeefeIII/status/992464657406464002)

- Let this be a lesson to anyone who thinks they can make some frivolous claim to scare us–we are fearless and we will fight tooth and nail to expose the truth. We can not be silenced. @rweingarten @aftmichigan (https://twitter.com/JamesOKeefeIII/status/946137931240132608)

- So exactly why, @rweingarten @aftmichigan & @AFTunion, did you go to such great lengths in federal court to block our ability to publish this video? The public really deserves to know. (https://twitter.com/JamesOKeefeIII/status/994187893001289728)

- First Union President suspended, another one featured in video tomorrow morning. Now that Veritas has drawn first blood, @rweingarten— what are

you going to do?  Issue more restraining orders? We have so many tapes! (https://twitter.com/JamesOKeefeIII/status/991879419491897344)

2.     Beyond Defendant O'Keefe's tweets, Project Veritas has also demonstrated its willingness and interest in using the deposition excerpts from this case for the purpose of publicly harassing Ms. Weingarten. For example, Project Veritas used excerpts of its deposition of David Hecker, the President of AFT Michigan, in a video directly targeting Ms. Weingarten. On January 24, 2020, Project Veritas posted to YouTube a video titled "PV Releases Deposition Tapes Showing American Federation of Teachers Wants to Bleed Us Dry."[3] The video opens with a red-dyed photograph of Ms. Weingarten with the text "AFT Michigan v. Project Veritas" superimposed over the photo. *Id.* at 0:15. It then shows excerpts from the videotaped deposition of David Hecker, in particular, of questions and answers regarding the motivations behind this lawsuit. *Id.* at 0:18-50; 3:00-3:40.[4] The video focuses on Hecker's testimony that AFT provided financial assistance for this lawsuit and that Ms. Weingarten, along with AFT staff, provided some legal and strategic counsel to AFT Michigan regarding the lawsuit. *PV Releases*

---

[3] Project Veritas, *PV Releases Deposition Tapes Showing American Federation of Teachers Wants to Bleed Us Dry*, YouTube (Jan. 24, 2020), https://www.youtube.com/watch?v=X0kjaDxSUUU.

[4] During the deposition itself, AFT-Michigan's counsel objected to this line of questioning as irrelevant to the claims or defenses in the lawsuit. Hecker Dep., Ex. C, at 90:19-24.

*Deposition Tapes* at 4:07-14. After showing Hecker testifying that Ms. Weingarten had provided counsel to AFT Michigan, O'Keefe stops the tape and yells "Boom!" and clenches his fist. He then announces that Defendants would subpoena Ms. Weingarten for a deposition. *Id.* at 4:15-51. O'Keefe also posted this video to his Facebook page, with text stating: "BREAKING: Project Veritas releases deposition tapes showing that American Federation of Teachers - National wants to bleed Project Veritas dry. In response, Project Veritas has just issued a subpoena for AFT Union President Randi Weingarten."[5]

Ms. Weingarten was served with a deposition subpoena that day.

B. <u>Movant Weingarten's Role in the Case</u>

Notwithstanding Project Veritas's efforts to suggest otherwise, Ms. Weingarten has the barest of connections to the claims of this lawsuit. AFT has already responded to an extensive third-party subpoena for documents in this case. Those documents and the Hecker deposition make clear that although Movant made public statements about this litigation and occasionally joined her staff in providing legal and strategic advice to AFT Michigan President David Hecker regarding how to respond to Project Veritas, there is nothing to suggest that she has personal knowledge of the facts underlying the claims or Defendants' current

---

[5] James O'Keefe, *AFT*, Facebook (Jan. 24, 2020),
<u>https://www.facebook.com/JamesOKeefeAuthor/videos/297242881234986/</u>

defenses. *See* Hecker Dep., Ex. C at 20:25-21:1; 21:16-18; 23:5-23; 192:5-13; Press Releases, Hecker Dep. Exhibits 13 & 15, Exs. D & E. Moreover, Movant's actions regarding AFT Michigan and Project Veritas occurred only after Project Veritas's infiltration was discovered—in other words, after the key events upon which this lawsuit is based.

C. Efforts to Narrow the Subpoena

Ms. Weingarten was served with a third-party subpoena for testimony via stenographic and videotaped means at a deposition to be held on February 18, 2020, pursuant to Fed. R. Civ. P. 45. *See* Ex. A. Undersigned counsel responded, noting that not only was Ms. Weingarten not available on the noticed date, but that Ms. Weingarten had limited personal knowledge and involvement in the matters underlying this lawsuit and that the deposition would impose significant burdens, given the other demands on her time. Carter Jan. 30 Email, Ex. F. Undersigned counsel also expressed a concern that Project Veritas's pattern of videographic theatrics suggested that the purpose of the deposition may be to embarrass or harass Ms. Weingarten rather than to properly seek evidence for the purposes of litigation. *Id.*

Notwithstanding efforts by undersigned counsel, counsel for Defendants was unable or unwilling to identify any information that Ms. Weingarten was likely to have that directly related to any of the claims and defenses in the existing case.

8

Instead, he suggested that the deposition was likely to focus on AFT Michigan's motivations for bringing the lawsuit, AFT's discussion of the lawsuit with unrelated third parties, and AFT's support to AFT Michigan in preparing and litigating the lawsuit. Klein Jan. 31 Email, Ex. G. As to the Movant's concerns regarding potential misuse of a videotaped deposition, Defendants' counsel offered no specific assurances.  Defendants even rejected Movant's offer to consent to a videotaped deposition on the condition that its usage would be limited to the trial in this case (while still allowing the written transcript to be used in any manner consistent with the protective order). Carter Feb. 4 Email, Ex. H; Carter Feb. 10 Email, Ex. I; Carter Feb. 20 Email, Ex. J. Undersigned counsel made a final attempt to confer on this issue on February 20, 2020, seeking confirmation that Defendants were unwilling to limit the scope of the deposition or the usage of any videorecordings. *Id.* Defendants maintained their unwillingness to agree to any limitations on the scope of the deposition or the use of the videorecording. Klein Feb. 20 Email, Ex. K.

In light of Defendants' refusal to reasonably limit the deposition, Movant now seeks a protective order from this Court.

## Argument

Defendants' frequent public statements reflect a desire to use a videotaped deposition of Movant—a third party witness—as a means to annoy, harass, embarrass, and oppress her and AFT. Movant is skeptical that she has personal knowledge of any information relevant to the existing claims or defenses in this lawsuit, but she is willing to submit to the deposition. That said, she seeks two protections: (1) an express clarification that questioning be limited to facts relevant to the existing claims and defenses in this lawsuit—namely personal knowledge relating to Defendants' infiltration of AFT Michigan, Defendants' resulting communications, and those actions' effect on AFT Michigan—and will exclude questions related only to the dismissed trade secrets claims, to the motivations or financing of the litigation, or to other activities/actions related to Project Veritas, and (2) an order limiting the recording of the deposition to stenographic transcription.

Rule 26(c)(1) provides for the issuance of a protective order to protect a "person from whom discovery is sought . . . from annoyance, embarrassment, oppression, or undue burden or expense" on a showing of "good cause." Although the Rule grants broad discretion to the district court in crafting appropriate protections, it specifically contemplates limits on the scope of discovery requests, Fed. R. Civ. P. 26(c)(1)(B), and on the method of discovery, Fed. R. Civ. P.

26(c)(1)(C). To obtain a protective order, a movant must demonstrate "the potential for" the feared harm "with a particular and specific demonstration of fact." *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (internal quotation marks omitted).

Because the discovery rules generally require that discovery be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), courts often balance the benefit of a proposed protective order against the effect of that limitation on the requesting party's ability to obtain relevant information to the case. "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (internal quotation marks omitted). "Where, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013) (internal quotation marks omitted). "[E]ven very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Serrano v. Cintas Corp.*, 699 F.3d 884,

11

901 (6th Cir. 2012) (quoting 8A Charles Alan Wright & Arthur R. Miller et al.,

Federal Practice and Procedure § 2036 (3d ed. 2012)).

As we show below, the requested protective order is appropriate under these

standards. Defendants' past conduct shows that they will likely use this deposition

as an opportunity to harass and annoy Ms. Weingarten and to obtain video footage

that they may then selectively edit and disseminate for purposes outside this

litigation, including their own fundraising efforts. Moreover, the requested

limitations will not prejudice Defendants' ability to obtain any relevant

information Ms. Weingarten may have as to the claims and defenses in this case,

and to use that deposition testimony in any way appropriate under the protective

order governing this case.

A. Defendants' Proposed Deposition Seeks to Subject Movant to Annoyance, Harassment, Embarrassment, and Undue Burden

Defendants' past behavior regarding this litigation—and regarding Ms.

Weingarten in particular—constitutes "a particular and specific demonstration of

fact" that this deposition would likely subject Ms. Weingarten to harassment and

undue burden. *Nemir*, 381 F.3d at 550 (6th Cir. 2004).

Project Veritas has already demonstrated their willingness to use discovery

material obtained in this litigation for its own publicity or fundraising purposes.

Specifically, it used excerpts from the videotaped deposition of David Hecker,

AFT Michigan's President, in a video posted on YouTube and on the Project

Veritas Facebook page. Notwithstanding that Mr. Hecker is the President of AFT Michigan, not AFT, Project Veritas refers to both AFT and AFT Michigan without distinction throughout the video.[6] And despite the fact that Mr. Hecker specifically denied that the lawsuit was brought for the purpose of inflicting financial costs on Defendants, Project Veritas grossly mischaracterized Mr. Hecker's acknowledgement that a side effect of the lawsuit was the imposition of financial costs on Defendants as "American Federation of Teachers – National wants to bleed Project Veritas dry."

Not only does this video illustrate Defendants' ongoing interest in using discovery obtained in this case to publicly embarrass and harass Plaintiffs, but it also evidences Defendants' desire to publicly embarrass and harass the third-party Movant through discovery in this case. Project Veritas went so far in its video as to superimpose the case caption over a red-tinted photo of Ms. Weingarten. Moreover, in announcing that Project Veritas was subpoenaing Ms. Weingarten for a "videotaped deposition," O'Keefe states threateningly, "Let me tell you this, Randi, when it comes to deposition questions. We have a lot of them." *PV Releases*

---

[6] This intentional and misleading conflation of AFT Michigan and Movant is also reflected in the twitter posts identified supra at 5, in which the Plaintiff and Ms. Weingarten specifically are mentioned in the same breath in connection with this lawsuit, even though only one of them is a party. *See also supra* at 4-5 (identifying twitter posts evidencing Defendants' longstanding targeting of Movant).

*Deposition Tapes* at 4:45-51. Project Veritas also continued to confuse AFT and AFT Michigan and target Movant on its Facebook page, stating that "in response" to the "deposition tapes showing that American Federation of Teachers - National wants to bleed Project Veritas dry," "Project Veritas has just issued a subpoena for AFT Union President Randi Weingarten." James O'Keefe, *AFT*, Facebook (Jan. 24, 2020),

https://www.facebook.com/JamesOKeefeAuthor/videos/297242881234986/

Finally, further evidencing that the Movant has a cognizable risk of harm under Rule 26(c)(1), is Defendants' unwillingness to agree to limits on either the scope of this deposition or the existence and use of a videotaped deposition. As previously noted, notwithstanding that there is no legitimate basis for certain lines of questioning sought by Defendants (including notably questions directed to other activities or actions related to Project Veritas), Defendants have been unwilling to agree to any limitations on the scope of Movant's deposition. Even more tellingly, and as discussed more fully *infra*, Defendants' refusal to agree to use the videotape of Movant's deposition only in connection with trial in this case, evidences Defendants' intent to use the discovery process for purposes separate and apart from this case. *See Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir. 1989) (affirming deposition protective order and issuing sanctions where

evidence showed plaintiffs sought to depose a high-level corporate official not to obtain information for the litigation, but for tactical reasons).

B. Movant's Proposed Limitations Would Protect Against Harassment Without Limiting Defendants' Legitimate Discovery Efforts

As described above, there is strong evidence that Defendants seek to depose Movant, a third party, only to pursue interests that are unrelated to this case. Nevertheless, Movant is willing to appear for deposition and seeks only two limitations under Rule 26(c)(1)(C) and (D) to protect her from unnecessary harassment. First, Movant asks this Court to limit the scope of the deposition to the claims and defenses in the existing case, *i.e.,* the facts relating to Defendants' infiltration of AFT Michigan, their resulting communications, and those actions' effect on AFT Michigan. Second, she asks this Court to preclude Defendants from videorecording her deposition.  As we show below, both these requests are reasonable limitations that appropriately balance the right to discovery with the need to protect against abuse of the discovery process.

### 1. This Court Should Limit Discovery to Questions Relevant to Present Claims and Defenses.

The Federal Rules limit discovery to matters that are "relevant to any party's claim or defense." Rule 26(b)(1). Project Veritas has made clear that it seeks to depose Ms. Weingarten not just as to her knowledge of the facts underlying the claims and defenses in the existing case, *i.e.* Defendants' infiltration and its effect on AFT Michigan, but also as to her knowledge of AFT Michigan's motivations in

bringing this lawsuit, the previously dismissed trade secrets claim, the financing of this lawsuit, and AFT's other activities related to Project Veritas. *See* Klein Feb. 20 Email, Ex. K. Although Project Veritas has taken the position that these topics are within the scope of Rule 26, they are not.

There is no legitimate need for Project Veritas to depose Movant on any questions beyond those directly related to the factual disputes at issue in this case. As this Court is well-aware, the claims and defenses in this case are focused on how Ms. Jorge infiltrated AFT Michigan and what information she stole. There is no basis to believe that Ms. Weingarten, a third-party to this action, has any information regarding these issues, and as discussed supra at 7-8, none of the extensive discovery undertaken in this case suggests otherwise. Indeed, when Project Veritas was asked what relevant information they expected Movant to have, the answer focused less on the allegations in the Complaint and more on the motivations and financing underlying the filing the lawsuit (both on its own terms and because of its relevance to the now-dismissed trade secrets claim), as well as a desire to question Movant regarding "her *other* activities." Klein Jan. 31 Email, Ex. G (emphasis added).

This is significant because Project Veritas is simply not entitled to depose the Movant on these topics. Courts recognize that a plaintiff's motivations in bringing a lawsuit have no relation to the actual merits of his claims. *See Long*

16

*John Silver's Inc. v. Nickleson*, 2013 WL 870443, at *2 (W.D. Ky. Mar. 7, 2013) (granting a protective order for financial information over an argument that the information related to Plaintiff's motivation for a lawsuit); *see also E.E.O.C. v. New Breed Logistics*, 2013 WL 10129246, at *1 (W.D. Tenn. Apr. 26, 2013) (rejecting an attempt to introduce evidence regarding a plaintiff's financial motivation for a lawsuit). And to the extent that Project Veritas suggests they want information related to the trade-secret claim, they are not entitled to such because that claim has been dismissed. ECF No. 104 (Am. Op. and Order, PageID 2538-39). As the Supreme Court recognizes, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

Inquiry into AFT's activities with regard to Project Veritas outside of the infiltration of AFT Michigan is no more justified, as those activities have no potential bearing on AFT Michigan's claims or Project Veritas's defenses. Absent extraordinary circumstances, which Project Veritas cannot demonstrate here, courts have recognized that information about how a lawsuit is financed is not a proper subject for discovery. *See In re: Nat. Prescription Opiate Litig.*, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (refusing to allow inquiry into plaintiffs' source of financial support "[a]bsent extraordinary circumstances"); *MLC Intellectual Prop., LLC v. Micron Technology, Inc.*, 2019 WL 118595, at *1-*2

17

(N.D. Cal. Jan. 7, 2019) (same); *Kaplan v. S.A.C. Capital Advisors, LP*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (same).

In short, to the extent Project Veritas seeks information related to the existing claims and defenses in the case, Ms. Weingarten has agreed to provide testimony, even though she would have been within her rights to move to quash the subpoena in its entirety given her limited personal knowledge and the strong evidence that this discovery was sought for an improper purpose. However, Project Veritas refuses to limit its questions to the existing litigation and instead has indicated its intention to use this third-party subpoena to fish for information outside the appropriate bounds—namely, the motivations and financing underlying the litigation, the dismissed trade-secret claim, and other AFT activities related to Project Veritas generally.

Courts in the Sixth Circuit frequently recognize that even where a subpoena is directed to an employee or official of a *party*, a protective order is appropriate where there is evidence that proceeding with the deposition will result in annoyance, undue burden, harassment or embarrassment.[7] Here, where Ms.

---

[7] *See Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir. 1998) (upholding limitation of plaintiff's deposition of one officer to narrow, relevant areas of inquiry, as well as the denial of plaintiff's request to depose high-ranking officer without relevant knowledge); *Lewelling,* 879 F.2d 212 at 218 (upholding district court's grant of protective order barring plaintiffs from deposing their employer's chief executive officer, who lacked personal knowledge of relevant facts); *Graves*

Weingarten is even less connected to the facts relevant to this lawsuit, as a high-ranking officer of a non-party organization, limiting Movant's deposition to questions related to the claims and defenses in the existing case appropriately balances the "right to discovery with the need to prevent 'fishing expeditions,'" *Bush*, 161 F.3d at 37, and protects a third-party witness from a specific and documented risk of harm under Rule 26(c).

**2. The Court Should Order Only Stenographic Transcription of the Deposition.**

Defendants are seeking to both stenographically record and videotape Movant's deposition. As detailed above, Defendants have an extensive history of editing and using video recordings in an effort to annoy, harass, and embarrass individuals and institutions with whom they disagree. *See supra* at 6-7, 12-15. Prior to filing this Motion, undersigned counsel expressly raised concerns with Defendants about their past use of videotaped deposition excerpts and requested that Defendants agree that they would only use the videotape at trial. Defendants refused to agree to any limits on the use of videotape beyond the protections

---

*v. Bowles¸* 419 F. App'x 640, 645-46 (6th Cir. 2011) (affirming a protective order barring deposition of a Mayor who had no personal knowledge regarding wrongful-arrest claims); *see also Serrano*, 699 F.3d at 902  (allowing deposition of Defendant's CEO only because his own statements "suggest high-level-corporate awareness of" an alleged pattern or practice of discrimination).

offered by the existing Protective Order in this case. *See* Klein Feb. 10 Email, Ex. L; Klein Feb. 20 Email, Ex. K.

Although parties are generally entitled to choose the method of recording a deposition, both Federal Rules of Civil Procedure 30(b)(3)(A) and 26(c)(1)(C) allow this Court to mandate a different form of recording. In making this decision, the court should weigh the recording method "necessary to establish" Defendants' case against the potential for an "oppressive" use of that recording. *Surles*, 474 F.3d at 305. Here, Movant's interest in avoiding public dissemination of the deposition videorecording outweighs any litigation interest Defendants have in a video, rather than stenographic, recording.

As previously discussed, the record contains extensive evidence justifying the concern that a videotaped deposition will be used in an "oppressive" manner, namely for personal attacks against Ms. Weingarten and her organization, for Project Veritas' political and fundraising campaigns, and other purposes unrelated to this litigation. Courts have recognized the need for reasonable limitations, including recording the deposition only stenographically, in situations where, as here, a party seeks to videorecord a deposition in part for public dissemination. For example, in *Westmoreland v. CBS, Inc.*, 584 F. Supp. 1206 (D.D.C. 1984), *aff'd in relevant part*, 770 F.2d 1168, 1177 (D.C. Cir. 1985), CBS sought to compel a videotaped deposition of a nonparty, the former Director of the CIA. The Court

noted that a non-party witness's privacy interests were "deserving of and entitled to some protection," and expressed concern about the witness being "compelled to permit his image at a pretrial deposition to be visually preserved upon an essentially indestructible medium over which he exercises no right of control." *Id.* at 1212. Noting that "CBS will not unequivocally promise it will never broadcast the tape," the Court held that this risk of public dissemination justified limiting the recording of the deposition to stenographic transcription. *Id.* at 1213; *see also Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (permitting a videotaped deposition only if neither party retained custody of the video and no use was permitted apart from the litigation).[8]

In contrast to the clear risk of improper use if the deposition is videotaped, a limitation to stenographic recording would not meaningfully harm Defendants' interests. Although a videorecording has admitted advantages over transcription in

---

[8] Nor is the protective order entered in this case sufficient to protect Movant on the facts here. Under the protective order, deposition testimony may be marked confidential, and its distribution limited, only if it contains "information that [i]s properly subject to protection under existing Michigan or federal law." Protective Order (ECF No. 89, PageID 2302). Although a confidentiality designation is often sufficient to protect a party's non-public information, Defendants here have demonstrated an interest in using even run of the mill judicial decisions as a weapon against Movant. *See* Ex. B. Moreover, nothing in the protective order prevents Defendants from asking the Movant an incendiary question with no relevance to this case and then broadcasting a refusal to answer an improper question in such a way as to suggest that the witness seeks to hide nefarious information—rather than that she merely seeks to protect legitimately private or privileged information.

presenting testimony of an absent witness or as impeachment evidence at trial, the fact that Defendants refused Movant's offer to sit for a videotaped deposition if its use was limited to trial demonstrates that their real intent here is for public dissemination. But Rule 30's allowance for video recording of depositions "was not intended to be a vehicle for generating content for broadcast and other media." *Paisley Park Enters., Inc.*, 54 F. Supp. 2d at 349; *see also Johnson v. Washington Metro. Area Transit Auth.*,1993 WL 37445, at *1 (D.D.C. Feb. 3, 1993) (rejecting a motion to take a second deposition for the purposes of obtaining videotaped testimony as "[t]he purpose of a . . . deposition is not to provide a visual aid").

In light of the clear likelihood that PV will attempt to use videorecorded deposition testimony to harass, annoy, and attempt to embarrass Movant and such a recording's limited litigation value to Defendants, there is good cause for this Court to issue an order limiting the mode of recording the testimony. As the Sixth Circuit recognized, "discovery has limits and . . . these limits grow more formidable as the showing of need decreases." *Serrano*, 699 F.3d at 901 (quoting 8A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2036 (3d ed. 2012)).

## CONCLUSION

For the reasons detailed above, Movant Rhonda Weingarten respectfully requests that this Court grant a protective order limiting the subject matter of the

deposition to questions about Jorge's actions at AFT Michigan and the harm

Defendants' actions caused AFT Michigan and limiting the recording of the

deposition to stenographic transcription.

Respectfully submitted,

Abigail V. Carter
Joshua Rosenthal*
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
Phone: (202)-842-2600
Fax: (202)-842-1888
acarter@bredhoff.com
jrosenthal@bredhoff.com

*Counsel for Movant*
*\*Admission Forthcoming*

### Certificate of Service

I hereby certify that on February 25, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Mark H. Cousens, Stephen R. Klein, and Paul M. Mersino.

/s/ Abigail Carter

Abigail V. Carter
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W., Ste 1000
Washington, D.C. 20005
Phone: (202)-842-2600
acarter@bredhoff.com

23