UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

       Plaintiff,

v.

PROJECT VERITAS,
and MARISA L. JORGE,
a/k/a MARISSA JORGE, a/k/a
MARISSA PEREZ,

       Defendants.

Civil Case No. 17-cv-13292
Honorable Linda V. Parker
Honorable Elizabeth A. Stafford

**PROJECT VERITAS PARTIES' RESPONSE TO
NON-PARTY RHONDA WEINGARTEN'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

## Issues Presented

(1) Shall the Court deny a motion for protective order in this case, when there is already a protective order, stipulated by the parties and entered by this Court?

(2) Shall the Court deny a motion for protective order that seeks to prohibit appropriate discovery into any and all claims and defenses of the parties to this suit, including, but not limited to, a prevailing party's rights under the Michigan Uniform Trade Secrets Act to pursue a claim of bad faith?

(3) Shall the Court deny a motion for protective order that seeks to prohibit proper use of routine discovery, including permitted video recording of a deposition?

## Controlling Authority

FED. R. CIV. P. 26(b), (c)

MICH. COMP. LAWS § 445.1905

*Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530 (6th Cir. 2008)

*Flagg v. City of Detroit*, 2010 WL 3070104 (E.D. Mich. 2010)

**Introduction**

Movant Rhonda Weingarten filed a motion for entry of a protective order, despite the fact that this case is already governed by a protective order agreed to by the parties and entered by this Court, which already protects third-parties and non-parties in addition to the parties. *See* ECF No. 89. Ms. Weingarten further seeks to short-circuit not only her deposition with a protective order, but also Project Veritas's and Marisa Jorge's (the "Project Veritas parties") claims and defenses in this case, including, but not limited to, claims to attorney fees under the Michigan Uniform Trade Secrets Act ("MUTSA") for a trade secrets claim that was made in bad faith. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]").

Moreover, Weingarten seeks yet again to censor Project Veritas and restrain its speech in an attempt to prohibit it from potentially discussing a case brought against it with the backing of her union. This is all based on the premise that the moving party—the President of the American Federation of Teachers—is not related to this suit and should not be bothered with the functions of this Court. This, despite the fact that the American Federation of Teachers has thrust itself into the middle of this suit, even before it was filed, as follows:

- Conducting pre-complaint investigations for AFT Michigan
- Sending its attorneys to investigate and interview AFT Michigan employees

1

- Hiring a forensic expert for AFT Michigan

- Hiring a public relations firm for AFT Michigan

- Sending "backgrounder" documents to AFT Michigan about Project Veritas for distribution

- Sending its attorneys and/or paralegals to nearly every deposition that has been taken in this case to date

- Sending its attorneys to hearings held in this case

- Issuing numerous and repeated press releases about this case and about Project Veritas, referring to itself and AFT Michigan as one united party

- Paying for AFT Michigan's legal fees

- Sharing documentation, deposition transcripts, and other discovery materials clearly labeled CONFIDENTIAL pursuant to the current protective order between AFT Michigan and AFT National

Despite all of these actions, Ms. Weingarten now wishes to avoid this suit that she helped bring. This Court should deny the motion and allow the deposition of Weingarten to proceed, recorded by standard stenographic transcription and video, and subject only to the stipulated protective order entered in this case and previously utilized by AFT National.[1] *See* ECF No. 89.

---

[1] For purposes of this briefing, the Project Veritas parties will refer to the Plaintiff in this case as "AFT Michigan" and "AFT National" as the national union in which AFT Michigan is a state federation.

2

**I.    This Lawsuit was a "Joint Decision" Between AFT Michigan and AFT National—Whose President is Rhonda Weingarten—and AFT National's Involvement in the Suit is Pervasive.**

David Hecker, President of AFT Michigan, testified in his deposition that "[this] suit is in the name of AFT Michigan, so AFT Michigan [made the final decision to file suit], but it was really a joint decision" with AFT National.  ECF No. 122-3, PageID.2858-59.  This testimony followed Hecker's review of a "backgrounder" prepared at the outset of the lawsuit as "[m]aterials to send to leaders" and distributed by Jessica Rutter—who is an in-house attorney and on the staff at AFT National—in an e-mail dated September 29, 2017, the day after this suit was filed in state court.  **Exhibit 1** (Hecker Dep. excerpt and Defendants' deposition Exhibit 28); **Exhibit 2** (e-mail including the attachment "Backgrounder AFT-MI v PV FINAL.pdf", or Defendants' deposition Exhibit 28).  That same document notes that "the AFT [National] and AFT Michigan legal counsel were promptly engaged" once AFT Michigan became suspicious of Marisa Jorge's identity.  Exh. 1 at 4.

AFT National originally engaged Kevin Smith of Atlantic Data Forensics for its investigation regarding Jorge in September, 2017.  *See* ECF No. 101, PageID.2514.  Smith produced a report listing documents viewed by Marisa Jorge on certain computers, and copies of those documents were filed under seal in this Court as alleged trade secrets.  *See* ECF No. 46, PageID.1520-31 (discussing alleged trade secrets).  Less than a week before this suit was filed, AFT National also

3

engaged Camino Public Relations, which has drafted or assisted in drafting communications regarding the case that have been distributed by AFT National and AFT Michigan alike. *See, e.g.*, Exh. 2.[2]

Since then, AFT National's involvement in this case has not waned. AFT National attorney Ms. Rutter has attended nearly every deposition taken in this matter. Bradford Murray, a manager at AFT National, has taken the purported role of "paralegal" in this case in order to sit in on nearly every one of the AFT's depositions in this case. **Exhibit 3**; **Exhibit 4** at 2 (AFT National filing with the Department of Labor identifying Murray as "Manager"). Counsel for AFT Michigan stated that Mr. Murray of AFT National "has been providing paralegal services related to this litigation and his presence (as is that of Ms. Rutter [of AFT National]) is needed to assist me in evaluating Ms. Jorge's responses to questions." Exh. 3. Counsel for AFT Michigan continued: "He will be bound by the same obligations of confidentiality that apply to lawyers and will not interfere with or delay the process." *Id.*

In communications with the Michigan Attorney General's Office conferring over the AG's motion to certify the question of how to interpret the Michigan eavesdropping statute to the Michigan Supreme Court, AFT Michigan's counsel

---

[2] AFT National has continued to pay Camino Public Relations since. *See, e.g.*, Exh. 4 at 4.

4

Mark Cousens also included David Strom, who is General Counsel to AFT National. **Exhibit 5**;[3] Exh. 4 at 3 (LM2 listing Strom as general counsel). More recently, when counsel for AFT Michigan e-mailed a copy of a transcript, portions of which had been designated as Confidential both by Plaintiffs and by Defendants, he again copied Mr. Strom, and thus disclosed to him the very document marked as Confidential. **Exhibit 6**. This is either because AFT Michigan and AFT National consider themselves as joint parties in this endeavor, or this is a violation of the existing protective order.

Until her motion for a protective order, Ms. Weingarten herself has only spoken of this suit as a joint venture. For example, AFT National's "backgrounder" declared that: "AFT Michigan *and the AFT* will use all resources at their disposal to enforce this TRO and take other legal action, including pursuing criminal charges, if necessary." Exh. 1 at 5 (emphasis added). In a joint statement with David Hecker, Weingarten proclaimed "*[w]e* will be zealous in seeking full relief and damages the moment O'Keefe goes public with any of the material stolen or illegally obtained by Project Veritas associates, and in challenging the media narratives that promote false propaganda in the interest of secret political agendas." **Exhibit 7** at 2 (emphasis added). "The American Federation of Teachers *and* AFT Michigan are committed

---

[3] This e-mail was obtained by the Project Veritas parties' counsel under the Michigan Freedom of Information Act.

5

to holding Project Veritas accountable . . . . *We* will pursue discovery *as vigorously as permitted by law* to prove the allegations made in *our* complaint." *Id.* at 4 (emphasis added). Weingarten even issued a joint statement with AFT Michigan's counsel Mark Cousens: "*we'll* keep pursuing *every possible legal avenue* to protect Michigan students and teachers from Project Veritas' unethical and unlawful smear campaigns against educators." *Id.* at 5 (emphasis added).[4] Weingarten continued: "*[W]e* will move forward in *our* efforts to bring to light the deceptive, unscrupulous distortion tactics Project Veritas is known for." *Id.* at 8 (emphasis added). Finally, and tellingly, "*[w]e* went to court to *pierce Project Veritas' veil* and to halt, *once and for all*, its dirty tricks." *Id.* at 10 (emphasis added).[5]

Despite AFT National's obvious involvement in this case, staffing the legal team, paying for AFT Michigan's legal fees, and initiating repeated press releases about this matter, Project Veritas is now apparently to be faulted for "refer[ing] to

---

[4] Until this point, all of the press releases by AFT National cited in this paragraph are dated prior to the beginning of discovery. *Cf.* ECF No. 122, PageID.2816 (asserting "Project Veritas's desire to tie Ms. Weingarten to the Plaintiffs here . . . even before discovery in this case had even begun.").

[5] Over the weekend prior to this Response being filed, internal Project Veritas communications produced in this matter (though not filed with this Court) were quoted in a front-page story in the *New York Times*. Mark Mazzetti & Adam Goldman, *Erik Prince Recruits Ex-Spies to Help Infiltrate Liberal Groups*, NY TIMES, Mar. 8, 2020, at A1, *available at* https://www.nytimes.com/2020/03/07/us/politics/erik-prince-project-veritas.html. The article notes redactions to those documents by Project Veritas, further suggesting they were provided by AFT's counsel. Notably, Ms. Weingarten herself is quoted in that article primarily discussing this lawsuit.

6

both AFT [National] and AFT Michigan without distinction" and to have somehow "gone to great lengths to tie Weingarten to this lawsuit." As if Mr. Hecker's sworn testimony and Ms. Weingarten's own public statements do not do that. ECF No. 122, PageID.2815, 2824. Solidarity, apparently, ends with a subpoena.

Despite AFT National's pervasive involvement, including the decision to bring this suit and to then initiate battles in the court of public opinion both prior to and subsequent to the parties' negotiating the current protective order, it now attempts to distance itself from this suit for purposes of Ms. Weingarten's deposition. Moreover, AFT Michigan and AFT National alike were more than comfortable with the current protective order and video-recorded depositions when deposing Project Veritas and its CEO earlier this year. Yet now, AFT National demands a more restrictive protective order than the one already agreed to by the parties and entered by this Court, all while attempting to curtail what Project Veritas may be able to inquire into in a proper discovery deposition.

Weingarten's counsel has conceded that she should appear for a deposition, but their effort to narrow it would have nearly the same effect as quashing it by placing barriers around what the Project Veritas parties can discover. Specifically, the Project Veritas parties believe this case is motivated by ulterior motives that support a bad faith argument under MUTSA, and are entitled to explore that under the law, yet Ms. Weingarten is (for obvious reasons) attempting to forestall any such

7

discussions or questions.  *See* ECF No. 122-8, PageID.2911.  But there is no basis—legally or factually—for narrowing the scope of permitted issues of discussion at the deposition.

Ms. Weingarten has not articulated a basis for her request, and her motion should be denied.  The Federal Rules of Civil Procedure and this Court's existing protective order should govern discovery in this matter, not the convenience or self-interest of one non-party.  Project Veritas should be permitted to conduct its deposition as any party in any suit.

## II. The Michigan Uniform Trade Secrets Act Permits Inquiries into the Bad Faith Behind This Lawsuit.

Ms. Weingarten's motion attempts to prohibit the Project Veritas parties from seeking discovery as necessary in this case brought against them.  Of course, any party has the right to discovery relevant to its claims or defenses.  What Ms. Weingarten truly wishes is to preclude the Project Veritas parties from asking questions about AFT Michigan's and AFT National's bad faith motive in bringing their claims, including the trade secret claims.

The bad faith provision of MUTSA is terse: "If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees to . . . the prevailing party."  MICH. COMP. LAWS § 445.1905.  The Project Veritas parties prevailed on the misappropriation claim when it was dismissed as a result of this Court's Order Granting in Part Project Veritas's Motion to Dismiss.  ECF 104,

8

PageID.2538-39.  The Sixth Circuit has ruled that bad faith under this provision should be determined using a two-prong analysis: "bad faith 'requires [1] objective speciousness of the plaintiff's claim . . . and . . . [2] subjective bad faith in *bringing or maintaining* a claim." *Dice Corp. v. Bold Techs. Ltd.*, 2014 WL 2763618 at *15 (E.D. Mich. 2014) (quoting *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008))[6] (emphasis added) (opinions included in **Exhibit 10**).  The denial of the preliminary injunction (twice) and subsequent dismissal of AFT Michigan's MUTSA claim by this Court largely resolved the first prong.  *See* ECF 46, PageID.1520-31; ECF 104, PageID.2538-39.  But in discovery the Project Veritas parties are entitled to explore—and through the conclusion of this case are entitled to assert—both the objective speciousness of the MUTSA claim and the subjective bad faith behind bringing the claim.  *See* FED. R. CIV. P. 26(b)(1).

AFT Michigan demanded—and was granted—discovery before this Court dismissed the MUTSA claim.  *See generally* ECF Nos. 55, 76.  After this Court's first denial of preliminary injunction but before ruling on dismissal, AFT Michigan's counsel "said it's too early to say that . . . documents [that fall within the meaning of a trade secret] don't exist."  *Judge: Group can use info from union*, LANSING STATE J., Dec. 29, 2017 at A6 (attached as **Exhibit 8**).  Following dismissal, AFT

---

[6] *Degussa* also ruled that MUTSA's bad faith provision is a substantive rule that applies in diversity matters such as the present case.  277 Fed. Appx. at 532–34; *see* ECF No. 1, PageID.2 (removing on the basis of diversity jurisdiction).

9

collectively would have this Court believe that the bad faith provision is somehow inapplicable. *See* ECF No. 122, PageID.2825 ("[T]here is no legitimate basis for certain lines of questioning[.]"); ECF No. 123 (AFT Michigan "concurs" with Weingarten's motion). This is simply not true.

*Degussa* affirmed a bad faith ruling in the Western District of Michigan after the plaintiff *voluntarily* withdrew its request for a preliminary injunction and then moved to dismiss its entire complaint with prejudice. 277 Fed. Appx. at 531–32. The Court of Appeals of Michigan has upheld a verdict for bad faith when the jury determined that the "primary objective in *bringing* the . . . lawsuit [was] to hurt [the opposing party] . . . by *bringing or continuing* the lawsuit and not to obtain relief sought in the suit." *Whitesell Intern. Corp. v. Whitaker*, 2010 WL 3564841 at *19 (Mich. Ct. App. 2010)[7] (emphasis added) (opinion included in Exhibit 10). When upholding the denial of a bad faith claim under MUTSA in tandem with denial of other sanctions assertions, the Court of Appeals noted the lack of "direct evidence that plaintiff commenced this suit for an improper purpose of harassing, embarrassing, or increasing plaintiff's litigation costs." *Bearing360 LLC v.*

---

[7] On reconsideration, the Court of Appeals reversed a directed verdict by the trial court that there was no trade secret. *Whitesell Int'l Corp v. Whitaker*, 2011 WL 165405 at *13 (Mich. Ct. App. 2011) (opinion included in Exhibit 10). Interestingly, the court determined that this "telegraphed to the jury that [Whitesell's] trade secret claim was objectively baseless," suggesting the determinations of the prevailing party and objective speciousness are intertwined. *Id.*

10

*Cameron*, 2017 WL 3798491 at \*7 (Mich. Ct. App. 2017) (opinion included in Exhibit 10). It is understandable that Weingarten would like the Project Veritas parties to avoid gathering such direct evidence, but she has no legal basis to do so given the MUTSA claim in this case.

In fact, the very deposition testimony of David Hecker that AFT National now complains of the Project Veritas parties relying on was testimony in which Mr. Hecker noted that he a) had discussions with Ms. Weingarten before bringing this suit, and b) noted that if a result of this litigation was to "slow[] down or limit[] what Project Veritas does," "that would have been a great outcome as well, or will be a great outcome as well." ECF No. 122-3 PageID.2857. In an article published in the *New York Times* over the weekend prior to the filing of this brief, nearly a year after the dismissal of the MUTSA claim, Weingarten claimed "*We're* just trying to hold [the Project Veritas parties] accountable for this industrial espionage." *See supra* note 5 (emphasis added). Legally speaking, "industrial espionage" relates to "one company's spying on another to steal trade secrets or other proprietary information." *Espionage*, BLACK'S LAW DICTIONARY (11th ed. 2019). Despite AFT Michigan's trade secret claim having been dismissed, Ms. Weingarten is still in the press, stating that her organization is going to hold the Defendants' accountable, while attacking them in a front-page story of the *New York Times*. There are no legal grounds upon

11

which the Project Veritas parties should be limited in inquiring into this very line of questioning with Ms. Weingarten.

With this precedent and background in mind, in order to assert its substantive rights under MUTSA's bad faith provision, the Project Veritas parties must be allowed to explore the motivations behind not only AFT Michigan's, but AFT National's—president Rhonda Weingarten's—"joint decision" to bring this lawsuit. ECF No. 122-3, PageID.2858-59. *Degussa* itself, in upholding a bad faith ruling, relied on a factual record that included a response to a deposition question "*about what led the company to file [the] suit.*" 277 Fed. Appx. at 535 (emphasis added). This would include AFT National's motive and good faith (or bad faith) in making that joint decision. ECF No. 122, PageID.2826-27. With the dismissal of the MUTSA claim, the Project Veritas parties not only have a legitimate basis to make these inquiries, but a compelling one. The Court should deny Weingarten's motion to limit the inquiries in her deposition under Rule 26(c)(1)(D).

### III. A Video Deposition Would Not Give Rise to Annoyance, Embarrassment, or Oppression of the Witness

The Court should also deny Weingarten's motion to limit her deposition to stenographic transcription under Rule 26(c)(1)(C). "[T]his standard is satisfied only through the specific identification of a clearly defined and sufficiently serious harm attributable to this method of recording a witness's testimony." *Flagg v. City of Detroit*, 2010 WL 3070104 at *3 (E.D. Mich. 2010) (opinion included as **Exhibit**

12

**11**). The use of video depositions does not constitute "serious harm," especially in light of Weingarten's role in bringing this lawsuit and accompanying it with a public relations effort, assisted by professionals retained a week prior to filing. It is also worth noting that AFT Michigan has thus far employed video recording for each of its four depositions of Project Veritas employees—including its President and CEO—and never thought it caused "serious harm" to those witnesses. Nor did the two AFT National representatives who attended those video depositions.

Video depositions are not only a proper and permitted discovery tool, but also a pragmatic and sometimes necessary tool for purposes of trial. Ms. Weingarten resides in Washington, D.C. and has a busy schedule running a national union, and is among the least likely of the witnesses to be able to appear at trial in Detroit, currently scheduled to begin on Election Day. ECF No. 117, PageID.2617. After offering Ms. Weingarten weeks of available dates for this deposition, her counsel recently responded that she is available on April 22, 2020, the current date for the close of discovery in this matter. **Exhibit 9**. For out-of-state witnesses, video depositions may be Project Veritas's only ability to present certain testimony to the jury, and Project Veritas has the right to present such evidence as it deems best for its defense.

The deposition in question was properly noticed for Washington, D.C., complying with Rule 45. It was properly served. It properly gave notice of the

13

taking party's intent to record the deposition by both stenographic and video recording means. There is no basis to restrict the parties' right to seek proper discovery.

Ironically, AFT National and AFT Michigan have already publicly stated that they both "will pursue discovery as vigorously as permitted by law to prove the allegations made in our complaint." Exh. 7 at 4. The Project Veritas parties should be afforded the opportunity to be just as vigorous in proving their claims and defenses.

## Conclusion

The Project Veritas parties did not bring this suit, yet they have complied with extensive discovery demands—including a videotaped deposition of James O'Keefe, the president of Project Veritas. Having had their trade secret claim summarily dismissed, AFT Michigan and AFT National opened the door to an inquiry into their motivations in bringing it, because that is an element the Project Veritas parties must prove to recover fees under the law. FED. R. CIV. P. 26(b)(1). With the public backing from AFT National—including staffing, financial support, and public press releases—and the fact that it has been admitted that Ms. Weingarten helped decide to bring this suit, it is only appropriate that she answer questions as to her reason for that joint decision, what was discovered in pre-suit investigations, as well as her and AFT Michigan's motivations in bringing this lawsuit.

For the foregoing reasons, the Court should deny non-party Rhonda Weingarten's motion for an additional protective order and allow the Project Veritas parties to proceed with a videotaped deposition in keeping with Rule 26(b)—including inquiries relating to bad faith under MUTSA.

        Respectfully submitted,

        /s/ Stephen Klein
        Stephen R. Klein (P74687)
        Barr & Klein PLLC
        1629 K St. NW, Ste. 300
        Washington, DC 20006
        (202) 804-6676
        steve@barrklein.com

        and

        Butzel Long, P.C.
        Paul M. Mersino (P72179)
        150 W. Jefferson, Suite 100
        Detroit, MI 48226
        mersino@butzel.com
        313-225-7015

        Attorneys for Defendants

Dated: March 10, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2020, I electronically filed the foregoing paper and attachments with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

/s/ Stephen Klein
Stephen R. Klein