UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

      Plaintiff,

                                        Case No. 17-13292
                            Honorable Linda V. Parker, District Court Judge
v.                                  Hon. Elizabeth A. Stafford

PROJECT VERITAS, et al,
      Defendants.
            -I

---

| | |
|---|---|
| Mark H. Cousens (P12273) | Paul M. Mersino |
| Attorney for Plaintiff | Butzel Long PC |
| 26261 Evergreen Rd Ste 130 | Attorney for Defendants |
| Southfield, MI 48076 | 150 W Jefferson Ave Ste 100 |
| (248) 355-2150 | Detroit, MI 48226-4452 |
| Cell: (248 )877-4698 | (313) 225-7015 |
| cousens@cousenslaw.com | mersino@butzel.com |
| P12273 | P72179 |
| | |
| Stephen R. Klein | Ann M. Sherman |
| Attorney for Defendants | Deputy Solicitor General |
| Barr & Klein PLLC | Attorney for Intervening Party |
| 1629 K St NW Ste 300 | State of Michigan |
| Washington, DC 20006-1631 | Michigan Dept of Attorney General |
| (202) 804-6676 | POB 30212 |
| steve@barrklein.com | Lansing, Michigan 48909 |
| P74687 | (517) 335-7628 |
| | ShermanA@michigan.gov |

---

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**Plaintiff's Motion to Compel Discovery**

Plaintiff moves to compel discovery regarding the identity of donors and related information. The reasons this motion should be granted are set forth in the annexed brief in support of this motion.

/s/ Mark H. Cousens
Attorney for the Plaintiff
26261 Evergreen Road, # 130
Southfield, Michigan 48076
(248) 255-2150
Cell: (248 )877-4698
cousens@cousenslaw.com

**Certificate of Service**

I hereby certify that on April 27, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Paul M. Mersino, Ann Sherman and Stephen Klein.

/s/ Mark H. Cousens
Mark H. Cousens (P12273)
Attorney for Plaintiff
26261 Evergreen Rd Ste 130
Southfield, MI 48076
(248) 355-2150
Cell: (248 )877-4698
cousens@cousenslaw.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

    Plaintiff,

v.

PROJECT VERITAS, et al,
    Defendants.
       -I

Case No. 17-13292
Honorable Linda V. Parker, District Court Judge
Hon. Elizabeth A. Stafford

---

Mark H. Cousens (P12273)
Attorney for Plaintiff
26261 Evergreen Rd Ste 130
Southfield, MI 48076
(248) 355-2150
cousens@cousenslaw.com
P12273

Stephen R. Klein
Attorney for Defendants
Barr & Klein PLLC
1629 K St NW Ste 300
Washington, DC 20006-1631
 (202) 804-6676
steve@barrklein.com
P74687

Paul M. Mersino
Butzel Long PC
Attorney for Defendants
150 W Jefferson Ave Ste 100
Detroit, MI 48226-4452
(313) 225-7015
mersino@butzel.com
P72179

Ann M. Sherman
Deputy Solicitor General
Attorney for Intervening Party
State of Michigan
Michigan Dept of Attorney General
POB 30212
Lansing, Michigan 48909
(517) 335-7628
ShermanA@michigan.gov

---

**BRIEF SUPPORTING MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Most Appropriate Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Contested Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.    Forms 990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      2.    Communications with Donors About the Michigan Infiltration . . . . . . . . . . . . . 4

      3.    Deposition Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    No Blanket Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    The Information Sought Is Relevant under Rule 26 . . . . . . . . . . . . . . . . . . . . . . 12

      C.    No Adverse Impact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

**Federal Statutes and Regulations**

Federal Wiretap Act, 18 U.S.C. § 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**Decisions by the United States Supreme Court**

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10


**Decisions by the U. S. District Courts of Appeals**

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir., 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11


**Decisions by the U. S. District Courts**

*Council on Am. Islamic Relations Action Network v. Gaubatz*,
 31 F. Supp. 3d 237 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gamby v. First Nat'l Bank of Omaha*,
 2009 WL 963116 (E.D. Mich. Apr. 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ohio A. Philip Randolph Institute, et al. v. Householder, et al.*,
 2019 WL 3288170 (S.D. Ohio, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Planned Parenthood Fed'n of Am., Inc.
 v. Ctr. for Med. Progress*, 16-cv-00236 (N.D. CA, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Tree of Life Christian Schools v. City of Upper Arlington*,
 2012 WL 831918 (S.D.Ohio 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TABLE OF MOST APPROPRIATE AUTHORITY

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir., 2010)

*Planned Parenthood Fed'n of Am., Inc.  v. Ctr. for Med. Progress*, 16-cv-00236 (N.D. CA, 2018)

## Introduction

1.

The Court should compel the Defendants to cease inhibiting Plaintiff's legitimate efforts to discover who supported the infiltration of AFT Michigan and the reasons they did so. The Defendant should be required to stop instructing witnesses to refuse to respond to questions seeking to identify the persons who participated in the agreement to infiltrate AFT Michigan and to learn their motivation in doing so. Further, Defendants should be required to provide Plaintiff with complete, unredacted, documents containing information about Defendant's donors, which are critical to aspects of Plaintiff's claims.

Plaintiff has sought the names of persons who may have supported, encouraged or directed the infiltration of AFT Michigan. Defendants have repeatedly asserted a blanket refusal to answer such questions or provide complete documents which might contain the names of these individuals. Defendants have contended that there is a sweeping protection from disclosure of persons who may have provided economic support for this operation, asserting a privilege under the First Amendment to the United States Constitution. There is no such protection. After the appropriate balancing, the Court should conclude that Plaintiff is entitled to the information it seeks.

2.

This action relates to Defendant Jorge's fraud, trespass, breach of duty of loyalty and covert wiretapping, audio and video recording of employees of AFT Michigan, the Michigan affiliate of the American Federation of Teachers, AFL-CIO. In the Spring of 2017, Defendant Jorge presented herself to AFT Michigan as a student at the University of Michigan whose name was "Marisa Perez."

She claimed to be interested in becoming a second-grade teacher, and she was interested in labor organizations that represented teachers. She said that she wanted to serve as a volunteer intern for AFT Michigan during the Summer of 2017. Every aspect of these representations was a knowing and deliberate lie. Jorge was none of the things she said: she was not a student, had no interest in becoming a teacher and wanted to harm, not help, labor organizations representing educators. To the contrary, she was an employee of Defendant Project Veritas who was assigned to infiltrate the Federation, covertly record private conversations and steal confidential documents.

Relying on her falsehoods, AFT Michigan engaged Jorge as an intern for the Summer of 2017. She was entrusted with access to certain information and given various assignments. While so engaged and without permission she rummaged through file cabinets maintained in private offices and without authorization photographed a myriad of confidential documents, covertly recorded conversations with AFT Michigan staff, and accessed electronic files maintained on personal computers assigned to AFT Michigan staff. Jorge has acknowledged, as she must, that, while engaged at AFT Michigan she was always functioning as an employee of Project Veritas and pursuing its goals and not those of AFT Michigan.

Jorge and Project Veritas conspired to place her at AFT Michigan and engage in her unlawful behavior. However, Defendants have sought to prevent Plaintiff from learning whether there were others involved in the conspiracy and from understanding the goals and motives behind Defendants' operation. Plaintiff has sought to determine whether any donor to Project Veritas (the entity operates primarily on donations) initiated, encouraged, or supported Project Veritas to infiltrate AFT Michigan. Plaintiff is entitled to learn why AFT Michigan was selected for the infiltration, who was involved in that decision, who was involved in funding the operation, who Project Veritas targeted

for fundraising based on the operation, and the purposes of each of these entities. The Federation has been stymied in its efforts to learn the truth.

The Court should direct Defendants to cease their persistent refusal to respond to Plaintiff's legitimate queries.

## The Contested Materials

Defendants' refusal to respond to questions about its donors is found in two forms. Defendant has redacted any documents which contain information about Defendant's donors and has refused to disclose certain documents that contain such information. And Defendants' witnesses have been instructed to refuse to respond to deposition questions about Defendant's donors, based upon a purported First Amendment Privilege.

## The Documents

1.      Forms 990

As a non profit entity, Defendant Project Veritas is required to file a form 990 (Return of Organization Exempt From Income Tax) with the Internal Revenue Service. The form requires the filer to list the names of individuals making donations. In response to Plaintiff's requests, Defendant Project Veritas provided filed forms for tax years 2015, 2016 and 2017.  However, Defendant completely redacted the name and address of each donor. Exhibit 1 (2017).

Defendant Project Veritas submitted an objection to Plaintiff's request for production of its form 990s stating:

3

Project Veritas objects to this request because it seeks information that is not relevant to any party's claims or defenses, is not reasonably calculated to lead to the discovery of relevant evidence, is not in proportion to the needs of the case, is intended to harass, and calls for privileged, confidential information. Subject to the foregoing objections, Project Veritas will produce all copies of IRS Forms 990 filed for the years 2015 through 2017, redacting all names of donors listed on Schedule B.

However, as explained below, the identities of donors are highly relevant to Plaintiff's claims and Defendant may not withhold this information based on any privilege. The Court should require Defendant Project Veritas to provide Plaintiff with unredacted copies of its filed forms 990 for tax years 2015, 2016 and 2017.

2.    Communications with Donors About the Michigan Infiltration

(a)

On September 6, 2017, Project Veritas CEO James O'Keefe sent three emails to unnamed donors bragging about its unlawful infiltration of AFT Michigan. Document PV005795, 5796, 5797 stated, in pertinent part:

> I just came out of a meeting with my undercover journalist after she spent months inside AFT in MI.
>
> "This story is really explosive and I think we're going to get a lot more over the coming months. It's explicit and powerful. We even have documents to back everything up
>
> "I really need to give you an update on the phone, let me know when we can talk. Sooner the better. ***-***-****
>
> James O'Keefe

Exhibit 2.

Defendant Project Veritas has redacted the names of the recipients of these emails. Yet the recipients of these emails are likely the persons who directly supported the AFT Michigan

4

infiltration. Project Veritas sought to raise money to support its unlawful actions but Project Veritas has refused to permit Plaintiff to learn who might have initiated, supported, encouraged, or profited from Defendants' infiltration of AFT Michigan.

(b)

      The infiltration of AFT Michigan was discovered in late September, 2017 and this action was initiated in state court on September 28, 2017. Within two days, Defendant Project Veritas began contacting donors regarding the litigation. On September 29, 2017, likely the day following service of the complaint on Project Veritas, James O'Keefe and Austin Wright, a Project Veritas fundraiser, exchanged the following email (PV005810):

At 6:13 p.m. Mr. Wright wrote to Mr. O'Keefe regarding this suit:

> Hmm.. really hope this doesn't hurt us with the needed funding. I've called (redacted) twice and (redacted) and JO should ping (redacted)"

12 minutes later Mr. O'Keefe responded:

> I think we can use it to our advantage since Randi Also... the only current actual donor who has actually given money on this (redacted), actually looks to our leadership on the matter. He has already renewed for next year.
>
> Is (sic) we get get the rapist on video confirming that he did what the rest of the investigation shows. And then, its a cover - up by Randi.
>
> This is now a national story.
>
> But yes, you should continue to ping (redacted) and (redacted) and I will ping (redacted)."

And at 6:50 p.m. Mr. O'Keefe wrote to Mr. Wright (PV005814)

> R (sic) talking to (redacted)
>
> "We think it'll be fine. Just more evidence that we are trying to bleed us dry. We will turn lemons into lemonade.

5

Continue to harass (redacted) (sic)

Exhibit 3

It is clear that Project Veritas communicated with donors to raise money based on their infiltration of AFT Michigan. And it is clear that Project Veritas contacted those individuals regarding this litigation. Plaintiff is entitled to know who the donors are, the interests they represent, and the role the donors played in planning the infiltration of AFT Michigan.  Project Veritas has withheld this information by redacting the names of persons who were contacted regarding the infiltration.

3.      Deposition Questions

Defendants' counsel cut off inquiry into any questions pertaining to the identity of donors or whether any donor supported the AFT Michigan infiltration:

Page 65-66:

MR. MERSINO: And I am going to direct as to any questions you ask as to specific individuals, whether the one you just stated or moving forward, we will object to any questions that have anything to do with donors or identity of donations.

The directive, which was repeated frequently, prevented Plaintiff from learning just who was involved in the infiltration of AFT Michigan and why the infiltration occurred.

The result of the refusals to answer these inquiries is that Plaintiff has not been able to learn who supported the infiltration and who was a direct participant in the effort to damage the Federation. Yet it is clear that there were donors who were directly involved in the Michigan infiltration including one who "...actually gave money on this..."

6

AFT Michigan was not targeted by Project Veritas arbitrarily. Project Veritas had adopted a plan which it titled "Unionizing Charter Schools Plan." The objective of the plan, according to James O'Keefe was:

> I'd like to get a union official on tape explaining how black people need to stay in the poor, failing schools - they "can not allow" them to choose a better position elsewhere, because that would hurt the union status quo.
>
> To do that, you will likely have to refine/redevelop the plan to the point you can "get in" with union officials at a medium to high level.

Exhibit 5.

Project Veritas did not hear any person from AFT Michigan make such a statement. However, the email indicates Defendant's purpose in sending its agent to make misrepresentations in order to gain access to AFT Michigan's personnel and files. Its interest in AFT Michigan was not to report news; it was to harm AFT Michigan.

The key questions in this litigation include why Project Veritas targeted AFT Michigan and who supported or encouraged the infiltration and the reasons they did so. Who funded the operation before, during, and after demonstrates their purposes and goes directly to the civil conspiracy, fraud, trespass and breach of duty of loyalty claims. The Court should direct Project Veritas to cease its refusal to produce information which is essential to the prosecution of this action.

**Argument**

Applying the appropriate balance here, the Court should conclude that Plaintiff's legitimate need to obtain information necessary to its case overcomes the limited privilege that Defendants have

asserted. The burden on the associational privileges at issue is small and the need for the information is substantial.

A.     No Blanket Privilege

1.

Contrary to Defendants' repeated assertions, there is no blanket prohibition on disclosure of associational activity. While there is some protection against certain kinds of disclosure which would infringe on associational rights, this protection is subject to a balance. As the Supreme Court explained in *Roberts v. U.S. Jaycees*, "[t]he right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." 468 U.S. 609, 623 (1984).

2.

This specific balance was examined by the 9th Circuit Court of Appeals in *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010). There, litigants challenged the validity of an amendment to the California Constitution limiting marriage to a man and a woman. They sought to obtain certain internal campaign communications and documents relating to campaign strategy and advertising prepared and produced by the organization which had advocated for adoption of the amendment. The organization refused to provide the information and claimed that doing so would burden the First Amendment associational rights of the organization and its supporters.

The Court acknowledged that there was some protection afforded against disclosure but explained that the discussion did not end there. The Court noted that a balance must be struck between the asserted privilege and the need for the material that is sought The Court explained that

a claim of First Amendment privilege was subject to a two-part framework in which the party

asserting the privilege

> must demonstrate ... a 'prima facie showing of arguable first amendment infringement.'" (citation omitted) "This prima facie showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id*. at 350.

> If the party can make the necessary showing, the evidentiary burden shifts ... [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest ... [and] the 'least restrictive means' of obtaining the desired information." *Id*.; see also *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61(9th Cir.1991) (same).

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010)

*Perry* recognizes that a balancing is appropriate in which the need for disclosure is weighed

against the impact on the right of association. But the case rejects the notion that there is a complete

bar to inquiry about donors.

3.

The task of balancing was considered by Magistrate Ryu in *Planned Parenthood Fed'n of

Am., Inc. v. Ctr. for Med. Progress*, 16-cv-00236 (N.D. CA, 2018). There, Defendant used an

elaborate scheme to infiltrate meetings and conferences presented by Planned Parenthood for the

purpose of causing the organization political and economic harm. Plaintiff ultimately secured a jury

verdict in excess of $2,000,000 against the Defendant. There Plaintiffs sought a variety of

information including communications with donors. Defendants refused to provide the data claiming

that communications with donors are protected by the First Amendment privilege, and

communications regarding publication of the videos are protected by a journalist's privilege.

The Court first considered the application of F.R.C.P. 26 and whether the information sought was relevant to the pending claims. Magistrate Judge Ryu held that the information was indeed relevant.

First, the Magistrate Judge rejected the notion that Rule 26 should be narrowly construed noting the scope of discovery permitted by the Federal Rules is broad. The Judge explained that Rule 26(b)(1) authorizes parties "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Further, under Federal Rule of Evidence 401, "[t]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . .. [a] fact [that] is of consequence in determining the action.'" *Planned Parenthood*, *Id.* at n 7.

Second, the Court noted that the information sought could produce information helpful to Plaintiffs' RICO claim, which alleged a conspiracy on facts similar to those in this case. Specifically the Judge found that communications between the defendants and donors "may show how Defendants planned and intended to carry out the alleged enterprise," which involved the investigation of Planned Parenthood and release of videos. The Judge explained that the communications "are therefore relevant to establishing the purpose and existence of the alleged enterprise, the relationships among those associated with the enterprise, and the relatedness of the predicate acts, as well as any agreement to violate RICO."

The Judge explained that "[s]uch communications are also relevant to identifying the individual defendants' roles in the alleged enterprise and each defendant's awareness of the nature and scope of the enterprise" and that [t]hey may also identify potential co-conspirators and possible additional defendants.

10

Third, the Court examined the claimed "First Amendment Privilege." Acknowledging *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984), the Court turned to *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010) for guidance. The Court noted that a balance is required but that a blanket refusal to produce relevant documents is impermissible, citing *Perry* at 1161: "'[T]he second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it."

Noting the receipt of several affidavits from donors expressing fear of retaliation for support of the Defendants and its activities, the Court concluded that the defendant had "...established a prima facie case of arguable First Amendment infringement..." Having found that the defendants had established a prima facie case, the Judge then balanced it with the plaintiff's showing.

The Court concluded that the information the plaintiffs sought was "highly relevant to the existence and purpose of the alleged conspiracy." The information sought would disclose the extent of coordination between Defendants and their supporters and the extent of the discussion between Defendants' leadership and donors. Hence, the requests were reasonable and Defendants' objections were rejected.

4.

The reasoning of *Perry* together with its balancing test have been considered, with approval, by courts in this Circuit. See *Ohio A. Philip Randolph Institute, et Al. v. Householder, et al.*, 2019 WL 3288170 (S.D. Ohio, 2019) (Vacated as moot, *Ohio A. Philip Randolph Institute v. Obhof*, 2020 WL 571307 (6th Cir., 2020) (applying *Perry* balancing).

In *Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918 (S.D.Ohio 2012) the Court noted that where a discovery request could infringe on a party's associational rights that a First Amendment privilege is not absolute and that "courts typically balance the interest in disclosure and the burden imposed on the association." *Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918, at *2 (S.D.Ohio 2012). Applying this standard here, the Court should conclude that Defendant cannot shield the information sought from disclosure.

B.      The Information Sought Is Relevant under Rule 26

1.

Rule 26 authorizes "a broad scope of discovery, provided the material sought has some probative value in proving or disproving a claim or defense." *Gamby v. First Nat'l Bank of Omaha*, 2009 WL 963116 (E.D. Mich. Apr. 8, 2009) (citing Fed. R. Civ. P. 26(b)(1)). Parties are permitted under Federal Rule of Civil Procedure 37 to move for an order compelling disclosure or discovery. And information need not be admissible to be discoverable. F.R.C.P. 26(b)(1).

2.

From the onset of this litigation Plaintiff has sought to learn who conceived, supported and executed the infiltration of AFT Michigan and why the infiltration was ordered. AFT Michigan was not selected randomly or without a reason. The evidence indicates that the infiltration was a joint decision between Project Veritas and those that support it.

Plaintiff has alleged a civil conspiracy and there is evidence to support the claim. But Defendants have refused to permit inquiry about those who are believed to have supported and encouraged the infiltration of AFT Michigan. Plaintiff is entitled to expose the reason that this operation was conducted and who it was involved with it.

12

Plaintiff is not merely curious. Its suspicion is reinforced by document PV005810. This was written shortly after this suit was filed. Mr. O'Keefe claims that he can use it (i.e. this litigation) "....to our advantage." Then Mr. O'Keefe refers to a donor who "...has actually given money on this..." The name of the individual is redacted. But the email refers to someone who made a donation to Project Veritas specifically to support the AFT Michigan operation. Plaintiff is entitled to learn the identity of this donor and why he or she wanted AFT Michigan targeted.

So too, is Plaintiff entitled to know who supports Project Veritas generally. On its form 990, Project Veritas has redacted the name of every person whose donations (including a donation in excess of $1,500,000) are listed on the return. In short, Defendant Project Veritas has prevented Plaintiff from learning just who authorized, encouraged, supported or directed the AFT Michigan infiltration. These individuals may well have been part of a larger conspiracy to harm Plaintiff. And their motives are highly important to understand why the infiltration occurred.

Plaintiff is entitled to know who conceived, planned, supported and participated in the plan to infiltrate AFT Michigan. Defendants have stonewalled these inquiries. But the queries are fully relevant under Rule 26.

3.

(a)     The Plaintiff's questions are intended to determine the motives of Defendants and their supporters in planning and implementing the infiltration of AFT Michigan. The motive of a donor was found "highly relevant to the existence and purpose of the alleged conspiracy." *Planned Parenthood, id.*, at *12. And motive of the Defendant is important to Plaintiff's claim under the Federal Wiretap Act, 18 U.S.C. § 2511, et seq. The Act states, in pertinent part:

"(d) It shall not be unlawful under this chapter for a person not acting under color of

> law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

18 U.S.C. § 2511(2)(d)

Consequently, the Federal Wiretap Act prohibits eavesdropping if a defendant's "primary motivation" or a "determinative factor in the actor's motivation in intercepting the conversation was to commit a criminal or tortious act." See *Council on Am. Islamic Relations Action Network v. Gaubatz*, 31 F. Supp. 3d 237, 256-57 (D.D.C. 2014). Plaintiff is entitled to know how and why this infiltration occurred. Motivation is a key fact issue and Plaintiff will want to present the reasons why AFT Michigan was targeted. Defendants' motives are critical to understanding their reason for eavesdropping. Defendant Jorge violated this statute by covertly recording private conversations with others and conversations to which she was not a party. Her purpose in doing so is relevant to Plaintiff's claim.

(b)     Defendants' purposes in infiltrating AFT Michigan are also relevant in determining Defendant Jorge's motives and is directly relevant to her breach of duty of loyalty. Jorge engaged in the infiltration to carry out the objectives of her employer, Project Veritas. AFT Michigan is entitled to know who these other individuals were and what their purposes were. For example, if donors that have exhibited animus or taken action to hurt AFT Michigan or other teacher unions were part of the conspiracy, it supports AFT Michigan's claim that Jorge obtained a position within AFT Michigan to harm it.

C.     No Adverse Impact

14

Plaintiff's need to present its case should be seen as overcoming the minimal intrusion into the associational rights of donors. Defendant Project Veritas engaged in the activity alleged in this lawsuit with the support of donors, with a range of participation in the operation. In this circumstance, a donor takes the risk that their contribution may well become relevant in litigation or other enforcement proceedings relating to the conduct they are financing. Moreover, to date, Defendant has not offered any information which suggests that any donor will be harmed or that the protective order in place is inadequate to protect them. Rather, Defendant has simply asserted an inapplicable blanket privilege. Simply put, Defendants is to demonstrate that disclosure of the information Plaintiff seeks will adversely impact any donor or that any harm would outweigh Plaintiff's interest in obtaining the information.

**Conclusion**

The Court should direct the Defendants to provide Plaintiff with complete, unredacted, IRS forms 990 for calendar year 2015, 2016, 2017; should require Defendants to provide complete, unredacted, copies of other documents sought and to provide other requested information about the identity of their donors. Defendants should be directed to respond to the questions put to their witnesses regarding donors even if it becomes necessary to resume concluded depositions to do so.

Defendants have tried to hide their motivation and purpose in infiltrating AFT Michigan. But motive is an essential part of Plaintiff's claims. Defendants have tried to hide the persons who participated in the conspiracy to infiltrate AFT Michigan. Yet the conspiracy is at the core of this litigation. Defendants have tried to wrap themselves in the First Amendment to shield their unlawful

and tortious conduct. Yet the First Amendment does not allow them to do so.

Given the Plaintiff's legitimate need for the information sought, Defendants should not be permitted to continue to refuse to produce information necessary to presentation of Plaintiff's claims.

/s/ Mark H. Cousens
Mark H. Cousens (P12273)
Attorney for Plaintiff
26261 Evergreen Rd Ste 130
Southfield, MI 48076
(248) 355-2150
cousens@cousenslaw.com

## Certificate of Service

I hereby certify that on April 29, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Paul M. Mersino, Ann Sherman and Stephen Klein.

/s/ Mark H. Cousens
Mark H. Cousens (P12273)
Attorney for Plaintiff
26261 Evergreen Rd Ste 130
Southfield, MI 48076
(248) 355-2150
cousens@cousenslaw.com