## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AFT MICHIGAN,

      Plaintiff,

v.

PROJECT VERITAS, et al,

      Defendants.

Case No. 17-13292
Hon. Linda V. Parker
Hon. Elizabeth A. Stafford

---

Mark H. Cousens (P12273)
Attorney for Plaintiff
26261 Evergreen Rd Ste 130
Southfield, MI 48076
(248) 355-2150
cousens@cousenslaw.com

Paul M. Mersino (P72179)
Butzel Long, P.C.
Attorneys for Defendants
150 W. Jefferson Ave., Suite 100
Detroit, MI 48226
(313) 225-7015
mersino@butzel.com

Ann M. Sherman
Deputy Solicitor General
Attorney for Intervening Party
State of Michigan
Michigan Dept. of Attorney General
P.O. Box. 30212
Lansing, MI 48909
(517) 335-7628
ShermanA@michigan.gov

Stephen R. Klein (P74687)
Barr & Klein PLLC
Attorneys for Defendants
1629 K St. NW Ste 300
Washington, DC 20006
(202) 804-667
steve@barrklein.com

---

## PROJECT VERITAS PARTIES' RESPONSE TO
## AFT MICHIGAN'S MOTION TO COMPEL
## DISCOVERY OF THE NAMES OF PROJECT VERITAS DONORS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... iii

ISSUE PRESENTED ............................................................. v

MOST APPROPRIATE AND CONTROLLING AUTHORITY ................... vi

ARGUMENT ..................................................................... 1

   I.  AFT Michigan Presents A Deceptively Edited Factual Record ............. 2

  II.  The Names of Project Veritas's Donors Are Not Relevant to AFT
      Michigan's Claims or Defenses ............................................ 7

      A.  AFT Michigan Has Not Asserted Claims Against Project Veritas
      Donors Directly or as Co-Conspirators ................................. 8

      B.  The Intent of Project Veritas Donors is Not Relevant to AFT
      Michigan's Claims ...................................................... 9

 III.  Disclosing The Names of Project Veritas Donors Is Not Proportional
      to the Needs of This Case .............................................. 11

 IV.  The First Amendment Prohibits the Disclosure of the Names of
      Project Veritas Donors ................................................. 12

      A.  Project Veritas and its Donors have Constitutionally Protected
      Associational Rights .................................................... 13

      B.  The Identities of Project Veritas Donors are Not Highly Relevant 16

      C.  Project Veritas and its Donors Would Suffer First Amendment
      Injuries if this Motion is Granted ...................................... 17

**V.  Defendants Have Not Lost Their First Amendment Rights Simply Because AFT Michigan Has Sued Them** ............................................... 23

**CONCLUSION** ................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*American Federation of Labor and Congress of Indus. Organizations v. Fed. Election Com'n*,
  333 F.3d 168 (D.C. Cir. 2003) ........................................................................... 14

*Anderson v. Hale*,
  2001 WL 503045 (N.D. Ill. May 10, 2001) ...................................................... 17

*Britt v. Superior Court of San Diego County*,
  574 P.2d 766 (Sup. Ct. Cal. 1978) .................................................................... 15

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ............................................................................................... 13

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998) ............................................................................. 13

*Dibbern v. Univ. of Mich.*,
  2014 WL 4964463 (E.D. Mich. Oct. 3, 2014) .................................................. 15

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
  2007 WL 852521 (D. Kan. Mar. 16, 2007) ....................................................... 18

*Hemlock Semiconductor Corp. v. Kyocera Corp.*,
  2016 WL 1660862 (E.D. Mich. Apr. 27, 2016) .................................................. 8

*Herbert v. Lando*,
  441 U.S. 153 (1979) ........................................................................................... 23

*In re Heartland Inst.*,
  2011 WL 1839482 (N.D. Ill. May 13, 2011) .................................................... 14

*In re Motor Fuel Temperature Sales Practices Litigation*,
  641 F.3d 470 (10th Cir. 2011) ........................................................................... 18

*Markford Coal Co. v. Smith*,
  274 F.R.D. 193 (S.D. W.Va. 2011) ................................................................... 14

*Marrese v. American Academy of Orthopaedic Surgeons*,
706 F.2d 1488 (7th Cir. 1983) ...................................................................... 14, 17

*NAACP v. Alabama*,
357 U.S. 449 (1958) .......................................................................... vi, 13, 18

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
2015 WL 13333328 (N.D. Cal. Nov. 20, 2015) ................................................ 25

*New York State Nat. Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir. 1989) ........................................................................ 16

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) ................................................ vi, 13, 15, 16, 17, 23

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
2018 WL 2441518 (N.D. Cal. May 31, 2018) ........................................... 3, 9, 25

*State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*,
2019 WL 2754653 (E.D. Mich. July 2, 2019) ............................................... vi, 8

*The Ohio Organizing Collaborative v. Husted*,
2015 WL 7008530 (S.D. Ohio 2015) .............................................................. 14

*Tree of Life Christian Schools v. City of Upper Arlington*,
2012 WL 831918 (S.D. Ohio 2012) ........................ vi, 14, 15, 17, 18, 20, 21, 23

## Other Authorities

Allysia Finley, *Randi Weingarten's Enemies List*,
WALL STREET J., Mar. 14, 2014 ...................................................................... 21

U.S. CONST. amend. I .............................................................................................. vi

## Rules

Federal Rule of Civil Procedure 26(b) .................................................................... vi

Federal Rule of Civil Procedure 26(b)(1) ............................................... vi, 1, 7, 17

## <u>ISSUE PRESENTED</u>

*Should the Court grant AFT Michigan's motion to compel the discovery of the names of Project Veritas's donors—information protected by the First Amendment of the U.S. Constitution—based on nothing more than AFT Michigan's desire to learn the identity of those donors?*

## <u>MOST APPROPRIATE AND CONTROLLING AUTHORITY</u>

Federal Rule of Civil Procedure 26(b)(1)

U.S. Const. amend. I

*NAACP v. Alabama*, 357 U.S. 449 (1958)

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)

*Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918 (S.D. Ohio 2012)

*State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 2019 WL 2754653 (E.D. Mich. July 2, 2019)

## **ARGUMENT**

Plaintiff seeks production of all Project Veritas anonymous donor names, in contravention of the Federal Rules of Civil Procedure and longstanding First Amendment jurisprudence. While focusing more misguided ire on free speech and the free press, AFT Michigan almost skips Federal Rule of Civil Procedure 26(b)(1) entirely. Pursuant to that rule and on that basis alone, this Court should deny Plaintiff's motion to compel.

The names of Project Veritas's donors are not relevant to AFT Michigan's claims or defenses, and disclosing their names is not proportional to the needs of the case. Instead, it is nothing more than a fishing expedition, and a blatant one at that. And even if AFT Michigan's request met the strictures of Rule 26(b)(1), it does not establish that the information sought is highly relevant to its claims under the qualified First Amendment privilege, which also calls on the Court to deny AFT Michigan's motion to compel.

AFT Michigan's request, when stripped of its rhetoric, amounts to nothing more than the position that Plaintiff should be given this constitutionally protected information simply because it would like to have it. This is not permitted under the Federal Rules of Civil Procedure and is prohibited under the U.S. Constitution.

## I.     AFT Michigan Presents A Deceptively Edited Factual Record.

AFT Michigan presents a handful of e-mails regarding a few Project Veritas donors as evidence that its investigation was "authorized, encouraged, supported or directed" by someone outside the organization.  ECF No. 134, PageID.3312.  But there is no substantiation or evidence for that claim.  Moreover, AFT Michigan omits the fact that all of the evidence, including unrebutted sworn testimony, contradicts that assertion.   The evidentiary record confirms that Project Veritas was solely responsible for the investigation at issue.

The Project Veritas Parties have produced nearly 4,000 documents to AFT Michigan.  For purposes of its motion to compel, AFT Michigan relies on a handful of communications with alleged donors, all of which are dated *after* Ms. Jorge's internship, which concluded on September 1, 2017.  ECF Nos. 134-3, 134-4, 134-5.  Exhibit 2 of AFT Michigan's motion, a series of e-mails to donors on September 6, 2017, does not suggest that the donors in question "authorized, encouraged, supported or directed" the investigation in question—indeed, they do not even indicate that these donors had previously heard about the investigation.  ECF No. 134-3.

All written communications about the AFT Michigan investigation— including communications with and about donors—between January 1 and October

2

1, 2017 were produced.[1]  *See, e.g.*, **Exhibit 1** (Project Veritas responses to AFT Michigan requests for production Nos. 5, 6, 24, 28) (noting redactions based on relevance, proportionality, and privilege, but stating that otherwise "Project Veritas will produce any responsive, non-privileged materials in its possession . . . .").  None of these documents suggest that donors oversee, direct, or play a role in Project Veritas investigations, because they do not.

AFT Michigan claims that "Defendants' counsel cut off inquiry into *any questions* pertaining to the identity of donors *or whether any donor supported the AFT Michigan infiltration*."  ECF No. 134, PageID.3305 (emphasis added).  This, too, is not true.  In his sworn deposition, Project Veritas president James O'Keefe (and author of most of the e-mails exhibited by AFT Michigan) testified as follows:

> Q. Are there occasions in the past three years during which Project Veritas has solicited donations by advertising that an investigation was going to be commenced?
>
> * * *
>
> [D]o they provide information to potential donors in which they say we are about to undertake investigation X, and we would like your help?
>
> A. The way I would characterize it is, we are very special in this – in the following way, we share a vision about what we want to do and people support us.

---

[1] AFT Michigan disregards this in its analysis.  *See, e.g.*, ECF No. 134, PageID.3308-10 (discussing a case in which communications were *withheld in their entirety* by defendants); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2018 WL 2441518, at *4 (N.D. Cal. May 31, 2018).

**Exhibit 2** (O'Keefe 38:5-19).  The inquiry continued:

> Q. Can a donor suggest an investigation? In other words, can someone come to you and say, hey, look, I have got a bundle of money for you as long as you investigate X, Y, or Z?
>
> * * *
>
> THE WITNESS: I suppose they can do it, but *I am not sure that they have*.
>
> BY MR. COUSENS:
>
> Q. That was my next question. Has any donor ever come to Project Veritas and requested that a specific investigation be undertaken?
>
> A. *Not to my knowledge*.

*Id.* (O'Keefe 40:12-41:3) (emphasis added).  As to the investigation in this case:

> Q. Did any donor make a contribution specifically related to the AFT Michigan operation?
>
> A. I don't remember.
>
> * * *
>
> A. I don't think any of our donations are earmarked or in that regard, they give to a broader vision, a broader mission to expose corruption and dishonesty.  And we do a lot of investigations over the course of the year and they just believe generally in what we are doing.

*Id.* (O'Keefe 67:18-68:7).  Mr. O'Keefe's testimony is not contradicted, but rather is bolstered by Exhibit 3 of AFT Michigan's motion.  ECF No. 134-4.  In that e-mail, Mr. O'Keefe states that only one "current actual donor . . . has actually given money on this" and that donor "*looks to our leadership on the matter*." *Id.* (emphasis added).  The responsibility for Project Veritas investigations—including the investigation of AFT Michigan—lies with the Project Veritas Parties, not donors.

Moreover, Russell Verney—executive director of Project Veritas—testified as follows:

> Q. Was – did any person not associated on a personal or professional level with Project Veritas have any input, as far as you know, into what investigations would be conducted with respect to teacher unions during 2017 or 2018?
>
> A. No.
>
> Q. The entire concept was discussed and developed internally, as far as you know?
>
> A. Yes, sir.

**Exhibit 3** (Verney 52:22-53:4).  AFT Michigan simply cannot point to any evidence that contradicts this sworn testimony, or point to one piece of evidence that substantiates its attempts to seek this donor information.

AFT Michigan attempts to provide a basis for its claim that donor information is necessary by asserting that the union "was not selected randomly or without a reason."  ECF No. 134, PageID.3311.  This is not a basis for what they seek, and it is also not the mystery AFT Michigan claims.  Ms. Jorge, the Project Veritas journalist central to the investigation of AFT Michigan from its outset, has testified that it was *she* who came up with the idea to investigate teacher unions in Michigan.  When asked "[w]ho told you about the Michigan operation[,]" she testified: "Well, no one told me about the Michigan operation; I, initially, came up with the idea of Michigan."  **Exhibit 4** (Jorge 66:11-13).  When asked whether it was her idea to

conduct an investigation in the state of Michigan, she answered in the affirmative.

*Id.* (Jorge 66:14-16). Ms. Jorge further testified as follows:

> Q. Why did you think Michigan would be an appropriate state for any investigation into teacher unions?
>
> A. I mean, to be honest, I can't remember the specifics of what I thought at the time but it just – it just so happened that I think it worked out.
>
> Q. What research or investigation did you do prior to coming to this conclusion?
>
> A. I believe that I just -- I looked up the teachers union in general and I looked up events that were going on.
>
> * * *
>
> Q. Did you know -- how did you settle on AFT Michigan as being appropriate for an investigation?
>
> A. Because it was just the main union.
>
> Q. The main union?
>
> A. There was no, like, specific reason other than that.
>
> Q. Okay. Have you ever heard of the Michigan Education Association?
>
> A. I have after -- afterwards.

*Id.* (Jorge 66:24-67:21).

AFT Michigan has presented this Court with an early plan for the investigation drafted by Ms. Jorge. The Project Veritas Parties produced *dozens* of iterations of this plan from the spring of 2017, reports from Ms. Jorge during her investigation in the summer of 2017 and, importantly, the e-mails on which all of those documents were attached. *See, e.g.*, ECF No. 134-6, PageID.3366. All of the participants in those e-mails were disclosed; there is no hint in thousands of documents that donors

gave any input whatsoever into the what, why, or how of the investigation.  That is because it did not happen.  *See also* Exh. 4 (Jorge 110:7-19) (testifying that she never shared her plan with others to raise money for the investigation).

Plaintiff's representation to this Court that "the evidence indicates that the infiltration was a joint decision between Project Veritas and those that support it" is unsubstantiated.  ECF No. 134, PageID.3311.  AFT Michigan has manufactured this story in hopes to get to Project Veritas's donor information.   Plaintiff cannot misrepresent the facts of this case, repeat it enough times, and then insist, based on that, that they are entitled to protected information.  This motion should be denied.

## II.   The Names of Project Veritas's Donors Are Not Relevant to AFT Michigan's Claims or Defenses.

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1) (emphasis added).   The Project Veritas Parties timely asserted their objections to AFT Michigan's discovery requests, but nonetheless produced nearly 4,000 documents, redacting only the most sensitive information—

such as the names of donors—while providing the entire context of communications with those donors or communications in which donors are mentioned.  *See, e.g.*, Exh. 1.  AFT Michigan fails to demonstrate why redacted information should be produced.

Plaintiff alleges that donor information "goes directly to the civil conspiracy, fraud, trespass and breach of duty of loyalty claims."  ECF No. 134, PageID.3306. As to fraud and trespass, though, AFT Michigan offers no argument whatsoever as to how this information is relevant.  *Cf. Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2016 WL 1660862, at *3 (E.D. Mich. Apr. 27, 2016) ("[T]he party seeking discovery bears the burden of demonstrating its relevance."). Even for its claims of breach of duty of loyalty, federal interception, and conspiracy to commit the same, AFT Michigan offers but a few more conclusory statements. *Cf. State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 2019 WL 2754653, at *15 (E.D. Mich. July 2, 2019) (rejecting request to compel production relating to a third party when moving party "failed to sufficiently tie" the third party to "the alleged fraudulent scheme in [the] case.").  AFT Michigan's motion should be denied for failure to demonstrate relevance.

### A. AFT Michigan Has Not Asserted Claims Against Project Veritas Donors Directly or as Co-Conspirators.

AFT Michigan only named Project Veritas and Marisa Jorge as defendants in this action.  AFT Michigan has never alleged that the Project Veritas Parties

conspired with anyone else.  To the contrary, as to conspiracy, AFT Michigan's current complaint strictly alleges that "Defendant Jorge and PV have conspired[.]" ECF No. 72, PageID.2048 (Compl. ¶¶ 79-82).  In regards specifically to the federal interception statute, the complaint states that "Defendant Project Veritas conspired with Defendant Marisa Jorge to intercept the oral communications of the Plaintiffs' [sic] employees."  *Id.*, PageID.2052 (¶101).  AFT Michigan's request for donor information is thus *not* relevant to its pending claims.

AFT Michigan's case is, therefore, fundamentally distinct from the *Planned Parenthood* litigation on which it relies throughout its motion.  That case was brought against named defendants *as well as* unknown co-conspirators.  *See* **Exhibit 5** (excerpts of Planned Parenthood first amended complaint alleging "unknown co-conspirators" throughout).  Unless one is allegedly part of the alleged conspiracy, "support" or "encouragement" from nonparties is not relevant to such claims.  But, again, AFT Michigan has not evinced any support or encouragement whatsoever.

The names of Project Veritas donors are not relevant to Plaintiff's claims.

### B. The Intent of Project Veritas Donors is Not Relevant to AFT Michigan's Claims.

Plaintiff makes a conclusory claim that the names of Project Veritas donors will provide evidence or lead to evidence that the Project Veritas Parties intercepted communications "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  ECF No.

134, PageID.3313.  But AFT Michigan does not state what criminal or tortious purpose Project Veritas or its donors allegedly had in mind.  Nor does it offer a single piece of evidence of *any* participation from donors in Project Veritas's investigation.

AFT Michigan also claims that the names of Project Veritas donors are relevant to their allegation of breach of duty of loyalty.  Its argument falls short of a demonstration for purposes of Rule 26(b)(1).  AFT Michigan claims that "if [Project Veritas] donors that have exhibited animus or taken action to hurt AFT Michigan or other teacher unions were part of the conspiracy, it supports AFT Michigan's claim that Jorge obtained a position within AFT Michigan to harm it."  ECF No. 134, PageID.3313.  The word "*if*" is telling.  AFT Michigan has not alleged that anyone but Ms. Jorge and Project Veritas were involved in the alleged conspiracy, and it has not pointed to any evidence that any donor has exhibited animus or acted to hurt AFT Michigan.  That statement practically defines a fishing expedition.

Moreover, "exhibit[ing] animus" or "tak[ing] action" (presumably independently, as the evidence has established there was no outside role or input in Project Veritas's investigation) do not bear on any element of a breach of duty of loyalty.  Such independent activity would not evince that Ms. Jorge had a duty of loyalty, the scope of that alleged duty, breach, causation, or damages.

The names of Project Veritas donors are not relevant to AFT Michigan's claims or defenses, and the Court should deny its motion under Rule 26(b)(1).

### III.    Disclosing The Names of Project Veritas Donors Is Not Proportional to the Needs of This Case.

AFT Michigan's request is not proportional to the needs of the case. AFT Michigan's motion offers no analysis, and barely any mention, of proportionality. *See* ECF No. 134, PageID.3303, 3309. But this has served as a fundamental facet of Rule 26(b)(1) since its amendment in 2015, and almost uniformly militates against AFT Michigan's motion. Even if the information requested were relevant—it is not—the request does not meet the proportionality standards.

Under Rule 26(b)(1), parties may seek relevant information so long as it is:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

As previously discussed, the information being sought is not relevant to any claims or defenses, weighing against the factor analyzing "the importance of the discovery in resolving the issues[.]" Since AFT Michigan fails to demonstrate the relevance of this discovery and asserts only accusations such as the *possibility* that Project Veritas donors have "exhibited animus" toward unions, the import of this discovery to resolving the issues is dubious.

The parties' resources and the burden and expense of the proposed discovery should be considered in tandem. Project Veritas has expended a great deal of money

11

to produce thousands of documents.  Ms. Jorge and three other agents of Project Veritas have sat for deposition in multiple states.  Project Veritas has deposed staff of AFT Michigan to build an evidentiary record that will disprove AFT Michigan's claims.  This diligence and candor should not be penalized with an open-ended, irrelevant inquiry that is far out of proportion to the needs of the case.

AFT Michigan's motion does not demonstrate relevance or proportionality under Rule 26(b)(1).  Rather, it simply states that AFT Michigan should be given the donor information because it wants it.  But as will be shown below, the burden on Project Veritas of producing such information would be great indeed.  This heavy burden far outweighs its likely benefit to AFT Michigan if it were produced, because AFT Michigan has not established what the benefit would be.

Plaintiff has not met its burden in showing that the information it seeks is proportional to the needs of the case.  This motion should be denied.

## IV.   The First Amendment Prohibits the Disclosure of the Names of Project Veritas Donors.

AFT Michigan contends that Project Veritas asserted a "blanket" First Amendment privilege against disclosing the name of any donor.  ECF No.134, PageID.3300.  To the contrary, this was asserted in tandem with objections under Rule 26(b)(1).  *See* Exh. 1.  But the First Amendment heightens the burden on AFT Michigan, and because donor information is not *highly relevant* to the causes of

action pled by AFT Michigan, its motion to compel fails to overcome Project Veritas's qualified First Amendment privilege.

### A. Project Veritas and its Donors have Constitutionally Protected Associational Rights.

Although discovery is generally broad, the constitutional right to freedom of association can outweigh the need for disclosure of information. *NAACP v. Alabama*, 357 U.S. 440, 460–67 (1958) (holding that the NAACP did not have to produce its membership list because production would result in "the likelihood of a substantial restraint upon" the right to freely associate). It is well established that "[f]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). Further, the freedom to associate includes the right to make financial contributions to further a common goal. *Buckley v. Valeo*, 424 U.S. 1, 22 (1976). Given these rights, disclosure of information may be inappropriate when such disclosure will adversely affect an organization's ability "to pursue [] collective efforts to foster beliefs" and may "induce members to withdraw" or "dissuade others from joining . . . ." *NAACP*, 357 U.S. at 462–63.

This right against compelled disclosure on First Amendment associational grounds is well established among federal courts, from the U.S. Supreme Court down. *See, e.g.*, *NAACP*, *supra*; *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (denying disclosure of internal campaign communications); *Marrese v.*

13

*American Academy of Orthopaedic Surgeons*, 706 F.2d 1488 (7th Cir. 1983) (denying disclosure of medical association's membership list); *Tree of Life Christian Schools v. City of Upper Arlington*, 2012 WL 831918, *3–*4 (S.D. Ohio 2012) (denying disclosure of donor information because it could damage the donor-donee relationship); *Markford Coal Co. v. Smith*, 274 F.R.D. 193, 206 (S.D. W.Va. 2011) (denying disclosure of individuals who aided or abetted protestors); *The Ohio Organizing Collaborative v. Husted*, 2015 WL 7008530, at *3–4 (S.D. Ohio 2015) (denying disclosure of financial information related to the Democratic Party); *American Federation of Labor and Congress of Indus. Organizations v. Fed. Election Com'n*, 333 F.3d 168, 176–77 (D.C. Cir. 2003) (denying disclosure of a group's internal documents); *In re Heartland Inst.*, 2011 WL 1839482, at *2 (N.D. Ill. May 13, 2011) ("Courts have recognized that there is a right to free association, which is implicated when an organization is compelled to disclose its list of members or donors, thereby causing a chilling effect on the organization.").

All of these decisions reflect the importance of protecting sensitive relationships formed by nonprofit organizations. Diverse donors give to diverse causes that they believe in. Some may fund environmental watchdogs.[2] Others fund civil rights organizations. In a society in which we are intended to be free to criticize

---

[2] *See, e.g.*, *State of Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 454 (D. D.C. 2002).

14

those in power, we should not be left in fear that we will be retaliated against by those in power.  In almost all instances, donors require the safety of knowing their participation is private and not subject to retaliation or surveillance.  Without such protection against compelled disclosure, courts have routinely understood that it is "self-evident" that associational harms would occur.  *Perry*, 591 F.3d at 1163; *Tree of Life*, 2012 WL 831918 at *3.

In fact, even AFT Michigan supports First Amendment associational rights, at least *its own*.  Recently in this very Court, a party sought to compel AFT Michigan to produce documents it withheld in response to a subpoena.  AFT Michigan— represented by the same counsel representing it in the instant case—argued that "'compulsory disclosure of the sensitive material will burden the Union's exercise of its rights under the First Amendment.'"  *See Dibbern v. Univ. of Mich.*, 2014 WL 4964463, at *4 (E.D. Mich. Oct. 3, 2014).  Ultimately, because of AFT Michigan's objections, the Court permitted AFT Michigan to "redact the names of union supporters" in order to "remov[e] any associational privilege concerns."  *Id.*

What one person views as a sacred cause, another may view as abhorrent.  But both sides of that equation are protected by First Amendment associational rights.[3]

---

[3] Courts disagree that the First Amendment protects only certain organizations or viewpoints, noting that the First Amendment affords "constitutional protection to the privacy interests of members of *all* politically oriented associations."  *Britt v. Superior Court of San Diego County*, 574 P.2d 766, 772 (Sup. Ct. Cal. 1978).

And both sides would be harmed by a ruling that grants AFT Michigan what it seeks, because such a ruling may be used as a club by others in future cases. This motion should be denied on its own merits, as well as against sound public policy.

### B. The Identities of Project Veritas Donors are Not Highly Relevant.

AFT Michigan seeks the "names of persons who *may have* supported, encouraged or directed the infiltration of AFT Michigan." ECF No. 134, PageID.3300 (emphasis added). This is another terse admission that it has no actual evidence this occurred. And AFT Michigan's lawsuit is directed against Project Veritas and Marissa Jorge alone; it is not seeking relief from unknown third parties and its complaint never contemplates third-party relief. Project Veritas's donor list is simply not relevant to AFT Michigan's claims, let alone highly relevant.

AFT Michigan must meet a higher standard of relevance to overcome a presumptive First Amendment privilege against disclosure. Once a party resisting disclosure has shown its associational rights would be infringed, the burden shifts to the moving party to explain why its need for disclosure outweighs First Amendment concerns. *Perry*, 591 F.3d at 1164. In demonstrating a *prima facie* harm of First Amendment rights, the burden is quite light. *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989).

Importantly, after the burden shifts, the party seeking discovery must not just show the requested information is relevant, but that it is "highly relevant." *Perry*,

591 F.3d at 1161 ("[T]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)."). Indeed, Courts have held that "the inquiring party must show that the information sought is so relevant that it goes to the 'heart of the matter'; that is, the information is crucial to the party's case." *Anderson v. Hale*, 2001 WL 503045, at *4 (N.D. Ill. May 10, 2001).

AFT Michigan has not established that the information that it seeks is highly relevant or that it goes to the heart of the matter. Based on the potential harm to Project Veritas and its donors as set forth below, its motion should be denied.

### C. Project Veritas and its Donors Would Suffer First Amendment Injuries if this Motion is Granted.

It has been recognized that discovery of sensitive information is "sometimes sought not in a sincere effort" but rather to "harass opponents," and "requires the vigilance of the district judges to prevent." *Marrese*, 706 F.2d at 1495. Here, AFT Michigan does not want to expose co-conspirators, but rather donors who may have "exhibited animus" toward teacher unions. ECF No. 134, PageID.3313. Disclosure of such evidence would cause harm to Project Veritas and its donors.

This request for sensitive donor information is the sort of "self-evident" harm the First Amendment protects against. *Perry*, 591 F.3d at 1163; *Tree of Life*, 2012 WL 831918 at *3. Inquiries into "these inherently private topics will likely cause

17

the donor to question donations" to the group forced to disclose the information. *Id.* at 3420. This will cause substantial harm to the relationship between Veritas and its donors, the proper focus of a First Amendment associational privilege. *Id.* at *4.

Although this harm is "self-evident," federal courts have also held that a party claiming a First Amendment chilling affect can meet its burden by submitting, for example, affidavits that "describe harassment and intimidation of [a group's] known members, and the resulting reluctance of people sympathetic to the goals of [the group] to associate with [it] for fear of reprisals." *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 491 (10th Cir. 2011). And as the United States Supreme Court has held, such retaliation includes "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP*, 357 U.S. at 462. Courts have also "suggested that violations of a member's desired anonymity may infringe on associational rights." *Tree of Life*, *supra* at *3 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 852521, at *4 (D. Kan. Mar. 16, 2007)) ("[A]ctions may infringe on the First Amendment right of association . . . by attempting to require disclosure of membership where anonymity is desired . . . .").

Project Veritas is able to attest to retaliatory actions taken against it, including economic reprisal, threats of physical coercion, and other manifestations of public hostility against its employees, its founder, and its donors. The Project Veritas

Parties attach to this brief an affidavit of Russell Verney, Executive Director of Project Veritas, who attests that: (1) donors specifically set out to guard their anonymity when giving to Project Veritas, (2) donors ask that Project Veritas keep their identities secret, and (3) donors would not give funding and support if their names were not kept secret.  **Exhibit 6**.  Also attached is an affidavit of James O'Keefe, who attests to the harassment suffered by Project Veritas, its staff, and donors to the organization. Project Veritas's First Amendment concerns about retaliation and associational injury are not speculative.  **Exhibit 7**. Project Veritas is an organization uniquely dependent on charitable contributions to survive, and it is facing an adversary that is the *sine qua non* for protection against forced disclosure.

Executive Director Russell Verney explains in his affidavit that guarding the anonymity of donors to Project Veritas protects its very existence.  Exh. 6 (Verney ¶8).  Unlike for-profit, advertisement or subscription-based journalism, Project Veritas relies almost entirely on its ability to receive confidential contributions to support its newsgathering.  *Id.*  Throughout his many years serving as Executive Director, Verney attests that many donors would not give without anonymity protection in place due to donor fears about public harassment campaigns and economic reprisal.  *Id.* (¶4, ¶¶6-7).  These very real fears are now before this Court.

James O'Keefe attests to many examples of harassment Project Veritas and its donors have suffered.  This includes the existence of a "Project Veritas Exposed"

website to unearth private details of its staff, including family and employment information.   Exh. 7 (O'Keefe ¶6(a)).   His affidavit also includes examples of stalking and verbal abuse of staff members, vandalism of Veritas headquarters, and numerous examples of harassment on social media.   *Id.* (¶6(a)-(h)).   Lastly, O'Keefe attests to donor harassment by competing news organizations when Veritas launched controversial investigations.   *Id.* at ¶7.   These examples demonstrate showings of economic reprisal and public hostility that support Project Veritas's protection against compelled disclosure.

These affidavits demonstrate that the compelled disclosure of donor identities would cause First Amendment injuries.   In the face of AFT Michigan's pleadings, which contemplate legal recovery from two actors, it is inappropriate to permit AFT Michigan to do damage to Project Veritas's right of association with third-party donors.   In this instance, Project Veritas operates as an organization registered under Section 501(C)(3) of the Internal Revenue Code.   Its very means of existence is centered upon the protection of donor-donee relationships.   *Tree of Life, supra* at *3 (damage to donor-donee relationship provides for First Amendment protection against compelled disclosure of donor name).   As a non-profit entity, Project Veritas does not operate in a commercial setting, have subscribers, advertising revenue, subscriptions, or otherwise charge regular fees.   Its only ability to engage in newsgathering comes from its ability to foster and maintain secure relationships with

donors, free of interference from outside parties. And as evidenced by the affidavits, that ability to foster and secure relationships with donors would be gravely harmed by disclosing donors' names. Exh. 6 (Verney ¶6, 8); Exh. 7 (O'Keefe ¶8).

"To assert a First Amendment privilege, a concrete showing of infringement is unnecessary, and instead the movant need only show that there is some probability that disclosure will lead to reprisal or harassment." *Tree of Life*, *supra* at \*2. Here, there is not only a strong probability, there is almost a certainty that disclosure will lead to reprisal or harassment. Fears of retribution are neither imaginary nor hypothetical. Exh. 6 (Verney ¶6, 8); Exh. 7 (O'Keefe ¶8).

AFT Michigan has admitted that it has consulted with American Federation of Teachers (the national organization) in bringing this lawsuit, and specifically consulted with its President Ms. Randi Weingarten. **Exhibit 8** (Hecker 23:4-11; 191:23-192:8). An in-house attorney for American Federation of Teachers has sat in on nearly every deposition in this case and participated in this matter from the beginning. Ms. Weingarten has repeatedly issued press releases discussing her and American Federation of Teachers' involvement with this case.

This involvement by Ms. Randi Weingarten and the American Federation of Teachers is relevant given the fact that national mainstream publications have written articles on what they deem "Randi Weingarten's Enemies List." Allysia Finley, *Randi Weingarten's Enemies List*, WALL STREET J., Mar. 14, 2014, *available*

*at*   https://www.wsj.com/articles/political-diary-randi-weingartens-enemies-list-1394823292 (copy attached as **Exhibit 9**).   That article details how the American Federation of Teachers issues reports "blacklisting money managers who support nonprofits that advocate for school and pension reform." *Id.*  Moreover, "[t]he report's goal is to muzzle hedge fund and private-equity managers who sit on the boards of and contribute hefty sums to union *betes noire* . . . ." *Id.*  The article reports that it is not just those in high places who are targeted, either, noting that "even several degrees of separation doesn't insulate companies from union retribution." *Id.*  Worse, still, the article notes that the report included many who were not even guilty of what the AFT accused them of, noting that "[a]pparently, the union hadn't done all of its homework before releasing the report." *Id.*[4]

No donor should fear "retribution," "blacklisting," being "muzzled," or other coercive or intimidating acts due to his or her association with other likeminded individuals.  This is true of those we disagree with, as much as with those with whom we agree.  And there will come a time when the shoe is on the other foot, and a ruling

---

[4] Documents produced in this very case have already been quoted on the front page of the *New York Times*, attempting to connect various businesspeople with Project Veritas.  Those documents—produced in this case from Project Veritas to AFT Michigan—were not leaked to the *New York Times* by Project Veritas.  One need not speculate long as to how they ultimately arrived in the press.  There is also little need to speculate as to what AFT Michigan and/or the American Federation of Teachers would do with the actual list of donors' names.  Their efforts should not be aided by this Court.

in this case or others like it will be used against organizations even AFT Michigan agrees with.  This is why the law must be evenly and uniformly applied, and this is why AFT Michigan's motion should be denied.

Permitting compelled disclosure of confidential donor names here is the sort of "self-evident" harm contemplated by federal courts.  *Perry*, 591 F.3d at 1163; *Tree of Life*, 2012 WL 831918 at *3.  At the same time, compelled discovery here would offer an aggrieved subject of Project Veritas's journalism an opportunity to harass and damage it due to its embarrassment.  This Court "should not hesitate to exercise appropriate control over the discovery process" and should deny compelled disclosure here based on Project Veritas's qualified First Amendment privilege. *Marresse*, 706 F.2d at 1495 (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## V.      Defendants Have Not Lost Their First Amendment Rights Simply Because AFT Michigan Has Sued Them.

AFT Michigan's cavalier disregard of First Amendment rights should not be lost on any reader.  It has accused Project Veritas in the past of "hid[ing] behind the First Amendment."  ECF No. 7, PageID.122.  In its instant motion it accuses Project Veritas of trying to "wrap themselves in the First Amendment to shield" themselves. "Yet the First Amendment," Plaintiff alleges, "does not allow them to do so."  ECF No. 134, PageID.3314-15.

But the First Amendment *does* allow defendants, organizations, and individuals every right to protect themselves from their accusers, and the Project

23

Veritas Parties proudly, openly, and gratefully wrap themselves in the First Amendment.  What AFT Michigan intends as an insult against Project Veritas is, in fact, one of the most important protections afforded to all free people.   Project Veritas stands upon, and fights for, the First Amendment.

AFT Michigan goes further, insinuating (and outright saying) that because they accuse Project Veritas of wrongdoing, Project Veritas and its donors should not enjoy First Amendment protections.  AFT Michigan states, without substantiation, that "a donor takes the risk that their contribution may well become relevant in litigation or other enforcement proceedings relating to the conduct they are financing."  ECF No. 134, PageID.3314.  But the same could be said about *any* parties or even non-parties in *any* suit.  Simply because one is a defendant in a lawsuit does not mean the loss of First Amendment associational rights.

AFT Michigan goes further, stating that Project Veritas Parties is attempting to "shield their unlawful and tortious conduct," and therefore should not be permitted to raise their constitutional concerns.  ECF No. 134, PageID.3314-15.  But this is the precise opposite of how our system and our Constitution works.  "Innocent until proven guilty" may be more aptly applied to criminal proceedings, but certainly even those simply *accused* of mere torts still enjoy constitutional rights.  Courts have roundly dismissed such arguments as raised by AFT Michigan, noting that such self-serving statements are "premature" and "assume the merits of [Plaintiff's] claims

against defendants." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Medical Progress*, 16-cv-00236, *16 (N.D. Ca. 2018) (quoting *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 2015 WL 13333328, at *3 (N.D. Cal. Nov. 20, 2015).

No plaintiff can unilaterally strip a defendant of constitutional rights merely by filing a lawsuit against them.  AFT Michigan's statements regarding the Project Veritas Parties' *alleged* wrongdoing is misplaced.  Such baseless allegations after being afforded extensive discovery is bad faith.  Even those with whom AFT Michigan disagrees are still afforded their constitutional rights.

## CONCLUSION

For the foregoing reasons, the Court should deny AFT Michigan's motion to compel discovery of the names of Project Veritas donors.

Respectfully submitted,

/s/ Stephen Klein
Stephen R. Klein (P74687)
Barr & Klein PLLC
1629 K St. NW, Ste. 300
Washington, DC 20006
(202) 804-6676
steve@barrklein.com

Butzel Long, P.C.
Paul M. Mersino (P72179)
150 W. Jefferson, Suite 100
Detroit, MI 48226
313-225-7015
mersino@butzel.com

Dated: May 13, 2020                    Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

/s/ Stephen Klein
Stephen R. Klein (P74687)
Barr & Klein PLLC
1629 K St NW Ste. 300
Washington, DC 20006
(202) 804-6676
steve@barrklein.com

Butzel Long, P.C.
Paul M. Mersino (P72179)
150 W. Jefferson, Suite 100
Detroit, MI 48226
mersino@butzel.com
313-225-7015

Attorneys for Defendants