**Exhibit 5**

AMY L. BOMSE (No. 218669)
SHARON D. MAYO (No. 150469)
JEE YOUNG YOU (No. 241658)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:     (415) 471-3100
Facsimile:     (415) 471-3400
Email:   amy.bomse@aporter.com
            sharon.mayo@aporter,com
            jeeyoung.you@aporter.com

Attorneys for Plaintiffs

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD AFFILIATES OF
CALIFORNIA
551 Capitol Mall, Suite 510
Sacramento, California  95814-4581
Telephone:     (916) 446-5247
Email:     beth.parker@ppacca.org

HELENE T. KRASNOFF (*pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone:     (202) 973-4800
Email:     helene.krasnoff@ppfa.org

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD: SHASTA-DIABLO, INC. dba PLANNED PARENTHOOD NORTHERN CALIFORNIA; PLANNED PARENTHOOD MAR MONTE, INC.; PLANNED PARENTHOOD OF THE PACIFIC SOUTHWEST; PLANNED PARENTHOOD LOS ANGELES; PLANNED PARENTHOOD/ORANGE AND SAN BERNARDINO COUNTIES, INC.; PLANNED PARENTHOOD OF SANTA BARBARA, VENTURA AND SAN LUIS OBISPO COUNTIES, INC; PLANNED PARENTHOOD PASADENA AND SAN GABRIEL VALLEY, INC.; PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS; PLANNED PARENTHOOD GULF COAST AND PLANNED PARENTHOOD CENTER FOR CHOICE | Case No.  3:16-cv-00236-WHO **FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; DAVID DALEIDEN (aka "ROBERT SARKIS"); TROY NEWMAN; ALBIN RHOMBERG; PHILLIP S. CRONIN; SANDRA SUSAN MERRITT (aka "SUSAN TENNENBAUM"); GERARDO ADRIAN LOPEZ; and UNKNOWN CO-CONSPIRATORS, inclusive, | |
| Defendants. | |

37.    **UNKNOWN CO-CONSPIRATORS** Who Participated in the Conspiracy to Defraud.  Defendants DALEIDEN, NEWMAN, RHOMBERG, CRONIN, MERRITT, LOPEZ, BIOMAX, and CMP did not act alone.  Other co-conspirators, discussed below, assumed fake names and identities or otherwise assisted in the scheme to defraud and harm Plaintiffs.

38.    "Brianna Allen" is the assumed name of the woman who has held herself out to Plaintiffs and others as Susan Tennenbaum's assistant.  A news report documented that "Brianna Allen" is in fact the name of one of DALEIDEN's high school classmates who is pro-choice, has not had communications with DALEIDEN for several years, and has no connection with CMP, BIOMAX, or any aspect of the events discussed herein.

39.    "Rebecca Wagner" has represented herself to Plaintiffs and others as a Contract Administrator for BIOMAX.

40.    "Sofia Mireles" used her credit card to fraudulently register BIOMAX representatives MERRITT (posing as "Susan Tennenbaum") and "Brianna Allen" to attend the Association of Reproductive Health Professionals Conference in Denver in September 2013.

41.    **Alter Egos:** Plaintiffs are informed and believe and on that basis allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between these Defendants have ceased. Defendants established BIOMAX as a fake company for the purpose of perpetrating a fraud on Plaintiffs and other abortion providers.  Defendants have at all times exercised dominion and control over BIOMAX and CMP, and have acted with total disregard for the separate legal status of BIOMAX and CMP, in order to promote their wrongful and illegal conduct.  Adherence to the fiction of the separate existence of BIOMAX and CMP as separate entities distinct from each other, DALEIDEN, NEWMAN, RHOMBERG, CRONIN, MERRITT, LOPEZ, and the UNKNOWN CO-CONSPIRATORS, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

## FACTS

**Planned Parenthood's Record Of Providing Safe, High-Quality, Essential Health Care**

42.    Approximately one out of every five women in the United States has relied on a

11

scheme in 2012 to secretly "embed" DALEIDEN and other recruits within the reproductive health community and "expose" Planned Parenthood as violating the law. As NEWMAN has publicly described:

> The genesis happened three years ago in my office in Wichita, Kansas, where we discussed the fact that we already knew that Planned Parenthood was breaking the law in trafficking in human organs after their abortions, and so we decided and set out to go ahead and expose that and create an investigative journalism organization that would embed ourselves into the abortion cartel and to catch them off script.

57. As NEWMAN further described: "we began discussing all of the various techniques that he [DALEIDEN] would have to use in order to infiltrate Planned Parenthood.... Alternate identities had to be set up. Alternate companies had to be set up."

58. NEWMAN, DALEIDEN and their UNKNOWN CO-CONSPIRATORS set up two false entities: CMP and BIOMAX. On March 7, 2013, Defendants formed CMP as a California corporation.

59. In its Articles of Incorporation – filed with the California Secretary of State – Defendants state that CMP is a "nonpartisan" organization and that "no substantial part of the activities of the Corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation." CMP made similarly false representations in seeking tax-exempt status with the IRS. In claiming tax-exempt status, DALEIDEN swore under penalty of perjury that CMP does not "attempt to influence legislation." This was false: CMP's website home page advocates for Congress to take legislative action to defund Planned Parenthood. CMP also falsely identified itself as a not-for-profit under the IRS's category for "Diseases, Disorders, Medical Disciplines: Biomedicine, Bioengineering." There is a different IRS category that actually applies to anti-abortion groups like CMP.

60. CMP's application for tax exempt status provides an address of 5325 Elkhorn Blvd., Sacramento CA – which is nothing more than a Postal Annex+ mailbox rental. Postal Annex+ advertises its rental mailboxes as giving its customers a "professional appearance" rather than the appearance of a "here today, gone tomorrow … operation."

61. On October 11, 2013, Defendants formed BioMax Procurement Services, LLC, as a

16

California corporation purporting to be a "tissue procurement company." Defendants then proceeded to develop fictitious materials designed to deceive Plaintiffs and others into thinking that BIOMAX was a legitimate company that "provides tissue and specimen procurement for academic and private bioscience researchers" and had a "commitment [] to provide the highest-quality specimens with efficient, professional service to facilitate world-changing discoveries." They made up a fictitious CEO, "Susan Tennenbaum," describing her in BIOMAX's advertising materials as a "passionate patient advocate and entrepreneur with a vision to bridge the gap between routine medical practice and cutting edge medical research" and as someone with experience working "in surgical offices and patient advocacy." "Susan Tennenbaum" is not a real person, but was a role played by MERRITT. MERRITT presented a fake "Susan Tennenbaum" California driver's license to Plaintiffs' staff and others on multiple occasions.

62.     In order to gain access to private Planned Parenthood and NAF conferences, as well as to Planned Parenthood meetings and facilities, Defendants aggressively and fraudulently promoted BIOMAX as a legitimate tissue procurement organization. On information and belief, NEWMAN and DALEIDEN recruited and trained more conspirators to pass themselves off as legitimate officers and employees of BIOMAX. DALEIDEN told a Fox News reporter that "[t]here was a lot of intensive training and preparation that went into preparing them to actually go undercover." Defendants ultimately recruited at least four co-conspirators, some of whom used fake names, including "Susan Tennenbaum," "Brianna Allen," and "Rebecca Wagner."

63.     Throughout the course of this conspiracy, Defendants have received support and direction from the anti-abortion group Life Legal Defense Foundation ("LLDF"). Catherine Short, one of the founders of LLDF, served as CMP's registered agent since CMP's inception. On July 14, 2015, the day Defendants went public with their conspiracy with the posting of the first defamatory video and public statement, LLDF issued a press release bragging that it was "finally able to reveal its support of a two-year undercover operation," and took credit for "having been with the project from its inception" and having played an "active, essential role" in the scheme and referred to Planned Parenthood doctors as "contract killers."

**Defendants Fraudulently Gain Access To The 2014 San Francisco NAF Conference**

64.     Beginning in or about September 2013, Defendants moved forward with their fraudulent scheme. MERRITT and unknown co-conspirator "Brianna Allen," posing as representatives of BIOMAX, registered under phony names and attended the Reproductive Health Professionals Conference in Denver, Colorado. MERRITT and her "colleague" surreptitiously taped at least one Planned Parenthood affiliate staff member from Plaintiff PPPSW. MERRITT and unknown co-conspirator "Brianna Allen" registered for the conference using a credit card belonging to "Sofia Mireles."

65.     Shortly thereafter, in November 2013, Defendants (through unknown co-conspirator "Brianna Allen") contacted the National Abortion Foundation ("NAF") to request Exhibitor space at its April 2014 annual conference in San Francisco. NAF is a membership organization whose mission is to ensure women's access to safe, legal abortion.

66.     The NAF conference has been held annually since 1977, and provides unique opportunities for abortion and other reproductive health care providers to meet, learn about the latest research, and to network without fear of harassment, intimidation, and violence. Companies that apply to exhibit at NAF's annual meetings include health care product manufacturers, service providers, and reproductive rights advocates. Attendees include clinicians, facility administrators, counselors, researchers, educators, and thought leaders in the pro-choice field, who have long-standing commitments to health care, women's rights, and reproductive choice. Staff from PPFA and Planned Parenthood affiliates regularly attend the NAF annual conferences.

67.     Given the horrific history of violence and intimidation perpetrated by anti-abortion extremists against abortion providers, NAF has developed extraordinary security measures for its conferences, including:

- NAF's full-time security staff are involved in the selection process for hotels in order to ensure that conference sites meet strict security guidelines.

- NAF staff meet with hotel management, hotel security, local law enforcement, FBI and/or ATF agents, and fire/rescue personnel to discuss security issues potential threats, and the security needs of NAF members.

FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

- NAF provides on-site security teams at its conference, and conducts strict security checks of identification badges to ensure that no unauthorized individuals gain access to conference events.

- NAF has strict security requirements designed to ensure that the dates and locations of their meetings remain private.

- NAF requires attendees to show photo identification before gaining access to the annual conference.

- NAF requires all attendees and exhibitors to sign strict confidentiality agreements. Exhibitors must sign written agreements representing that they are legitimate organizations with goals that are consistent with those of NAF, and promising to hold any information received at the meeting in confidence.

- NAF requires all attendees to sign a non-disclosure agreement that prohibits making video, audio, photographic, or other recordings of the meetings or discussions at the conference.

68.     DALEIDEN, MERRITT, and an UNKNOWN CO-CONSPIRATOR lied their way into the NAF conference in San Francisco, which was held from April 5 to April 8, 2014. They attended as Exhibitors, posing as BIOMAX representatives "Susan Tennenbaum," CEO (*i.e.*, MERRITT), "Brianna Allen," Tennenbaum's assistant, and "Robert Sarkis," Vice President for Operations (*i.e.*, DALEIDEN). They knowingly entered into NAF's confidentiality and non-disclosure agreements, described above, without any intention to comply with those agreements and, on information and belief, took surreptitious video and audio recordings of conference attendees without their knowledge or consent.

69.     On information and belief, Defendants intended to – and did – exploit their fraudulently obtained access to the NAF conference to develop "professional" relationships and secure connections for future efforts to infiltrate Planned Parenthood. Defendants aggressively and specifically targeted multiple Planned Parenthood doctors, from California and elsewhere, fraudulently promoting themselves as legitimate attendees. For example, Defendants aggressively pursued PPFA Senior Director of Medical Research, Dr. Deborah Nucatola, forging on false pretenses a relationship that they would later leverage to secure additional meetings with her and

reproductive health care accessible to all women: more than half of PPFA's affiliates make the website available to their patients to book online appointments. Over 60 million people access the website annually to gain valuable information about their reproductive health care. The hack rendered the PPFA website inoperable for several weeks, cutting off the health centers that rely on the PPFA website network to schedule and coordinate patient care appointments, and preventing women and men from accessing health care information. Plaintiffs lost income from the loss of ability to serve clients over those days and had to expend significant IT resources to bring the website back and to maintain it against further attack.

145. Defendants' actions have also led to the loss of vendors, who have terminated their relationship with Plaintiffs following the release of the videos. Furthermore, the entirely meritless controversy and the violence that has accompanied, and was intended to accompany, the controversy has made it difficult for some affiliates to hire staff.

146. In the aftermath of the release of Defendants' videos, five separate Congressional Committees, and politicians in numerous states, have commenced investigations of Planned Parenthood's operations. Each of these investigations has required Plaintiffs to expend considerable hours researching the allegations, preparing for interviews with federal and state officials, and responding to requests for documents. While these "investigations" are all meritless and politically motivated, they have required thousands of hours of Plaintiffs' time, hours that should have been spent on improving healthcare for women across the country.

147. Defendants' release of videotapes and transcripts (or any other confidential information) obtained through fraudulent representations, and their intrusions into PPFA and other private reproductive health care conferences and private meetings with PPFA and affiliate personnel, have damaged Plaintiffs and their staff in incalculable and irreversible ways.

**FIRST CLAIM FOR RELIEF**
**(VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT,**
**18 U.S.C. §§ 1962(c) and 1962(d))**
**(By All Plaintiffs Against All Defendants)**

148. Plaintiffs incorporate and reallege paragraphs 1 through 147, inclusive, as though fully set forth herein.

149.     Plaintiffs are each a "person" as that term is defined in 18 U.S.C. § 1961(3).  At all relevant times, in violation of 18 U.S.C. § 1962(c), Defendants conducted the affairs of an associated-in-fact enterprise identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.  Furthermore, in violation of 18 U.S.C. § 1962(d), Defendants knowingly agreed and conspired to conduct or participate in the conduct of said enterprise's affairs through a pattern of racketeering activity.

150.     The Enterprise had a hierarchical decision-making structure headed by NEWMAN and DALEIDEN.  Both of these individuals directed how the scheme was to be perpetrated. While the full extent of the conspiracy and its participants is not yet known, for purposes of this claim, the RICO enterprise is an associated-in-fact enterprise consisting of, at minimum, Defendants CMP, BIOMAX, DALEIDEN, NEWMAN, RHOMBERG, CRONIN, MERRITT, LOPEZ, and UNKNOWN CO-CONSPIRATORS "Brianna Allen," "Rebecca Wagner," and "Sofia Mireles" (the "Enterprise").  The purpose of the Enterprise was to perpetrate a scheme targeting Plaintiffs and other Planned Parenthood affiliates in order to disrupt and burden their core mission to provide safe quality reproductive health care to women and to demonize them in a professed attempt to "close all abortion clinics" and to "stop the infliction of human misery upon vulnerable women and their innocent babies."  The fraudulent and illegal actions undertaken by the Enterprise were intended to inflict the type of injury and harm suffered by Plaintiffs.

151.     The Enterprise is an ongoing and continuing business organization consisting of corporations, supposed charitable trusts, and individuals that are and have been associated for the common or shared purposes of, among other things, (1) defrauding Plaintiffs to unlawfully obtain access to PPFA conferences and affiliate offices and health centers; (2) compromising Plaintiffs' and their employees' ability and right to hold and attend secure and confidential meetings; (3) carrying out an illegal and surreptitious videotaping campaign; (4) publishing deceptively edited and grossly misleading videos and accusing Plaintiffs of being a "criminal" organization; (5) placing Plaintiffs' staff and health care providers in personal jeopardy through publication of their images in grossly misleading and widely disseminated videos; (6) unlawfully burdening Plaintiffs' staffs' constitutional right to freedom of association; and (7) unlawfully burdening the

constitutional right of women to access safe, legal abortion in the United States.

152. According to DALEIDEN's and NEWMAN's own statements, the Enterprise has operated for a period of two-and-a-half to three years, continues to operate, and has taken hundreds if not thousands of hours of videotape of individuals who provide or support the provision of safe, legal abortion, including physicians. The Enterprise, acting through DALEIDEN, has released numerous surreptitiously taken and deceptively edited videotapes, and has threatened and continues to threaten the release of more such videotapes.

153. At all relevant times, on information and belief, DALEIDEN, CMP, BIOMAX, NEWMAN, RHOMBERG, CRONIN, MERRITT, LOPEZ, and the UNKNOWN CO-CONSPIRATORS were aware of each other's conduct in furtherance of the scheme, and were knowing and willing participants in that conduct. By NEWMAN's and DALEIDEN's own admissions, they discussed and agreed upon what "techniques" they would use.

154. The Enterprise affected interstate commerce by registering a fraudulent business and a purported charitable institution, by purchasing the right to set up an exhibit booth at PPFA conferences, by registering as an Exhibitor and paying the associated fees, and by communicating with and traveling to multiple Planned Parenthood affiliate offices and health centers. The Enterprise further affected interstate commerce because it has diverted Plaintiffs from their core mission of providing quality reproductive health care services and forced Plaintiffs to divert resources to protect their health centers and staff from threats to their personal safety and related harm and combat the misrepresentations disseminated by Defendants.

155. Defendants participated in the conduct of the affairs of the Enterprise, and not just their own affairs. DALEIDEN has given press interviews in which he boasted about the scheme and his, CMP's, and BIOMAX's knowing and willing participation in the scheme.

156. Defendants exerted control over the Enterprise and, in violation of section 1962(c) of RICO, Defendants have conducted or participated in the affairs of those RICO enterprises in at least the following ways:

      a. By setting up a sham company – BIOMAX – which falsely held itself out as a legitimate tissue procurement organization;

b.  By setting up a sham "nonprofit" and "nonpartisan" charitable trust, CMP;

c.  By creating, transferring, and maintaining false identities and documentation to obtain access to PPFA and other reproductive health care organization meetings and Planned Parenthood affiliate offices and health centers;

d.  By creating and disseminating false promotional materials for a fake tissue procurement company;

e.  By making false and misleading representations to Plaintiffs and their staff concerning BIOMAX and the reasons its agents wanted to attend PPFA and other reproductive health care organization meetings and to visit to Planned Parenthood affiliate offices and health centers; and

f.  By engaging in an ongoing campaign to surreptitiously videotape Plaintiffs' staff in violation of law.

157.  The Enterprise engaged in a pattern of racketeering activity, consisting of, among other crimes, mail and wire fraud violations.  Defendants have publicly boasted about the illegal nature and pervasiveness of the scheme.  The racketeering activities of DALEIDEN, CMP, BIOMAX, NEWMAN, RHOMBERG, CRONIN, MERRITT, LOPEZ, and their UNKNOWN CO-CONSPIRATORS amounted to a common course of conduct, with similar pattern and purpose.  Each separate use of the U.S. mails and/or interstate wire facilities employed by the co-conspirators was related, had similar intended purposes, involved similar participants and methods of execution, and had the same results affecting the same victims, including Plaintiffs.

158.  Plaintiffs do not and cannot now know the full extent of the conspiracy.  At a minimum, however, Defendants used the U.S. mails and interstate wire facilities for the purpose of executing their unlawful scheme, including, *inter alia*, the following, all of which are identified with specificity:

- September 15, 2013 wire transmission of registration for Association of Reproductive Health Professionals Conference in Denver and the associated payment of registration fees through a credit card;

- September 16, 2014 wire transmission of the Exhibitor registration for the PPFA North American Forum on Family Planning, and the associated payment of registration fees through a credit card that, on information and belief, was obtained

45

under a phony name;

- October 17, 2014 email from BIOMAX representative to Planned Parenthood affiliate staff – sending fraudulent proposal for tissue donation partnership, with phony BIOMAX brochure and "welcome letter" containing phony description of BIOMAX;

- November 5, 2014 email from BIOMAX representative to PPMM staff requesting a site visit in Arizona;

- December 11, 2014 email from BIOMAX representative to Planned Parenthood affiliate staff – sending fraudulent proposal for tissue donation partnership, with phony BIOMAX brochure and "welcome letter" containing phony description of BIOMAX;

- February 6, 2015 wire transmission of the Exhibitor registration for the PPFA Planned Parenthood MeDC Conference, and the associated payment of registration fees through a credit card;

- February 11, 2015 email from BIOMAX representative to Planned Parenthood staff – sending fraudulent proposal for tissue donation partnership, with phony BIOMAX biospecimen materials transfer agreement;

- February 17, 2015 wire transmission of the Exhibitor registration for the PPFA National Conference, and the associated payment of registration fees through a credit card;

- February 19, 2015 email from BIOMAX representative to Planned Parenthood staff requesting a site visit of a Planned Parenthood health center where surgical procedures are performed to "gauge flow and logistics in the path lab";

- April 14, 2015 email from BIOMAX representative to Planned Parenthood staff requesting a site visit at PPPSGV;

- March 6, 2015 introductory letter from "Susan Tennenbaum" to Planned Parenthood staff about BIOMAX, including phony representations about BIOMAX's business and purpose;

- June 3, 2015 email from BIOMAX representative to Planned Parenthood staff requesting lunch or dinner meeting to discuss logistics for moving forward with a "partnership" for tissue collection in Phoenix, Arizona; and

- Each other email alleged in this Complaint.

159. The foregoing emails and wire transmissions were sent for the purpose of deceiving and defrauding Plaintiffs into believing that BIOMAX was a legitimate fetal procurement organization whose interests were aligned with those of Plaintiffs, to fraudulently obtain confidential and proprietary information related to Planned Parenthood and other reproductive health care organization meetings, to obtain the identities of Plaintiffs' members, to purchase exhibit booth space in, and access to, Planned Parenthood and other reproductive health care

46

organization meetings, and to obtain access to Planned Parenthood clinics and offices for private meetings with Planned Parenthood staff through fraud and deceit. In sending the foregoing false and fraudulent emails and wire transmissions, Defendants intended Plaintiffs to rely on their false and fraudulent misrepresentations, and Plaintiffs did rely on those misrepresentations in permitting Defendants access to their meetings.

160. In addition, on information and belief, Defendants also produced, transferred, and possessed with the intent to use, false identification documents in order to gain admission to PPFA and other reproductive health care organization meetings and Planned Parenthood affiliate offices and health centers in 2014 and 2015 in violation of 18 U.S.C. § 1028(a), and conspired to do the same in violation of 18 U.S.C. § 1028(f). Specifically, BIOMAX representatives – including DALEIDEN and MERRITT – presented fake photo IDs to gain access to private meetings where Plaintiffs' staff would be in attendance, and to gain access to Planned Parenthood affiliate offices and health centers for private meetings with Planned Parenthood staff. On information and belief, Defendants produced these false photo identifications, and also knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person – to wit, fake photo identification of DALEIDEN's high school classmate Brianna Allen – with the intent to violate federal and state law.

161. Plaintiffs have been injured in their business and property by reason of these violations. Plaintiffs have incurred financial losses as a direct result of Defendants' fraudulent conduct, including the costs of hiring additional security to protect Plaintiffs' offices, clinics, and staff; costs related to the hacking into PPFA's website, which is used by patients of affiliates nationwide to make appointments online; costs related to responding to multiple state and federal investigations and inquiries; costs related to loss of vendors; costs related to loss of opportunity to treat clients; and the costs of the vandalism, arson, and other incidents that have physically damaged Planned Parenthood facilities and disrupted the delivery of care to patients, all stemming from Defendants' campaign of lies. Planned Parenthood was the primary intended victim of Defendants' multi-year scheme, and the injuries suffered by Plaintiffs were both foreseeable and a natural consequence of Defendants' actions.

162.     Under the provisions of section 1964(c) of RICO, each of the Defendants is jointly and severally liable for three times the damages that Plaintiffs have sustained, plus the costs of bringing this lawsuit, including reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(VIOLATION OF 18 U.S.C. § 2511)**
**(By All Plaintiffs Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

163.     Plaintiffs incorporate and reallege paragraphs 1 through 162, inclusive, as though fully set forth herein.

164.     In violation of 18 U.S.C. § 2511(a) and (b), Defendants intentionally intercepted the oral communications of Plaintiffs and their staff at conferences and private meetings as described herein.  Defendants also intentionally procured other people to intercept, and to endeavor to intercept, such oral communications.  On information and belief, Defendants did so by using concealed electronic devices that make video and audio recordings that transmit such recordings through a wire or by radio, and these devices were transported through interstate commerce when purchased by Defendants and/or when transported to Plaintiffs' private conferences, to private meetings with Plaintiffs' staff members, and to secure Planned Parenthood facilities.

165.     On information and belief, Defendants endeavored to use and disclose the contents of the intercepted oral communications, in violation of 18 U.S.C. § 2511(c) and (d).  They did so with knowledge that the information was obtained through the interception of protected oral communications.

166.     Defendants' use of devices to intercept oral communications in Colorado and Texas, discussed above, took place inside the private office and clinical spaces of Planned Parenthood health centers – that is, on the premises of a business or other commercial establishment the operations of which affect interstate or foreign commerce.  Defendants intercepted oral communications with the purpose of obtaining information relating to Planned Parenthood's operations.

167.     Plaintiffs reasonably and justifiably expected that their oral communications, and

48

those of their staff, would not be subject to interception. 18 U.S.C. § 2510(2).

168. Neither Plaintiffs, nor any of Plaintiffs' staff, consented to Defendants' recording of their oral communications.

169. In surreptitiously intercepting the communications, Defendants acted with the purpose and intent of committing criminal and tortious acts. Such criminal and tortious acts include, but are not limited to:

a. Defendants intercepted the communications with the purpose of furthering their conspiracy to violate the federal RICO statute, 18 U.S.C. §§ 1962(c) and 1962(d) (as described in the first claim for relief); and

b. Defendants intercepted the communications with the purpose of invading the privacy of Plaintiffs' staff.

170. Plaintiffs have been damaged by Defendants' violations.

171. As "persons" (as used in 18 U.S.C. § 2520 and 18 U.S.C. § 2510(6)) whose oral communications were intercepted in violation of 18 U.S.C. § 2511, Plaintiffs are authorized to seek injunctive relief, civil damages (including both actual and statutory damages), punitive damages, and reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 2520.

**THIRD CLAIM FOR RELIEF**
**(CIVIL CONSPIRACY)**
**(By All Plaintiffs Against All Defendants)**

172. Plaintiffs incorporate and reallege paragraphs 1 through 171, inclusive, as though fully set forth herein.

173. Defendants and Defendants' co-conspirators knowingly and willfully conspired and/or agreed among themselves to defraud Plaintiffs and to injure Plaintiffs with a pattern of fraudulent and malicious conduct, including but not limited to:

a. By setting up a sham company – BIOMAX – which falsely held itself out as a legitimate tissue procurement organization;

b. By making false and misleading promises and representations to Plaintiffs concerning BIOMAX and the reasons its agents wanted to attend PPFA and other reproductive health care organization meetings and conferences, and to make visits to Planned Parenthood

49

affiliate offices and health centers;

        c.     By sending false information to Plaintiffs and their employees about BIOMAX;

        d.     By setting up a false website;

        e.     By engaging in an ongoing campaign to surreptitiously videotape Plaintiffs' staff in violation of law;

        f.     By creating, transferring, and maintaining false identities and documentation to obtain access to PPFA and other reproductive health care organization meetings and the offices and clinics of Planned Parenthood affiliates.

174.    As a proximate result of the wrongful acts herein alleged, Plaintiffs have diverted and expended substantial resources to address the consequences of Defendants' fraud, thereby suffering pecuniary loss.

175.    Defendants' ongoing conspiracy to defraud, as described above, presents a continuing threat to Plaintiffs. If Defendants are allowed to continue their wrongful acts, Plaintiffs will suffer further irreparable injury and loss.

176.    Defendants and Defendants' co-conspirators did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and the above-alleged agreement. In doing the things herein alleged, Defendants acted with malice, oppression, willfulness, and wantonness with the intent to cause injury to Plaintiffs, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

**FOURTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**
**(By PPFA Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

177.    Plaintiffs incorporate and reallege paragraphs 1 through 176, inclusive, as though fully set forth herein.

178.    On September 16, 2014, on February 6, 2015, and again on February 17, 2015, Defendants DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and "Brianna Allen" entered into written Exhibitor Agreements with PPFA related to registration for the PPFA conferences in

Miami, Orlando, and Washington, D.C., respectively. Defendants represented that BIOMAX was a legitimate biological specimen procurement organization. Defendants agreed that their contribution to the conferences would be useful to attendees and beneficial to the interests of their clients and patients and that they would comply with all applicable laws related to fraud, abuse, privacy, and confidentiality.

179.    Defendants have breached these agreements. Contrary to the Exhibitor Terms and Conditions to which Defendants agreed:  (a) BIOMAX's participation at the PPFA conferences was not consistent with Plaintiffs' purposes and was not useful to attendees and beneficial to the interests of their clients and patients; (b) Defendants misrepresented who they were in order to fraudulently forge "professional" contacts, and to make video, audio, photographic, or other recordings with the intent of harming Plaintiffs; and (c) Defendants violated numerous laws related to fraud, abuse, privacy, and confidentiality.

180.    Plaintiffs have performed all of the conditions of the agreements on their part, and performed in accordance with the terms of the agreements.

181.    As a direct result of Defendants' breaches of their agreements with PPFA, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**
**(By PPFA, PPNC, PPPSW, PPMM, PPOSB,  PPGC, and PPCFC Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

182.    Plaintiffs incorporate and reallege paragraphs 1 through 181, inclusive, as though fully set forth herein.

183.    On February 5, 2014 and again on March 25, 2015, Defendant MERRITT entered into written Exhibitor Agreements with NAF in which she promised that BIOMAX was a biological specimen procurement company, that BIOMAX's exhibit for the annual meetings would be consistent with NAF's purposes, that BIOMAX would identify and display its services truthfully and accurately, and that any information disclosed orally or visually at the annual

51

meeting would not be disclosed to any third party absent NAF's written consent.

184.    On April 5, 2014 and again on April 18, 2015, Defendants DALEIDEN, MERRITT, LOPEZ, and "Brianna Allen" signed non-disclosure agreements in which they promised not to make video, audio, photographic, or other recordings at the NAF annual meetings, that they would not disclose any information learned at NAF's annual meetings to third parties absent NAF's consent, and that they would only use information learned at NAF's annual meetings in order to enhance the quality and safety of services provided by NAF members and other annual meeting participants.

185.    Defendants were aware that the purpose of these agreements was to protect NAF and any confidential information shared at its meetings, and to protect the safety and security of NAF's staff, its members, and the attendees at NAF's annual meetings.  Attendees at NAF's annual meetings, including Plaintiffs are intended third party-beneficiaries to each and every contract described in the preceding paragraphs.

186.    Defendants have breached these agreements. Contrary to their written Exhibitor Agreements, BIOMAX is not a biological specimen procurement company, BIOMAX's exhibit for the annual meetings was not consistent with NAF's purposes, and BIOMAX did not identify itself or its services truthfully and accurately.  Contrary to their written Exhibitor Agreements, on information and belief, Defendants have disclosed information orally or visually at the annual meetings to third parties without NAF's written consent.  Contrary to their written agreements, on information and belief, Defendants did make video, audio, photographic, or other recordings at the NAF annual meetings, have disclosed information learned at NAF's annual meetings to third parties without NAF's consent, and have not used information learned at NAF's annual meetings in order to enhance the quality and safety of services provided by NAF members and other annual meeting participants.

187.    On information and belief, NAF has performed all of the conditions of the agreements on its part, and performed in accordance with the terms of the agreements.

188.    As a direct result of Defendants' breaches of their agreements with NAF, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on

security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.

**SIXTH CLAIM FOR RELIEF**
**(TRESPASS)**
**(By PPFA, PPGC, PPCFC, and PPRM Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

189.    Plaintiffs incorporate and reallege paragraphs 1 through 188, inclusive, as though fully set forth herein.

190.    PPFA possesses a right to exclusive use of the real property it leases for Planned Parenthood meetings. PPGC, PPCFC, and PPRM possess rights to exclusive use of the real property they lease or own as office and clinic space.

191.    As alleged herein, Defendants intentionally entered or caused another person to enter the aforementioned property that was in PPFA, PPGC, PPCFC, and/or PPRM's possession.

192.    As alleged herein, Defendants fraudulently induced PPFA's conditional consent to permit Defendants to attend PPFA conferences. PPFA conditioned its consent on Defendants' agreement that their participation in the PPFA conferences would be useful to attendees and beneficial to the interests of Plaintiffs' clients and patients, and that Defendants would comply with all applicable laws related to fraud, abuse, privacy, and confidentiality. On information and belief, Defendants subsequently exceeded the scope of Plaintiffs' consent to enter by knowingly and intentionally, surreptitiously videotaping Plaintiffs' staff at those meetings without their knowledge or consent. Defendants' participation at the PPFA conferences was not consistent with Plaintiffs' purposes and was not useful to attendees and beneficial to the interests of their clients and patients, thereby further exceeding Plaintiffs' conditioned consent.

193.    Defendants fraudulently obtained PPGC, PPCFC, and PPRM's conditional consent to enter their facilities by misrepresenting their identities and purpose. PPGC and PPCFC conditioned their consent on Defendants' promise to keep all information confidential. PPGC and PPRM both conditioned their consent on Defendants' false representations that they were representatives of a fetal tissue procurement company and that they sought entry to discuss fetal tissue donation. Defendants subsequently exceeded the scope of their consent to enter by

53

1  knowingly, intentionally, and surreptitiously videotaping their staff at those meetings without their
2  knowledge or consent and by engaging in conduct designed to disrupt, not further, PPGC and
3  PPRM's businesses.

4      194.   Defendants' knowing and intentional conduct alleged herein, which exceeded the
5  scope of PPFA, PPGC, PPCFC, and PPRM's conditioned consents to enter their meetings and
6  clinics, constitutes trespass.

7      195.   As a result of Defendants' trespass, PPFA, PPGC, PPCFC, and PPRM have
8  suffered – and continue to suffer – economic harm and irreparable harm that includes, but is not
9  limited to: being forced to divert resources to combat Defendants' misrepresentations in
10 intentionally distorted videos taken while trespassing on Plaintiffs' property; and dealing with
11 security threats, property damage, governmental investigations, harassment and intimidation,
12 online hacking, and other harms that have been the direct result of Defendants' illegal conduct.

13     196.   Defendants' actions constitute malice and oppression, as defined under California
14 Civil Code § 3294(c), as Defendants fraudulently induced Plaintiffs into gaining access to
15 Plaintiffs' meetings.  Defendants' actions further constitute intentional misconduct or gross
16 negligence, as defined under Fla. Stat. § 768.72;  malice and oppression, as defined under the laws
17 of the District of Columbia; malice or willful and wanton conduct, as defined under Colorado Rev.
18 Stat. Ann. § 13-21-102; and malice or gross negligence, as defined under Texas Stat. & Codes
19 Ann. § 41.003.  Punitive damages are appropriate to punish Defendants and deter others from
20 engaging in similar misconduct.

21
22 **SEVENTH CLAIM FOR RELIEF**
**(VIOLATIONS OF CALIF. BUS. & PROFS. CODE § 17200, *ET SEQ.***
**FOR UNLAWFUL, UNFAIR, AND FRAUDULENT ACTS)**
23 **(By All Plaintiffs Against All Defendants)**

24     197.   Plaintiffs incorporate and reallege paragraphs 1 through 196, inclusive, as though
25 fully set forth herein.

26     198.   As alleged herein, Defendants have committed "unlawful" business acts as defined
27 by California Business and Professions Code § 17200, by:  (1) violating 18 U.S.C. § 1962(c); (2)
28 violating 18 U.S.C. § 2511; (3) violating California Penal Code §§ 632 and 634; (4) violating §

54

10-402 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code; and (5) violating Section 934 Title XLVII of the Florida Criminal Procedure Law.

199.    Plaintiffs reserve the right to allege other violations of law which constitute unlawful business practices.  Defendants have committed "unfair" and "fraudulent" acts of unfair competition, as defined by California Business and Professions Code § 17200, by engaging – and continuing to engage – in conduct that is likely to deceive members of the public. This conduct includes, but is not limited to: (1) conspiring to defraud and defrauding the public and Plaintiffs for the purpose of gaining access to Plaintiffs' conferences and their staff; and (2) secretly taping Plaintiffs' staff members at conferences and meetings.  Defendants engaged in such conduct with the intent of harassing and intimidating Plaintiffs, their staff, and patients, discrediting life-saving, legal fetal tissue donation, and undermining Planned Parenthood's mission to provide essential reproductive health care to millions of patients across the United States.

200.    An action for injunctive relief and restitution is specifically authorized under California Business and Professions Code § 17203.

201.    As a result of Defendants' "unlawful," "unfair," and "fraudulent" acts, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.  Plaintiffs have thus suffered injury in fact and have lost money and property as a direct result of Defendants' unlawful, unfair, and fraudulent conduct.

202.    Defendants' unlawful, unfair, and fraudulent conduct is ongoing.  They have publicly stated that they "have moles and spies deep inside the abortion cartel," an explicit threat that they intend to continue to engage in unlawful and fraudulent acts meant to harm Plaintiffs through further wrongful invasions and malicious lies.

203.    Defendants' unlawful, unfair, and fraudulent practices, as described above, present a continuing threat to Plaintiffs.  If Defendants are allowed to continue their wrongful acts, Plaintiffs will suffer further irreparable injury and loss.

**EIGHTH CLAIM FOR RELIEF**
**(FRAUDULENT MISREPRESENTATION)**
**(By PPFA, PPGC, PPCFC, and PPRM Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

204.    Plaintiffs incorporate and reallege paragraphs 1 through 203, inclusive, as though fully set forth herein.

205.    Defendants have made numerous false representations to PPFA, PPGC, and PPRM in order to gain access to meetings and clinic or office spaces to which they otherwise never would be permitted.  Defendants created a fictitious company and presented fake identifications to infiltrate and gain access to PPFA's private conference and PPGC's and PPCFC's facilities.

206.    When Defendants made these representations, Defendants knew them to be false.  Defendants made these representations with the intent to deceive and defraud PPFA, PPGC, and PPRM and to induce PPFA, PPGC, PPCFC, and PPRM to act in reliance on the representations in the manner herein alleged, or with the expectation that PPFA, PPGC, PPCFC, and PPRM would so act.

207.    At the time Defendants made these representations and at the time of the actions herein alleged, PPFA, PPGC, PPCFC, and PPRM were not aware of the falsity of the Defendants' representations and believed them to be true.

208.    In reliance on Defendants' misrepresentations, PPFA, PPGC, PPCFC, and PPRM provided Defendants with access to private conferences, clinics, and office space.

209.    As a result of Defendants' wrongful acts, PPFA, PPGC, PPCFC, and PPRM have suffered and/or will suffer economic harm and irreparable harm caused by the improper acquisition, use, and disclosure of Plaintiffs' confidential information, including harm to the safety, security, and privacy of Plaintiffs and their staff, and harm caused by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.  If Defendants are allowed to continue their wrongful acts, PPFA, PPGC, PPCFC, and PPRM will suffer further irreparable injury and loss.

210.    Defendants' actions constitute malice and oppression, as defined under California

Civil Code § 3294(c), as Defendants fraudulently induced PPFA into gaining access to PPFA's meetings. Defendants' actions further constitute intentional misconduct or gross negligence, as defined under Fla. Stat. § 768.72; malice and oppression, as defined under the laws of the District of Columbia; malice or willful and wanton conduct, as defined under Colorado Rev. Stat. Ann. § 13-21-102; and malice or gross negligence, as defined under Texas Stat. & Codes Ann. § 41.003. Punitive damages are appropriate to punish Defendants and deter others from engaging in similar misconduct.

**NINTH CLAIM FOR RELIEF**
**(VIOLATION OF CALIFORNIA PENAL CODE § 632)**
**(By PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, PPCFC and PPRM Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

211. Plaintiffs incorporate and reallege paragraphs 1 through 210, inclusive, as though fully set forth herein.

212. On information and belief, DALEIDEN and his co-conspirators intentionally recorded confidential communications made during the NAF 2014 annual conference in San Francisco. Staff representatives from PPFA, PPPSW, PPMM, PPOSBC, PPNC, PPGC, PPCFC and PPRM attended the NAF 2014 annual conference in San Francisco.

213. DALEIDEN and his co-conspirators also intentionally recorded confidential communications made during private meetings with PPFA and Planned Parenthood affiliate staff members in which PPFA and Planned Parenthood affiliate staff members had a reasonable expectation of privacy, in violation of California Penal Code § 632.

214. Plaintiffs and their staff had a reasonable expectation of privacy regarding their communications during the 2014 NAF annual meeting. Their expectation was reasonable because: (1) all attendees at the meeting, including Defendants, were required to sign non-disclosure agreements with confidentiality provisions prior to entering the meeting and all attendees received and were required to wear badges demonstrating that they had signed such agreements; (2) NAF had in place a Security Program to ensure that communications concerning and made during the annual meeting would be confidential and restricted to NAF members and trusted others; and (3) the nature and subject matter of the conferences were highly sensitive.

215.    Defendants' recordings of Plaintiffs' staff were made without Plaintiffs' consent or the consent of their staff.

216.    As a direct result of Defendants' wrongful and illegal invasions of privacy, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.

217.    Plaintiffs are authorized by statute to bring a civil action for $5,000 per violation or three times the amount of actual damages, as well as injunctive relief, pursuant to California Penal Code § 637.2.

**TENTH CLAIM FOR RELIEF**
**(VIOLATION OF CALIFORNIA PENAL CODE § 634)**
**(By PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, PCFC, and PPRM Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

218.    Plaintiffs incorporate and reallege paragraphs 1 through 217, inclusive, as though fully set forth herein.

219.    NAF possessed a right to exclusive use of the real property they leased for the 2014 NAF conference held in San Francisco in 2014.

220.    As alleged herein, NAF granted conditional consent to "Robert Sarkis" (Defendant DALEIDEN), "Susan Tennenbaum" (Defendant MERRITT), "Brianna Allen," CMP (through its agents DALEIDEN and MERRITT), and BIOMAX to attend the NAF 2014 conference.

221.    Defendants DALEIDEN, MERRITT, "Brianna Allen," CMP, and BIOMAX exceeded the limited scope of NAF's conditional consent by fraudulently representing their identities and purpose for attending the NAF conference, by failing to hold confidential any information received at the conference, and by making secret video recordings in violation of NAF's non-disclosure agreement.

222.    Defendants' knowing and intentional conduct alleged herein, which exceeded the scope of NAF's conditional consent to enter its conference, constituted a trespass.

223.    On information and belief, Defendants trespassed on NAF's conference for the purpose of violating Penal Code § 632, as alleged herein.

58

224. Plaintiffs were injured by Defendants' violation of Penal Code § 634 and § 632.

225. Plaintiffs are authorized by statute to bring a civil action for $5,000 per violation or three times the amount of actual damages, as well as injunctive relief, pursuant to California Penal Code § 637.2.

**ELEVENTH CLAIM FOR RELIEF**
**(VIOLATION OF SECTION 934 TITLE XLVII OF THE FLORIDA CRIMINAL PROCEDURE LAW)**
**(By All Plaintiffs Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

226. Plaintiffs incorporate and reallege paragraphs 1 through 225, inclusive, as though fully set forth herein.

227. On information and belief, Plaintiffs allege that Defendant DALEIDEN and his co-conspirators intentionally intercepted and/or procured other persons to intercept private oral communications made during the 2015 PPFA Medical Directors Council Conference in Orlando, Florida, and the 2014 PPFA North American Forum on Family Planning Conference in Miami, Florida, in violation of Section 934 of the Florida Criminal Procedure & Corrections Law. Staff from all Plaintiffs attended these conferences.

228. Plaintiffs and their staff had a reasonable expectation of privacy regarding Plaintiffs' communications during the 2015 PPFA Medical Directors Council Conference and the 2014 PPFA North American Forum on Family Planning Conference. Their expectation was reasonable because: (1) all attendees at the meeting, including Defendants, were required to agree to terms and conditions designed to ensure that all conference participants held interests consistent with those of Planned Parenthood and would disclose any conflicts of interest; (2) PPFA had in place security protocols requiring all conference participants to provide legal identification and ensuring that communications concerning and made during the conferences would be confidential and restricted to legitimate conference participants and trusted others; and (3) the nature and subject matter of the conferences were highly sensitive.

229. Defendants' recordings of Plaintiffs' staff's private communications were made without Plaintiffs' staff's consent and/or the consent or authorization of all parties.

230.     As a direct result of Defendants' wrongful and illegal invasions of privacy, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.

231.     Plaintiffs are authorized by statute to bring a civil action for equitable or declaratory relief, actual damages, or liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher, punitive damages, and reasonable attorneys' fees and costs, pursuant to Title XLVII of Florida's Criminal Procedure & Corrections Code § 934.10.

**TWELFTH CLAIM FOR RELIEF**
**(VIOLATION OF § 10-402 OF THE COURTS AND JUDICIAL PROCEEDINGS**
**ARTICLE OF THE MARYLAND ANNOTATED CODE)**
**(By PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, PPCFC, and PPRM Against**
**DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-**
**CONSPIRATORS)**

232.     Plaintiffs incorporate and reallege paragraphs 1 through 231, inclusive, as though fully set forth herein.

233.     On information and belief, Plaintiffs allege that DALEIDEN and his co-conspirators willfully intercepted and/or procured other persons to intercept private oral communications during the 2015 NAF annual meeting in Baltimore, Maryland, in violation of the Maryland Wiretapping and Electronic Surveillance Act, section 10-402 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code.  Staff representatives from PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, PPCFC, and PPRM attended the NAF annual meeting in Baltimore, Maryland.

234.     Plaintiffs and their staff had a reasonable expectation of privacy regarding Plaintiffs' communications during the 2015 NAF annual meeting.  Plaintiffs' expectation was reasonable because: (1) all attendees at the meeting, including Defendants, were required to sign non-disclosure agreements with confidentiality provisions prior to entering the meeting and all attendees received and were required to wear badges demonstrating that they had signed such agreements; (2) NAF had in place a Security Program to ensure that communications concerning

and made during the annual meeting would be confidential and restricted to NAF members and trusted others; and (3) the nature and subject matter of the conferences were highly sensitive.

235.    Defendants' recordings of Plaintiffs' private communications, and those of their staff, at the 2015 NAF annual meeting were made without NAF's consent and/or the consent or authorization of all parties.

236.    As a direct result of Defendants' wrongful and illegal invasions of privacy, Plaintiffs have been damaged, including by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.

237.    Plaintiffs are authorized by statute to bring a civil action for actual damages, or liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher, punitive damages, and reasonable attorneys' fees and costs, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 10-410(a).

**THIRTEENTH CLAIM FOR RELIEF**
**(INVASION OF PRIVACY: INTRUSION UPON A PRIVATE PLACE)**
**(By All Plaintiffs Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

238.    Plaintiffs incorporate and reallege paragraphs 1 through 237, inclusive, as though fully set forth herein.

239.    Plaintiffs present this claim on behalf of their staff.  Plaintiffs have standing to present this claim on behalf of their staff because: (1) their staff would otherwise have standing to sue in their own right; (2) the privacy and safety issues Plaintiffs seek to vindicate on behalf of their staff are central to their core purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual staff members in the lawsuit.

240.    Plaintiffs' staff had an objectively reasonable expectation that the conversations and interactions between participants at the PPFA conferences (in Miami, Orlando, and Washington, D.C.) and the NAF conferences (in San Francisco and Baltimore), would be private and not be covertly recorded by anyone, let alone by representatives from anti-abortion groups, or published to the public at large via the internet.  Those expectations were reasonable because: (1)

61

in order to access the conferences, Defendants represented that BIOMAX was a legitimate biological specimen procurement organization, and that their contribution to the conferences would be useful to attendees and beneficial to the interests of their clients and patients, and that they would comply with all applicable laws related to fraud, abuse, privacy, and confidentiality; (2) all attendees at the meetings, including Defendants, were required to sign terms and conditions or non-disclosure agreements with confidentiality provisions prior to entering the meeting and all attendees received and were required to wear badges demonstrating that they had signed such agreements; (3) NAF had in place a Security Program to ensure that communications concerning and made during the annual meeting would be confidential and restricted to NAF members and trusted others; and (4) the nature and subject matter of the conferences were highly sensitive.

241.    Plaintiffs' staff had an objectively reasonable expectation that the private business conversations they had with DEFENDANTS who were posing as BIOMAX representatives would not be covertly recorded, listened to by anti-abortion activists, or published to the public at large via the internet.  The expectation was reasonable because of the setting in which the conversations took place, the false representations made to the staff members about the purpose of the meeting and the identity of those they met with, and the subject matter of the conversations.

242.    By fraudulently inducing Plaintiffs' consent to permit their attendance at these private conferences and meetings and by surreptitiously videotaping and recording Planned Parenthood staff thereafter, Defendants intentionally intruded upon the privacy of Plaintiffs' staff.

243.    Defendants' intentional intrusion upon the privacy of Plaintiffs' staff would be highly offensive to a reasonable person in light of the malice and oppression underlying Defendants' motives and objectives, the nature of the invasion (covert surveillance by electronic recording devices), Defendants' intrusion by deceit and disregard for the law, the history of violence, harassment, and oppression perpetrated by anti-abortion extremists against anyone connected with abortion and especially abortion providers, and the likelihood that publication of Defendants' video tapes would lead to similar harassment and violence against Plaintiffs' staff. As a result of Defendants' conduct, Plaintiffs' staff have suffered and will continue to suffer irreparable injury.

**FOURTEENTH CLAIM FOR RELIEF**
**(INVASION OF PRIVACY: CALIFORNIA CONSTITUTION ART. I § I)**
**(By PPFA, PPNC, PPPSW, PPMM, and PPOSB Against DALEIDEN, MERRITT, LOPEZ, CMP, BIOMAX, and UNKNOWN CO-CONSPIRATORS)**

244.    Plaintiffs incorporate and reallege paragraphs 1 through 243, inclusive, as though fully set forth herein.

245.    Plaintiffs present this claim on behalf of their staff.  Plaintiffs have standing to present this claim on behalf of their staff because: (1) their staff would otherwise have standing to sue in their own right; (2) the privacy and safety issues Plaintiffs seek to vindicate on behalf of their staff are central to their core purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual staff members in the lawsuit.

246.    Plaintiffs' staff had an objectively reasonable expectation that the conversations and interactions between participants at the PPFA conferences (in Miami, Orlando, and Washington, D.C.) and the NAF conferences (in San Francisco and Baltimore) described herein, would be private from covert electronic recording by representatives from anti-abortion groups. Plaintiffs' staff's expectation was reasonable because: (1) in order to access the conferences, Defendants represented that BIOMAX was a legitimate biological specimen procurement organization, and that their contribution to the conferences would be useful to attendees and beneficial to the interests of their clients and patients, and that they would comply with all applicable laws related to fraud, abuse, privacy, and confidentiality; (2) all attendees at the meetings, including Defendants, were required to sign terms and conditions or non-disclosure agreements with confidentiality provisions prior to entering the meeting and all attendees received and were required to wear badges demonstrating that they had signed such agreements; (3) NAF had in place a Security Program to ensure that communications concerning and made during the annual meeting would be confidential and restricted to NAF members and trusted others; and (4) the nature and subject matter of the conferences were highly sensitive.

247.    Plaintiffs' staff had an objectively reasonable expectation that the private business conversations they had with Defendants who were posing as BIOMAX representatives described herein would not be covertly recorded, listened to by anti-abortion activists, or published to the

FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1  public at large.  The expectation was reasonable because of the setting in which the conversations

2  took place, the false representations made to the staff members, and the subject matter of the

3  conversations.

4      248.  By fraudulently inducing Plaintiffs' consent to attend these private conferences and

5  meetings and by surreptitiously videotaping and recording Planned Parenthood staff thereafter,

6  Defendants intentionally intruded upon the privacy of Plaintiffs' staff.

7      249.  Defendants' intentional intrusion upon the privacy of Plaintiffs' staff would be

8  highly offensive to a reasonable person in light of the malice and oppression underlying

9  Defendants' motives and objectives, the nature of the invasion (covert surveillance by electronic

10  recording devices), Defendants' intrusion by deceit and disregard for the law, the history of

11  violence, harassment, and oppression perpetrated by anti-abortion extremists against anyone

12  connected with abortion and especially abortion providers, and the likelihood that publication of

13  Defendants' video tapes would lead to similar harassment and violence against Plaintiffs' staff.

14  As a result of Defendants' conduct, Plaintiffs' staff have suffered and will continue to suffer

15  irreparable injury.

16  **FIFTEENTH CLAIM FOR RELIEF**

17  **(BREACH OF NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT)**
**(By PPGC and PPCFC Against BIOMAX, DALEIDEN, and MERRITT)**

18      250.  On April 4, 2015 MERRITT, posing as BIOMAX CEO "Susan Tennenbaum,"

19  entered into "A Non-Disclosure And Confidentiality Agreement" ("NDA") with PPGC.  Under

20  the terms of that agreement, BIOMAX, expressly including its representatives, including all

21  employees and officers, promised to maintain PPGC's confidential information, including all

22  written information and all confidential oral information, in strict confidence.  BIOMAX and its

23  representatives further promised not to use the confidential information for any purpose other than

24  for a scientific research program and not to disclose confidential information to any third party.

25  BIOMAX and all of its employees further agreed that in the event that BIOMAX or its

26  representatives breached the agreement, PPGC would be entitled to specific performance as well

27  as such further relief to be granted by a court of competent jurisdiction.

28      251.  Defendants breached the NDA by disclosing confidential oral communications to

64

FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

third parties when they published secretly recorded tapes of conversations with PPGC and PPCFC staff and by using confidential information for a purpose other than the putative research transaction in which BIOMAX, DALEIDEN, and MERRITT falsely claimed interest.

252.    PPGC performed all of the conditions of the NDA in accordance with its terms.

253.    As a result of Defendants' wrongful acts, PPGC has suffered and/or will suffer economic harm and irreparable harm caused by the improper acquisition, use, and disclosure of PPGC's confidential information, including harm to the safety, security, and privacy of PPGC and its staff, and harm caused by being forced to expend additional, extensive resources on security and IT services, property damage, and responding to multiple state and federal investigations and inquiries.  If Defendants are allowed to continue their wrongful acts, PPGC will suffer further irreparable injury and loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

1.    That judgment be entered in favor of Plaintiffs and against Defendants on each and every claim in this Complaint.

2.    Appropriate injunctive relief to which Plaintiffs are entitled, including but not limited to enjoining Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations in active concert or participation with them, from:

- Entering or attempting to enter a PPFA conference or affiliate health center without fully disclosing their true identity, their purpose for seeking entrance, and whether they intend to take any video, audio, photographic, or other recordings once inside; and

- Filming or otherwise recording any private meeting or conversation with Plaintiffs' staff or at a Planned Parenthood affiliate health center facility without the informed consent of all parties being recorded.

3.    Restitution of all monies expended by Plaintiffs as a result of Defendants' unlawful, unfair, and fraudulent business practices as provided by California Business and Professions Code § 17203.

4.    Compensatory damages in such amounts as the Court deems just and proper.

5.     Statutory penalties and damages in such amounts as the Court deems just and proper.

6.     On Plaintiffs' Civil RICO claim and California Penal Code claims, three times the damages Plaintiffs have sustained as a result of Defendants' conduct.

7.     Punitive damages pursuant to applicable state laws.

8.     That the Court award Plaintiffs costs and disbursements for this lawsuit, including for reasonable attorneys' fees as permitted by law.

9.     Such other and further relief as this Court may deem just and proper.

DATED: March 24, 2016         Respectfully submitted,

ARNOLD & PORTER LLP

By:   */s/ Amy L. Bomse*
       Amy L. Bomse

       Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF