UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,                         Civil Action No.: 17-13292
                                      Honorable Linda V. Parker
                      Plaintiff,      Magistrate Judge Elizabeth A. Stafford

v.

PROJECT VERITAS, *et al.*,

                      Defendants.

_____/

**OPINION AND ORDER ON NON-PARTY MOVANT WEINGARTEN'S
MOTION FOR PROTECTIVE ORDER, DEFENDANTS' MOTION
TO COMPEL AND PLAINTIFF'S MOTION TO
<u>COMPEL [ECF NOS. 122, 130, 134]</u>**

## I.    Introduction

This matter arises out of Defendants Project Veritas's (PV) and

Marissa L. Jorge's infiltration of Plaintiff AFT Michigan (AFT MI), the

Michigan affiliate of the American Federation of Teachers, AFL-CIO.  [ECF

No. 72].  Before the Court are three motions: non-party movant Rhonda

Weingarten's motion for protective order [ECF No. 122]; defendants' motion

to compel document production [ECF No. 130]; and AFT MI's motion to

compel discover [ECF No. 134].  The Honorable Linda V. Parker referred

the motions to the undersigned for hearing and determination under 28

U.S.C. § 636(b)(1)(A).  [ECF No. 132; ECF No. 135; ECF No. 143].  The Court held a hearing on June 17, 2020.  For the reasons below, the Court:

- **DENIES** Weingarten's motion for protective order;

- **DENIES** defendants' motion to compel; and

- **GRANTS IN PART AND DENIES IN PART** AFT MI's motion to compel.

## II.    Background

AFT MI alleges that Jorge applied for an internship in spring 2017, representing that she was Marissa Perez and was a University of Michigan student interested in teaching in public schools.  [ECF No. 72, PageID.2038].  AFT MI accepted Jorge as an intern in late May 2017 and it alleges that, in the months that followed, Jorge regularly sought information beyond her assignment, including "detailed information regarding grievances relating to employee discipline"; requesting to attend bargaining sessions; and requesting access to confidential conferences and grievance statuses. [*Id.*, PageID.2039-2040, 2042-2043, 2047].  AFT MI also claims that Jorge impermissibly accessed computers, offices, files, records and secured information.  [*Id.*, PageID.2039-2040, 2042-2043, 2047].

AFT MI's amended complaint says that Jorge used a hidden camera to covertly record a conversation she had with an AFT Michigan staff

2

member in a private office after Jorge solicited information about a teacher discipline matter.  [ECF No. 72, PageID.2041].  PV later published edited portions of the recorded conversation on YouTube in a manner that AFT MI alleges "provided a distorted and false narrative" about its role in assisting a union member.  [*Id.*, PageID.2041-2042].

Many of AFT MI's factual allegations are undisputed.  Defendants admit that Jorge misrepresented who she was when she applied for her internship; that she secretly recorded conversations that were uploaded on YouTube; that she took photos of AFT MI's documents; and that she did these things as part of her relationship with PV.  [ECF No. 150, PageID.3899-3900].

After AFT MI filed its amended complaint, defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which Judge Parker denied in part and granted in part.  [ECF No. 74; ECF No. 104]. Judge Parker rejected defendants' challenge to AFT MI's claim under Michigan's eavesdropping statute, M.C.L. § 750.539c, reasoning that Jorge could be found liable for secretly recording private conversations, including those conversation in which she was a participant.  [ECF No. 104, PageID.2528-2538].  Judge Parker also denied defendants' motion to dismiss AFT MI's claims that Jorge breached her fiduciary duty and duty of

3

loyalty, that Jorge engaged in fraudulent misrepresentation and trespass and that defendants engaged in a civil conspiracy.  [*Id.*, PageID.2541-2543].

Rejecting defendants' argument for dismissal of AFT MI's claim of unlawful interception of oral communications under 18 U.S.C. § 2520, Judge Parker said, "Because Plaintiff has alleged that Jorge recorded private conversations, accessed Plaintiff's staff members' computers, and stole and/or photographed confidential documents, the Court finds that Plaintiff has sufficiently alleged a plausible claim for violations of the Communications Act."  [Id., PageID.2544].  But Judge Parker granted dismissal of AFT MI's claims alleging misappropriation of trade secrets, larceny by trick and violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2710.  [*Id.*, PageID.2538-2539, 2543-2545].

## III.    Analysis

### A. Weingarten's motion for protective order [ECF No. 122]

1.

Non-party Rhonda ("Randi") Weingarten is the president of the AFT National.  [ECF No. 122, PageID.2814].  She moves for a protective order under Federal Rule of Civil Procedure 26(c)(1), asking the Court to limit the scope of the deposition questions to those "relevant to present claims and

4

defenses" and to prohibit defendants' from videotaping her deposition.
[ECF No. 122].

Rule 26(c)(1) allows a party from whom discovery is sought to move for a protective order to protect it from "annoyance, embarrassment, oppression, or undue burden."  "This Rule confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Anderson v. Furst*, No. 2:17-12676, 2019 WL 2284731, at *3 (E.D. Mich. May 29, 2019) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  The movant bears the burden of showing good cause for a protective order.  *Id.*; *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).  "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements."  *Nix*, 11 F. App'x at 500 (citation and quotation marks omitted).

"Good cause cannot be established upon some general or speculative alleged harm."  *Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, at *3 (E.D. Mich. Aug. 4, 2010).  Broad allegations of harm are not enough.  *Am. News & Info. Servs., Inc. v. Rovella*, No. 3:15CV1209(RNC), 2017 WL 3736700, at *2 (D. Conn. Aug. 30, 2017).

5

"Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of substantial embarrassment or harm."  *Am. News & Info. Servs., Inc. v. Rovella*, No. 3:15CV1209(RNC), 2017 WL 3736700, at \*3 (D. Conn. Aug. 30, 2017) (citation and quotation marks omitted).

In support of her motion, Weingarten alleges that she has limited personal knowledge of the underlying facts and that defendants' only motivation for deposing her is to "annoy, embarrass, oppress, and harass [her], and to score political or fundraising points with its constituents."  [ECF No. 122, PageID.2813].  Weingarten asserts that defendants have already broadcasted excerpts from the deposition of David Hecker, the president of AFT MI, as part of PV's promotional and fundraising efforts.  She said that PV has a history of attacking her and that it has promoted her forthcoming deposition.

Defendants counter that AFT National partnered with AFT MI to bring this lawsuit; that AFT National's counsel has participated in the litigation; and that AFT National's involvement included the hiring of forensic and public relations consultants to support the litigation.  [*See, e.g.*, ECF No. 124-2 PageID.2982-2983].  Defendants point out that Weingarten issued a joint statement with Hecker in December 2017 on behalf of both AFT

6

National and AFT MI that said, "*We* will be zealous in seeking full relief and damages the moment" PV president James O'Keefe went public with any information that was illegally obtained from AFT MI.  [ECF No. 124-8, PageID.3000-3001 (emphasis added)].

Weingarten made other statements conveying AFT National's partnership in this litigation in March 2018, May 2018, July 2018 and March 2019.  [*Id.*, PageID.3002-3009].  And in March 2020, Weingarten is quoted in a *New York Times* article as saying, "Let's be clear who the wrongdoer is here: Project Veritas used a fake intern to lie her way into our Michigan office, to steal documents and to spy — and they got caught.  We're just trying to hold them accountable for this industrial espionage."[1]

Given these public statements, the Court rejects Weingarten's allegation that defendants could be motivated to depose her only for the purposes of annoyance, oppression or harassment.  She has asserted her own knowledge of the underlying facts and involvement in this litigation. And while PV may seek to publicize the deposition to portray Weingarten in a negative light, "'[g]ood cause' is not established merely by the prospect of

_____

[1] *See Erik Prince Recruits Ex-Spies to Help Infiltrate Liberal Groups*, https://www.nytimes.com/2020/03/07/us/politics/erik-prince-project-veritas.html (last viewed on July 1, 2020).  Defendants cite this article in their brief opposing Weingarten's motion to for protective order.  [ECF No. 124, PageID.2965, n. 5 & PageID.2970].

negative publicity." *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 487 (S.D.N.Y. 1996).  *See also Roberts v. Shawnee Mission Ford, Inc.*, No. 01-2113-CM, 2003 WL 22290237, at *2 (D. Kan. Sept. 25, 2003) ("Generally asserting that negative publicity likely will result if a protective order is not entered falls exceedingly short of establishing a clearly defined and serious injury.").

2.

Weingarten notes that discovery is generally limited to "nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  But lack of relevance is normally not a valid objection for a discovery deposition.  *See Anderson*, 2019 WL 2284731, at *6.  Limiting attorneys to "relevant" questions would be too vague and subjective for a deposition, during which there is no neutral arbiter to resolve conflicts over whether certain questions clear the "extremely low bar" required for relevance.  *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014) (noting Fed. R. Civ. P. 401 considers evidence relevant if it has "any tendency to make a fact more or less probable") (emphasis supplied in *In re Ford*).  So it is not possible for the Court to preemptively ascertain the sweep of a protective order limiting defendants to "relevant" questions.

8

Weingarten does specify some topics.  She complains that defendants will question her about the motivation for this lawsuit and how it is financed.  She does not show the specific harm she will suffer by being asked about these topics, especially since Hecker has already answered them.[2]

This order will not leave Weingarten powerless.  She need not answer questions that are protected by privilege, and her attorney may stop the deposition and "present a motion under Rule 30(d)(3)" to "terminate or limit it on the ground that it is being conducted in bad faith or in a manner that *unreasonably* annoys, embarrasses, or oppresses the deponent or party."  Rule 30(c)(2) and (d)(3) (emphasis added).  On such a motion, "the court may order that the deposition be terminated or may limit its scope."  Rule 30(d)(3)(B).  With a motion under Rule 30(d)(3)(B), the Court would have a context for Weingarten's objections that is lacking at this juncture.

3.

Weingarten also asks the Court to preclude defendants from taking a video deposition.  She argues that "[d]efendants' past conduct shows that they will likely use this deposition as an opportunity to harass and annoy

---

[2] *PV Releases Deposition Tapes Showing American Federal of Teachers Want to Bleed Us Dry*, https://www.youtube.com/watch?v=X0kjaDxSUUU (last viewed on July 1, 2020).

9

[her] and to obtain video footage that they may then selectively edit and disseminate for purposes outside this litigation, including their own fundraising efforts." [ECF No. 122, PageID.2823]. She points the Court to a five-minute YouTube video that PV posted using excerpts of Hecker's deposition.[3] The video shows snippets of Hecker's deposition in which he denied that AFT MI had concocted a lawsuit to cause PV financial strain, but opined that slowing down or stopping PV's activities would be a great outcome. Offering his own commentary in the video, O'Keefe emphasized that Weingarten was involved in the litigation and that the lawsuit was being financed with union dues. O'Keefe described the litigation as frivolous and said that Weingarten would be served with a deposition subpoena. He said that defendants had "a lot" of questions for Weingarten and that she should know that PV was not intimidated.

Although O'Keefe used the video to express his opinion that this case is frivolous and to call into question AFT MI and AFT National's motivation in suing PV, the video is not especially inflammatory. Nor was O'Keefe's threat that defendants would ask Weingarten "a lot" of questions particularly threatening. *Compare Burgett v. City of Flint*, No. CIV.A. 07-

---

[3] *PV Releases Deposition Tapes Showing American Federal of Teachers Want to Bleed Us Dry*, https://www.youtube.com/watch?v=X0kjaDxSUUU (last viewed on July 1, 2020).

10

CV-12686, 2008 WL 363291, at *4 (E.D. Mich. Feb. 11, 2008) (holding that

protective order precluding video deposition of officers not warranted

despite allegation that plaintiff's counsel referred to the officers as

"'murderers' and stated his intention to assist in their prosecution so that

they would go to prison.'").  O'Keefe's YouTube video does not show that

Weingarten will suffer a clearly defined and serious injury from the

videotaping of her deposition.  *Nix*, 11 F. App'x at 500.

Weingarten cites opinions of other courts that precluded the

dissemination of video depositions to the public.  *See, e.g., Paisley Park*

*Enterprises, Inc. v. Uptown Prod*s., 54 F. Supp. 2d 347, 349 (S.D.N.Y.

1999).  But unlike this case, *Paisley Park Enterprises* "dealt with efforts to

make commercial use of otherwise private deposition testimony" of the

artist known as "Prince."  *Flaherty v. Seroussi*, 209 F.R.D. 295, 299

(N.D.N.Y. 2001).  The *Flaherty* court explained that there is a presumption

of openness in cases of strong public interest.  *Id.*

The presumption of openness applied in *Flaherty* even though the

plaintiff's counsel had made statements that he relished the opportunity to

question the mayor and was "going to concentrate [his] efforts on knocking

Mayor Seroussi's teeth down his throat."  *Id.* at 289.  The defendants

complained that the threatened publicity would be "an impermissible use of

11

material acquired during the course of pretrial discovery." *Id.* at 296-97.
But the court concluded, "The mere fact that some level of discomfort, or
even embarrassment, may result from the dissemination of Mayor
Seroussi's deposition testimony is not in and of itself sufficient to establish
good cause to support the issuance of protective order." *Id.* at 299.

In another case of public concern, *Condit v. Dunne*, the defendant
argued that he would suffer embarrassment by being misrepresented with
sound bites from his video deposition.  225 F.R.D. 113, 118 (S.D.N.Y.
2004).  He asserted that this anticipated embarrassment established good
cause for a protective order.  225 F.R.D. 113, 118 (S.D.N.Y. 2004).  The
court disagreed, finding the likely embarrassment to be too minimal for a
protective order.  *Id.*

As the president of AFT National, Weingarten is an elected leader like
the mayor in *Flaherty*.  And like *Flaherty*, this litigation is of strong public
interest and has already been the subject of significant media attention.
Thus, the presumption of openness applies.  The Court also agrees with
the finding in *Condit* that the threat of sound bites from the video deposition
being publicized is not enough to show good cause for a protective order. If
the video deposition is being conducted in a manner that *unreasonably*
annoys, embarrasses, or oppresses Weingarten, her attorney may then

12

stop the deposition and move to limit the deposition.  Rule 30(c)(2) and

(d)(3) (emphasis added).  On this record, the Court denies her request to

preclude defendants from videotaping her deposition.

### B. PV's motion to compel production of documents [ECF No. 130]

PV moved to compel production of documents that AFT MI listed on

its privilege log as being protected by attorney-client or work product

privileges.  [ECF No. 130].  After the June 17 hearing, the Court ordered

AFT MI to provide a more detailed privilege log for defendants and to

submit both the updated log and the withheld documents to the Court for *in

camera* review.  AFT MI complied with that order and the Court reviewed

documents with Bates numbers 1062, 1064, 1072, 1074, 1148, 1177, 1438,

1440, 2021, 2026, 2047, 2051, 2054, 2290 and 2291.

When reviewing the documents, the Court considered the parameters

of the privileges AFT MI relied on.  The attorney-client privilege exists to

"encourage full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of

law and administration of justice."  *Upjohn Co. v. United States,* 449 U.S.

383, 389 (1981).  It applies:

> (1) Where legal advice of any kind is sought (2) from a
> professional legal adviser in his capacity as such, (3) the
> communications relating to that purpose, (4) made in
> confidence (5) by the client, (6) are at his instance permanently

13

protected (7) from disclosure by himself or by the legal adviser,
(8) except the protection be waived.

*United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir. 1964) (quoting 8 J.

Wigmore, *Evidence in Trials at Common Law* § 2292, at 554 (McNaughton

rev. 1961)).  "[T]he privilege is narrowly construed because it reduces the

amount of information discoverable during the course of a lawsuit."  *United*

*States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997).  At the same time, "the

attorney-client privilege extends to counsel's communications with agents

and experts who are retained by counsel for the purpose of providing legal

advice."  *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D.

Tenn. 2014).

The work product privilege "protects from discovery documents and

tangible things prepared in anticipation of litigation by or for a party or by or

for that party's representative."  *United States v. Roxworthy*, 457 F.3d 590,

593 (6th Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)).  The party claiming

privilege bears the burden of establishing that the documents were created

because of the party's "subjective anticipation of litigation, as contrasted

with an ordinary business purpose," and that its "subjective anticipation of

litigation was objectively reasonable."  *Roxworthy*, 457 F.3d at 593-94.

"The work product privilege also attaches to an agent's work under

counsel's direction."  *Genesco,* 302 F.R.D. at 190.

14

Under these standards, the documents that AFT MI submitted for *in camera* review are protected from disclosure by either the attorney-client privilege or the work product privilege, or both.  PV's motion to compel is therefore denied.

### C. AFT MI's motion to compel the identities of PV donors [ECF No. 134]

1.

AFT MI moves to compel defendant to respond to discovery requests about their donors, and specifically requests: (1) an unredacted copy of PV's IRS Form 990, which lists its individual donors; (2) unredacted copies of three emails O'Keefe sent to unnamed donors on September 6, 2017 about the "explosive" story discovered by his "undercover journalist"; (3) unredacted copies of a September 29, 2017 email chain in which O'Keefe and a PV fundraiser discuss fundraising and referred to "the only current actual donor who has actually given money on this," meaning the infiltration of AFT MI; and (4) answers to deposition questions about the identity of PV donors or whether any donor supported the infiltration of AFT MI.  [ECF No. 134, PageID.3303-3306].  Defendants argue that the names of the donors are not relevant to a claim or defense and that compelling the identities of the donors would violate their and their donors' First Amendment right to freedom of association.  [ECF No. 136].

15

The Court finds that the identities of donors who financially supported defendants' infiltration of AFT MI are relevant to its claims and not protected by the First Amendment; that the identities of those who O'Keefe updated about the infiltration are relevant witnesses or co-conspirators, and should be disclosed; and that the identities of PV donors with no known connection to the events at issue in AFT MI's amended complaint are protected from disclosure under the First Amendment.

## 2.

Well-settled law recognizes "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The government must justify actions that "have a chilling effect" on the freedom of association. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010).

In *NAACP v. Alabama*, the Court held that the freedom of association permitted the NAACP to resist the state of Alabama's inquiry into its membership list. 357 U.S. 449 (1958). The NAACP's resistance, on its own and its members' behalves, was allowed because of the "reasonable likelihood that the Association itself through diminished financial support

16

and membership may be adversely affected if production is compelled." *Id.* at 459.  The evidence that compelling disclosure of the membership list would have a chilling effect was "the uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* at 462.

A court must also protect the identity of *donors* when there is evidence that disclosure would deter the exercise of protected activities. "The First Amendment protects not only the right of persons to join together for effective advocacy to promote their common ideas, but also the right of contributors to join together and pool resources to promote their political beliefs." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO(DMR), 2018 WL 2441518, at *10 (N.D. Cal. May 31, 2018) (citing *NAACP*, 357 U.S. at 460; *Buckley v. Valeo*, 424 U.S. 1, 65-66 (1976)).  "Donors who desire anonymity 'may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible.'" *Citizens Union of City of New York v. Attorney Gen. of New York*, 408 F.

Supp. 3d 478, 504 (S.D.N.Y. 2019) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341 (1995)).

Even so, the freedom of association that donors enjoy under the First Amendment is not absolute; "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623. As the party asserting the privilege, defendants must make "a prima facie showing of arguable first amendment infringement." *Perry*, 591 F.3d at 1160 (quotation marks and citations omitted). A prima facia case is made with evidence that the discovery requests "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* (citation and quotation marks omitted).

If defendants make their prima facie showing, the evidentiary burden will shift to AFT MI to show that the information it seeks is rationally related to its compelling interest, and that there is no less restrictive means of obtaining the information. *Perry*, 591 F.3d at 1161. "More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of

18

the need for such discovery, but not necessarily to preclude it." *Id.* The Court must balance the burdens imposed on defendants and PV's donors against the interest AFT MI has in disclosure after considering (1) "the importance of the litigation"; (2) "the centrality of the information sought to the issues in the case"; (3) "the existence of less intrusive means of obtaining the information"; and (4) "the substantiality of the First Amendment interests at stake." *Id.* (citations omitted).

The *Perry* court emphasized that the proponent of the discovery "must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)," and that the information requested must "be carefully tailored to avoid unnecessary interference with protected activities" and "otherwise unavailable." *Perry*, 591 F.3d at 1161.

The parties' briefs treat all of PV's donors as being one and the same, but the Court sees the donors as falling into three categories: the "supporting donors," the "solicited donors" and the "general donors." The "supporting donors" are those who provided financial support specifically for the infiltration of AFT MI. The "solicited donors" are those from whom O'Keefe and other PV fundraisers solicited donations with specific

reference to the infiltration of AFT MI.  And the "general donors" are those about whom there is no evidence of financial support or solicitation with specific reference to the infiltration of AFT MI.

3.

The Court first addresses PV's supporting donors and the solicited donors.  In response to AFT MI's discovery requests, defendants have produced emails showing O'Keefe's communication with PV supporters that relates to Jorge's infiltration of AFT MI's operations.  On September 6, 2017, O'Keefe sent identical emails to three separate recipients to "update" them about the AFT project.  [ECF No. 134-3].  The subject line of the emails was "Michigan Update – Sensitive" and the body of the emails described "explosive" developments:

> I just came out of a meeting with my undercover journalist after she spent months inside AFT in MI.
>
> This story is really explosive and I think we're going to get a lot more over the coming months.  It's explicit and powerful.
>
> We even have documents to back everything up.
>
> I really need to give you an update on the phone, let me know when we can talk.  Sooner the better.

[*Id.*].

On September 29, 2017, O'Keefe and Austin Wright, PV's fundraiser, exchanged emails about an article in *The Intercept* describing a Michigan

20

court's grant of an emergency injunction barring defendants from disseminating "illegally" gathered proprietary information from AFT MI, including the secretly recorded office conversations.  [ECF No. 134-5]. Wright wrote to O'Keefe, "Hmm..really hope this doesn't hurt us with the needed funding.  I've called [redacted] twice and [redacted] and JO should ping [redacted].  [*Id.*].  O'Keefe responded, "R talking to [redacted].  We think it'll be fine.  Just more evidence they are trying to blead [*sic*] us dry. We will turn lemons into lemonade.  Continue to harass [redacted]."  [*Id.*]. The same day, O'Keefe wrote to Wright and others with PV email addresses that "the only current actual donor who has actually given money on this, [redacted]. . actually looks to our leadership on the matter. He has already renewed for next year."  [ECF No. 134-4].  O'Keefe added, "But yes, you should continue to ping [redacted] and [redacted] and I will ping [redacted]."  [*Id.*].

AFT MI also quotes defense counsel as saying during depositions that defendants' witnesses would not testify about "anything to do with donors or identity of donations."  [ECF No. 134, PageID.3305]. Defendants' response to AFT MI's motion to compel quotes the deposition testimony more extensively.  [ECF No. 136, PageID.3432-3434].  The cited testimony shows that, despite O'Keefe's September 29 email saying that a

donor had given money "on this," he testified that he did not remember whether any donor made "a contribution specifically related to the AFT Michigan operation." [ECF No. 136-3, PageID.3473]. And despite the emails showing that O'Keefe solicited donations with specific reference to the AFT MI operation, he testified, "I don't think any of our donations are earmarked or in that regard, they give to a broader vision, a broader mission to expose corruption and dishonesty." [*Id.*, PageID.3474].

Defendants argue that the testimony of their witnesses shows that no donor led, encouraged or planned the infiltration of AFT MI, and that there is no evidence "that these donors had previously heard about the investigation" before it concluded on September 1, 2017. [ECF No. 136, PageID.3431]. The Court cannot agree with this interpretation of the evidence. O'Keefe's September 6th email to the three supporters was an "update" about the "undercover journalist" who had "spent months inside AFT in MI." [ECF No. 134-3]. He relayed his expectation that the uncover operation would continue "over the coming months." [*Id.*]. O'Keefe wrote that one of the donors had "actually given money on this," referring to the undercover operation. [ECF No. 134-4]. These emails belie the argument that PV donors had not heard about the infiltration into AFT MI until after

22

the operation was over, and they document O'Keefe and others' efforts to

fundraise based on the infiltration of AFT MI.

Before addressing defendants' assertion of First Amendment

privilege regarding their communication with donors about the infiltration

into AFT MI, the Court will note that the identities of the supporting donors

and the solicited donors are relevant within the meaning of Rule 26(b)(1).

The burden for establishing relevance is extremely low.  *In re Ford Motor*

*Co.,* 98 F.Supp.3d at 925.  AFT MI asserts a claim under the Federal

Wiretap Act, which states:

> (d) It shall not be unlawful under this chapter for a person not
> acting under color of law to intercept a wire, oral, or electronic
> communication where such person is a party to the
> communication or where one of the parties to the
> communication has given prior consent to such interception
> unless such communication is intercepted for the purpose of
> committing any criminal or tortious act in violation of the
> Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).  To sustain this claim, AFT MI must prove that

Jorge and was motivated to commit tortious acts when she secretly

recorded conversations during the alleged conspiracy.  *Council on Am.-*

*Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 257

(D.D.C. 2014); *Democracy Partners v. Project Veritas Action Fund*, No. CV

17-1047 (ESH), 2020 WL 1536217, at *17 (D.D.C. Mar. 31, 2020).  In

*Democracy Partners*, another PV employee had used a false identity to

23

infiltrate an organization, and she "secretly record[ed] every minute of her internship." *Democracy Partners*, 2020 WL 1536217 at *1.  When requesting summary judgment of the federal wiretap claim, the defendants argued "that plaintiffs will be unable to prove a tortious purpose because their 'purposes were lawful.'"  *Id.* at *17.  There is no reason here to assume that defendants will not adhere to their position that Jorge's purposes for her surreptitious recordings were lawful.  The purposes of the AFT MI operation that O'Keefe and other PV fundraisers shared when soliciting the supporting and solicited donors is therefore relevant to the wiretap claim.

In addition, for AFT MI's civil conspiracy claim, the donors with whom defendants communicated about the infiltration into AFT MI are highly relevant "witnesses at a minimum, and may also be potential co-conspirators."  *Planned Parenthood*, 2018 WL 2441518 at *11.  Defendants argue that the evidentiary record, "including unrebutted sworn testimony," contradicts AFT MI's claim that someone outside of PV authorized, encouraged, supported or directed its operation concerning AFT MI.  [ECF No. 136, PageID.3431].  But AFT MI has not been able to test the veracity of defendants' sworn testimony by interviewing, deposing or subpoenaing documents from the donors from whom PV solicited donations with specific

24

reference to the infiltration of AFT MI.  AFT MI has the right to seek

evidence that might rebut defendants' sworn testimony.  The Court rejects

defendants' assertion that the evidence they have shared closes the door

on the issue.  *See Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-

JSC, 2016 WL 6393521, at *2 (N.D. Cal. Oct. 28, 2016) ("A party cannot

unilaterally decide that there has been enough discovery on a given

topic.").

4.

The Court now turns to the question of whether defendants have

made a prima facie showing that compelling the disclosure of the identities

of its supporting donors arguably would infringe on those donors' or PV's

First Amendment rights.  *Perry*, 591 F.3d at 1160.  Defendants cite *Planned

Parenthood* as rejecting the argument that the defendants in that case

could not "satisfy their cannot satisfy their prima facie showing because

there is no First Amendment right to associate for the purpose of

committing or supporting fraud."  2018 WL 2441518 at *10 (quotation

marks omitted).  The court in *Planned Parenthood* found that argument

"'premature' as it 'assumes the merits of [Plaintiffs'] claims against

defendants.'"  *Id.* (quoting *Nat'l Abortion Fed. v. Ctr. for Med. Progress*, No.

15-CV-03522-WHO, 2015 WL 13333328, at *3 n.3 (N.D. Cal. Nov. 20,

25

2015).  This Court respectfully disagrees with that analysis because it misplaces the initial burden.

It is the party asserting the burden who must make "a prima facie showing of arguable first amendment infringement." *Perry*, 591 F.3d at 1160 (quotation marks and citations omitted).  That means that AFT MI does not bear the initial burden of providing the merits of its claims. Instead, the starting point is for defendants to make a prima facie showing of arguable infringement of the exercise of First Amendment associational rights.  *Id.*  The First Amendment right to associate applies to "protected activities," namely, "speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts,* 468 U.S. at 618.  *See also Lopez v. Swarthout*, No. CV 09-0829 R FMO, 2012 WL 6012848, at *12 (C.D. Cal. Aug. 28, 2012), *adopted*, No. CV 09-0829 R FMO, 2012 WL 6012845 (C.D. Cal. Nov. 30, 2012) ("The First Amendment does not protect all forms of association; rather, the First Amendment's 'freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshiping, and petitioning the government.'") (quoting *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1192 (9th Cir.1988)). "The freedom of association protected by the First Amendment *does not* extend to joining with others for the purpose of depriving third parties of

26

their lawful rights." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994) (emphasis added).

In Judge Parker's June 2019 opinion addressing defendants' motion to dismiss, she noted that defendants had done "little to refute the alleged conduct against them." [ECF No. 104, PageID.2528]. And during the hearing on the motions at issue here, defendants conceded that Jorge misrepresented who she was when applying for her internship with AFT MI; that she secretly recorded conversations and uploaded them on YouTube; that she took photos of AFT MI's documents; and that she did these things as part of her relationship with PV. [ECF No. 150, PageID.3899-3900]. Judge Parker found that these allegations supported plausible claims that defendants violated the Michigan Eavesdropping Statute and unlawfully intercepted oral communications under federal law; that Jorge breached a fiduciary duty and duty of loyalty; that Jorge committed fraudulent misrepresentation and trespass; and that defendants engaged in a civil conspiracy. [ECF No. 104].

Defendants do not show that the activities that they admit to engaging in are protected by the First Amendment; they do not sustain their prima facie burden of showing that disclosing the identity of any donor who supported those activities arguably would infringe on protected First

27

Amendment rights. *Perry*, 591 F.3d at 1160.  In September 2017, O'Keefe

wrote that a current donor had given money "on this," referring to the

operation to infiltrate AFT MI.  [ECF No. 134-4].  Defendants must disclose

the identity of that donor and O'Keefe must sign an affidavit disclosing the

identity of any other donor who provided financial support knowing that it

would go toward the infiltration of AFT MI.

5.

The emails defendants have disclosed show that O'Keefe and others

solicited PV supporters for donations, specifically referencing the infiltration

of AFT MI.   [ECF No. 134-3; ECF No. 134-4].  There is no evidence that

the solicited donors responded favorably to the solicitations to support the

infiltration of AFT MI; there is no evidence that they joined with defendants

in the activities that are alleged to have deprived AFT MI of its lawful rights.

*Madsen,* 512 U.S. at 776.  And PV submits affidavits showing that

disclosing the identities of donors could chill the exercise of it and its

donors' associational rights.  [ECF No. 136-7; ECF No. 136-8].

PV's executive director, Russell Verney, said in his affidavit that its

entire budget relies on donors and that PV takes several measures to keep

their donors' identities confidential.  [ECF No. 136-7].  Verney asserts that

some donors have said that they will stop contributing if their identities are

28

disclosed because of their concerns of economic ruin, public pressure and harassment.  [*Id.*].  In O'Keefe's affidavit, he alleges that he and other PV "reporters" have been subjected to harassment and threats.  [ECF No. 136-8].  He also states that, during investigations by the *Washington Post* and *BuzzFeed News*, reporters contacted more than two dozen alleged donors, leading the Chisholm Foundation to withdraw its support for PV.  [*Id.*].   And PV fears that AFT MI will use the disclosure of its donors to create an "enemies list" and negligently leak the names of donors despite the parties stipulated protective order.  [*Id.*; ECF No. 89].

These affidavits sustain defendants' prima facie burden of showing that disclosure of its donors would chill the exercise of its and its donors' First Amendment rights.  *NAACP*, 357 U.S. 449; *Am. Fed'n of Labor & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 176 (D.C. Cir. 2003).  AFT MI argues that defendants' showing is not enough because "no donor has signed an affidavit indicating any reluctance to contribute if their identity is disclosed."  [ECF No. 139, PageID.3713].  AFT MI compares defendants' evidence to *Planned Parenthood*, in which anonymous donors offered declarations.  2018 WL 2441518 at *11.  But defendants do not need affidavits from donors to sustain their burden.  In *Am Fed'n of Labor*, for example, the court found sufficient affidavits from

29

the associations at issue asserting "that releasing the names of hundreds of volunteers, members, and employees will make it more difficult for the organizations to recruit future personnel."  333 F.3d at 176.  Though the affidavits in *Am Fed'n of Labor* were "far less compelling" than the evidence relied on in other cases, "that difference speaks to the strength of the First Amendment interests asserted, not to their existence."  *Id.*  The affidavits here are at least as compelling as those in *Am Fed'n of Labor*.

With that finding, the Court must assess the burdens imposed on defendants and PV's donors against AFT MI's interest in disclosure, using the *Perry* factors.  *Perry*, 591 F.3d at 1161.  For the first factor, the importance of the litigation, *id.*, the Court finds that this case requires a critical and timely examination of the line between legal investigative journalism and unlawful espionage.[4]  This examination is especially important because it involves alleged illegal espionage targeting "one of the largest teachers' unions in the nation,"[5] and thus is of significant public concern.

---

[4] *See Erik Prince Recruits Ex-Spies to Help Infiltrate Liberal Groups*, https://www.nytimes.com/2020/03/07/us/politics/erik-prince-project-veritas.html (last viewed on June 27, 2020).  Defendants cite this article in their brief opposing Weingarten's motion to for protective order.  [ECF No. 124, PageID.2965, n. 5 & PageID.2970].

[5] *Id.*

The second factor addresses the centrality of the information sought to the issues in the case. *Id.* In *Planned Parenthood*, the court found that disclosing the identities of potential donors with whom the defendant shared its strategy and goals for infiltrating the plaintiff implicated the First Amendment. 2018 WL 2441518, at *11. But the plaintiff sustained its burden of showing that the identities of those potential donors should be disclosed, relying in part on the centrality factor.

> These emails suggest that Rhomberg was involved in fundraising efforts on behalf of CMP, and it is reasonable to presume that he discussed details of the alleged conspiracy with potential donors, including CMP's plans, goals, and methods. Donors who communicated with CMP about such matters are witnesses at a minimum, and may also be potential co-conspirators.

*Id.* The Court concurs with that analysis and finds that the solicited donors with whom PV shared its "explosive" findings, strategy and goals are witnesses and potential co-conspirators. Defendants' strategy and goals in infiltrating AFT MI are central to the issues in this case.

Defendants do not show that there are less intrusive means of obtaining the substance of what O'Keefe and other PV fundraisers communicated to the solicited donors, which relates to the third *Perry* factor. *Perry*, 591 F.3d at 1161. Emails showed that O'Keefe and other fundraisers telephoned or "pinged" solicited donors to convey the

31

substance of the strategy, goals and results of the infiltration of AFT MI.
[ECF No. 134-3; ECF No. 134-5].  AFT MI may learn about the substance
of those communications only after disclosure of the witnesses and
potential co-conspirators with whom O'Keefe and other PV fundraisers
spoke.

The final factor addresses "the substantiality of the interests at stake."
*Perry*, 591 F.3d at 1161.  For this factor, the Court must consider how the
requested disclosures could adversely impact PV's ability to pursue its
mission or chill its solicited donors' rights to associate through PV.  *Nat'l
Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2015 WL
13333328, at *3 (N.D. Cal. Nov. 20, 2015).  For this factor, defendants'  lack
of affidavits from the solicited donors is relevant.  *Am Fed'n of Labor,* 333
F.3d at 176 ("far less compelling" evidence relied by defendants spoke "to
the strength of the First Amendment interests asserted").  And while
defendants' affidavits allege a fear that the solicited donors will stop
supporting PV, their affidavits show that more than two dozen donors were
contacted by the media, yet they identify only one donor who withdrew
support.  [ECF No. 136-7; ECF No. 136-8].

The Court rejects defendants' argument that disclosure of the
identities of the solicited donors would be disproportionate the needs of the

case under Rule 26(b)(1).[6]  Defendants claim that disclosing the solicited

donors would not be proportionate because of the burden and expense.

They write, "Project Veritas has expended a great deal of money to

produce thousands of documents."  [ECF No. 136, PageID.3440-3441].

But a party objecting to a request for production of documents as

burdensome must support that objection with affidavits, other evidence or

at least common sense to substantiate its objections.  *In re Heparin*

*Products Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011); *Vallejo v.*

*Amgen, Inc.*, 903 F.3d 733, 743-44 (8th Cir. 2018).  Defendants provided

no affidavit nor other evidence to show the burden or expense of disclosing

the supporters from whom they solicited donations for the infiltration into

AFT MI, and the Court cannot infer that burden or expense from common

sense.

Defendants must disclose the identities of the supporters whose

identities were redacted from the September 2017 emails, [ECF No. 134-3;

ECF No. 134-4; ECF No. 134-5], and O'Keefe must sign an affidavit

---

[6] The proportionality factors are "the importance of the issues at stake in
the action, the amount in controversy, the parties' relative access to
relevant information, the parties' resources, the importance of the discovery
in resolving the issues, and whether the burden or expense of the proposed
discovery outweighs its likely benefit."  Rule 26(b)(1).

disclosing the identity of any other supporters from he or other PV fundraisers solicited donations to support the infiltration of AFT MI.

6.

The Court next addresses AFT MI's motion to compel disclosure of PV's Form 990 Form.  As noted, donors generally have a right to anonymity that is protected by the First Amendment.  *NAACP*, 357 U.S. at 460; *Planned Parenthood*, 2018 WL 2441518 at \*10; *Citizens Union of City of New York*, 408 F. Supp. 3d at 504 (S.D.N.Y. 2019).  For the reasons above, defendants' affidavits raise a prima facie case that disclosure of PV's general donors would arguably chills its and its members associational rights.  [ECF No. 136-7; ECF No. 136-8].  And AFT MI does not show that the identities of general donors—those who neither provided financial support specifically for the infiltration of AFT MI nor were solicited by O'Keefe or other PV fundraisers to support that infiltration—are relevant, much less highly relevant.  The Court denies AFT MI's request to compel defendants' unredacted Form 990.

## IV.    Conclusion

The Court **DENIES** Weingarten's motion for protective order **[ECF No. 122]**; **DENIES** defendants' motion to compel [ECF No. 130]; and **GRANTS IN PART AND DENIES IN PART** AFT MI's motion to compel **[ECF No. 134].**  Defendants must disclose to AFT MI the identities of the supporting and solicited donors as described above **no later than July 16, 2020**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 2, 2020

## <u>NOTICE TO PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."**  E.D. Mich. LR 72.2.The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of 14 days from the date of receipt of a copy of this order within which to file

objections for consideration by the district judge under 28 U.S.C. §

636(b)(1).

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 2, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
