UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AFT MICHIGAN,

      Plaintiff,

v.

PROJECT VERITAS, and
MARISA JORGE,

      Defendants.

Case No. 17-cv-13292
Hon. Linda V. Parker

## DEFENDANTS PROJECT VERITAS AND MARISA JORGE'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants—Project Veritas and Marisa Jorge—respectfully submit this Notice of Supplemental Authority with regard to Plaintiff's Motion to Compel Discovery [ECF No. 134], Magistrate Stafford's Opinion and Order on Plaintiff's Motion to Compel [ECF No. 152]; and Defendants' pending Objections to Magistrate Judge's Opinion and Order [ECF No. 157]. That Motion, Opinion and Order, and Objection pertain to AFT Michigan's attempt to use this Court to compel the involuntary disclosure of the identity of Project Veritas's donors. The issue of compelled disclosure of donors has recently been ruled upon by the Supreme Court of the United States in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. \_\_\_ (2021). A copy of that supplemental authority is attached here as **Exhibit 1**.

Defendants briefly state the holding from that case, its applicability to AFT Michigan's Motion to Compel, and its bearing on the Magistrate's Opinion and Order (and therefore also on Defendants' Objection thereto). Defendants respectfully request that this Supplemental Authority be received by this Court and considered with regard to the pending Objection.

## I. The United States Supreme Court Recently Set Forth the Proper Standard of Review for Compelled Disclosure of Donor Identities.

In *Americans for Prosperity Foundation v. Bonta*, 594 U.S. ___ (2021), issued on July 1, 2021, the United States Supreme Court examined a California law compelling charitable organizations to disclose the identities of their major donors. Under the applicable law, all charitable organizations soliciting donations in California must disclose to the Attorney General the identity and contact information for each of their major donors by filing Schedule B of their IRS Form 990 with the state. *Id.* at *2. Schedule B requires organizations to disclose the names and addresses of donors who have contributed more than $5,000 in a particular year, or those who have given more than 2 percent of an organization's total contributions. *Id.* Certain tax-exempt organizations objected to this practice, and ultimately the case reached the United States Supreme Court.

In analyzing the question, the Supreme Court affirmed that it has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Americans for*

*Prosperity*, *supra* at *6; quoting *Roberts v. United Stats Jaycees*, 468 U.S. 609, 622 (1984). Protected association furthers "a wide variety of political, social, economic, educational, religious, and cultural ends . . . ." *Id.* Moreover, such protection "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Id.*

The Supreme Court also, unsurprisingly, reaffirmed its prior holding in *NAACP v. Alabama*, 357 U.S. 449 (1958), a case relied upon by Project Veritas in resisting the compelled disclosure of its donors in the instant case. The Court reiterated that "it is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Americans for Prosperity*, *supra* at *6 (quoting *NAACP v. Alabama*, 357 U.S. at 462). The Court also repeated that "effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," and noted "the vital relationship between freedom to associate and privacy in one's associations." *Id.* at *7 (quoting *NAACP v. Alabama*, 357 U.S. at 460-62).

Pertinent to this case, the Supreme Court affirmed that the proper standard of review of any attempts at compelled disclosure of organizational donors or their identities is "exacting scrutiny." *Americans for Prosperity*, *supra* at *7. Under that standard, there must be "a substantial relation between the disclosure requirement

and a sufficiently important governmental interest." *Id.* "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* "Such scrutiny . . . is appropriate given the deterrent effect on the exercise of First Amendment rights that arises as an inevitable result of the government's conduct in requiring disclosure." *Id.* at *7-8; quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976).

The Court also specified that its holding applies no matter the type of association in question, whether it pertain to political, economic, religious, or cultural matters. *Id.* at *8. "Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny." *Id.* Importantly, the Court held that the exacting scrutiny standard requires that demands for compelled disclosure "be narrowly tailored to the government's asserted interest." *Id.* at *9. "[E]ven a legitimate and substantial governmental interest cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.* (internal quotations omitted). This is what the Court referred to as the "means-end fit." *Id.* "Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly—because First Amendment freedoms need breathing space to survive." *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963) (internal quotations omitted)).

Thus, the Court's primary holding was summarized as follows: "exacting scrutiny requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Id.* at *12 (internal quotations omitted).

Importantly, the Court looked at the chilling effect that compelled disclosure could have on associational rights. "Our cases have said that disclosure requirements can chill association even if there is no disclosure to the general public." *Id.* at *16. Exacting scrutiny is triggered even where the compelled disclosure "*may*" have the effect of curtailing the freedom to associate, or poses a "*possible*" deterrent effect. *Id.* (emphasis in original). As the dissent pointed out, the holding in *Americans for Prosperity* holds that there is a presumption that disclosure requirements impose associational burdens.

The Supreme Court took note that the organizations in *Americans for Prosperity* had presented evidence that they and their supporters have been subjected to threats, protests, stalking, and physical violence—all of which can chill First Amendment associational rights. *Id.* at *17. Astutely, the Court noted that "[s]uch risks are heightened in the 21st century and seem to grow with each passing year, as anyone with access to a computer can compile a wealth of information about anyone

5

else, including such sensitive details as a person's home address or the school attended by his children." *Id.*[1]

The Court also noted that the issue pertaining to donor disclosures is a bipartisan and far-reaching concern. "The gravity of the privacy concerns in this context is further underscored by the filings of hundreds of organizations as *amici curiae* in support of the petitioners." *Id.* at *17. "Far from representing uniquely sensitive causes, these organizations span the ideological spectrum, and indeed the full range of human endeavors: from the American Civil Liberties Union to the Proposition 8 Legal Defense Fund; from the Council on American-Islamic Relations

---

[1] This is put on stark display in AFT Michigan's Motion for Leave to Depose an additional witness, ECF No. 188, which includes an affidavit of an AFT staffer, admitting he has "extensive experience conducting background and public records investigations" and admitting that over the past decade he has "examined the public records of thousands of people and companies." ECF 188-1. Indeed, he even admits—despite the fact that the national American Federation of Teachers organization is ostensibly not involved in this suit—he has sought to locate individuals that AFT believes has been involved with Project Veritas, spending the past several years attempting to locate them. *Id.* ("I have worked extensively to locate [an individual believed to have once been associated with Project Veritas] for three years . . . ."). That "research" has allowed AFT to compile information about this person pertaining to his military background, ascertain how long he has been in the United States, learn what other organizations he is involved with, locate what Plaintiff contends is his newly built family house, locate a trust he is associated with, determine what Post Office boxes he uses, and allegedly determine his home address. AFT Michign even went so far as to publish the name of who it presumes is his 4 or 5 year old daughter in public records. Any attempt by AFT or AFT Michigan to downplay their ability *and willingness* to undertake extensive efforts to dig up information on anyone associated with Project Veritas and disclose it publicly, even when that association is an innocent child and her dog, would certainly ring false in light of this admission by Mr. Bradford Murray.

to the Zionist Organization of America; from Feeding America—Eastern Wisconsin to PBS Reno." *Id.* at *17-18. As the Court noted, "[t]he deterrent effect feared by these organizations is real and pervasive . . . ." *Id.* at *18.

In *Americans for Prosperity*—as in this case—an argument was raised that since organizations must disclose their Form 990s to the IRS anyhow, that further compelled disclosure should not be worrisome. But compelled disclosure "cannot be saved" by such arguments. "For one thing, each governmental demand for disclosure brings with it an additional risk of chill." *Id.* The Court further noted that different means of compelled disclosure may carry different risks. Regardless, simply because a party files a Form 990 with the IRS does not mean they must disclose it (or may be compelled to disclose it) to others.

In closing, the Court held as follows:

> **When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough, because First Amendment freedoms need breathing space to survive.**

*Id.* at *19 (quoting *NAACP v. Button*, 371 U.S. at 433). For the foregoing reasons, the Court struck down the California compelled disclosure laws as unconstitutional.

The case's concurring opinions agreed as to the general right to anonymous association. "The text and history of the Assembly Clause suggest that the right to assemble includes the right to associate anonymously." *Americans for Prosperity*

*Foundation v. Bonta*, 595 U.S. \_\_ (2021) (THOMAS, J. concurring). "And the right to associate anonymously often operates as a vehicle to protect other First Amendment rights, such as the freedom of the press." *Id.*

Even the dissenting opinion recognized that "[b]ecause the freedom to associate needs 'breathing space to survive,' this Court has recognized that associational rights must be 'protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Americans for Prosperity Foundation v. Bonta*, 595 U.S. \_\_ (2021) (SOTOMAYOR, J. dissenting). Despite its disagreement with the overall holding of the Opinion, the dissent continued: "Publicizing individuals' association with particular groups might expose members to harassment, threats, and reprisals by opponents of those organizations. Individuals may choose to disassociate themselves from a group altogether rather than face such backlash." *Id.* Thus, "privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.*

This case sets forth the proper standard of review that should be utilized in the motion in question, is contrary to a number of holdings by the Magistrate Judge, and contradicts many of the arguments of AFT Michigan in its Motion. This case is instructive to the instant Objection and its underlying Motion and should be accepted as Supplemental Authority.

## II. The Magistrate's Order Should be Reviewed in Light of the Supplemental Authority.

Obviously neither the parties nor the Magistrate Judge had the benefit of the *Americans for Prosperity* case when the Motion to Compel was first filed, the issue was argued, or the Magistrate issued her Opinion. Nonetheless, the case is now binding precedent. With that in mind, the Magistrate's Order (and the original Motion to Compel) should be reviewed in light of this new, supplemental authority.

Although *Americans for Prosperity* pertained to a state legislative act compelling disclosure, as opposed to attempts to compel disclosure in a civil action between private parties, it has long been recognized that use of a Court to compel disclosure is no less an act of government compulsion than acts by the state itself. *See, NAACP v. Alabama*, 357 U.S. at 464 ("It is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize."); *see also Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1996) ("Although the First Amendment does not normally restrict the actions of purely private individuals, the amendment may be applicable in the context of discovery orders, even if all of the litigants are private entities. In this case, for example, the magistrate's order compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny."); *In re Motor Fuel Temperature Sales Practices Litigation*, 707 F.Supp.2d 1145, 1151 (D. Kans.

9

2010) ("These First Amendment protections apply in the context of discovery orders."); *see generally Perry v. Schwarzenegger*, 591 F.3d 1126, 1139-40 (9th Cir. 2009). Thus, the holding from *Americans for Prosperity* is instructive to the instant case and pending objection.

Several areas of the Opinion are called into question in light of *Americans for Prosperity*. For example, the Magistrate relied for her standard of review on the case *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). *See* ECF No. 152, PageID.3950 ("[T]he Court must assess the burdens imposed on defendants and PV's donors against AFT MI's interest in disclosure, using the *Perry* factors."). While it was questionable whether the nonbinding "Perry Factors" from another circuit should have been used or were even relevant, now that the Supreme Court has issued its opinion in *Americans for Prosperity*, that holding should be applied.

Similarly, the Opinion refers to "compelling state interests" and "means significantly less restrictive of associational freedoms." *Id.* at PageID.3938 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). But the Magistrate did not apply an "exacting scrutiny" standard or refer to such standard in the Opinion, as is required by *Americans for Prosperity*. Perhaps most vital to Defendants' Objection, the Magistrate's Opinion put on Defendants the burden of making "a prima facie showing of arguable first amendment infringement," again citing *Perry*, 591 F.3d at

1160. *Id.* at PageID.3938; *see also id.* at 3946. But there is no requirement or burden on a defendant to present such prima facie showing in *Americans for Prosperity*.

Similarly, the Magistrate's Order was based in part on "defendants' lack of affidavits from the solicited donors." *Id.* at PageID.3952. But the evidence Defendants presented in the instant case, *see* ECF No. 136 and ECF No. 157, is nearly identical to the evidence presented by those in *Americans for Prosperity*: evidence that they and their supporters have been subjected to threats, protests, stalking, and physical violence. Project Veritas went further and presented affidavit testimony that some donors only give so long as their anonymity is preserved and have withdrawn support when their anonymity is breached. This goes beyond what was recognized as sufficient (if not presumed) in *Americans for Prosperity*.

Because the supplemental authority attached hereto—binding on this Court—contradicts key parts of the Magistrate Judge's Opinion, the Magistrate Judge's Opinion should not be upheld. This is in addition to all the other reasons set forth in Defendants' Objection.

### III. Many of the Arguments Raised by Plaintiff in its Motion to Compel are Contradicted by the Supplemental Authority.

Many of the bases set forth by AFT Michigan in its Motion to Compel Project Veritas's donors is in contradiction of the Supplemental Authority attached hereto. Thus, that motion and Defendants' Objection should be reviewed in light of this new precedent. For these additional reasons, Plaintiff's motion should be denied.

11

First, AFT Michigan sought the disclosure of Project Veritas's unredacted IRS Forms 990, arguing that since such were produced to the IRS, they should be produced unredacted to AFT Michigan. But this exact argument was raised in *Americans for Prosperity* and quickly dispelled. *See* Section I, *supra*; *Americans for Prosperity*, *supra* at *18.

Plaintiff also asserts a blanket "entitlement" to "know who the [Project Veritas] donors are, the interests they represent, and the role the donors played in planning the infiltration of AFT Michigan." ECF No. 134, PageID.3305. But Plaintiff has *no* such right to know who Project Veritas's donors are or what interests they represent. Nor does AFT Michigan assert any basis for such a bold statement. Quite to the contrary, *Americans for Prosperity* and *NAACP v. Alabama* and all of the cases that came in between them stand for the opposite proposition: donors are entitled to keep others from knowing who they are or what interests they represent.

Moreover, AFT Michigan's demand to know the names of donors so they can seek discovery from and depose them is definitely not a "narrowly tailored" means as required by *Americans for Prosperity*. As previously noted, the same information (or lack thereof) about whether any donor was involved with the project in question can be gleaned from the thousands of pages of documents produced, the consistent testimony of every Project Veritas agent deposed, and by written interrogatories or

questions to the parties. AFT Michigan's demands do not meet the "means-end fit that exacting scrutiny requires" as set forth in *Americans for Prosperity*. *Id.* at *14.

AFT Michigan's motion, too, relies heavily on factors set forth in the 9th Circuit case of *Perry v. Schwarzenegger*.[2] But, again, that case was never binding on this Court. Moreover, nothing in the holding of that case is reflected in the more recent U.S. Supreme Court *Americans for Prosperity* case. Much of it—such as the alleged evidentiary burden on the defending party to make a prima facie showing—in fact seems to be contradicted by *Americans for Prosperity*. There were already grounds for AFT Michigan's Motion to Compel to be denied, but the supplemental authority attached hereto further solidifies that proper course of action.

It is also important to note that the Supreme Court held that the compelled disclosure in *Americans for Prosperity* was unconstitutional, even though it was presumed that efforts would be taken to keep such disclosure confidential and non-public. In the instant case, AFT Michigan has *no* desire to keep such information private. They wish for a public disclosure and then the right to dig into those individuals as much as they are able. Indeed, Magistrate Judge Stafford's order mandates a public disclosure written and signed by the President of Project Veritas disclosing the names of donors. This would undoubtedly chill the associational rights of Project Veritas and its donors.

---

[2] It was the 9th Circuit the Supreme Court overturned in *Americans for Prosperity*.

13

## IV. Conclusion

The attached binding precedent by the United States Supreme Court is proper Supplemental Authority for this Court to take into account and consider when ruling on Defendants' Objection to the Magistrate Judge's Order. There were ample grounds to overrule that Order and deny Plaintiff's Motion to Compel prior to this supplemental authority being issued. Now, in light of this Supreme Court ruling, it is even more evident that Plaintiff's request should be denied and that any order to the contrary should be overturned on objection or appeal.

Respectfully submitted,

By: /s/ Paul M. Mersino
**Butzel Long, P.C.**
Paul M. Mersino (P72179)
150 W. Jefferson, Suite 100
Detroit, MI 48226
mersino@butzel.com
313-225-7015
Attorneys for Defendants

Stephen R. Klein (P74687)
Barr & Klein PLLC
1629 K St. NW Ste. 300
Washington, DC 20006
steve@barrklein.com
202-804-6676

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

**BUTZEL LONG, P.C.**

By: /s/ Paul M. Mersino
Paul M. Mersino (P72179)