UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

      Plaintiff,

                                Civil Case No. 17-13292
v.                               Honorable Linda V. Parker

PROJECT VERITAS and
MARISA L. JORGE,

      Defendants.
_____/

## OPINION AND ORDER REGARDING OBJECTIONS (ECF NOS. 157, 158) TO MAGISTRATE JUDGE'S ORDER (ECF NO. 152)

Plaintiff AFT Michigan filed this lawsuit against Defendants Project Veritas and Marisa L. Jorge, after Jorge—acting on behalf of Project Veritas—misrepresented herself in order to secure an internship with AFT Michigan and then covertly obtained AFT Michigan documents and recorded AFT Michigan staff member conversations.  AFT Michigan asserted the following claims in a Second Amended Complaint: (1) fraudulent misrepresentation; (2) trespass; (3) unconsenting recording of private conversation ("eavesdropping") in violation of Michigan Compiled Laws § 750.539a *et seq.*; (4) larceny by trick; (5) civil conspiracy; (6) violation of Michigan's Uniform Trade Secrets Act; (7) breach of duty of loyalty; (8) unlawful interception of oral communications in violation of

federal law; and (9) violation of the federal Electronic Communications Privacy Act.  (ECF No. 72.)  This Court has dismissed AFT Michigan's claims alleging larceny by trick and violations of Michigan's eavesdropping statute and Uniform Trade Secrets Act and the federal Electronic Communications Privacy Act.  (ECF Nos. 104, 202.)

The matter is presently before the Court on two objections (ECF Nos. 157, 158) to a discovery order issued by Magistrate Judge Elizabeth Stafford (ECF No. 152).  In that decision, Magistrate Judge Stafford: (a) denied third-party Rhonda Weingarten's motion to limit the scope of Defendants' questions during her deposition and prohibit Defendants from videotaping the deposition (ECF No. 122); (b) denied Defendants' motion to compel the production of certain documents AFT Michigan listed on a privilege log as being protected by the attorney-client or work-product privilege (ECF No. 130); and (c) granted in part and denied in part AFT Michigan's motion to compel the identifies of Project Veritas' donors (ECF No. 134).  As to the latter ruling, Magistrate Judge Stafford ordered Project Veritas to identify the individuals whose names were redacted from September 2017 emails and any other individuals from whom donations were solicited by Project Veritas to support the infiltration of AFT Michigan.  (ECF No. 152 at Pg ID 3953-54.)  Magistrate Judge Stafford denied AFT Michigan's request for the names of any other Project Veritas donors.  (*Id.* at 3954.)

## Standard of Review

When a party objects to a magistrate judge's non-dispositive decision, the reviewing court must affirm the magistrate judge's ruling unless the objecting party demonstrates that it is "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  The "clearly erroneous" standard does not empower a reviewing court to reverse a magistrate judge's findings because it would have decided the matter differently.  *See, e.g., Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985); *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (citing *Anderson*, 470 U.S. at 573-74).  Instead, the "clearly erroneous" standard is met when despite the existence of evidence to support the finding, the court, upon reviewing the record in its entirety, "is left with the definite and firm conviction that a mistake has been committed."  *Anderson*, 470 U.S. at 573 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Regalado*, 334 F.3d at 524 (citations omitted).

## Weingarten's Deposition

Rule 26(c) of the Federal Rules of Civil Procedure permits a court to issue a protective order when, for good cause, such order is necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  The party or person seeking the order has the burden to show good

3

cause.  *See In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016).

Magistrate Judge Stafford denied Weingarten's motion, finding that the threat of annoyance, embarrassment, or oppression if the deposition was recorded, did not outweigh the presumption of openness.  This Court finds an error of law because there is no such presumption with respect to unfiled discovery materials, at least since the 2000 amendments to the Federal Rules of Civil Procedure.  Cases evaluating whether good cause exists for a protective order based on that presumption, therefore, are not persuasive.  In fact, as some district courts have observed, "those cases are no longer good law."  *Margiotta v. City of Gloversville*, No. 6:07-CV-0560, 2008 WL 11505863, at *2 (N.D.N.Y. Aug. 11, 2008) (quoting *Schiller v. City of New York*, No. 04 Civ. 7922, 2007 WL 136149 at *19 n. 12 (S.D.N.Y. Jan. 19, 2007) (citing *SEC v. TheStreet.com*, 273 F.3d 222, 233 n. 11 (2d Cir. 2001)).  For that reason, cases relying on those decisions also are unpersuasive. [1]

Prior to 2000, Rule 5(d) of the Federal Rules of Civil Procedure required the filing of discovery materials unless the court ordered otherwise.  The rule

---

[1] Many of the decisions reached after the 2000 amendment rely on comparisons of the cases resting on the presumption of openness.  In those latter cases, the courts found the movant's showing insufficient when compared to that weighty presumption.  It is unclear whether the same decisions would have been reached absent the presumption.

"embodie[d] the [Advisory] Committee's concern that . . . the general public be afforded access to discovery materials whenever possible." *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 146 (2d Cir. 1987). District courts therefore concluded that there was "a presumption that discovery materials would be publicly available whenever possible." *Westchester Radiological Ass'n v. Blue Cross/Blue Shield*, 138 F.R.D. 33, 36 (S.D.N.Y. 1991); *see also Flaherty v. Seroussi*, 209 F.R.D. 295, 298 (N.D.N.Y. 2001) (citing cases). This presumption was inconsistent with the common law, where pretrial discovery, including depositions, "were not open to the public[.]" *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1983).

The argument for public access was "destroyed" with the changes to Rule 5 in 2000, which restricted the filing of discovery materials "until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d); *see Bond v. Utreras*, 585 F.3d 1061, 1076 (7th Cir. 2009) ("Whatever force these decision [implying the existence of a public right to access discovery] had was destroyed by the 2000 amendment to Rule 5(d)"); *see also TheStreet.Com*, 273 F.3d at 233 n.11 ("[T]o the extent that *Agent Orange* relied upon Federal Rule of Civil Procedure 5(d) to find a statutory right of access to discovery materials, we observe that the recent amendment to this rule provides no presumption of filing all discovery materials, let alone public access to them"); Richard L. Marcus, Fed. Practice &

Proc. § 2042 (3d ed. 2010) (the 2000 amendment to Rule 5(d) "has weakened arguments that there is a presumptive public right of access to such materials"). The 2000 amendment has led courts to find no presumption of public access to discovery material. *See, e.g., Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019) (quoting *United States v. Amodeo* 71 F.3d 1044, 1050 (2d Cir. 1995)) ("Documents that are never filed with the court, but simply "passed between the parties in discovery, lie entirely beyond the presumption's reach"); *Bond*, 585 F.3d at 1066 ("There is no such presumption for discovery that is not part of the court file"); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th 2016); *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001)) (exempting discovery and materials attached to discovery motions from the presumption of public access).  As the Sixth Circuit explained in *Shane Group* when distinguishing between materials in the court record and discovery materials:

> "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002).  Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]" Fed. R. Civ. P. 26(c)(1).

*Shane Grp.*, 825 F.3d at 305.

Given that there is no presumptive right of public access to pretrial discovery materials and that the purpose for broad discovery is to aid in the

litigation and the resolution of the case at hand, the "good cause" standard in Rule

26(c) should not present a substantial hurdle to clear where the movant seeks a

limited protective order concerning nonjudicial documents.[2]  *Haidon v. Town of*

*Bloomfield*, 552 F. Supp. 3d 265, 274 (D. Conn. 2021) (viewing "Rule 26(c)'s

'good cause' standard as a low hurdle to clear when the applicant seeks a modest

protective order limiting the use of deposition transcripts and recordings to

litigation of the instant case"); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n*

*of Sec. Dealers*, 621 F. Supp. 2d 55, 62 (S.D.N.Y. 2007) ("If the documents are not

judicial, then there is no presumption of public access, and the movant need only

make a baseline showing of good cause in order to justify the imposition of a

protective order"); *Bacchetti v. Nationstar Mortg. LLC*, No. 3:17-cv-834, 2017 WL

2992735, at *2 (D. Or. July 14, 2017) (quoting *Burgess v. Town of Wallingford*,

No. 3:11-cv-1129, 2012 WL 4344194, at *9 (D. Conn. Sept. 21, 2012)) (same); *see*

*also The Courier Journal v. Marshall*, 828 F.2d 361, 366 (6th Cir. 1987) (quoting

---

[2] The District Court for the District of Maryland has stated that the "good cause
requirement creates a rather high hurdle for proponents."  *Baron Fin. Corp. v.
Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006).  However, the movant in that case
was seeking an "indefinite protective order" shielding him from being deposed,
period.  *Id*.  Courts quoting this statement from *Baron Financial* do so in similar
situations where broad limitations on discovery are sought.  *See, e.g., Wilson v.
First Class Patrol Officers*, No. 2:15-cv-02170, 2016 WL 1253179, at *4 (D.S.C.
Mar. 31, 2016) (seeking complete stay of discovery); *Byard v. Verizon W. Va.,
Inc.*, No. 1:11CV132, 2013 WL 5636744, at *2-3 (N.D. W. Va. Oct. 15, 2013)
(seeking a protective order rendering confidential the entirety of three depositions
and their transcripts).

*Seattle Times*, 467 U.S. at 33) (additional citations omitted) (explaining that

"challenges to protective orders concerning the fruits of civil discovery" have been

"repeatedly" rejected based upon the holding in *Seattle Times* that "pretrial

depositions and interrogatories are not public components of a civil trial.  Such

proceedings were not open to the public at common law and, in general, they are

conducted in private as a matter of modern practice").  This low hurdle seems

particularly appropriate where the movant seeks a narrow protective order that

would not seal the discovery material completely or indefinitely.  *Id*.  Of course,

the movant seeking a protective order must present "a particular and specific

demonstration of [harm], as distinguished from stereotyped and conclusory

statements."  *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (quoting

*Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)).

Weingarten is not requesting a protective order completely sealing her

deposition.[3]  She seeks to preclude Defendants only from videotaping the

deposition.  Weingarten makes this request because Defendants allegedly intend to

use the video to annoy, harass, embarrass, and oppress her, and "to score political

---

[3] Weingarten is not seeking to preclude Defendants from deposing her or using all
or any portion of any transcript from the deposition.  As such, to the extent that the
subject of this litigation is in the public's interest, the public is not being denied
access to her testimony.

or fundraising points with [Project Veritas'] constituents."  (ECF No. 122 at Pg ID 2813.)

As district courts have observed, Rule 30(b)(2) allows videotaped depositions for the purpose of aiding the litigation.  *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999); *Drake v. Benedek Broad. Corp.*, No. CIV.A. 99-2227GTV, 2000 WL 156825, at *2 (D. Kan. Feb. 9, 2000); *see also Seattle Times*, 467 U.S. at 34 (explaining that the "sole purpose" of the federal rules' liberalizing pretrial discovery was to "assist[] in the preparation and trial, or the settlement, of litigated disputes.").  "[T]he [r]ule's provision for videotaped depositions was not intended to further a party's commercial goals or private pursuits or 'to be a vehicle for generating content for broadcast and other media.'"  *Drake*, 2000 WL 156825, at *2 (quoting *Paisley Park*, 54 F. Supp. 2d at 349); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial.  Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public.").  "[C]ourts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role."  *Drake*, 2000 WL 156825, at *2 (quoting *Paisley Park*, 54 F. Supp. 2d at 349); *see also Seattle Times*, 467 U.S. at 34-35 (explaining that the liberality of the discovery process

creates "a significant potential for abuse" such as delay, expense, misuse of process, and damage to the reputation and privacy of litigants and third parties, and courts "clearly ha[ve] a substantial interest in preventing this sort of abuse of its processes").  As the Supreme Court has advised, courts should avoid "becom[ing] a partner in the use of [discovery] material to gratify private spite or promote public scandal, with no corresponding assurance of public benefit."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603 (1978) (internal quotations marks omitted).

Video recordings present particular concern due to the potential abuse that can arise from the possible editing of such media which could distort the original contents.  "As numerous courts have observed, in this age of advanced technology, publication of [video] recordings is rife with potential for abuse. . . .  In particular, splicing of [video] recordings may result in false or misleading statements when taken out of context."  *Burgess*, 2012 WL 4344194, at *8 (citing *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007)); *see also Stern*, 529 F. Supp. 2d at 422 (quoting *Felling v. Knight*, No. 01-0571, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001)) ("videos can more easily be abused as they 'can be cut and spliced and used as 'sound-bites'").

Weingarten demonstrates a real risk that Defendants will use the videotape from her deposition for purposes unrelated to the resolution of this litigation,

10

specifically for the purpose of soliciting contributions to Project Veritas' cause and harassing her.  Project Veritas already used the videotape from the deposition of AFT Michigan's President, David Hecker, in an attempt "to score political or fundraising points" and publicly smear AFT Michigan and its national counterpart. *See* https://www.youtube.com.  Therefore, the Court finds good cause under Federal Rule of Civil Procedure 26(c) to preclude Defendants from videotaping Weingarten's deposition.

**Privilege Log Documents**

Defendants object to Magistrate Judge Stafford's denial of their motion to compel AFT Michigan to produce documents withheld based on the attorney-client or work-product privilege.  Defendants maintain the privileges never arose or were lost because the documents were disclosed to third parties.  As Magistrate Judge Stafford conveyed, however, "the attorney-client privilege extends to counsel's communications with agents and experts who are retained by counsel for the purpose of providing legal advice."  (ECF No. 152 at Pg ID 3934 (quoting *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014).)  Defendants complain that Magistrate Judge Stafford provided no explanation or analysis as to why either privilege applies.

It is unclear, however, what more Magistrate Judge Stafford needed to say other than that an in camera review of the documents was conducted and the

documents fall within one of the privileges.  This Court also has reviewed the

documents in question and finds no error in Magistrate Judge Stafford's

determination.  The communications were prepared because of the litigation, are

related to the litigation, and/or seek attorney advice in connection with the

litigation.  *See* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover

documents and tangible things that are prepared in anticipation of litigation or for

trial by or for another party or its representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent."); *see also Competitive*

*Enter. Inst. v. U.S. EPA*, 232 F. Supp. 3d 172, 187-88 (D.D.C. 2017) (finding

communications concerning drafting a public statement in response to litigation

privileged because a primary purpose[] of the emails was to obtain legal advice

concerning the legal risks of the various options for a public statement).  The fact

that the communications were shared with third parties does not render the

privileges inapplicable.  Fed. R. Civ. P. 26(b)(3); *Genesco*, 302 F.R.D. at 190.

**Project Veritas' Donors**

Defendants object to Magistrate Judge Stafford's order directing them to identify "supporting donors"[4] and "solicited donors."[5]  Defendants maintain that Magistrate Judge Stafford erred in finding that Project Veritas' donors were involved in or aware of the AFT Michigan infiltration plan before or during its execution.  Defendants also argue that the donors' First Amendment rights should be analyzed under the Supreme Court's recent decision in *Americans for Prosperity Foundation v. Bonta*, -- U.S. --, 141 S. Ct. 2373 (2021) ("*AFP*").  But even if the test set forth in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), was appropriately applied, Defendants argue that Magistrate Judge Stafford did not give proper weight to the donors' First Amendment interests, incorrectly assessed the centrality of the information sought to the issues in this litigation, and improperly placed the burden of showing less intrusive means on them.

---

[4] These are the individuals who actually gave money in support of Project Veritas' infiltration of AFT Michigan.  (*See* ECF No. 152 at Pg ID 3939.)

[5] These are individuals "from whom O'Keefe and other Project Veritas fundraisers solicited donations with specific reference to the infiltration of AFT Michigan." (*See id*. at Pg ID 3989-40.)

13

This Court first addresses whether the *Perry* test is an appropriate standard or whether *AFP* displaced that test.[6]  *AFP* involved a California law requiring charities registered in the State to submit a list of their major donors to the state attorney general.  141 S. Ct. at 2379.  The petitioners, tax-exempt charities that solicit contributions in California, challenged the law on First Amendment grounds.  *Id*. at 2380.  The Supreme Court held that the law violated the First Amendment due to the risk that the disclosure would chill protected associational speech.  *Id*. at 2387.  In reaching this decision, the Court applied "exacting scrutiny."  *Id*. at 2384-85.  " '[E]xacting scrutiny' requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to

---

[6] District courts within the Sixth Circuit have applied *Perry* to assess whether First Amendment associational rights preclude the disclosure of information.  *See Tesla Motors, Inc. v. Johnson*, No. 1:16-cv-1158, 2017 WL 11500988, at *2 (W.D. Mich. Dec. 11, 2017); *Tree of Life Christian Schs. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 WL 831918, at *2-3 (S.D. Ohio Mar. 12, 2012).  However, in *Marshall v. Bramer*, 828 F.2d 355 (6th Cir. 1987), the court distinguished between "cases . . . about government attempts at public disclosure of individual affiliation" and "a private litigant seeking to view a [membership] list for the purpose of deposing individuals who may have relevant information about a pending case."  *Id*. at 360.  In the latter instance, the Sixth Circuit found, "there is not only a strong interest to justify 'disclosure,' but the disclosure itself, under the court's protective orders, is not to be public disclosure, but private disclosure for a limited use."  *Id*. In *Marshall*, the Sixth Circuit employed a balancing test between associational rights and the right to conduct discovery but found the "risk of public disclosure minimal, and the threat to [F]irst [A]mendment rights . . . inconsequential" in cases where disclosure is sought only to gain information relevant to the litigation.  *Id*.

the interest it promotes." *Id*. at 2385 (internal quotation marks and citations omitted).

According to Defendants, *AFP* calls into doubt the correctness of Magistrate Judge Stafford's analysis, which relied on *Perry*. Defendants fail to identify a significant distinction between the scrutiny employed in the two cases, however. In fact, both decisions were reached after balancing First Amendment associational interests against the interests of disclosure—demanding a substantial relationship to a sufficiently important interest and use of the least intrusive means. *See id*.; *Perry*, 591 F.3d at 1161 ("[T]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation . . .. The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable."). The only significant distinction is that *AFP* arguably presumes that all disclosure requirements burden the First Amendment right of association.[7] *AFP*, 141 S. Ct. at

---

[7] The *AFP* Court stated that "[e]xacting scrutiny is triggered by 'state action which may have the effect of curtailing the freedom to associate,' and by the 'possible deterrent effect' of disclosure." 141 S. Ct. at 2388 (quoting *NAACP v. Alabama*, 357 U.S. 449, 462 (1958)) (emphasis added). However, "[t]he freedom of association protected by the First Amendment *does not* extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994) (emphasis added). The California law at issue in *AFP* impacted all charities registered in the State and undoubtedly many or most of those charities were formed to pursue lawful purposes. Most likely for that reason, the issue of whether the *AFP* plaintiffs could

2382; *see also id.* at 2395 (Sotomayor, J., dissenting).  It is true that Magistrate

Judge Stafford found that Defendants did not make a prima facie showing of

infringement with respect to Project Veritas' supporting donors.  (*See* ECF No. 152

at Pg ID 3947.)  However, even if this Court presumes that disclosing the identities

of the supporting donors would infringe their associational rights, they fare no

better than the solicited donors when applying *Perry*'s factors or *AFP*'s exacting

scrutiny.

Before getting there, the Court addresses Defendants' assertion that no

evidence shows that donors were consulted or had any input in the infiltration of

AFT Michigan.  Defendants reassert this argument throughout their objections,

including when arguing why the evidence is not highly relevant to AFT

Michigan's claims.  Magistrate Judge Stafford did not clearly err in reaching a

contrary finding.  The content and context of O'Keefe's emails reasonably suggest

that the donors with whom Project Veritas was communicating were aware of the

infiltration *before* the date of the communications.  Further, the emails refer

---

make a prima facie showing that the law threatened their associational rights was
never in dispute.  *See Ams. for Prosperity Found. v. Becerra*, 903 F.3d 1000 (9th
Cir. 2018); *Thomas More Law Ctr. V. Harris*, No. CV-15-3048, 2016 WL 6781090
(C.D. Cal. Nov. 16, 2016); *Ams. for Prosperity Found. v. Harris*, No. 2:14-cv-
09448, 2015 WL 769778 (C.D. Cal. Feb. 23, 2015).  The omission of this initial
burden in the *AFP* Court's discussion, therefore, might not reflect that such a
showing is no longer necessary.  As the answer does not impact the outcome here,
this Court does not attempt to resolve it.

expressly to a donor who contributed to Project Veritas specifically to support the infiltration. Thus, AFT Michigan is not seeking information concerning donors based on nothing but speculation as to their involvement, as Defendants suggest.

The Court also rejects Defendants' contention that Magistrate Judge Stafford erred in finding donor information highly relevant to any claim or defense in this case. Supporting and solicited donors may be able to provide evidence highly relevant to AFT Michigan's substantive claims. As Magistrate Judge Stafford pointed out, they "are highly relevant 'witnesses at a minimum, and may also be potential co-conspirators.'" (ECF No. 152 at Pg ID 3944 (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, No. 16-cv-00236, 2018 WL 2441518, at *11 (N.D. Cal. May 31, 2018).) There is "a substantial relation" between AFT Michigan's claims and what supporting and solicited donors were told by Project Veritas about the infiltration of AFT Michigan, such as the means by which the infiltration would be carried out and the motive for and goal(s) of the infiltration. Defendants' methods and purpose bear directly on at least AFT Michigan's federal eavesdropping and breach of duty of loyalty claims. *See Planned Parenthood*, 2018 WL 2441518, at *7, 11-12 (finding that the plaintiffs' interests in obtaining discovery of communications between the defendants and donors outweighed the First Amendment associational rights of the donors as the communications "may show" plans, goals, and methods "highly relevant" to the

17

plaintiffs' RICO claims, where the defendants infiltrated the plaintiffs' private conferences and meetings to secretly record hundreds of hours of conversations with the plaintiffs' staff for use in a "vicious online video smear campaign"); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 261 (D.D.C. 2014) (finding purpose of infiltration pertinent to the plaintiffs' claims alleging breach of fiduciary duty by intern placed with plaintiffs to remove and copy documents and record private conversations).

In their objections, Defendants argue that Magistrate Judge Stafford's application of *Planned Parenthood* was "clearly erroneous" because the donors in that case "were solicited *contemporaneously* with the investigation." (ECF No. 157 at Pg ID 4296.)  Defendants also maintain that *Planned Parenthood* is distinguishable because "unnamed co-conspirators" were alleged to have taken part in the RICO enterprise. (*Id.*)  The Court already rejected the premise of Defendants' first argument, finding it reasonable to conclude that there were earlier communications between Project Veritas and donors about the planned infiltration of AFT Michigan. As such, the donors here also are "*potential* co-conspirators and *possible* additional defendants." *Planned Parenthood*, 2018 WL 2441518, at *7 (emphasis added). Thus, there is no distinction between the donors here and in *Planned Parenthood*. Project Veritas' donors, like the donors in *Planned Parenthood*, likely hold highly relevant information concerning the methods,

18

goal(s), and purpose of the infiltration.  The relevance of this information to the elements of AFT Michigan's claims is what renders this case distinguishable from two of the cases cited by Defendants.

In *Tree of Life Christian Schools v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 WL 831918 (S.D. Ohio Mar. 12, 2012), the court found the information sought from the anonymous donor not highly relevant to the plaintiff's lawsuit under the Religious Land Use and Institutionalized Persons Act.  *Id*. at *4. The court explained that the information sought from the donor—whether the donor was willing to donate similar funds to purchase other properties—was not "necessary" to the plaintiff's "ability to raise a substantial-burden defense."  *Id.*

In *Marfork Coal Company v. Smith*, 274 F.R.D. 193 (S.D. W. Va. 2011), the identities of other activists who participated or assisted the defendants in their trespass of the plaintiff's property were found not relevant to the plaintiff's civil conspiracy claim.  *Id.* at 204.  But this was because any relevant information they had would be cumulative to the defendants' admission that they acted in concert to trespass on the plaintiff's property.  *Id*.

Defendants assert that Magistrate Judge Stafford improperly placed the burden on them to show that there are less intrusive means for AFT Michigan to obtain the sought-after information.  Instead, Defendants argue, AFT Michigan was required to show "that no alternative sources exist by which it could obtain the

relevant information in a less chilling manner." (ECF No. 157 at Pg ID 4298-99

(quoting *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 210 (N.D. Cal. 1983).)

But while a party seeking privileged information may bear the burden of showing

why less intrusive methods are unavailable or inadequate, it does not mean the

party must come up with alternatives.[8]  This would be senseless if such alternative

sources do not exist.  Defendants argue that thousands of documents have been

produced and depositions taken without evidence of donor involvement, perhaps

suggesting that such discovery provided the alternative means for the sought-after

information if it in fact exists.  But as Magistrate Judge Stafford reasoned, some of

the produced documentation does suggest donor involvement and AFT Michigan

should be able to test the veracity of Defendants' sworn testimony.  (ECF No. 152

at pg ID 3944-45.)

In sum, Magistrate Judge Stafford appreciated the importance of the donors'

associational privacy rights.  (ECF No. 152 at Pg Id 3936-38.)  Magistrate Judge

Stafford also correctly recognized, however, that those rights are not absolute and

may be outweighed by a sufficiently important interest.  (*Id.* at Pg ID 3938.)

---

[8] AFT Michigan presented materials reflecting that it had tried to obtain
information from Defendants' witnesses but they refused to testify about "anything
to do with donors or identity of donors."  (ECF No. 134 at Pg Id 3305; *see also*
ECF no. 136-3 at Pg ID 3473-74.)

Magistrate Judge Stafford did not err as a matter of fact or law when balancing the competing interests.

## Conclusion

For the reasons stated, the Court rejects Defendants' objections to Magistrate Judge Stafford's order.  There is merit to Weingarten's objections to the order and the Court finds good cause to issue a Rule 26(c) protective order precluding the videotaping of her deposition.

**SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: April 10, 2023