UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AFT MICHIGAN, | Civil Case No. 4:17-cv-13292 |
| Plaintiff, | |
| *v.* | Honorable Linda V. Parker |
| | Honorable Elizabeth A. Stafford |
| PROJECT VERITAS, and | |
| MARISA L. JORGE, | |
| Defendants. | |

**EMERGENCY MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL [209] OPINION AND ORDER REGARDING [157, 158] OBJECTIONS TO [152] MAGISTRATE JUDGE'S ORDER ON [134] PLAINTIFF'S MOTION TO COMPEL**

Under 28 U.S.C. § 1292(b), Project Veritas asks the Court to certify its order compelling the disclosure of nonparty donor identities for the reasons argued in its brief.

Project Veritas conferred with AFT Michigan on April 27, 2023, as required under Civil Rule 7.1(a)(1) (ED Mich. 2022). AFT Michigan does not concur in the relief sought.

Respectfully submitted

/s/ *Paul M. Mersino*

Butzel Long, P.C.
Paul M. Mersino (P72179)
150 W. Jefferson Ave. #100
Detroit, MI 48226
(313) 225-7000
mersino@butzel.com

100279942.1

– 1 –

Stephen R. Klein (P74687)
Barr & Klein PLLC
1629 K St. NW Ste. 300
Washington, D.C. 20006
(202) 804-6676
steve@barrklein.com

Attorneys for Defendants

Dated:  May 1, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

     Plaintiff,

*v.*

PROJECT VERITAS, and
MARISA L. JORGE,

     Defendants.

Civil Case No. 4:17-cv-13292

Honorable Linda V. Parker
Honorable Elizabeth A. Stafford

**BRIEF IN SUPPORT OF
EMERGENCY MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
[209] OPINION AND ORDER REGARDING
[157, 158] OBJECTIONS TO [152] MAGISTRATE JUDGE'S ORDER ON
[134] PLAINTIFF'S MOTION TO COMPEL**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................... ii

QUESTION PRESENTED ........................................................................... iv

CONTROLLING AUTHORITY ....................................................................v

RULE OF DECISION ..................................................................................1

ARGUMENT ...............................................................................................1

    1.   A controlling question of law is at the heart of the Court's ruling........2

    2.   A substantial ground for difference of opinion exists ..........................3

    3.   An appeal would materially advance the termination of this
        litigation..............................................................................................10

CONCLUSION ..........................................................................................12

# INDEX OF AUTHORITIES

## Cases

*Americans for Prosperity Foundation v. Bonta*,
  141 S.Ct. 2373 (2021) ...................................................................................1, 5

*Anderson v. Hale*,
  2001 WL 503045 (N.D. Ill. May 10, 2001) ...........................................................6

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ...................................................................................2

*Blair v. Checker Cab Co.*,
  219 Mich. App. 667 (1996) ...........................................................................9

*City of Dearborn v. Comcast of Michigan, III, Inc.*,
  2008 WL 5084203 (E.D. Mich. Nov. 24, 2008).................................................3, 10

*Delphi Automotive, PLC v. Absmeier*,
  167 F. Supp. 3d 868 (ED Mich 2016) ................................................................8

*Eagan v. CSX Transp., Inc.*,
  294 F. Supp. 2d 911 (E.D. Mich. 2003) ..............................................................3

*Eberline v. Douglas J. Holdings, Inc.*,
  2019 WL 989284 (E.D. Mich. Mar. 1, 2019).........................................................1

*Huff v. Spaw*,
  794 F.3d 543 (6th Cir. 2015)...........................................................................7

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) ..........................................................................2

*In re City of Memphis*,
  293 F.3d 345 (6th Cir. 2002) ..........................................................................10

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ..................................................................... 1, 2, 3

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994)....................................................................................3, 4

*NAACP v. Alabama*,
  357 U.S. 449 (1958).....................................................................................1, 2

*Newsome v. Young Supply Co.*,
   873 F. Supp. 2d 872 (E.D. Mich. 2012) ................................................................11

*Planned Parenthood Fed'n of Am., Inc. v. Center for Med. Progress*,
   2018 WL 2441518 (N.D. Calif. May 31, 2018) ...................................................4

*Tree of Life Christians Schools v. City of Upper Arlington*,
   2012 WL 831918 (S.D. Ohio Mar. 12, 2012) .......................................................6

*United States v. Morton Salt Co.*,
   338 U.S. 632 (1950) .................................................................................................7

*Wysong Corp. v. M.I. Indus.*,
   412 F. Supp. 2d 612 (ED Mich. 2005) ...................................................................8

*Young Conservatives of Texas Foundation v. University of North Texas*,
   2022 WL 2901007 (E.D. Tex. Jan. 11, 2022) ....................................................4, 5

*Zakora v. Chrisman*,
   44 F.4th 452 (6th Cir. 2022) ...................................................................................9

**Statutes**

18 U.S.C. §2150 ..............................................................................................................7

18 U.S.C. §2510(6) ........................................................................................................7

18 U.S.C. §2511(d) ........................................................................................................7

18 U.S.C. §2520(a) ........................................................................................................7

18 U.S.C. §2520(e) ........................................................................................................9

28 U.S.C. §1292(b) ........................................................................................................1

Mich. Comp. Laws §600.5805(2) ................................................................................9

**Rules**

Civil Rule 7.1(d)(1)(A) (ED Mich. 2022) ....................................................................1

Fed. Rule App. Proc. 5(a)(3) ........................................................................................1

## QUESTION PRESENTED

Should the Court certify for interlocutory appeal its order compelling the disclosure of the identities of certain nonparty donors of Project Veritas?

## CONTROLLING AUTHORITY

28 U.S.C. §1292(b)

Fed. Rule App. Proc. 5(a)(3)

*NAACP v. Alabama*, 357 U.S. 449 (1958)

*Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373 (2021)

*In re Trump*, 874 F.3d 948 (6th Cir. 2017)

Defendant Project Veritas submits this brief in support of its motion to certify for interlocutory appeal the Court's order compelling the disclosure of nonparty donor identities.  Civil Rule 7.1(d)(1)(A) (ED Mich. 2022).

## RULE OF DECISION

As a condition precedent to petitioning the Court of Appeals for review of an interlocutory order, the district court must certify that the subject order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  When the district court is of the opinion that these factors have been met, the district court shall permit a party to appeal a non-final order.  *Eberline v. Douglas J. Holdings, Inc.*, 2019 WL 989284 (E.D. Mich. Mar. 1, 2019); citing *In re Trump*, 874 F.3d 948, 950-51 (6th Cir. 2017).  This can be done by amending the challenged order to include the certification or issuing a separate order.  Fed. Rule App. P. 5(a)(3).

## ARGUMENT

The Court should certify for interlocutory appeal the question of whether compelling the disclosure of nonparty donor identities violates the protected First Amendment right of anonymous association recognized by the United States Supreme Court over half a century ago in *NAACP v. Alabama*, 357 U.S. 449 (1958), particularly when reviewed under the exacting scrutiny standard adopted more recently in *Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373 (2021) ("*AFP*").

– 1 –

Project Veritas requests that the Court issue an amended order (amending ECF No. 209) to include the necessary certification per Fed. Rule App. Proc. 5(a)(3).

**1.    A controlling question of law is at the heart of the Court's ruling.**

Interpretation of the First Amendment is, of course, a question of law. *Bartnicki v. Vopper*, 532 U.S. 514 (2001).  So too is a claim of privilege under the First Amendment.  *NAACP*, *supra*.  Accordingly, the appeal would present a question of law.

"All that must be shown in order for a question to be 'controlling' is that resolution could materially affect the outcome of the case."  *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1173 n.8 (6th Cir. 1992); *see also In re Trump*, 874 F.3d, at 951.  In support of its ruling, the Court accepted that the donors could provide evidence "highly relevant" to AFT Michigan's substantive claims and may be "potential co-conspirators."  ECF 209, PageID.6388.  The Court previously acknowledged that a question of law is "controlling" for purposes of § 1292(b) when it "directly affects Project Veritas' potential liability with regard to . . . [AFT Michigan]'s remaining claims."  ECF 104, PageID.2550.

This element is met.  Just as with the other issue this Court previously certified for interlocutory appeal, the question of the donor disclosure would materially affect the outcome of the case.  AFT Michigan proposes to re-open discovery after it has been closed for two years, suggests that it may try to add new parties, seeks to expand upon the claims it supported at this late juncture, and is essentially attempting to begin a brand new case and window of discovery in a case that was filed in 2017.  All while infringing upon Project Veritas's and its donor's First Amendment rights.

– 2 –

This issue is a controlling issue of law.

> **2.** **A substantial ground for difference of opinion exists.**

There is a substantial ground for disagreement on the correctness of the Court's ruling. "A substantial ground for difference of opinion exists when reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *In re Trump*, 874 F.3d, at 952 (internal quotation and citation omitted). Other factors to consider as to whether a substantial ground for difference of opinion exists are when: 1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question. *City of Dearborn v. Comcast of Michigan, III, Inc.*, 2008 WL 5084203 at *3 (E.D. Mich. Nov. 24, 2008); citing *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003).

Project Veritas respectfully submits that reasonable jurists could disagree with the Court's balancing of protected First Amendment interests on several grounds.

First, reasonable jurists could disagree as to whether, after *AFP*, all compelled disclosure requirements presumptively burden the First Amendment right of association, obviating the need for prima facie proofs required by the Magistrate Judge. Although the Court assumed this to be the case, and noted it would constitute a "significant distinction" from the *Perry* test applied by the Magistrate Judge, ECF 209, PageID.6386, it openly questioned whether this was the correct reading of *AFP* in light of *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994), where the

Supreme Court ruled that "[t]he freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Id.*, at 776.  The procedural posture in *Madsen* was, however, much different than ours: that case was before the Supreme Court on an injunction entered *after an evidentiary hearing*. *Id.*, at 770.  There, the trial court had made factual findings that picketers were infringing on the rights of others.  *Id.*, at 757–759, 770.  Here, in contrast, there have been no evidentiary hearings and no factual findings made.  It would be improper to assume that nonparty donors joined with Project Veritas to deprive AFT Michigan of its lawful rights when it has not been established by any evidence that *anyone* has deprived AFT Michigan of its lawful rights, a point made in the principal case upon which the Court relied, *Planned Parenthood Fed'n of Am., Inc. v. Center for Med. Progress*, 2018 WL 2441518, at *10 (N.D. Calif. May 31, 2018) ("such an argument is 'premature' as it 'assumes the merits of Plaintiffs' claims against defendants'").

Second, assuming *arguendo* that the proponent of a First Amendment associational privilege must still make out a prima facie case of infringement after *AFP*, reasonable jurists disagree on the quantum of evidence required to make that showing.  The Magistrate Judge found the evidence offered by Project Veritas to be inadequate without a meaningful explanation, and the Court seemed prepared to accept that finding but for *AFP*.  Yet other jurists have found that "a concrete showing of infringement is unnecessary." *Young Conservatives of Texas Foundation v. University of North Texas*, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022).  "Rather, the party asserting the associational privilege need only demonstrate an

– 4 –

objectively reasonable probability that disclosure of the information may expose its members to economic reprisal, loss of employment, threat of physical coercion, or other manifestations of public hostility." *Ibid.* (cleaned up).  Evidence that:

(a)   AFT has spent years using extraordinary efforts to identify someone with Project Veritas, ECF 193-1, PageID.6135;

(b)   Weingarten, AFT's president, maintains an "enemies list" of those she targets for economic reprisals, ECF 136-10, PageID.3547;

(c)   opponents of Project Veritas' mission have harassed and threatened Project Veritas, its (now former) CEO, and its reporters, exemplified by *The Washington Post* and *BuzzFeed News*  "contacting more than two dozen alleged Veritas supporters to undermine their support of Project Veritas," ECF 136-8, PageID.3527–3531, ¶¶5–6, and vandalism of its offices, *id.*, at PageID.3534; and

(d)   Project Veritas is a nonprofit business that relies on assurances of anonymity to solicit funds for its operations, *id.*, PageID.3531, at ¶7,

is more than sufficient to trigger First Amendment protections under *AFP.  AFP*, 141 S.Ct., at 2388–2389.  *See also*, *Young Conservatives*, 2022 WL 2901007, at *2 ("[t]he requisite proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself.") (internal quotation and citation omitted).[1]

---

[1]   Given the judiciary's recent experience with doxing, Jules Roscoe, *TikTok users are doxing the Supreme Court*, Vice (June 29, 2022), https://www.vice.com/en/article/v7vmpm/tiktok-users-are-doxing-the-supreme-court, and the threats that come with them, Jeremy Schulman, *The assassination plot against Brett Kavanaugh is a national emergency*, Mother Jones (June 8, 2022), https://perma.cc/Q4M4-TS5B, it is not hard to see the very real danger posed by compelling the release of donor identities.

Third, reasonable jurists could disagree on whether the sought-after donor information is "highly relevant" enough to AFT Michigan's claims to justify abridging the associational rights of Project Veritas and its donors—particularly when a serious question exists as to whether AFT Michigan has suffered any actual damages.  The Court engaged in no analysis of the supposed relevance of the information, other than to say that AFT Michigan might obtain insight about what donors were told about Project Veritas' motive for, and means of conducting, the undercover investigation of the union, and that it is conceptually possible that one or more donors might be coconspirators (even though AFT Michigan concedes it has only alleged a two-person conspiracy between the two named defendants).  ECF 209, PageID.6388.  Omitted was any discussion as to how the identity of these donors, or any information these presumed donors may have, could actually assist AFT Michigan establish a single element of a single remaining cause of action.

In *Tree of Life Christians Schools v. City of Upper Arlington*, 2012 WL 831918 (S.D. Ohio Mar. 12, 2012), the court explained that the test for relevance is whether "the information sought is ***highly relevant*** to the claims or defenses in the litigation—a more demanding standard of relevance than under Federal Rule of Civil Procedure 26(b)(1)."  *Id.*, at \*3 (emphasis added).  "The inquiring party must show that the information sought is so relevant that it goes to the heart of the matter; that is, the information is crucial to the party's case."  *Ibid.* (quoting *Anderson v. Hale*, 2001 WL 503045, at \*4 (N.D. Ill. May 10, 2001)).  Here, the names of supporting and solicited donors is not information crucial to AFT Michigan's case.

Regarding the eavesdropping claim, AFT Michigan alleges that Jorge recorded

oral conversations involving its employees.  ECF 72, PageID.2051, at ¶96.  There are several problems with this claim, none of which are aided by the disclosure of donor identities.

One, as previously raised by Project Veritas, there is an open question as to whether AFT Michigan has standing to bring this claim.  The Wiretap Act gives a private right of action to any *person* whose oral communication is intercepted, disclosed, or intentionally used in violation of 18 U.S.C. Chap. 119.  18 U.S.C. §2520(a).  While the term "person" includes corporations, 18 U.S.C. §2510(6), the speaker must have had an expectation *of privacy* that was both subjectively and objectively reasonable, *Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015), and corporations have no right to privacy, *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). So, although corporations can be persons, corporations are incapable of making oral communications under the Wiretap Act.[2]

Two, even if we assume *arguendo* that AFT Michigan has standing to sue for oral communication, this Court has acknowledged that the Wiretap Act established a one-party consent rule.  Any party to the communication may record it, and a third party may record the communication if given permission by one of the parties. 18 U.S.C. §2511(d).  Defendants therefore cannot be liable for Jorge "intercepting" any conversation to which she was a party.  And the only recording pleaded in the complaint is one to which she was a party.  ECF 72, PageID.2041, at ¶¶28–35.

---

[2]   Contrast this with the definition of "wire communication," which does not include a privacy element like the definition of "oral communication."  Compare 18 U.S.C. §§2150(1) and (2).

Three, even if AFT Michigan could prove that Jorge recorded conversations to which she was not a party—although the discovery period closed years ago, it has yet to identify any other speaker or recording—it would still have to prove that the speaker had an objectively and subjectively reasonable expectation of privacy under the circumstances.  Until AFT Michigan identifies this phantom speaker and supplies facts that support a subjective expectation of privacy in the phantom conversation, it is premature to be infringing on the protected First Amendment associational rights of Project Veritas and its donors.  And, again, AFT Michigan has not even alleged that the disclosure of donor identity will further this cause of action.

Regarding the alleged breach of loyalty, AFT Michigan has identified no element of the claim that requires it to prove whether a donor was aware of the techniques or motive for the undercover investigation.  The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately caused by the breach.  *Delphi Automotive, PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (ED Mich 2016) (Drain, J.).  In denying Defendants' motion to dismiss, the Court was willing to accept as plausibly pleaded a breach-of-loyalty claim on the facts alleged in Complaint, citing *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 624 (ED Mich. 2005), for the proposition that "an employee breaches a duty of loyalty by competing against his employer without fully disclosing his interest in the competing enterprise."  ECF 93, PageID.2352.  Recall, however, that this claim is pleaded only against Jorge, not Project Veritas.  Neither AFT Michigan nor the Court has explained how the identity of donors to Project Veritas helps prove *in any way* the claim that Jorge failed to disclose her investigative role with Project

– 8 –

Veritas much less that the identities would be "highly relevant" to its proofs.

The conspiracy claim as pleaded is doomed to fail under the intra-corporate conspiracy doctrine. Under that doctrine, a corporation cannot conspire with its agents or employees who were acting within the scope of their employment. *Blair v. Checker Cab Co.*, 219 Mich. App. 667, 674 (1996). AFT Michigan alleges that Jorge is "an agent for or employee of" Project Veritas. ECF 72, PageID.2048, at ¶80. AFT Michigan does *not* allege that Project Veritas conspired with anyone else. So, under the *Tree of Life* test, AFT Michigan is not seeking information that goes to the heart of its case *as pleaded*; it seeks instead leave of court to infringe on First Amendment associational rights so that it can explore whether it might have claims against a third party. That kind of fishing expedition to file a *new* claim against a *new* party falls far short of the "highly relevant" standard—*i.e.*, something that goes to the heart of a pending claim.

Moreover, it would be a futile effort because the statute of limitations would bar AFT Michigan from bringing anyone else into the case at this late date. "[A]n amendment [that] adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022) (internal quotation and citation omitted). Civil conspiracy claims are subject to a three-year limitations period. Mich. Comp. Laws §600.5805(2). Fiduciary duty claims, like the breach-of-loyalty claim in Count VIII, are also subject to a three-year limitations period. *Ibid.* The limitations period under the Wiretap Act is two years. 18 U.S.C. §2520(e). The alleged recordings took place during mid-2017, nearly six years ago.

– 9 –

Not one element of one remaining claim would be aided by the disclosure of the identities of any donors, solicited donors, or prospective donors. And surely that information does not go to the heart of any of AFT Michigan's claims. As such, we will be left with nothing but a First Amendment infringement for no appreciable purpose or gain to any party.

Whether this question is difficult and that the circuits are split is also evident by the multiple pages of precedent cited by Project Veritas in its objection citing to cases from numerous circuits across the land, all holding contrariwise to the Court's instant order. ECF 157, PageID.4288–4301. It is also evident from the United States Supreme Court's recent ruling in *AFP* that District Courts and Circuit Courts are finding the issue of coerced donor disclosure to be a difficult question, ripe for reversal by the Supreme Court. This is a difficult issue upon which reasonable minds can and frequently do disagree. And it is one that would be well served by a timely appeal, before any rights are infringed upon.

### 3.    An appeal would materially advance the termination of this litigation.

Finally, an appeal will materially advance the ultimate termination of this litigation. "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *City of Dearborn*, 2008 WL 5084203, at *3. "When litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). When

litigation would be conducted in a substantially different manner depending on the appeal, therefore, an interlocutory appeal is appropriate. An interlocutory appeal also materially advances the litigation when it "saves judicial resources and litigant expense." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012).

AFT Michigan has stated its intention to seek new discovery, conduct new depositions, and to add claims against donors it deems to be co-conspirators. ECF 160, PageID.4435. All after discovery previously closed over two years ago. With discovery closed, the Court's ruling implies that it would favorably entertain a motion to reopen discovery so that AFT Michigan can subpoena donors for records and depositions. And the Court's reliance on the "potential co-conspirator" theory also signals that it would grant a future motion to add parties, reopen discovery as to those new parties and claims, and extend this case—already in its sixth year—even longer. And, of course, there is no reason to suspect that AFT Michigan will stop as it continues its fishing expedition further and further.

If successful, an appeal would spare these judicial resources and litigant expenses by avoiding an expansion of the case beyond its current parameters. Accordingly, it would materially advance the ultimate termination of this litigation.

Additionally, an appeal would spare the improper and unnecessary infringement on the constitutional rights of non-parties. Disclosure of donor identities—if mandated at this time without appeal—would be irreparable. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

– 11 –

That is not something that can be resolved or put back into the bottle upon appeal after final judgment.  The bell cannot be unrung once struck.  An immediate appeal is necessary in order to protect the very serious constitutional rights of the non-parties in question.

## CONCLUSION

For these reasons, the Court should certify its order compelling the production of donor identities for interlocutory review.  Project Veritas respectfully requests that—pursuant to Fed. R. App. P. 5—the Court amend the challenged order [209] to include a certification permitting Project Veritas to seek immediate interlocutory appeal from the Sixth Circuit Court of Appeals.

Respectfully submitted

/s/  *Paul M. Mersino*

Butzel Long, P.C.
Paul M. Mersino (P72179)
150 W. Jefferson Ave. #100
Detroit, MI  48226
(313) 225-7000
mersino@butzel.com

Stephen R. Klein (P74687)
Barr & Klein PLLC
1629 K St. NW Ste. 300
Washington, D.C. 20006
(202) 804-6676
steve@barrklein.com

Attorneys for Defendants

Dated:  May 1, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

<u>/s/  Paul M. Mersino</u>
Paul M. Mersino