UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFT MICHIGAN,

        Plaintiff,

                                      Case No. 17-cv-13292

v.                                   Honorable Linda V. Parker

PROJECT VERITAS and
MARISA L. JORGE,

        Defendants.
_____/

**OPINION AND ORDER**

Plaintiff AFT Michigan filed this lawsuit against Defendants Project Veritas and Marisa L. Jorge, after Jorge—acting on behalf of Project Veritas—misrepresented herself to secure an unpaid, three-month internship with AFT Michigan.  During her internship, Jorge covertly obtained AFT Michigan documents and recorded the conversations of AFT Michigan staff members.  AFT Michigan currently has the following claims pending against Defendants based on this conduct: (Count I) fraudulent misrepresentation; (Count II) trespass; (Count III) violations of Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539c, to the extent Jorge was not a participant in private conversations she

recorded;[1] (Count V) civil conspiracy; (Count VI) misappropriation of trade secrets

in violation of Michigan's Uniform Trade Secrets Act, Mich. Comp. Laws

§ 45.1901; (Count VII) breach of duty of loyalty;[2] and (Count VIII) unlawful

interception of oral communications in violation of the Wire and Electronic

Communications Interception and Inception of Oral Communications Act, 18

U.S.C. §§ 2511, 2520.[3] (*See* ECF No. 104.)

The matter is presently before the Court on two motions related to the

parties' experts.  First, Defendants seek to disqualify AFT Michigan's expert, Nitin

V. Paranjpe, Ph.D., and exclude his opinion and testimony at trial.  (ECF No. 211.)

Defendants' motion is fully briefed.  (ECF Nos. 218, 220.)  Second, AFT Michigan

moves to strike the report of Defendants' expert, Robert J. Winiarski.  (ECF No.

219.)  That motion also is fully briefed.  (ECF Nos. 222, 223.)

---

[1] The Court dismissed this claim to the extent it was based on conversations to
which Jorge was a party, finding that the statute is not violated when a
conversation is recorded by one of its participants.  (*See* ECF No. 202.)

[2] The Court dismissed AFT Michigan's breach of fiduciary duty claim, which was
included in Count VII.  (ECF No. 104 at PageID. 2540.)

[3] The Court dismissed AFT Michigan's claims alleging larceny by trick (Count IV)
and violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2701
(Count IX).  (ECF No. 104 at PageID. 2543, 2545.)

**Defendants' Motion to Disqualify Dr. Paranjpe's Report and to Exclude His Opinion and Testimony at Trial**

**Summary of Dr. Paranjpe's Report**

Dr. Paranjpe is AFT Michigan's damages expert.  He identifies three categories of damages to AFT Michigan as a result of Defendants' infiltration through Jorge's internship.  The first category reflects the value of the time AFT Michigan employees spent with Jorge during her internship, resulting in "lost opportunity" ("opportunity costs").  Dr. Paranjpe calculated these damages by obtaining from AFT Michigan employees the number of hours they expended interacting with Jorge during her internship.  Neither AFT Michigan nor the employees contemporaneously recorded the time employees worked on individual tasks or with Jorge, specifically.  Therefore, the employees had to estimate the time they spent with Jorge based on any other available information, such as calendar entries.  Dr. Paranjpe then applied the total earnings AFT Michigan pays these employees, as provided by AFT Michigan's controller, to estimate the value of the time spent.  So, for example, if an employee spent 60 minutes working with Jorge, Dr. Paranjpe calculated how much that employee earned for 60 minutes of work based on the employee's annual earnings and included that amount in his "opportunity costs" calculation.

The second category of damages reflects the time AFT Michigan employees spent responding to the infiltration.  This time includes trying to identify the extent

of the infiltration (e.g., the documents Jorge gained access to), meeting with other employees and AFT Michigan's leadership and legal counsel, and involvement in this litigation.  These damages were calculated in the same manner as the first category.

The third category of damages reflects the cost of a forensic investigation to assess the documents and information Jorge accessed.  AFT Michigan's national counterpart ("AFT") paid Atlantic Data Forensics, Inc. to perform the investigation.

**Defendants' Challenges to Dr. Paranjpe's Report**

Defendants' primary complaint concerning Dr. Paranjpe's assessment of AFT Michigan's "time spent/lost" damages is their assertion that such costs are not recoverable where there is no evidence that the AFT Michigan employees' interactions with Jorge impaired their ability to do their work or that the infiltration caused any other loss, such as decreased revenue, income, or membership. Defendants also challenge the admissibility of Dr. Paranjpe's calculations as they are based on estimations of the time spent by the AFT Michigan employees with Jorge or on other infiltration-related tasks, rather than timesheets, testimony, or business records.  Further, Defendants contend, Dr. Paranjpe performed no economic tests, statistical analyses, or modeling, utilized no complex economic or scientific knowledge, and did not verify the numbers provided to him by the

employees and AFT Michigan's controller.  According to Defendants, Dr. Paranjpe

simply performed basic mathematical calculations and, therefore, his expertise is

not necessary to help the trier of fact.

With respect to AFT Michigan's remaining damages, Defendants argue that

Dr. Paranjpe ignored that AFT Michigan did not directly pay the costs of the

forensic investigation.  And as to post-internship damages, Defendants argue that

Dr. Paranjpe neglected to consider AFT Michigan's failure to mitigate its damages.

Defendants maintain that litigation-related costs—which they claim are any costs

incurred after Jorge's internship—are not recoverable.  Defendants further maintain

that AFT Michigan could have avoided many of the costs incurred after Jorge's

internship ended "by simply not bringing this [law]suit."  (ECF No. 211 at PageID.

6413.)

## Analysis

### Estimations and *Daubert*'s Factors

To be admissible, expert "testimony must be reliable."  *In re Scrap Metal

Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed. R. Evid. 702).  Rule

702 provides "general standards to assess reliability: whether the testimony is

based upon 'sufficient facts or data,' whether the testimony is the 'product of

reliable principles and methods,' and whether the expert 'has applied the principles

and methods reliably to the facts of the case.'"  *Id.* (quoting Fed. R. Evid. 702).  In

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme

Court "provided a non-exclusive checklist for trial courts to consult in evaluating

the reliability of expert testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at

529 (citing *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)).  The

checklist includes "testing, peer review, publication, error rates, the existence and

maintenance of standards controlling the technique's operation, and general

acceptance in the relevant scientific community." *Id.* (quoting *Langan*, 263 F.3d at

621).

"The test of reliability is 'flexible,'" however, "and the *Daubert* factors do

not constitute a 'definitive checklist or test,' but may be tailored to the facts of a

particular case." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

(1999)).  In fact, the Sixth Circuit "h[as] recognized that the *Daubert* factors 'are

not dispositive in every case' and should be applied only 'where they are

reasonable measures of the reliability of expert testimony.'" *Id.* (quoting *Gross v.*

*Comm'r of Internal Revenue*, 272 F.3d 333, 339 (6th Cir. 2001)).  *Daubert*'s factors

"may be of limited utility in the context of non-scientific expert testimony." *First*

*Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (citing *United*

*States v. Jones*, 107 F.3d 1147, 1158 (6th Cir.), *cert. denied*, 521 U.S. 1127 (1997));

*see also id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1349 (6th Cir. 1994),

*cert. denied*, 513 U.S. 1111 (1995)) (recognizing that "'the distinction between

scientific and non-scientific expert testimony is a critical one' and that *Daubert* is 'only of limited help' in assessing technical or experiential expertise''') (alterations omitted).

Dr. Paranjpe's opinion constitutes the type of non-scientific expert testimony for which *Daubert* is of limited help.  Therefore, the Court rejects Defendants' criticisms of the opinion based on the lack of peer review, publication, testing, the construction of models, or the like.  The reliability of Dr. Paranjpe's opinion rests, instead, on the data on which it is based.

Defendants maintain the data is unreliable because the hours AFT Michigan employees spent with Jorge during her internship or responding to the effects of the infiltration are only the employees' estimations—made "nearly two-and-one-half years" later.  Defendants also point out that Dr. Paranjpe did not verify the employees' salary information provided by AFT Michigan's controller.  The Court rejects Defendants' challenges to the reliability of this information due to the lack of verification from underlying data or resources, such as "time sheets[,]" "video or audio recordings[,]" or "annual reports, IRS filings, balance sheets, income statements, or profit and loss statements for AFT Michigan."  (*See* ECF No. 211 at PageID. 6418.)

With respect to the hours expended by employees, no such data exists.  And Dr. Paranjpe could reasonably rely on the salary figures provided by AFT

Michigan's controller without verifying that information elsewhere.  The real issue

is whether the information provided by the AFT Michigan employees is reliable

where it concededly is an estimation of the time they expended.

Damages based on speculation or conjecture are not recoverable.  *Ensink v.*

*Mecosta Cnty. Gen. Hosp.*, 687 N.W.2d 143, 147 (Mich. Ct. App. 2004) (quoting

*Theisen v. Knake*, 599 N.W.2d 777, 782 (Mich. Ct. App. 1999)); *see also Price v.*

*High Pointe Oil Co.*, 828 N.W.2d 660, 670 (Mich. 2013) (quoting *Sutter v. Biggs*,

139 N.W.2d 684, 686 (Mich. 1966)).  However, "damages are not speculative

merely because they cannot be ascertained with mathematical precision."

*Hofmann v. Auto Club Ins. Ass'n*, 535 N.W.2d 529, 554-55 (Mich. Ct. App. 1995)

(citing *Goodwin v. Ace Iron & Metal Co.*, 137 N.W.2d 151, 156 (Mich. 1965)); *see*

*also Anton v. SBC Global Servs., Inc.*, 350 F. App'x 39, 49 (6th Cir. 2009) (citing

Michigan law).  "It is sufficient if a reasonable basis for computation exists,

although the result be only approximate."  *Ensink*, 687 N.W.2d at 148 (quoting

*Hofmann*, 535 N.W.2d at 555) (citing *McCullagh v. Goodyear Tire & Rubber Co.*,

69 N.W.2d 731, 737 (Mich. 1955)).  "[W]hen the nature of a case permits only an

estimation of damages or a part of the damages with certainty, it is proper to place

before the jury all the facts and circumstances which have a tendency to show their

probable amount."  *Health Call of Detroit v. Atrium Home & Health Care Servs.,*

*Inc.*, 706 N.W.2d 843, 852 (Mich. Ct. App. 2005) (citing *Body Rustproofing, Inc. v.*

*Mich. Bell Tel. Co.*, 385 N.W.2d 797, 800 (Mich. Ct. App. 1986)); *see also Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 963 F. Supp. 2d 722, 734 n.1 (E.D. Mich. 2013) (citing *Body Rustproofing*, 385 N.W.2d at 800).

Accordingly, Dr. Paranjpe's opinion is not rendered unreliable and inadmissible because AFT Michigan's employees estimated the hours they spent with Jorge and responding to the effects of the infiltration.  The proper method for Defendants to challenge that opinion is to identify for the jury the facts and circumstances that undermine their probable amount.  "[T]he certainty requirement is relaxed where the fact of damages has been established and the only question to be decided is the amount of damages."[4]  *Ensink*, 687 N.W.2d at 148 (quoting *Hofmann*, 535 N.W.2d at 555).

## "Help" Requirement

Under Rule 702, expert testimony is admissible provided it "will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R Evid. 702(a).  "It is . . . well settled that 'necessity' is not a condition precedent for the admissibility of opinion testimony under Federal Rule of Evidence 702; rather the test is whether the opinion 'will assist the trier of fact.'"  *United States v. Brawner* 173 F.3d 966, 969 (6th Cir. 1999).  This requirement "goes primarily to

---

[4] Defendants do challenge the "fact of damages," but that challenge is addressed later in this decision.

9

relevance." *Daubert*, 509 U.S. at 591. "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *United States v. Victor*, 848 F.3d 428, 442 (6th Cir. 2017) (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014)). "The 'rejection of expert testimony is the exception, rather than the rule.'" *Id*. (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30).

Dr. Paranjpe did not simply perform mathematical computations which the jury could do. He collected and analyzed data and organized the results in a manner that will aid the jury in understanding the various forms of damages claimed by AFT Michigan. The Court finds that this satisfies the low bar required to believe his testimony will help the jury.

### "Opportunity costs" Attributable to Jorge's Internship

As already discussed, expert testimony is admissible only if it is relevant and reliable and will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 597. If "opportunity costs" are not recoverable as damages here, Dr. Paranjpe's opinions with respect to these damages are not relevant and, therefore, should be excluded. *See id*.; *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Defendants assert that "opportunity costs" like those claimed here for the hours incurred by AFT Michigan employees during Jorge's internship are not

recoverable.  AFT Michigan claims they are, as damages sustained by the

interference in its business.  But Defendants argue that there was no interference,

as AFT Michigan's employees indicated Jorge did not prevent them from doing

their job and there is no other obvious manifestation of Jorge's interference (e.g.,

lost membership).

AFT Michigan does not counter Defendants' argument; and as AFT

Michigan acknowledges, compensatory damages are designed "to make the injured

party whole for losses *actually suffered*."  (ECF No. 218 at PageID. 6815 (citing

*McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 (Mich. 1998); *Hayes-Albion*

*v. Kuberski*, 364 N.W.2d 609, 617 (Mich. 1984)) (emphasis added).)  On the other

hand, as AFT Michigan points out, "judicial power includes the ability to fashion

remedies . . . 'so as to grant the necessary relief.'"  (*Id.* at PageID. 6816 (quoting

*Mays v. Governor of Mich.*, 954 N.W.2d 139, 174 (Mich. 2020) (McCormack, C.J.,

concurring) (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946))).)  The critical

question, therefore, is whether the time AFT Michigan employees spent engaging

with an intern who was working under false pretenses and for purposes contrary to

AFT Michigan's interests qualifies as a suffered loss justifying some remedy, even

if no other harm is identified.

"Whether a particular kind of damages is recoverable for a given cause of

action is a question of law[.]"  *Daher v. Prime Healthcare Servs.-Garden City,*

*LLC*, 1 N.W.3d 405, 407 (Mich. Ct. App. 2022) (citing *Price*, 828 N.W.2d at 663);

*see also Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 779 (W.D.

Mich. 2006) (citing *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946

F.2d 1003, 1009 (2d Cir. 1991); *Cold Metal Process Co. v. E.W. Bliss Co.*, 285 F.2d

231, 242 (6th Cir. 1960); *Neyer v. United States*, 845 F.2d 641, 644 (6th Cir. 1988))

("[A]lthough the amount of recoverable damages is a question of fact, the measure

of damages upon which the factual computation is based is a question of law.").

Neither party provides persuasive argument or caselaw to enable the Court to

resolve this legal issue, however.  AFT Michigan analogizes Jorge's interference to

property condemnation, citing specifically *Department of Transportation v.*

*McNabb*, 516 N.W.2d 83 (Mich. Ct. App. 1994) (citing *Detroit v. Hamtramck*

*Cmty. Fed. Credit Union*, 379 N.W.2d 405 (Mich. Ct. App. 1985)).  (ECF No. 218

at PageID. 6817.)  Yet, AFT Michigan fails to explain how either of those cases is

applicable here and the analogy escapes the Court.

The property owner in *McNabb* identified a specific interference with its

business, with discernible costs, arising from the State's condemnation of a portion

of its land (i.e., acquiring duplicate machinery and equipment and paying increased

labor costs because any expansion of its business would now require two separate

buildings).  The property owner in *Hamtramck Community Federal Credit Union*,

offered evidence that the city's condemnation disrupted activities that were part of

12

its marketing plan and forced it to move locations several times, including at one

point to a double-wide trailer, which disrupted its ability to attract customers and

operate.  379 N.W.2d at 407.

The Court, therefore, reserves judgment on whether to preclude Dr.

Paranjpe's opinion and testimony regarding "opportunity cost" damages arising

during Jorge's internship until there is further briefing on this legal issue.

### Hours Expended Responding to the Infiltration

The Court is inclined to conclude that the value of the time spent by AFT

Michigan employees to uncover the extent of the infiltration, including identifying

the documents and information affected, is a recoverable damage.  This includes

the cost of the forensic investigation, even if AFT covered that cost.  These are

foreseeable and direct harms flowing from Defendants' actions.

While this litigation may also be a foreseeable and direct harm, the Court is

less certain that the law allows the inclusion of any time spent by AFT employees

in connection with the lawsuit in the calculation of any damage award.  Notably,

recoverability must be evaluated based on the pending claims.  While AFT

Michigan and Defendants take varying positions on this issue, they offer no useful

caselaw in support of their respective positions.  The Court found no case,

however, supporting Defendants' assertion that these costs are not recoverable

because AFT Michigan could have avoided them by not filing this lawsuit—in

Case 4:17-cv-13292-LVP-EAS   ECF No. 226, PageID.7221   Filed 03/29/24   Page 14 of 17

other words, that AFT Michigan failed to mitigate its costs by enforcing its legal rights.  Decisions indicating, as a general matter, that a plaintiff has a duty to mitigate its damages (*see* ECF No. 211 at PageID. 6426-27), are not instructive.

For these reasons, the Court also will reserve judgment on whether to preclude Dr. Paranjpe's opinion and testimony regarding "time spent/lost" damages arising after Jorge's internship until there is further briefing on this legal issue.

### Summary

In short, the Court finds Dr. Paranjpe's opinion to be admissible under Rule 702 to the extent it addresses damages ultimately found recoverable under the law. Therefore, at this juncture, the Court is denying Defendants' motion to disqualify Dr. Paranjpe and to exclude his opinion and testimony at trial.  The Court is requiring additional briefing consistent with the discussion above.  The breadth of Dr. Paranjpe's opinion and testimony will be decided after the briefing is complete.

### AFT Michigan's Motion to Strike Robert J. Winiarski's Report

### Summary of Mr. Winiarski's Report

The purpose of Mr. Winiarksi's report is to rebut Dr. Paranjpe's opinions. Mr. Winiarksi opines that AFT Michigan suffered no damages based on the "time spent/lost" by its employees during and after Jorge's internship because their earnings are fixed and were unaffected by the infiltration, AFT Michigan did not pay any salary or benefits to Jorge, and there is no evidence of a single opportunity

lost by AFT Michigan or its employees or any loss in revenue or membership as a result of Defendants' conduct. Mr. Winiarksi opines that the claimed costs related to the forensic evaluation by Atlantic Data Forensics are not AFT Michigan's damages, as it did not pay the invoice, and, in any event, constitute litigation costs.

**AFT Michigan's Challenges to Mr. Winiarski's Report**

AFT Michigan argues that Mr. Winiarksi's opinions are essentially impermissible legal conclusions concerning whether the damages included in Dr. Paranjpe's report are recoverable. According to AFT Michigan, Mr. Winiarski merely restates the arguments for why the damages are not recoverable that Defendants raise in their motion seeking to exclude Dr. Paranjpe's opinion. This includes: (i) the lack of evidence that there is any actual value to AFT Michigan for the time spent or lost by its employees interacting with Jorge during her internship or responding to the infiltration; (ii) that time and costs spent in connection with litigation are not recoverable; and (iii) that costs not incurred by AFT Michigan, but by AFT, are not recoverable.

**Analysis**

AFT Michigan does not claim that its employees were unable to complete their work because of the time spent with Jorge or responding to the infiltration. Nor does AFT Michigan claim increased payroll costs or decreased revenue or membership attributable to Defendants' infiltration. There is no dispute that some

15

of the hours included in Dr. Paranjpe's calculations consist of time spent in this litigation.  There also is no dispute that AFT paid the cost for the forensic investigation.  Whether there is otherwise recoverable "value" to AFT Michigan for this time, and whether costs paid by a third-party or incurred during litigation are recoverable, are questions of law, which this Court must resolve.

To the extent the Court concludes that any time or cost is recoverable despite the reasons argued by Defendants and expressed by Mr. Winiarski, Mr. Winiarski's opinions based upon the same reasons would be improper.  Although presented as criticisms of Dr. Paranjpe's methods, Mr. Winiarski is essentially offering that the time and cost are not properly—i.e., as a matter of law—recognized damages.  "An expert opinion on a question of law is inadmissible."  *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) (citing *Berry*, 25 F.3d at 1353-54).  To the extent the Court concludes these "damages" are not recoverable, Mr. Winiarski's challenges to them are not relevant.

Mr. Winiarski may properly opine, however, on the accuracy of the data on which Dr. Paranjpe's calculations are based.  For example, Mr. Winiarski may explain that Dr. Paranjpe's reliance on the time estimations without further inquiry is not consistent with professional standards.  He also could opine on whether time included in Dr. Paranjpe's calculations was in fact not specifically devoted to Jorge (e.g., attendance at an event where Jorge simply was present) or reflects time

16

preceding or unrelated to the infiltration.  Mr. Winiarksi may properly opine, as well, on relevant considerations not factored into Dr. Paranjpe's analysis, such as any contributions Jorge may have provided to AFT Michigan.

### Summary

For these reasons, the Court is denying AFT Michigan's motion to strike Mr. Winiarski's report.  However, the breadth of Mr. Winiarski's testimony concerning his opinions will be determined after the Court decides whether the damages discussed in Dr. Paranjpe's report are recoverable.

### Briefing on Issues of Law

Within thirty (30) days of this Opinion and Order, AFT Michigan shall file a motion in support of its claim for the damages included in Dr. Paranjpe's report. Defendants shall respond within twenty-one (21) days of its filing.  AFT Michigan may file a reply brief within seven (7) days thereafter.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 29, 2024