United States of America
In the District Court for the Eastern District of Michigan
Southern Division

AFT Michigan,

     Plaintiff,

v

Project Veritas, a foreign corporation,
and Marisa L. Jorge, a/k/a Marissa Jorge,
a/k/a Marissa Perez,

     Defendants.

Hon. Linda V. Parker, District Judge
Hon. Elizabeth A. Stafford
Case No.:  17-cv-13292

---

MARK H. COUSENS
Attorney for the Plaintiff
4933 Fairway Ridge Circle
West Bloomfield, Michigan 48323
cousens@cousenslaw.com
248-877-2098
P12273

PAUL M. MERSINO
BUTZEL LONG
Attorney for Defendants
150 W Jefferson, Suite 100
Detroit, Michigan  48226
mersino@buztel.com
313-225-7000
P72179

JOSEPH E. SANDLER
Attorney for Plaintiff
Sandler Reiff Lamb Rosenstein &
Birkenstock PC
1090 Vermont Ave., N. W., Suite 750
Washington, D.C.  20005
202-479-1111
sandler@sandlerreiff.com

STEPHEN R. KLEIN
Attorney for Defendants
Barr & Klein, PLLC
1629 K St. NW, Suite 300
Washington DC  20006
202-804-6676
steve@barrklein.com
P74687

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

For reasons expressed in the annexed brief Plaintiff moves for summary

judgment on Counts 1, 2, 3, 5, 7 and 8.

/s/ Mark H. Cousens
Attorney for the Plaintiff
4933 Fairway Ridge Circle
West Bloomfield, Michigan 48323
cousens@cousenslaw.com
248-877-2098
P12273

/s/ Joseph E. Sandler
Attorney for Plaintiff
Sandler Reiff Lamb Rosenstein &
Birkenstock PC
1090 Vermont Ave., N. W., Suite 750
Washington, D.C.  20005
202-479-1111
sandler@sandlerreiff.com

April 9, 2025

United States of America
In the District Court for the Eastern District of Michigan
Southern Division

AFT Michigan,                                    Hon. Linda V. Parker, District Judge
          Plaintiff,                             Hon. Elizabeth A. Stafford
v                                                Case No.:  17-cv-13292
Project Veritas, a foreign corporation,
and Marisa L. Jorge, a/k/a Marissa Jorge,
a/k/a Marissa Perez,
          Defendants.

---

MARK H. COUSENS                          PAUL M. MERSINO
Attorney for the Plaintiff               BUTZEL LONG
4933 Fairway Ridge Circle                Attorney for Defendants
West Bloomfield, Michigan 48323          150 W Jefferson, Suite 100
cousens@cousenslaw.com                   Detroit, Michigan  48226
248-877-4098                             mersino@buztel.com
P12273                                   313-225-7000
                                         P72179




JOSEPH E. SANDLER                        STEPHEN R. KLEIN
Attorney for Plaintiff                   Attorney for Defendants
Sandler Reiff Lamb Rosenstein &          Barr & Klein, PLLC
Birkenstock PC                           1629 K St. NW, Suite 300
1090 Vermont Ave., N. W., Suite 750      Washington DC  20006
Washington, D.C.  20005                  202-804-6676
202-479-1111                             steve@barrklein.com
sandler@sandlerreiff.com                 P74687

---

**BRIEF IN SUPPORT OF PLAINITT'S MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Concurrence Sought and Declined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement Regarding Submission of Discovery Material . . . . . . . . . . . . . . . . . . . vii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    AFT Michigan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.    Project Veritas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.    Marissa Jorge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Claims Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.    Jorge's Nefarious Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          1.    A Nefarious Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          2.    Trained to Lie . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          3.    Jorge Is Hostile to Labor Organizations . . . . . . . . . . . . . . . . . 7

     B.    Jorge Is Engaged as as an Intern by AFT Michigan . . . . . . . . . . . . . 8

          1.    Jorge is Interviewed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          2.    Jorge Was Engaged by AFT  Michigan
              As A Result of Her Lies . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

        (a)     Jorge Made a Plethora of False Statements
                 to AFT Michigan Staff in an Effort to Persuade
                 the Federation to Engage Her as an Intern. . . . . . . . . . 9

        (b)     These Statements Were False . . . . . . . . . . . . . . . . . . . . 10

    3.     Jorge Was an Employee of Project Veritas
           and Loyal Only to PV . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Summary Judgment Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   A.    Jorge and Project Veritas Committed Fraud . . . . . . . . . . . . . . . . . . 18

   B     Defendant Jorge Breached Her Duty
         of Loyalty to AFT Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   C.    Jorge Trespassed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

   D.    Jorge is Guilty of Eavesdropping . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      1.     Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      (a)    The Eastern Michigan University Meeting:
             Recordings Media Files 602-615 . . . . . . . . . . . . . . . . . . . . 27

      (b)    The Telephone Call . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    2.    Only a Participant May Record . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

   C.    Jorge Recorded the "Private Discourse of Others" . . . . . . . . . . . . . 32

   D.    The Recording of the Oral Communications of Others
         Violated 18 U.S.C. 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   E.    Plaintiff Has Suffered Damages . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# Table of Authorities

**Federal Statutes**

Federal Tort Claims Act, 28 U.S.C. 2671 et seq............................. 30

United States Wiretapping Act, 18 U.S.C. 2511 ................... 26, 28, 35

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(a) ................................................. 16

**Cases Decided by the U. S. Supreme Court**

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ..................... 16

*Celotex Corp. v. Catret*t, 477 U.S. 317 (1986) ........................... 16

**Cases Decided by the U. S. District Courts**

*American Furukawa, Inc. v. Hossain*,
 2017 WL 4324945 (E.D.Mich., 2017) ................................. 23

*Brown v. Tufail Ahmed,* 2024 WL 4354850 (E.D.Mich., 2024) .............. 18

*Desnick v. American Broadcasting Cos., Inc*.,
 44 F.3d 1345 (7th Cir., 1995) ........................................ 24

*Ferrara v. Detroit Free Press, Inc*.,
 52 Fed.Appx. 229 (6th Cir., 2002) .................................... 35

*Fisher v. Perro*n, 30 F.4th 289 (6th Cir., 2022) .......................... 29

*In re Flint Water Cases*,
 482 F.Supp.3d 601 (E.D.Mich., 2020) ................................ 31

*In re Hill*, 957 F.3d 704 (6ᵗʰ Cir., 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Johnson v. Home Depot U.S.A. Inc.*,
 2024 WL 4453756 (E.D.Mich., 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Myers v. U.S.*, 17 F.3d 890 (6ᵗʰ Cir., 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-32

*Nedschroef Detroit Corp. v. Bemas Enterprises LLC*,
 106 F.Supp.3d 874 (E.D.Mich., 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Smoot v. United Transp. Union*, 246 F.3d 633 (6ᵗʰ Cir., 2001) . . . . . . . . . . . . . . 35

*Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612 (E.D. Mich. 2005) . . . . . . . . . 20


**Michigan Statutes**

Michigan Eavesdropping Act,  MCL 750.539c . . . . . . . . . . . . . . . . . . . . . 26, 29, 30

Michigan's Worker's Disability Compensation Act, MCL 418.10 . . . . . . . . . . . 20


**Cases Decided by the Michigan Supreme Court**

*Betts v. Ann Arbor Public Schools*,
 403 Mich. 507; 271 N.W.2d 498 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*American Transmission, Inc. v. Channel 7 of Detroit, Inc.*,
 239 Mich.App. 695; 609 N.W.2d 607 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Barnett v Norman Yatooma & Associates*, 2007 WL 840880 (2007) . . . . . . . . . . 34

*Dalley v. Dykema Gossett*,
 788 N.W.2d 679, 287 Mich.App. 296 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dickerson v. Raphael*, 222 Mich.App 185;
 564 NW2d 85 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gen-Wealth, Inc. v. Freckman*, 2021 WL 1941752 . . . . . . . . . . . . . . . . . . . . . . . 23

*Hall v. Stewart*, 1998 WL 1997568 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

*Keefer v. Nea*l, 2022 WL 5264753 (2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Stone*, 463 Mich. 558,
 621 N.W.2d 702 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sullivan v. Gray*, 117 Mich.App. 476, 324 N.W.2d 58 (1982) . . . . . . . . . . . 29, 30

## Other Authorities

Black's Law Dictionary (11th ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Paul Farhi, *What the Latest James O'Keefe Video Leaves Out*,  Washington Post,
(June 28, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Concurrence Sought and Declined

Pursuant to LR 7.1(a) the undersigned counsel communicated with counsel for the Defendants to request concurrence in this motion. Contact was made by electronic mail as this is the parties' preferred method of communication. Several exchanges followed. Following this communication counsel for Defendants declined to concur in this motion.

**Statement Regarding Submission of Discovery Material**

Pursuant to LR 26.2 (a)(1) Plaintiff has submitted pages from the deposition of

Defendant Jorge.  However, pursuant to the parties' stipulated protective order,

Plaintiffs have not submitted any pages marked by Defendants as "confidential."

The entire transcript of that deposition is available upon request.

**Introduction**

The Court should grant summary judgment on the issue of liability with respect to Plaintiff's claims against both Defendants as there are no disputed questions of fact with regard to the several torts committed by Marissa Jorge in conjunction with and at the behest of Project Veritas. "Granting summary judgment is appropriate 'where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial[.]'" *In re Hill*, 957 F.3d 704, 710 (6th Cir., 2020) citing *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 192-93 (6th Cir., 1992) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir., 1987).

In her deposition Defendant Jorge admitted the truth of the facts alleged by Plaintiff in its complaint. The deposition makes clear that Jorge is guilty of fraud, trespass, breach of duty of loyalty and of violation of both the Michigan Eavesdropping Act and the federal Electronic Communications Privacy Act. There are no disputed questions of fact here because Jorge has testified that she made a plethora of false statements to gain access to AFT Michigan, was working solely for the benefit of Project Veritas while engaged as an intern at AFT Michigan and recorded conversations to which she was not a party but was a mere observer. As an

observer, and not a participant, Jorge was not privileged to record the "private discourse of others." But she did so; on two distinct occasions she recorded completely private interactions including an attorney-client conference and a meeting to discuss bargaining strategy.

Jorge has admitted all of the facts associated with the Plaintiff's claims. Given that the Court should grant summary judgment on Plaintiff's claims in count I, II, III, V, VII and VIII. These claims survived Defendants' motion to dismiss and remain before the Court.

## The Parties

### A.    AFT Michigan

AFT Michigan (the Federation) is the Michigan affiliate of the American Federation of Teachers, AFL-CIO. Affiliated with the Federation are more than 90 local Unions representing more than 35,000 persons most of whom work for school districts, colleges and universities. The Federation maintains a headquarters building in the City of Detroit where its officers and staff work. Access to the building is limited to those granted permission. Visitors must be individually admitted. AFT Michigan is part of a large and growing labor movement representing public employees in nearly every municipality in the State of Michigan. See declaration of David Hecker.

B.    Project Veritas

Project Veritas (PV) is a right-wing organization infamous for targeting and surreptitiously infiltrating progressive organizations. Supported by secret contributions, PV has engaged in a practice of faux journalism aimed at various progressive groups and  organizations in an effort to disparage them or cast them in a false light. PV and its founder, James O'Keefe (since separated from Project Veritas), have a history of secretly recording employees working for penetrated organizations with the hope that the employee would make a harmful admission. PV then edits these recordings to present an entirely misleading version of the truth.

"The practices in which Project Veritas engages are "uncommon and generally considered unethical" by real journalists. Paul Farhi, *What the Latest James O'Keefe Video Leaves Out*,  Washington Post, (June 28, 2017) "Their work has been repeatedly criticized for intentionally deceptive editing... and O'Keefe has a criminal record in an effort to illegally infiltrate a Democratic Senator's office." https://www.washingtonpost.com/lifestyle/style/what-you-dont-see-in-okeefe-video-may-be-as-important-as-what-you-do/2017/06/28/dcb67446-5b7c-11e7-a9f6-7c3296387341_story.html

3

C.     Marissa Jorge

Marisa Jorge was an agent of Project Veritas. She has been identified as a participant in numerous Project Veritas operations. And she has admitted that she was an employee of Project Veritas and engaged in work for it continuously while engaged as an intern by AFT Michigan.

**The Claims Before the Court**

Six separate claims are pending against each Defendant.

Count I: Fraud

The complaint asserts that Defendant Jorge, in conjunction with Project Veritas, made myriad false statements to AFT Michigan, knew the statements were false and intended these false statements to be believed. AFT Michigan accepted the false statements as true and was harmed as a result when Ms. Jorge covertly recorded private conversations, rummaged through private records and photographed private files.

Count II: Trespass

The complaint asserts that Defendant Jorge obtained permission to enter AFT Michigan through fraud and as such that consent was invalid making Jorge a trespasser.

Count III: Eavesdropping

4

Count III asserts that Defendant Jorge covertly recorded the "private discourse of others" when she engaged in video and audio recording of conversations in which she was not a participant but a mere observer.

Count V: Conspiracy

Count V asserts that Jorge and Project Veritas conspired to engage in unlawful tortious behavior.

Count VII: Breach of Duty of Loyalty

Count VII asserts that Defendant Jorge breached her duty of loyalty to AFT Michigan by intentionally engaging in conduct contrary to the interests of the organization for which Jorge was working. Jorge has conceded that she was always acting for and on behalf of Project Veritas while engaged at AFT Michigan.

Count VIII: Interception of Oral Communication

Count VIII asserts that Jorge violated 18 U.S.C. 2511(d) for intercepting oral communication when she was not a participant in the conversation; that the recordings were made for the purpose of committing a tort.

**The Facts**

A.    Jorge's Nefarious Purpose

1.    A Nefarious Purpose

Jorge was placed at AFT Michigan by Project Veritas for the purpose of spying. Her over all goal was to gather information which PV might use to harm AFT

Michigan and by extension teacher unions in general. Jorge was told that *part of her goal* was to get a union official to explain how "...black people needed to stay in poor, failing schools because it would hurt the union's status quo of obtaining money and power."

2.      Trained to Lie

Jorge admitted that she was trained to lie for Project Veritas:

5 A. I was told that I would have to build covers, like

6 cover legends.

7 Q. So cover legends would include an identity which

8 was not real?

9 A. Yes. But, again, that is a cover legend

10 specifically to the work that we do.

11 Q. Understood. But if -- as part of your work for

12 Project Veritas, have you ever created an identity which was

13 not your true identity and represented that identity to third

14 parties?

15 A. I have created and represented iden -- identities

16 that I needed for specific investigations

R-46[1]

And Jorge was trained to convince her target:

Q. And you work hard at making them believe it?

14 A. I play the role that I need to play in order to

15 investigate.

16 Q. And the reason you play the role is that you want

17 them to believe that what you are telling them is true?

18 A. Yes.

19 Q. Even though you know it is not completely true?

20 A. Yes.

R-54

3.      Jorge Is Hostile to Labor Organizations

23 THE WITNESS: I mean, I have never been in support

24 of labor unions.

Page 93

1 Q. Why not?

2 A. I just have never really thought that they were

3 necessary in this day and age.

---

[1] Pursuant to LR 26.2(a)(1) cited pages of the transcript of Defendant Jorge are attached.

4 Q. Okay. Why aren't they necessary?

5 A. I mean, personally I just don't -- I think that

6 they were necessary at one point but I just don't think they

7 are necessary today.

8 Q. Do you think that unions advocate things that you

9 oppose?

10 A. To a degree

B.    Jorge Is Engaged as as an Intern by AFT Michigan

1.    Jorge is Interviewed

In the Spring of 2017, Marisa Jorge interacted with the leader of a local union affiliated with AFT Michigan and misled him into believing that she was a student at the University of Michigan and was interested in the labor movement and in public education. She was referred to AFT Michigan for possible service as an intern. R-89.

The Federation has had a practice of engaging individuals as summer interns. These persons have included people who have demonstrated an interest in the labor movement and in public education and who want to learn about both. The persons who have served in the past were recommended by trusted organizations or colleagues. The program, while informal, has been a success as many interns have gone on to work with organized labor or in education.

Jorge was invited to interview with the Federation.  During the interview Jorge repeatedly lied about her identity and her purpose. She identified herself as "Marissa Perez." She said she was a student at the University of Michigan. She claimed to live in Michigan. She said she wanted to be a teacher of second grade. She said that she was interested in the labor movement. She claimed to think that charter schools were bad ideas. None of these statements were true. Each was an intentional lie offered for the purpose of gaining access to the Federation and its building. R-104-105.

2.      Jorge Was Engaged by AFT  Michigan As A Result of Her Lies

(a)     Jorge Made a Plethora of False Statements to Aft Michigan Staff in an Effort to Persuade the Federation to Engage Her as an Intern

1 Q. So let's go through some of your legend. Part of

2 it was that you were apparently or supposedly a student at

3 the University of Michigan?

4 A. Yes.

5 Q. That you were in your sophomore year?

6 A. Yes.

7 Q. That you were studying education?

8 A. Yes.

9 Q. That you wanted to be a second grade teacher?

10 A. Yes.

9

11 Q. That you were interested in teacher unions and how

12 they worked?

13 A. Yes, that was all a part of the -- the cover in

14 order to gain information.

15 Q. That your mother was a teacher?

16 A. Yes.

17 Q. Was your mother ever a teacher?

18 A. No.

19 Q. That you were born in Michigan?

20 A. Yes.

21 Q. That your parents lived in Michigan?

22 A. Yes.

23 Q. None of these statements was true?

24 A. Again, those were all just part of the cover that I

25 created.

R-86

(b)     These Statements Were False:

2 Q. And you said that you were in your sophomore year?

3 A. Yes.

10

4 Q. That you were studying elementary education?

5 A. Yes.

6 Q. That your mother had taught in Austin, Texas?

7 A. Yes.

8 Q. That you wanted to teach second grade?

9 A. Yes.

10 Q. In fact, it was not true that you were born in

11 Flint?

12 A. I was not born in Flint.

13 Q. And it was not true that your parents had moved to

14 Michigan?

15 A. My parents have never moved to Michigan.

16 Q. And it was not true that you went to the University

17 of Michigan as a student?

18 A. No.

19 Q. And it was not true that you were studying

20 elementary education?

21 A. No.

22 Q. And it was not true that your mother taught in

23 Austin, Texas

24    no

25 Q. And it was not true that you wanted to teach second

R-104

1 grade?

2 A. No.

3 Q. You knew these statements were false at the time

4 that you made them?

5 A. I mean, again, they were all part of the cover

6 legend.

7 Q. I understand that, but you knew that they were not

8 true?

9 A. Yes.

10 Q. And you intended the people who were listening to

11 believe them to be true?

12 A. Well, if they wanted to believe them.

13 Q. If they wanted to believe them, but you told them

14 what you -- what we have discussed and you represented that

15 they were true?

16 A. Yeah, I was giving them the legend that I had

17 created for myself.

12

18 Q. And you made these statement for the purpose of

19 gaining an internship with AFT Michigan?

20 A. Well, yes, to ultimately gain information.

21 Q. Uh-huh. And you made the false statement as part

22 of your work for Project Veritas?

23 A. I mean, again, that was the cover that I created to

24 do the job of gaining access to then get information.

25 Q. You told AFT Michigan that you wanted to be an intern

(c)      Jorge Knew Each of These Statements Are False.

Ms. Jorge explained that she "played a role" but expected the target to believe what

she told them:

A. I play the role that I need to play in order to

15 investigate.

16 Q. And the reason you play the role is that you want

17 them to believe that what you are telling them is true?

18 A. Yes.

19 Q. Even though you know it is not completely true?

20 A. Yes.

R-106

Jorge said she expects people to believe what she told them "if they chose to".

13

Based on these lies, Jorge was engaged as an intern by AFT Michigan for the
Summer of 2017. As an intern she was expected to perform routine tasks. But Jorge
was only interested in fulfilling the interests of Project Veritas which was her actual
employer. She had no loyalty of any sort to AFT Michigan.

3.    Jorge Was an Employee of Project Veritas and Loyal Only to PV

(a)

1 Q. When did you begin working for Project Veritas for

2 compensation, for money?

3 A. June 1st, 2016.

4 Q. All right. So there may have been something before

5 this that has not been provided to us. Do you know whether

6 it looked the same or about the same?

7 A. Yeah, it was probably the same document.

8 Q. Do you know why a second document was signed?

9 A. I don't recall. Like, I don't remember why.

10 Q. They asked you to sign it, you signed it?

11 A. Yes.

12 Q. Did you read it before you signed it?

13 A. Yes.

14 Q. Are you -- you were paid by Project Veritas during

14

15 calendar year 2017, were you not?

16 A. Yes.

(b)

6 Q. So let's talk about the Michigan operation. You

7 were paid by Project Veritas while you were working at AFT

8 Michigan?

9 A. Yes.

10 Q. And you were working for Project Veritas while you

11 were working at AFT Michigan?

12 A. Yes.

R-84

And:

21 Q. Right. But between roughly May and roughly

22 September of 2017 while you were at AFT Michigan, your

23 objectives were those of Project Veritas?

24 A. The objectives, yes.

R-107

4.

15

Jorge abused her access to the Federation offices. She accessed a computer work station assigned to a Federation staff person and reviewed personal communication and confidential strategy memoranda. She printed and copied a mortgage application submitted by the staff person. R 134. She rummaged through file cabinets and photographed documents. R-162. She photographed material and sent it to Project Veritas without regard to the nature of the document. Indeed she photographed and forwarded a copy of a published history of the Federation of Teachers which was a publically available document.

## Argument

## Summary Judgment Standards:

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential

to that party's case and on which that party bears the burden of proof at trial. *Celotex*

*Corp. v. Catret*t, 477 U.S. 317, 322 (1986).

> "The movant has the initial burden of showing "the absence of a genuine
> issue of material fact." *Id*. at 323. Once the movant meets this burden,
> the "nonmoving party must come forward with specific facts showing
> that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v.
> Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks
> and citation omitted). To demonstrate a genuine issue, the nonmoving
> party must present sufficient evidence upon which a jury could
> reasonably find for that party; a "scintilla of evidence" is insufficient.
> See *Liberty Lobby*, 477 U.S. at 252. The court must accept as true the
> non-movant's evidence and draw "all justifiable inferences" in the
> non-movant's favor. See *Liberty Lobby*, 477 U.S. at 255.
>
> "A party asserting that a fact cannot be or is genuinely disputed must
> support the assertion by citing to particular parts of materials in the
> record, including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including those
> made for purposes of the motion only), admissions, interrogatory
> answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1).

*Johnson v. Home Depot U.S.A. Inc*., 2024 WL 4453756, at *2 (E.D.Mich., 2024)

And

> "When a party files a motion for summary judgment, it must be granted
> "if the movant shows that there is no genuine dispute as to any material
> fact and the movant is entitled to judgment as a matter of law." Fed. R.
> Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by: (A) citing to particular parts of
> materials in the record...; or (B) showing that the materials cited do not
> establish the absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact." Fed. R.
> Civ. P. 56(c)(1). The standard for determining whether summary
> judgment is appropriate is "whether the evidence presents a sufficient
> disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). However, when the record contains "a videotape capturing the events in question," the court may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it." *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And the court must "nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff.' "*LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips,* 878 F.3d 541, 544 (6th Cir. 2017)).

*Brown v. Tufail Ahmed,* 2024 WL 4354850, at *3 (E.D.Mich., 2024)

Here Plaintiff's motion rests on the admissions of Defendant Jorge as stated in her deposition. There is no disputed question of fact because Jorge has confirmed Plaintiff's claims.

## Argument

A.    Jorge and Project Veritas Committed Fraud

1.

Marissa Jorge engaged in fraud from the moment she walked into the offices of AFT Michigan. She has admitted the same, acknowledging that everything she told the Federation staff was a lie. Her purposes have been identified; to gather

18

information which Project Veritas might use to harm AFT Michigan. She was never on the premises to assist; she was there to harm.

The term "fraud" is defined as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." Black's Law Dictionary (11th ed.). To sustain a claim of actual fraud or fraud in the inducement, a plaintiff must demonstrate:

> "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 499; 892 NW2d 467 (2016) (citation omitted); see also *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003).]
>
> "Both actual fraud and fraud in the execution require a plaintiff to demonstrate an intent to deceive. See *Gen Electric Credit Corp v Wolverine Ins Co*, 420 Mich 176, 184; 362 NW2d 595 (1984)."

*Keefer v. Neal*, 2022 WL 5264753, at *6–7 (2022)

The undisputed facts show that personnel at AFT Michigan believed what Jorge told them. She intended her story to sound credible and intended it to be accepted as true. But it was not true. Her statements were entirely false; she knew they were false; she intended them to be believed; they were believed. That is the textbook definition of fraud.

2.

The undisputed facts establish that Jorge and Project Veritas committed fraud. There is no disputed fact here. Jorge has acknowledged her purpose and her method. She intended to lie. She did lie. Every statement she made was false. She knew she was lying. She wanted AFT Michigan staff to believe her and they did.

Jorge's conduct at AFT Michigan is the very definition of fraud; knowing and intentional misrepresentation for the purpose of causing damage. The Court should readily conclude that Project Veritas, acting through Jorge as its agent, engaged in deliberate fraud.

B     Defendant Jorge Breached Her Duty of Loyalty to AFT Michigan

1.

Defendant Jorge breached her duty of loyalty to Plaintiff AFT Michigan. She was engaged as an unpaid volunteer but she had all of the obligations of an employee. As an unpaid person she was subject to the control of AFT Michigan and was responsible for acting in the interests of the entity which engaged her. Although unpaid she had the protections of Michigan's Worker's Disability Compensation Act, MCL 418.10. *Betts v. Ann Arbor Public Schools*, 403 Mich. 507, 514–16; 271 N.W.2d 498, 500–01 (1978)  (unpaid student teacher entitled to Worker's Compensation benefits). ("The fact that the pay for this service was not in the coin

20

of the realm but was in the form of training and qualification for a professional goal does not disqualify plaintiff from the designation of employee.").

In partially rejecting the Defendants' motion to dismiss this Court rightly concluded that "....(T)he Court will recognize a duty of loyalty in this context. See, e.g., *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 624 (E.D. Mich. 2005) (holding "[a]n employee breaches a duty of loyalty . . . by competing against his employer without fully disclosing the (sic) his interest in the competing enterprise"); see also *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 883 (E.D. Mich. 2015) (holding Michigan "'law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal'" (citation omitted)). ECF 90; page ID 2352.

2.

Jorge had a duty of loyalty because she was engaged by AFT Michigan and agreed to provide assistance in exchange for what she said was training and exposure to the labor movement in public education. She was obligated to act in the interests of her employer. She did not.

First, Jorge was at all times employed by Project Veritas. R-84. Her goals were not those of the Federation but of her employer Project Veritas. Second, her goals were to harm AFT Michigan not help it.

Q: "You just decided to investigate AFT Michigan to find what you could find?

A. Yes.

R-69

Third, she covertly recorded every conversation in which she participated or observed and sent transcripts of these to Project Veritas. R-119. She also rifled through and photographed the contents of file cabinets seeking information she thought might be of interest to Project Veritas although she did not have permission to access the files or to photograph them. R-140.

Jorge acted solely in the interest of Project Veritas while engaged by AFT Michigan. Her objectives were dictated by Project Veritas; her goals were those set by Project Veritas. Indeed, she returned to AFT Michigan in September, 2017, even though her "internship" had nominally expired because Project Veritas wanted her to get more content. R-175.

Jorge was not acting in the interests of AFT Michigan. Her loyalty was to Project Veritas. Her goal was to harm, not help, the Federation. She breached her duty of loyalty to the entity which engaged her.

3.

Employees owe a duty of loyalty to their employers:

"Under principles of agency, an agent owes his principal a duty of good faith, loyalty, and fair dealing." *H.J. Tucker & Assoc., Inc. v. Allied*

22

*Chucker & Eng'g Co.*, 234 Mich.App. 550, 595 N.W.2d 176, 188 (1999) (citing *Burton v. Burto*n, 332 Mich. 326, 51 N.W.2d 297, 303 (1952)). The Michigan Courts have held that these duties prohibit an agent from "act[ing] for himself at his principal's expense during the course of his agency." *Central Cartage Co. v. Fewless*, 232 Mich.App. 517, 591 N.W.2d 422, 426 (1998) (citing *Prod. Finishing Corp. v. Shields*, 158 Mich.App. 479, 405 N.W.2d 171, 174 (1987).

*Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F.Supp.3d 874, 882 (E.D.Mich., 2015)

See also *American Furukawa, Inc. v. Hossain*, 2017 WL 4324945, at *7

(E.D.Mich., 2017):

> "In general, employees owe a duty of loyalty to their employers. *Nedschroef Detroit Corp.*, 106 F.Supp.3d at 883. Although the parameters of this duty are not well-defined, some general rules exist. For example, an employee may take steps to establish a competing business while still employed without breaching the duty of loyalty, but the employee may not actually commence competition.' "*In re RnD Engr.*, LLC, 546 B.R. at 771 (quoting *Nedschroef Detroit Corp.*, 106 F.Supp.3d at 883). An employee's plans and preparations "to engage in a competing business during the scope of their agency relationship with the plaintiff ... do not by themselves state a claim for a breach of the duty of loyalty." *Id*. (quoting *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F.Supp.3d 735, 752 (E.D. Mich. 2014)).

As an employee, Jorge owed AFT Michigan a duty of "honesty, loyalty, restraint from self-interest and good-faith." *Gen-Wealth, Inc. v. Freckman*, 2021 WL 1941752, at *13 ( 2021) citing *In re Green Charitable Trus*t, 172 Mich. App. 298, 313; 431 N.W.2d 492 (1988).

4.

23

Jorge was disloyal to AFT Michigan from the moment she walked through the door. First, her objectives were set by Project Veritas and not by the Federation. Second, her tasks were undertaken in furtherance of those objectives. She was unconcerned with achieving any goals of the Federation of Teachers but only concerned with fulfilling the tasks assigned by Project Veritas.

There is no dispute of fact here. Jorge was never loyal to AFT Michigan. Instead she was only interested in fulfilling the mission assigned to her by Project Veritas. Jorge breached her duty of loyalty.

C.    Jorge Trespassed

1.

Marissa Jorge obtained access to the premises of AFT Michigan by lying about who she was and her purpose for seeking access. The Federation of Teachers consented to access as the result of these lies.

"A trespass is an unauthorized invasion upon the private property of another." *American Transmission, Inc. v. Channel 7 of Detroit, Inc*., 239 Mich.App. 695, 705; 609 N.W.2d 607, 613 (2000) citing *Cloverleaf Car Co. v. Phillips Petroleum C*o., 213 Mich.App. 186, 195; 540 N.W.2d 297 (1995). Admittedly, consent is an affirmative defense to a claim of trespass. American Transmission, id. But here the consent to access was obtained through fraud. As such, the consent was void.

24

In *Dalley v. Dykema Gossett*, 287 Mich.App. 296, 316; 788 N.W.2d 679, 692, (2010) the Michigan Court of Appeals adopted the reasoning of *American Transmission*, *id*. and *Desnick v. American Broadcasting Cos., Inc.*, 44 F.3d 1345 (7th Cir., 1995). In each case, a person gained entry to a facility (American Transmission–an auto repair facility; Desnick an eye clinic) by misrepresenting their purpose and intent. While consent to admission was granted, the *Desnick* court noted that "... (T)here can be no implied consent in any nonfictitious sense of the term when express consent is procured by a misrepresentation or a misleading omission." *Desnick, id.* at 1351, cited by *Dalley* at 693.

These cases confirm that consent to admission to a premises may be voided where the person seeking admission misrepresents their purpose or intent. In short, consent is void when obtained through fraud.

There is no question of fact here. Marissa Jorge lied her way into AFT Michigan by misrepresenting who she was, her reason for seeking admission and her purpose for being in the building. While she was granted admission, the Federation's consent was unquestionably obtained through fraud and was void.

In addition to gaining access to the Federation's offices through fraud, Jorge entered private offices, perused file cabinets without authorization, R-126, photographed documents without authorization and forwarded copies of those documents to Project Veritas, R126, R-140; gained access to the personal computer

25

work stations of AFT Michigan staff including Nathan Walker. R 135. Jorge had no authorization to engage in any of this activity.

2.

Jorge trespassed into private space. Unlike the situation in *American Transmissio*n, where the Court noted that:

> "Although Stern misrepresented her purpose, plaintiffs' consent was still valid because she did not invade any of the specific interests relating to the peaceable possession of land that the tort of trespass seeks to protect. (Citation omitted) Stern entered only those areas of plaintiffs' shop that were open to anyone seeking transmission repair services and videotaped plaintiffs' employee engaging in a professional discussion with her. Stern did not disrupt the shop or invade anyone's private space, and the videotape she made did not reveal the intimate details of anybody's life."

*American Transmission, supra*, at 708-709.

Jorge used her access to enter every part of the offices of AFT Michigan. She has admitted entering staff offices, accessing their computers, rifling through file cabinets and listening to conversations which were not intended for public dissemination. She "disrupted the shop," "invaded private space" and ultimately revealed the entire content of a private conversation with a staff representative.

Jorge's actions were classic malevolent trespass. She lied her way into the offices and while there engaged in conduct intended to harm the Federation of Teachers. There is no dispute of fact here. Jorge was guilty of the tort of trespass.

26

D.      Jorge is Guilty of Eavesdropping

Jorge Recorded The "Private Discourse of Others" and Oral Conversations of others. Jorge is guilty of violating both the Michigan Eavesdropping Act,  MCL 750.539c and the United States Wiretapping Act, 18 U.S.C. 2511. She violated these statutes by recording the "private discourse of others" on at least two occasions.

1.      Facts

Jorge recorded conversations to which she was not a participant. The recordings were  produced by Defendants during discovery as media files 584 and 602 to 615. Plaintiff has moved  per rule 19(c) of the Court's rules regarding electronic filing to submit these files in support of its motion for summary judgment. These recordings are of the events described in (a) and (b) hereafter. The recordings confirm the facts explained ahead.

(a)     The Eastern Michigan University Meeting: Recordings Media Files 602-615

On August 27 or 28, 2017 Jorge attended a meeting held at Eastern Michigan University which was called by AFT Michigan and its affiliated Local the Eastern Michigan University Federation of Teachers. The purpose of the meeting was to discuss strategy intended to encourage the University to modify its bargaining positions and persuade it to reach agreement with the Federation.

Jorge was invited to the meeting by Sonya Alvarado, the AFT Michigan staff representative who was assisting the EMU Local. As is apparent from Ms. Alvarado's declaration, Jorge was told that she was present to observe, only and should not participate in the interaction.

Jorge complied with the direction given her and did not participate in the meeting. As instructed, she sat silently and did not ask questions. However, Jorge recorded the entire meeting without obtaining consent from those present or notifying them that the meeting was being recorded. She attended only as an observer and not a "participant." As an observer, she recorded the "private discourse of others."

(b)    The Telephone Call

Jorge was present in the office of AFT Michigan Staff Representative Johnny Mickles on an uncertain date in August, 2017 when Mr. Mickles received a telephone call from this writer. During the call Mickles discussed how the Federation would respond to a pending grievance. Jorge was not a participant in the conversation but only an observer. Nevertheless, she recorded the interaction without notice to or consent from either person engaged in the conversation. The conversation is presented as media item 584.

2.    Only a Participant May Record

(a)

As this Court has noted in its decision of November 8, 2021 (ECF 202, Page Id 6328)  MCL 750.539c permits the recording of conversations by a participant to that conversation. The statute states:

> Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

MCL 750.539c.

MCL 750.539(a)(2) defines "eavesdropping" as to "...overhear record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse."

As the Michigan Court of Appeals noted in *Sullivan v. Gray*, 117 Mich.App. 476, 481; 324 N.W.2d 58, 60 (1982) MCL 750.539c distinguishes between persons who participate in a conversation and those who simply observe it.

> "Quite plainly, one may be "present" during a conversation without being a party to the conversation and without his presence being apparent to those conversing. For example, the eavesdropping party could literally be under the eaves outside an open window."

*Id*., 482.

29

The statute contemplates that a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on. *Sullivan, id*., at 481. See also *Fisher v. Perro*n, 30 F.4th 289, 294–95 (6th Cir., 2022):

> "Michigan's lower courts, however, have determined that the statute is a one-party consent law. In the leading case, *Sullivan v. Gray*, the Michigan Court of Appeals concluded that "the statutory language, on its face, unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to 'the private discourse of others.'" 117 Mich.App. 476, 324 N.W.2d 58, 60 (1982) (per curiam). As such, "a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on." *Id*. The court reasoned that excluding participants from statutory coverage avoids making surplusage of the words "private discourse of others" in the definition of eavesdropping. *Id*.

These cases teach that a person may record a conversation in which they *participate* but may not surreptitiously record a conversation which they merely *observe*. As the *Sullivan* court noted, MCL 750.539c prohibits covert recording by a person who is, for example, standing outside an open window. A person may engage another in conversation and record the interaction. But they may not record the "private discourse of others;" a conversation occurring between other individuals which the observer happens to witness.

(b)

An observer is not a participant. In *Myers v. U.S*., 17 F.3d 890, 904 (6th Cir., 1994) the United States Court of Appeals for the 6th Circuit considered claims made

30

against the United States relating to mine inspections. The Court decided that the

United States was not liable under the Federal Tort Claims Act, 28 U.S.C. 2671 et

seq. to claimants for deaths caused by a methane explosion in a coal mine. Plaintiffs

had asserted that mine inspectors breached their duties and were liable under

applicable state law for damages caused by their negligence. The question was

whether the inspectors had certain duties which were disregarded. The Court held that

applicable state law did not attach a duty of care which the inspectors disregarded.

The reason is that the inspectors were just observers of the mine and did not "make

the situation worse:"

> "In each of these cases, the government employees were active participants, providing services to others to which state-law, good Samaritan principles would attach a duty of care. While private individuals do not routinely provide these services, such similar situations are readily imaginable and liability surely would be imposed were private individuals to engage in providing these services. Contrast these cases with cases such as the present one. In this case, the government employees are mere observers, monitoring the actions of others. The government, by express statutory language, precludes persons from relying upon this monitoring function and prevents courts from determining that the government has assumed the duty of compliance normally owed by the party whose compliance is being monitored. In these cases, absent some conduct by the government employees which affirmatively worsens the situation, the common law does not impose a duty of care upon their actions and damages from the United States may not be sought under the FTCA.

> "Use of this actor/monitor dichotomy, we believe, would be useful in dismissing inappropriate cases without having to resort to the sort of minute analysis, both of the FTCA's exceptions and of the hypothetical state-law

liability for private, non-contractual "inspectors," as we have undertaken in this case."

*Myers v. U.S.*, 17 F.3d 890 *id*., at 904

The distinction between an *observer* and an *actor* was critical to this aspect of the decision. An observer is not an actor.

A similar result was reached in *In re Flint Water Cases*, 482 F.Supp.3d 601, 607 (E.D.Mich., 2020) where the Court denied Defendants' motion to dismiss. Distinguishing the present case from *Myers, id*., the Court concluded that Plaintiffs' action could proceed. Unlike *Myers*, the Court held, Defendant Environmental Protection Agency was an active participant in responding to concerns regarding the water supply in Flint, Michigan:

> "The EPA also took actions that went beyond that of "mere observers, monitoring the actions of others." Myers. 17 F.3d at 904. From Plaintiffs' complaint, it is *624 clear that the EPA played an active role since at least early 2015."

*Id.*, at 623–24

As an active participant in responding to concerns, the Court concluded, *Myers* was not controlling and Plaintiffs' action could proceed.

In each of these cases the Courts noted the distinction between an entity which merely observes an event and another which engages in it. The distinction is important here as MCL 750.539c may permit a participant to record conversations

32

but, as the Court noted in ECF 202, page ID 6329, the statute only permits a participant to record. By implication, an observer may not do so.

C.    Jorge Recorded the "Private Discourse of Others"

1.

A conversation is private if it is "intended for or restricted to the use of a particular person or group or class of persons ... [and is] intended only for the persons involved." *Hall v. Stewart*, 1998 WL 1997568, at *3 (1998) citing *Dickerson v. Raphael*, 222 Mich.App 185, 193; 564 NW2d 85 (1997)

In *People v. Stone*, 463 Mich. 558, 563; 621 N.W.2d 702, 704–05 (Mich., 2001) the

Michigan Supreme Court defined "private conversation:"

> "Despite the Legislature's failing to define "private conversation" in the eavesdropping statutes, its intent can be determined from the eavesdropping statutes themselves. This is because the Legislature did define the term "private place." A "private place" is "a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance." MCL 750.539a(1); MSA 28.807(1)(1). By reading the statutes, the Legislature's intent that private places are places where a person can reasonably expect privacy becomes clear. Applying the same concepts the Legislature used to define those places that are private, we can define those conversations that are private. Thus, "private conversation" means a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance. Additionally, this conclusion is supported by this Court's decision in *Dickerson v. Raphael*, in which we stated that whether a conversation is private depends on whether the person conversing "intended and reasonably expected that the conversation was private." *Dickerson, supra* at 851"

*People v. Stone*, 463 Mich. 558, 563; 621 N.W.2d 702, 704–05 (Mich., 2001)

33

The Court added:

> "In conclusion, although technology provides a means for eavesdropping, the Michigan eavesdropping statutes specifically protect citizens against such intrusions. Therefore, a person is not unreasonable to expect privacy in a conversation although he knows that technology makes it possible for others to eavesdrop on such conversations."

*People v. Stone*, 463 Mich. 558, 563; 621 N.W.2d 702, 704–05 (Mich., 2001)

The Michigan Court of Appeals concluded that a conversation is private if it is "intended for or restricted to the use of a particular person or group or class of persons ... [and is] intended only for the persons involved" *Barnett v Norman Yatooma & Associates*, 2007 WL 840880, at *1 (2007)

2.

Both conversations at issue here were private. First, as is explained by Sonya Alvarado in her declaration, the EMU meeting was limited to persons who had been invited. The conversation was restricted to persons who could be trusted to keep the discussion confidential. The meeting room door was closed and persons not invited would not have been admitted.

Second, the telephone conversation between Mr. Mickles and counsel was by definition protected and private. The interaction related to how a local union would respond to actions by an employer.

Each of the conversations were "intended for or restricted to the use of a particular person or group or class of persons ... [and is] intended only for the persons involved." *Hall v. Stewart*, 1998 WL 1997568, at *3 (1998) citing *Dickerson v. Raphael*, 222 Mich.App 185, 193; 564 NW2d 85 (1997), rev'd on other grounds, *Dickerson v. Raphael*, 461 Mich. 851 (Mich. 1999)

Ms. Jorge recorded private conversations to which she was only an observer and was not a participant. As such she violated MCL 750.539c.

D.    The Recording of the Oral Communications of Others Violated 18 U.S.C. 2511

18 U.S.C. 2511 (1) prohibits a person from intercepting the oral communications of others. 18 USCA § 2511(2)(d) allows certain interceptions "...unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." The section reads:

> "(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

In *Smoot v. United Transp. Union*, 246 F.3d 633, 641 (6th Cir., 2001) a union member secreted a tape recorded in a bag and allowed the device to record a meeting after he

35

had been directed to leave the room. The Court of Appeals affirmed a finding by the District Court that the Plaintiff, who caused the meeting to be recorded, was liable for damages under 18 U.S.C. 2520, the enforcement provision related to 18 U.S.C. 2511. In *Ferrara v. Detroit Free Press, Inc.*, 52 Fed.Appx. 229, 231–32 (6th Cir., 2002) the Court of Appeals explained how this section functions:

> "Therefore, when a communication is intercepted, as it was in this case, by a participant in the conversation, that interception only violates the statute if it "is intercepted for the purposes of committing a criminal or tortious act in violation of the Constitution or laws of the United States or any State." *Id.* Moreover, third-party disclosure of an intercepted communication is only prohibited where the interception violated the statute. See *Smith v. Cincinnati Post & Times–Star,* 475 F.2d 740, 741 (6th Cir.1973) (disclosure of recording by a newspaper does not violate § 2511 where the recording was privileged under § 2511(2)(d)); cf. *Boddie v. American Broad. Cos.*, 731 F.2d 333, 337–38 (6th Cir.1984) (interception is privileged under § 2511(d)(1) provided the recording party did not have a criminal, tortious, or improper purpose). Accordingly, the newspaper defendants can only be liable for the disclosure of the recordings if defendant Tarjeft made them for the purpose of violating state or federal law or committing a tort.

The recording of the oral communications by Jorge, and there are many such recordings, was a continuous tort. She recorded these interactions as an extension of her trespassing, in furtherance of her breach of duty of loyalty, as part of her ongoing fraud against AFT Michigan and as part of her conspiracy with Project Veritas. Jorge violated the Wiretap Act and is liable for damages as is her employer Project Veritas.

E.      Plaintiff Has Suffered Damages

Plaintiff has suffered damages as described in pleadings submitted to the Court as ECF No. 228, PageID.7227 and ECF No. 231, PageID.7405. Further, Plaintiffs are entitled to punitive damages pursuant to MCL 750.539h.

**Conclusion**

Defendants Project Veritas and Jorge have admitted all of the elements of liability here. The deposition of Ms. Jorge confirmed the facts supporting each of Plaintiff's claims against both Jorge and Project Veritas. The Court should conclude that there are no contested questions of fact, grant Plaintiff partial summary judgment and conclude that Defendants are liable to Plaintiff for damages to be determined following trial.

/s/ Mark H. Cousens

Attorney for the Plaintiff
4933 Fairway Ridge Circle
West Bloomfield, Michigan 48323
cousens@cousenslaw.com
248-877-2098
P12273

/s/ Joseph E. Sandler

Attorney for Plaintiff
Sandler Reiff Lamb Rosenstein & Birkenstock PC
1090 Vermont Ave., N. W., Suite 750
Washington, D.C.  20005
202-479-1111
sandler@sandlerreiff.com

April 9, 2025

**Certificate of Service**

I hereby certify that on April 10, 2025   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/ Mark H. Cousens

Attorney for the Plaintiff