# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AFT MICHIGAN,

              Plaintiff,

v.

PROJECT VERITAS and
MARISA L. JORGE.

              Defendants.

Case No. 17-cv-13292

Hon. Linda V. Parker

Magistrate Judge Elizabeth A. Stafford

**Claim of Unconstitutionality**

# PROJECT VERITAS PARTIES'
## CROSS MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, Project Veritas and Marisa Jorge ("the Veritas parties"), by and through counsel, and pursuant to Federal Rule of Civil Procedure 56, move the Court for summary judgment over counts III, VII and VIII in Plaintiff AFT Michigan ("AFT")'s Complaint. *See* ECF No. 72, PageID.2047, 2050-52. In support of this motion, the Veritas parties rely upon the accompanying brief.

WHEREFORE, Defendants respectfully request that the Court grant their motion for summary judgment.

Respectfully submitted,

**Butzel Long, P.C.**                        By: /s/ Stephen Klein
Paul M. Mersino (P72179)            Stephen R. Klein (P74687)
150 W. Jefferson, Suite 100          Barr & Klein PLLC
Detroit, MI 48226                        1629 K St. NW Ste. 300
mersino@butzel.com                   Washington, DC 20006
313-225-7015                             steve@barrklein.com
                                               202-804-6676

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AFT MICHIGAN,

                Plaintiff,

v.

PROJECT VERITAS and
MARISA L. JORGE.

                Defendants.

Case No. 17-cv-13292

Hon. Linda V. Parker

Magistrate Judge Elizabeth A. Stafford

**Claim of Unconstitutionality**

## PROJECT VERITAS PARTIES' MEMORANDUM IN SUPPORT OF
## <u>CROSS MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

ISSUES PRESENTED ........................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY..............................iv

PROCEDURAL HISTORY ................................................................1

STATEMENT OF MATERIAL FACTS ....................................................2

STANDARD OF REVIEW ...................................................................11

ARGUMENT ...................................................................................11

I.    The Court Should Grant Summary Judgment in Favor of the Veritas Parties Over AFT's claim of Unconsented Recording of Private Conversations Under MCL §§ 750.593c, 750.539h.................................11

    A.    The Veritas Parties' Recordings Comply with the Plain Meaning of the Statute ...........................................................................13

    B.    AFT's Latest Interpretation Would Make the Law Unconstitutional.16

II.    The Court Should Grant Summary Judgment for the Veritas Parties Over AFT's Claim of Breach of Duty of Loyalty .............................................17

    A.    An Unpaid Intern Does Not Have a Presumed Duty of Loyalty ........17

    B.    AFT Cannot Place Higher Duties on Interns Than Actual Employees ..........................................................................................19

    C.    AFT Has Not Established or Asserted Damages Tied to a Breach of Duty of Loyalty....................................................................19

III.    The Court Should Grant Summary Judgment in Favor of the Veritas Parties Over AFT's Claim of Unlawful Interception of Oral Communications under 18 U.S.C. §§ 2511(1)(a), (2)(d), 2520 ...............20

i

A.   AFT Failed to Establish a Tortious or Criminal Purpose That Would Negate One-Party Consent Under 18 U.S.C. § 2511(2)(d) ...............21

B.   The Tortious Purpose Exception to One-Party Consent Under the Federal Wiretapping Statute (18 U.S.C. § 2511(2)(d)) is Unconstitutional Under the First Amendment....................................23

C.   The Tortious Purpose Exception to One-Party Consent Under the Federal Wiretapping Statute (18 U.S.C. § 2511(2)(d)) is Unconstitutionally Vague .................................................................28

CONCLUSION .......................................................................................31

## ISSUES PRESENTED

1. Whether the Court should grant summary judgment in favor of the Veritas parties over AFT's claim of unconsented recording of private conversations under Mich. Comp. Laws §§ 750.593c, 750.539h (Count III).

**Plaintiff's Response: No.**

**Defendants' Response: Yes.**

2. Whether the Court should grant summary judgment in favor of the Veritas parties over AFT's claim of breach of duty of loyalty (Count VII).

**Plaintiff's Response: No.**

**Defendants' Response: Yes.**

3. Whether the Court should grant summary judgment in favor of the Veritas parties over AFT's claim of unlawful interception of oral communications under 18 U.S.C. §§ 2511(1)(a), (2)(d), 2520 (Count VIII).

**Plaintiff's Response: No.**

**Defendants' Response: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

RESTATEMENT (SECOND) OF AGENCY § 34

*Sullivan v. Gray*, 324 N.W.2d 58 (Mich. Ct. App. 1982)

U.S. CONST. amend. I.

*Fed. Election Comm'n. v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007)

## PROCEDURAL HISTORY

AFT sued Project Veritas and Marisa Jorge (the "Veritas parties") in the Michigan Third Circuit Court on or about September 27, 2017. *See* ECF No. 1-1 at 16. The Veritas parties removed the case to this Court on October 6, 2017. ECF No. 1. AFT amended its complaint on October 17, 2017. ECF No. 6. AFT amended its complaint again on July 19, 2018. ECF No. 72. Following a motion to dismiss, the Court dismissed AFT's claims of larceny by trick (count IV), misappropriation of trade secrets (count VI) and violation of the Electronic Communications Privacy Act (count IX). ECF No. 93, PageID.2359. After the United States Court of Appeals for the Sixth Circuit declined to hear an interlocutory appeal and after the Michigan Supreme Court denied this Court's certification of questions of law to the state court, and upon a motion for reconsideration, the Court dismissed AFT's claim of unconsented recording of private conversations under MCL §§ 750.593c, 750.539h "to the extent the claim concerns recorded conversations in which Defendant Jorge participated." ECF No. 202, PageID.6330.

Following discovery, the parties filed cross motions to disqualify their respective damages experts. ECF Nos. 211, 219. On May 24, 2024, the Court ordered supplemental briefing over "whether the damages discussed in [AFT's expert's] report are recoverable." ECF No. 226, PageID.7224. On April 11, 2025, the Court ruled that AFT's damages expert "may testify as to the value of the time

AFT Michigan employees spent with Jorge provided there is evidence that these interactions diverted the employees from work benefiting their employer." ECF No. 237, PageID.7576. Following a status conference, in an April 17, 2025 minute order the Court issued a scheduling order for summary judgment briefing. AFT has sought summary judgment on Counts 1, 2, 3, 5, 7 and 8. ECF No. 233, PageID.7419. This timely cross motion followed.

## STATEMENT OF MATERIAL FACTS

### *The Parties*

AFT is the Michigan state affiliate of the American Federation of Teachers ("AFT National"). ECF No. 72, PageID.2036 (Compl. ¶1). It is a union that represents public employees—that is, teachers in public schools—and engages in lobbying and electoral politics, all of which are matters of public concern. **Exhibit 1** (Hecker Depo. 18:11-19:1); *see Lessons in Building Power: How Michigan's Labor Movement Restored Workers' Rights*, AFT National, https://www.aft.org/ae/fall2024/hecker_martin_rader (**Exhibit 2**).

Project Veritas is a newsgathering organization that primarily utilizes secret recording and undercover investigative reporting. *See* **Exhibit 3** (Halderman Depo. 28:1-30:14). Project Veritas has investigated teachers' unions over the years, breaking stories across the country about such unions. *See, e.g.*, *New York Teacher Alleged to Have Sexually Assaulted Students With Knife–May Still Be at Large,*

2

Project Veritas, YOUTUBE, Mar. 14, 2017, https://youtu.be/09-Q1PqRzNI?si=a6Ab6tdytcgkbDOs; *HIDDEN CAMERA: Michigan Union Boss Neglects Mandatory Reporting of Child Abuse*, Project Veritas, YOUTUBE, Mar. 14, 2018, https://youtu.be/3zKDq7PYFQE?si=ki9LHOvjadnvGwkq; *BREAKING: NJ Teachers Union President Will "Bend the Truth," Cover Up Child Abuse in Schools*, Project Veritas, YOUTUBE, May 2, 2018, https://youtu.be/cGfa9pDYRPs?si=4ioM8e26yyv2xr3h.

Marisa Jorge was an investigative journalist with Project Veritas from June 2016 until July, 2021. **Jorge Affidavit ¶2**; **Exhibit 4** (Jorge Depo. at 28:1-3).

### ***The Terms of Marisa Jorge's Internship at AFT and Confidentiality at AFT***

AFT "has a practice of welcoming individuals to serve as interns during the Summer months." ECF No. 72, PageID.2038 (Compl. ¶13). An internship, as AFT's Rule 30(b)(6) designee David Dobbie testified, is when "a person . . . comes to work with the organization, is not necessarily paid but is granted access to the organization and works with us for a defined period of time, both to help the organization but also to further their own end goal." ECF No. 229-2, PageID.7366 (Dobbie/30(b)(6) Depo. 56:2-16). He agreed that an internship is "an educational opportunity[.]" *Id.*, PageID.7367 (114:10-25).

Marisa acquired an internship with AFT by posing as a college student named Marissa Perez in the spring of 2017 in order to investigate the union's activities. ECF

No. 72, PageID.2038-39 (Compl. ¶¶14-15); ECF No. 97, PageID.2394 (Answer ¶¶14-15). Marisa represented herself as a sophomore at the University of Michigan who was interested in teachers' unions and how they worked. ECF No. 233-2, PageID.7475 (Jorge Depo. 86:1-14). The internship was not paid, and Marisa accepted the internship knowing it was unpaid. **Exhibit 5** (AFT response to Project Veritas Request for Admission #1); Jorge Aff. ¶5.

No one at AFT asked Marisa for legal identification before or during her unpaid internship. It "[w]asn't part of [AFT's] procedure." **Exhibit 6** (Dobbie/30(b)(6) Depo. 22:25-23:3). No one at AFT asked Marisa for a résumé before or during her unpaid internship. It "wasn't part of [AFT's] procedure." *Id.* (22:17-18). No one at AFT asked Ms. Jorge for an academic transcript before or during her unpaid internship. It "wasn't part of [AFT's] procedure." *Id.* (22:19-22). "AFT Michigan did not maintain a personnel file for Marisa Jorge." Exh. 5 (AFT Response to Project Veritas Request for Production #5). Marisa used a non-AFT GMail address for e-mails during the internship. Jorge Aff. ¶7. In retrospect, AFT "wished we had done things differently," but opted not to disclose to local leaders that they "did not properly vet [Marisa] before allowing her access to the AFT Michigan family[.]" Exh. 6 (Dobbie/30(b)(6) Depo. 32:9-20; Def's Depo. Exhibit 11).

There was no written agreement between Marisa and AFT that defined her duties. **Exhibit 7** (AFT response to Jorge Request for Production #10 and Jorge Requests for Admission #4, #5, #6, #7, #9). AFT claims that "there was an unwritten agreement with clear terms." Exh. 5 (AFT response to Project Veritas Request for Admission #2). AFT's 30(b)(6) designee testified the terms were as follows:

> Q. Now, as the designee of AFT of Michigan, what were all of the terms of this unwritten agreement?
>
> A. The, you know, some of it is shown in the email that you showed a couple documents ago. The basic – there was a time period that she was going to be available for the summer and then go back to school, that she was a sophomore about to become a junior at the University of Michigan, and the education program was interested in having a union provide her access, especially to elementary education situations so she could gain experience and knowledge for the field, you know, that she was planning to go into, and that – so that was, you know, kind of what she had identified as being interested in, as well as working with us to conduct research that could potentially be useful in some of her classes as she had presented it. And on our side, that we talked about a research report on charter school policy in Michigan would be her main deliverable as well as assisting with organizing efforts over the course of the summer.
>
> Q. Her report was not to be kept confidential that she was going to write?
>
> A. Yes, there was a report too, an internal report, yeah.

Exh. 6 (Dobbie/30(b)(6) Depo. 110:10-111:8; Def's Depo. Exh. 56 (e-mail referenced in quote)); *see also* ECF No. 241-1, PageID.7625-27 (Def's Depo. Exh. 1, ¶¶9, 10, 12, 13, 31, 32 (requiring the 30(b)(6) designee to testify as to

confidentiality)). As to that "internal report" or "policy brief," Dobbie—AFT's designee—did not "know if there were any explicit instructions" regarding confidentiality. Exh. 6 (Dobbie/30(b)(6) Depo. 26:2-4). In any event, Marisa was "working with [AFT] to conduct research *that could potentially be useful in some of her classes as she had presented it*." *Id.* (110:10-111:5) (emphasis added).

Confidentiality was not discussed in Marisa's interview for the internship nor in any written communications before or during her internship. Jorge Aff. ¶¶4, 6. David Dobbie is the only member of the AFT staff who attested to discussing confidentiality with Ms. Jorge:

> Q. Did you discuss confidentiality with Marisa ever?
> A. Yes, in the context of, you know, some of the things that she would be doing, going to various meetings, letting her know that those, when she was going as kind of a fly on the wall that that was information that wasn't to be broadly disclosed.
> Q. What does that mean, broadly disclosed?
> A. Shared with others outside the organization.

Exh. 6 (Dobbie/30(b)(6) 14:14-21). He "believe[s]" this occurred between Marisa's interview on May 5, 2017 and Marisa's first visit to the Boggs School on May 23, 2017, "in the [AFT] office" but, even upon reflection, could not recall any specific terms. *Id.* (15:10-19; 85:3-14). Marisa attests that no such conversation ever occurred. Jorge Aff. ¶6. Moreover, the affiliation of local teachers unions with AFT "doesn't include an explicit confidentiality agreement." Exh. 6 (Dobbie/30(b)(6) at 80:20-81:1).

Nate Walker was Marisa's direct supervisor. *Id.* (23:11-21). Walker began to work at AFT in 2009. **Exhibit 8** (Walker Depo. 16:15-21). Between Walker's hire at AFT and his deposition in 2019, he was never "directly" instructed on a confidentiality policy at AFT. *Id.* (20:12-21:6). Walker "can't recall a time where it's been said 'keep this confidential.'" *Id.* (26:5-27:15). Walker testified that Marisa was never told what AFT expected her to do with confidential information she came across. *Id.* (44:23-46:25). AFT interns are allowed to discuss their internships. *Id.* (47:22-48:19). The limits are as follows:

> anything I imagine *their own professional judgment* and allegiance to their experience here would keep them from talking about sensitive things, but in terms of the broad sense, there was no . . . confidentiality or nondisclosure with the organization.

*Id.* (49:17-25) (emphasis added). Walker only testified that "[t]here was work on various projects where I shared that, you know, this shouldn't—I can't remember the exact words that I used, but that this should not—should not be broadcast to the universe." *Id.* (46:6-13).

In 2019, Johnny Mickles had worked at AFT for "approximately 15 years." **Exhibit 9** (Mickles Depo. 11:10-11). Mickles never discussed confidentiality with Marisa or told her that information he was sharing with her was confidential. *Id.* (60:6-13). Between the investigation by the Veritas parties in 2017 and his deposition in 2019, Mickles was unaware of any changes to AFT procedures relating

to confidentiality. *Id.* (62:14-22). Julie Rowe, a lobbyist for AFT who had worked for AFT for six and a half years in 2020, testified to the following:

> Q. So what portions of your work would you consider confidential? Including everything, including the lobbying, can you just give me a list of what you believe or understand to be confidential?
>
> A. When I'm asked to not disclose information, I think that's when I believe that information is confidential.

**Exhibit 10** (Rowe Depo. 11:23-25; 33:17-23). Taylor Monday, an organizer for AFT since 2015, testified as follows in 2019:

> Q. What is your understanding of the word "confidential"?
>
> A. Something I don't want somebody to know.
>
> Q. Okay. What aspects of your work do you consider confidential?
>
> A. Members' private information.
>
> Q. What do you consider members' private information?
>
> A. Contact information.
>
> Q. Anything else?
>
> A. Salaries.
>
> Q. Anything else?
>
> A. Not that I can think of.

**Exhibit 11** (Monday Depo. 12:10-20). When asked who at AFT has the authority to decide what is confidential and what is not, Monday replied "I don't know." *Id.* (12:21-13:2).

8

### *Marisa's Activities at AFT*

Marisa's internship lasted until September 1, 2017, and she frequently interacted with AFT staff. *See, e.g.*, ECF No. 196-6, PageID.6225 (August 13, 2017 e-mail from Marisa Jorge); Jorge Aff. ¶17. As an intern Marisa attended various meetings and events, including a bargaining strategy meeting at Eastern Michigan University on August 26, 2017. *See* **Exhibit 12** (Excerpt of Sonya Alvarado Timesheet indicating August 26). Marisa also performed routine tasks such as "making confirmation calls . . . for the Labor Day parade." Exh. 11 (Monday Depo. 20:12-24).

As an undercover journalist, Marisa investigated various aspects of AFT's operations, and recorded interactions with staff including Johnny Mickles, and at the off-site meeting at Eastern Michigan. Jorge Aff. ¶¶9-10; *see* ECF No. 235 (AFT's submission of electronic media files); Exh. 4 (Jorge Depo. 119:2-19, 121:11-124:10). Marisa was a party to every conversation she recorded while interning at AFT. Exh. 4 (Jorge Depo. 91:4-10; 112:25-113:5; 121:4-6). Marisa's purpose in recording was to gather newsworthy information about AFT. Jorge Aff. ¶3; Exh. 4 (Jorge Depo. 76:3-6; 87:4-6).

Marisa eventually focused on the union's representation of teachers accused of sexual misconduct. *See* ECF No. 196-6, PageID.6225. She acquired additional information about one such incident in a recorded discussion with an AFT staff

member, Mickles, on September 15, 2017, two weeks after her internship had concluded. Jorge Aff. ¶¶17-18; **Exhibits 13** and **14** (Uber Receipts). This was the only conversation recorded inside AFT's headquarters that was used in Project Veritas's publication in 2018. Jorge Aff. ¶18; *see BREAKING: Alleged Child Molester Paid Off in MI AFT Teachers Union Negotiation*, Project Veritas, YOUTUBE, May 9, 2018, https://youtu.be/mQJpIvbLrd0?si=QFI28_ypLgigeu7s (hereinafter "Veritas AFT Publication").

AFT staff became suspicious around the time of Marisa's return visit on September 15 and became aware of Marisa's employment by Project Veritas on or about September 21, 2017. ECF No. 229-3, PageID.7370 (e-mail from Julie Rowe to David Dobbie); ECF No. 229-4 (Rowe Depo. 77:1-93:25). So, until weeks after the internship had ended, everyone at AFT believed Marisa Jorge was Marissa Perez, rising junior at the University of Michigan. On September 22, 2027, Project Veritas received an anonymous e-mail indicating that Marisa had been discovered. **Exhibit 15**. Subsequent efforts by AFT staff to meet with Marisa were thus unsuccessful. Jorge Aff. ¶19; **Exhibit 21**; **Exhibit 22**. This occurred even though AFT's investigation of Marissa between discovery and filing of this suit was meant to be confidential. Exh. 6 (Dobbie/30(b)(6) Depo. 88:21-24).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986) (emphasis added). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

### I.   The Court Should Grant Summary Judgment in Favor of the Veritas Parties Over AFT's claim of Unconsented Recording of Private Conversations Under MCL §§ 750.593c, 750.539h

AFT has no claims for secret recording that do not originate from conversations in which Marisa was a party, or in which her presence and ability to hear those conversations were known. Marisa testified repeatedly that she was "always party to a conversation" when recording. Exh. 4 (Jorge Depo. 91:4-10; 112:25-113:5; 121:4-6); *see also* Jorge Aff. ¶¶9-11. AFT produced no evidence or testimony to contradict that. Instead, the union has submitted fourteen multimedia

files to the Court with two affidavits and once again endeavors to rewrite Michigan law to penalize legal audio recordings by expanding "the private discourse of others" to include any conversation in which one is not an *active participant*. ECF No. 233, PageID.7455-63; *see* ECF No. 235, PageID.7568.

Michigan law defines "eavesdropping" as "to overhear, record, amplify or transmit any part of *the private discourse of others* without the permission of all persons engaged in the discourse." MCL § 750.539a(2) (emphasis added). Then, the law reads:

> Any person who is present or who is not present during *a private conversation* and who wilfully uses any device to *eavesdrop* upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

MCL § 750.539c (emphasis added). AFT's claim is brought under the law's civil provision, which provides that "[a]ny parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled" to certain remedies. MCL § 750.539h. All Michigan courts, state and federal, agree that the one-party consent standard interpreted by the Michigan Court of Appeals in *Sullivan v. Gray* endures:

> The statute contemplates that a potential eavesdropper must be *a third party not otherwise involved in the conversation being eavesdropped on*. Had the Legislature desired to include

12

> participants within the definition, the phrase "of others" might have
> been excluded or changed to "of others or with others".

324 N.W.2d 58, 60 (Mich. Ct. App. 1982) (emphasis added); *see Ferrara v. Detroit Free Press, Inc.*, 52 F. App'x 229, 233 (6th Cir. 2002); ECF No. 202, PageID.6328-30. The Court should reject AFT's arguments to the contrary and enter summary judgment for the Veritas parties on the Michigan law claim.

### A. The Veritas Parties' Recordings Comply with the Plain Meaning of the Statute

At the outset, the Veritas parties ask the Court to rule that files submitted as PV000613 through PV000615 are legal recordings under Michigan law. These are described in AFT's brief as recordings of a meeting at Eastern Michigan University. ECF No. 233, PageID.7455-56. Although files PV000602 through PV000612 meet that description, the latter three recordings do not. The recordings in files 613 through 615 were made at the AFT headquarters, and the union offers no analysis or argument as to why they might constitute eavesdropping. Jorge Aff. ¶11. Even by AFT's terms, Marisa was an active participant in this conversation. *Id.*; *see, e.g.*, **Exhibit 16** (Transcript of PV000614 from timestamp 00:03:35 through 00:04:05).[1]

---

[1] AFT suggests Marisa violated state and federal law "on at least two occasions." ECF No. 233, PageID.7455. An interrogatory to AFT from Project Veritas asked the union to "[i]dentify by Bates numbers all documents or things that allegedly evince secret recording by either Project Veritas or Defendant Jorge of conversations to which neither were a party." **Exhibit 17** (Response to Project Veritas Interrogatory #19). AFT identified PV000584, PV000603 through PV000612, and PV000614. *Id.*

AFT presents two other instances of Marisa's recordings: a meeting at Eastern Michigan University and a telephone call between Johnny Mickles and Mark Cousens while Marisa was conversing with Mickles in his office. ECF No. 233, PageID.7455-56. AFT acknowledges that Marisa's presence was known at the Eastern Michigan meeting and that she was invited to listen to the meeting. ECF No. 233-1, PageID.7468 (Alvarado Decl. ¶¶8-9), 7470 (Hecker Decl. ¶10). At her meeting with Johnny Mickles, Marisa was conversing with Mickles immediately before and immediately after his speakerphone call with Cousens, so Mickles put the conversation on speakerphone with knowledge of Marisa's presence. Jorge Aff. ¶9; **Exhibit 18** (Transcript of PV000584 from timestamp 06:56 through 08:08). None of these recordings contain "the private discourse of others" for purposes of the Michigan statute.

AFT does not explain what made these conversations "private" or "of others." MCL § 750.539a(2). The union claims that "[a] person may engage another in conversation and record the interaction. But they may not record the 'private discourse of others;' *a conversation occurring between other individuals which the observer happens to witness*." ECF No. 233, PageID.7458 (emphasis added). It

---

This was never supplemented, but the union has already submitted three additional files to the Court (PV000602, PV000613 and PV000615) and should not be permitted to make any additional claims in this regard. *See* Fed. R. Civ. P. 26(e)(1) (duty to supplement).

offers no support for this expansive definition, instead only a bewildering presentation of precedent under the Federal Tort Claims Act and environmental law that do not explain where in the law one will find the terms "observer" or "participant" or how these terms might qualify the "private" or "of others" language. *Id.*, PageID.7458-61.

When AFT finally turns to caselaw that addresses the statute, it cites bona fide eavesdropping cases in which the recorder was recording a conversation between other individuals in private circumstances as an unknown party. *Id.*, PageID.7461-62; *Hall v. Stewart*, 1998 WL 1997568 at *3 (Mich. Ct. App. 1998); *People v. Stone*, 621 N.W.2d 702, 704–05 (Mich. 2001). The union also cites *Dickerson v. Raphael*, a case in which a conversation was simultaneously broadcast to and recorded by a third party. 564 N.W.2d 85, 88 (Mich. Ct. App. 1997), *rev'd in part,* 601 N.W.2d 108 (Mich. 1999). The court in *Sullivan* anticipated that "anomaly," and the *Dickerson* case did not upset one-party consent where the recorder does not broadcast but only makes a recording for later. 324 N.W. at 60.

To claim, as AFT does, that one is recording the "private discourse of others" when one's presence is known and she is within earshot of the conversation is without basis. Marisa was invited to hear the meeting at Eastern Michigan, was a known presence throughout the meeting, and recorded it for later use—it was not simultaneously transmitted. She was within her rights to record it under Michigan

15

law. *See Sullivan*, 324 N.W.2d at 60 ("A recording made by a participant is nothing more than a more accurate record of what was said."). AFT's presentation of the Mickles phone call is no different: he took a call on speakerphone in the middle of a conversation with Marisa in his office.  He broadcast the conversation to Jorge; she did not eavesdrop on it. That is, by taking the call on his speakerphone, Mickles made Marisa a party to the conversation and ensured it was by no means "the private discourse of others."

### B. AFT's Latest Interpretation Would Make the Law Unconstitutional

There is no need for the Court to revisit the Michigan law again. *See* ECF No. 202. The law's meaning has been thoroughly briefed in this case and for AFT to present a novel new interpretation of it only speaks to serious constitutional infirmities of the law such as vagueness. *See infra* part III.C.The parties repeatedly briefed this issue. The Michigan Supreme court was invited to revisit the current state of Michigan law and it declined to do so. Yet AFT now attempts to do what the Michigan Supreme court declined to do, which is to expand the scope of the Michigan eavesdropping statute. Michigan law is universally understood as one-party consent—that is, a recording of a conversation to which one is a party is not a recording of "the private discourse of others." The Veritas parties incorporate their prior briefing by reference. *See, e.g.*, ECF No. 181-2, PageID.5333-62. The Court

should enter summary judgment for the Veritas parties as to the Michigan eavesdropping law.

## II.   The Court Should Grant Summary Judgment for the Veritas Parties Over AFT's Claim of Breach of Duty of Loyalty

AFT claimed that "Defendant Jorge had a duty of loyalty . . . to Plaintiff AFT Michigan with respect to matters and information to which she was exposed and to which she was given access." ECF No. 72, PageID.2050 (Compl. ¶91). The union further claimed that Marisa breached this duty by (1) "[a]ccessing information outside her authorization," (2) "[a]ccessing information unrelated to her assignment," and (3) "[c]opying information not generally available to the public[.]" *Id.*, PageID.2059-51 (Compl. ¶93). In its summary judgment motion, AFT argues far more broadly, stating in different ways that Marisa "was obligated to act in the interest of her employer. She did not." ECF No. 233, PageID.7448-52. Its basis for this is that (1) Marisa was employed by Project Veritas, (2) "her goals were to harm AFT Michigan not help it" and that (3) she gained information throughout the internship. *Id.*, PageID.7449-50. AFT does not establish the terms of any of Marisa's duties, that Marisa had any duty of confidentiality, or any cognizable damages. The Court should enter summary judgment for the Veritas parties.

### A. An Unpaid Intern Does Not Have a Presumed Duty of Loyalty

When it declined to dismiss AFT's claim of breach of duty of loyalty, this Court relied upon precedent relating to employees and agents, respectively. ECF No.

104, PageID.2540 (citing *Wysong Corp. v. M.I. Indus.*, 412 F.Supp.2d 612, 624 (E.D. Mich. 2005); *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F.Supp.3d 874, 883 (E.D. Mich. 2015) *aff'd,* 646 F. App'x 418 (6th Cir. 2016). Yet AFT has conceded that Marisa was an intern, unpaid, from whom they required no documents (not even an identification) and for whom they kept no personnel file. This is categorically different from an employee. *See, e.g.*, *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536–37 (2d Cir. 2016) (laying out a "non-exhaustive set of considerations" to distinguish interns from employees for purposes of an employer's duties). AFT must prove that Marisa was otherwise its agent, that is, in part, "one who undertakes to transact some business or manage some affairs for another *by authority and on account of the latter*, and to render an account to it . . . ." *Nedschroef Detroit Corp.*, 106 F. Supp. 3d at 882 (E.D. Mich. 2015) (quoting *Stephenson v. Golden*, 279 Mich. 710, 276 N.W. 849, 857 (1937) (emphasis added)). This, AFT has not done and cannot do. *See generally* RESTATEMENT (SECOND) OF AGENCY § 34.

Even accepting that an intern may be held to the same duty of loyalty as an employee, those terms must be spelled out. The Court permitted AFT's claim to proceed in the first instance in part because of "Plaintiff's allegations that Jorge misrepresented herself[.]" ECF No. 104, PageID.2541. But for consideration of AFT's duty of loyalty claim, this should not count against the Veritas parties. That

is, as AFT has stated, its staff believed Marisa was a sophomore from the University of Michigan who was interested in learning about the union and labor relations as an intern. Under those circumstances, it was *more*, not *less*, incumbent upon AFT to spell out plain terms of Marisa's agency, if any existed.

### B. AFT Cannot Place Higher Duties on Interns Than Actual Employees

Even if the Court rules that an unvetted, unpaid intern could have the same duties imposed upon paid, vetted employees, this duty may not be presumptively higher than other employees. As detailed in the statement of material facts, *supra*, there is no duty of confidentiality throughout AFT. Long-term staff offered conflicting answers as to what is confidential at AFT, expressed ignorance as to who has the authority to decide what's confidential at AFT, and were forthright that confidentiality was never directly addressed even after Marisa's investigation in the summer of 2017. Rather humorously, the union could not even keep its discovery of Marisa secret prior to filing suit—the lid appears to have stayed shut for a whole day. *See* Exh. 16.

### C. AFT Has Not Established or Asserted Damages Tied to a Breach of Duty of Loyalty

AFT's complaint, to which it should be bound, focused on confidentiality as the entire substance of Marisa's alleged breach. Yet it has not offered any form of damages to the alleged breach—indeed, it does not cite one piece of confidential

material whatsoever in its summary judgment motion, the value of that material, or how the Veritas parties profited from some kind of competition with AFT. The Court should rule in favor of the Veritas parties in summary judgment.

### III.   The Court Should Grant Summary Judgment in Favor of the Veritas Parties Over AFT's Claim of Unlawful Interception of Oral Communications under 18 U.S.C. §§ 2511(1)(a), (2)(d), 2520

The distinction between secretly recording one's own conversations and eavesdropping is also dispositive to AFT's claim under 18 U.S.C. § 2511.  Federal law prohibits the interception of oral communications—that is, recording words "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" without consent. 18 U.S.C. § 2511(1); 18 U.S.C. § 2510(2), (4). There is an exception, however, expressly stating that "[i]t *shall not be unlawful*" to intercept oral communications "where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d) (emphasis added). Because Marisa was a party to each conversation she recorded, under the federal statute AFT must establish that Marisa intercepted the communications for the purpose of committing a criminal or tortious act. AFT has not done so. Thus, as a party to each conversation recorded, the Veritas parties are entitled to summary judgment on AFT federal interception claim.

Alternatively, if the Court finds AFT has even established a criminal or tortious purpose as a factual question, it should rule that the exception to one-party consent is unconstitutional under the First Amendment.

### A. AFT Failed to Establish a Tortious or Criminal Purpose That Would Negate One-Party Consent Under 18 U.S.C. § 2511(2)(d)

The union claims that "[Marisa] recorded these interactions *as an extension of* her trespassing, *in furtherance of* her breach of duty of loyalty, *as part of* her ongoing fraud against AFT Michigan and as part of her conspiracy with Project Veritas." ECF No. 233, PageID.7464.[2]  Quite notably, AFT never even attempts to allege that the recordings were *for the purpose of* any criminal or tortious act. Its sequencing is both backwards and circular.

AFT describes Marisa's acts (all of them) as "a continuous tort," and does not submit—much less cite—any of Marisa's recordings. *Id.* Because AFT has not established a criminal or tortious purpose, the Veritas parties are entitled to summary judgment on AFT's federal interception claim as one-party consent recordings.

---

[2] In discovery, when AFT was asked to "[i]dentify each and every criminal or tortious act for which either Defendant is alleged to have intercepted any oral communications," its entire response was "Defendants conspired to infiltrate AFT Michigan through fraud and trespass." Exh. 5 (Answer to PV Interrogatory #16). This was never supplemented, but in its summary judgment brief AFT includes duty of loyalty. ECF No. 233, PageID.7464.

Simply put, AFT has not alleged—let alone established—any criminal or tortious *purpose* for Marisa's recordings.

Neither the torts of fraudulent misrepresentation nor trespass are cognizable as exceptions to one-party consent under the federal statute. As the U.S. District Court for the District of Columbia ruled, "[t]he Court agrees with the [Project Veritas] defendants that the plaintiffs have not plausibly alleged that the 'purpose' of the recordings was to commit trespass or make a fraudulent misrepresentation because both of those alleged torts took place *before* any recordings were made." *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 124 (D.D.C. 2018) (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (purpose must be to commit a "further tortious act")). The same is true of AFT's claims here. Marisa first recorded AFT employees after entering its headquarters. *See* Exh. 6 (Dobbie/30(b)(6) Depo. 8:7-12) (Testifying he "watched the video of our first meeting with Marisa" to prepare for the deposition). Likewise, Marisa had already represented "her name, her purpose; her objectives; her interest in teaching; her interest in labor organizations" prior to recording AFT employees. Exh. 7 (AFT response to Jorge interrogatory #12). Secret recording could not further either of the alleged fraud or trespass, as the activities in question were already complete by AFT's own

allegations. There is thus no genuine issue of material fact that the Veritas parties recorded for the purpose of committing fraudulent misrepresentation or trespass.

Since Marisa had no duty of loyalty to AFT, particularly no duty of confidentiality, she could not record for the purpose of breaching it. *See supra* part II. AFT's federal interception claim thus fails. If the Court rules otherwise, it must confront the unconstitutionality of the tortious purpose exception.

### B. The Tortious Purpose Exception to One-Party Consent Under the Federal Wiretapping Statute (18 U.S.C. § 2511(2)(d)) is Unconstitutional Under the First Amendment

If the Court finds that AFT has even established a cognizable claim to trigger the tortious or criminal purpose exception to one-party consent under federal law, then the constitutionality of the exception must be addressed. 18 U.S.C. § 2511(2)(d). The exception is unconstitutional and violates the First Amendment. U.S. CONST. amend. I.

Laws that regulate speech activities must comply with the First Amendment, including laws that govern audio recording. *See, e.g.*, *Project Veritas v. Schmidt*, 125 F.4th 929, 942 (9th Cir. 2025) (en banc) ("It is well established that audio recordings and audiovisual recordings are generally entitled to First Amendment protection."); *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831 (1st Cir. 2020). The provision of the federal interception statute at issue reads as follows:

23

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C.A. § 2511(2)(d). The Veritas parties do not act under color of law, and Marisa was a party to every oral communication she intercepted. The question is only whether she "intercepted for the purpose of committing any criminal or tortious act" in violation of Michigan or federal law. Basing a crime and tort on this question is unconstitutional.

Because the tortious purpose exception is not based on the content of what one records, the law is a content-neutral restriction of speech. It is thus subject to intermediate scrutiny, and "must be 'narrowly tailored to serve a significant governmental interest.'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 796 (1989) (internal quotation marks omitted)). To comply with this standard, the law "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* at 486 (quoting *Ward*, 491 U.S. at 799). Though a law need not be the least restrictive means of regulation, the Court should consider less restrictive alternatives in its tailoring analysis. *See id.* at 479.

The core of the tailoring problem—even if the law were analyzed under rational basis—is that a *lawful* one-party consent interception cannot be distinguished from a potentially *unlawful* one-party consent interception based on any objective, external factor. The law's one-party consent provision leaves the exception with no distinct *actus reus*, or wrongful act. A secret recording loses the protection of one-party consent strictly because of *mens rea*, or wrongful intent:

> While we recognize that, without requiring use of the interception, it will be a problem, as here, to determine the purpose, it can hardly be said that, as written, the statute does not make sense. We hold, therefore, that it is not necessary for liability that the interception be used for a criminal or tortious purpose.

*Stockler v. Garratt*, 893 F.2d 856, 859 (6th Cir. 1990). There is no distinction between the tortious purpose exception and a law that would criminalize documenting another's oral communications on a notepad for a criminal or tortious purpose, or who might merely repeat the oral communications of others from memory with a criminal or tortious purpose. *See Sullivan*, 324 N.W.2d at 60 ("A recording made by a participant is nothing more than a more accurate record of what was said.").

This Court should consider the Supreme Court's decision in *Federal Election Commission v. Wisconsin Right to Life* as a controlling rebuke to purpose-based censorship. There, the Court rejected a purpose-based analysis suggested by the FEC

25

in order to distinguish between legal and illegal electioneering communications under federal campaign finance law:

> Far from serving the values the First Amendment is meant to protect, an intent-based test would chill core political speech by *opening the door to a trial* on every ad within the terms of [52 U.S.C. §§ 30118, 30104] on the theory that the speaker actually intended to affect an election, *no matter how compelling the indications that the ad concerned a pending legislative or policy issue.* No reasonable speaker would choose to run an ad covered by [the Bipartisan Campaign Reform Act] if *its only defense to a criminal prosecution would be that its motives were pure.*
>
> * * *
>
> A test focused on the speaker's intent could lead to the bizarre result that *identical ads aired at the same time could be protected speech for one speaker, while leading to criminal penalties for another.*

*Fed. Election Comm'n. v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 468 (2007) (emphasis added). Likewise, under section 2511(2)(d), identical recordings made under the exact same circumstances can be a protected speech activity for one recorder, and a crime for another based strictly on motive, or purpose. The only distinction here is that breaching the exception to one-party consent—that is, having impure motives—is not a crime in and of itself, but rather forces the interceptor to undergo the expectation of privacy analysis in the definition of "oral communication," facing broader exposure to felony charges where there was previously none. 18 U.S.C. § 2511(4)(a) (providing for imprisonment for up to five years). This distinction subjects the recorder to what amounts to a thought crime,

punishing her strictly for the subjective intent behind her recording. This undermines any arguments regarding governmental interests and tailoring: torts and crimes may be adequately addressed after they are committed. The statute fails to surpass intermediate scrutiny.

Punishing a speech activity for impure motives makes the law overinclusive, but the law also fails tailoring because it is underinclusive. "[E]ven when a regulation promotes a government interest that would be achieved less effectively absent the regulation, the government's interest may still be insubstantial if the regulation burdens substantially *less* speech than is necessary to further the government's interest." *Saieg v. City of Dearborn*, 641 F.3d 727, 738 (6th Cir. 2011). Blackmail is the go-to crime discussed in cases addressing the tortious or criminal purpose exception, yet under the law one may legally record material suitable for blackmail in situations where there is no reasonable expectation of privacy. For instance, someone having a bad night out on the town might yell something in a crowded bar he later wishes he didn't, but it would not be an "oral communication" under the statute and someone could freely intercept it for the purpose of blackmailing him. That is to say, eliminating one-party consent does not sufficiently further the government's interest in preventing crimes or torts.

The only court to address this challenge previously assessed the provision with next to no analysis: "The significant government interest is the deterrence of

criminal or tortious acts such as blackmail that are facilitated by secret wiretaps. The exception is narrowly tailored to that end as its scope precisely tracks the behavior the government has a significant interest in deterring." *Democracy Partners*, 453 F.Supp.3d at 289. It is far from that simple. The First Amendment does not permit punishing a speech activity undertaken with the wrong intent in the name of preventing crimes or torts that need not even occur. The tortious or criminal purpose exception is unconstitutional.

### C. The Tortious Purpose Exception to One-Party Consent Under the Federal Wiretapping Statute (18 U.S.C. § 2511(2)(d)) is Unconstitutionally Vague

For reasons similar to but distinct from the tailoring analysis, the criminal or tortious purpose exception in section 2511(2)(d) is unconstitutionally vague under both the First and Fifth Amendments. *See* U.S. CONST. amend. I, V. This analysis requires some nuance, because it is based on the operation and enforcement of the law—that is, its manner—and not its plain text. *Cf. Democracy Partners*, 453 F.Supp.3d at 289–90. Nevertheless, any criminal provision that transforms a legal act into an illegal act strictly based on *mens rea* must be subjected to vagueness analysis, and when the activity in question is protected by the First Amendment the provision must fail.

Vagueness is foremost a due process concern. U.S. CONST. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of

law[.]"). Although this lawsuit was brought under the law's civil provision, it is a criminal statute, so it implicates law enforcement along with judges and juries. 18 U.S.C. §§ 2520, 2511(4).

> To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] *in a manner that does not encourage arbitrary and discriminatory enforcement*." . . . . The void-for-vagueness doctrine embraces these requirements.

*Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)) (emphasis added). And the vagueness analysis is heightened where, as here, the regulated activity affects a constitutional right. *Vill of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). "If . . . the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* (emphasis added).

One may understand easily enough what conduct is prohibited by the exception in section 2511(2)(d): recording communications for the purpose of committing any crime or tort. *See Stockler*, 893 F.2d at 859. But one cannot truly understand *how* to avoid that conduct or, of greater concern, demonstrate that said conduct was avoided. As discussed previously, the manner of recording, the content of an interception or the actual use of an interception do not matter under the criminal or tortious purpose exception: it is entirely based on what one intended to do with the interception—that is, what the recorder was thinking—when it was made. Thus,

no matter what other actions one takes, the *only* way to avoid prosecution or civil lawsuits is to not record pursuant to one-party consent at all. Criminal charges or a civil complaint need only assert that, at the time of the interception, the interceptor did not (or did not only) have a journalistic purpose but the purpose of, for example, blackmailing the subject to trigger years of litigation. Even when that is through, no discovery will provide a jury with anything other than the interceptor's word versus that of the government or aggrieved subject. And that is all that is required under the statute.

The manner in which the criminal or tortious purpose exception is drafted encourages arbitrary and discriminatory enforcement, because the government or an aggrieved party may charge or sue over *any* intercepted oral communication via one-party consent and there is no way for the interceptor to prove innocence but, for all practical purposes, by a roll of dice.

If the criminal or tortious purpose exception to one-party consent under section 2511(2)(d) can endure the vagueness requirements of due process, it cannot meet the most stringent vagueness analysis of the First Amendment. The criminal or tortious purpose exception violates the second prong of the vagueness analysis because it is written in a manner that encourages arbitrary and discriminatory enforcement against anyone who records an oral communication via one-party consent. The exception is thus void for vagueness. Under vagueness analysis or

intermediate scrutiny, the criminal or tortious purpose exception in section 2511(2)(d) is unconstitutional under the First Amendment. AFT has not made a case under the statute, but if the Court believes it has, summary judgment should be entered for the Veritas parties on the federal interception claims owing to the unconstitutionality of the tortious or criminal purpose exception.

## CONCLUSION

For the foregoing reasons, the Court should grant Project Veritas's cross motion for summary judgment as to audio recording under MCL 750.593c, 750.539h (count III), over AFT's claim of breach of duty of loyalty (count VII), and over AFT's claim as to audio recording under 18 U.S.C. §§ 2511, 2520 (count VIII).


Respectfully submitted,


                                                    By: /s/ Stephen Klein
                                                    Stephen R. Klein (P74687)
**Butzel Long, P.C.**                               Barr & Klein PLLC
Paul M. Mersino (P72179)                            1629 K St. NW Ste. 300
150 W. Jefferson, Suite 100                         Washington, DC 20006
Detroit, MI 48226                                   steve@barrklein.com
mersino@butzel.com                                  202-804-6676
313-225-7015

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2025, I electronically filed the foregoing paper and its attachments with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

By: /s/ Stephen Klein