United States of America

In the District Court for the Eastern District of Michigan

Southern Division

| | |
|---|---|
| AFT Michigan, | Hon. Linda V. Parker, District Judge |
| Plaintiff, | Hon. Elizabeth A. Stafford |
| v | Case No.:  17-cv-13292 |
| Project Veritas, a foreign corporation, | |
| and Marisa L. Jorge, a/k/a Marissa Jorge, | |
| a/k/a Marissa Perez, | |
| Defendants. | |

---

MARK H. COUSENS
Attorney for the Plaintiff
4933 Fairway Ridge Circle
West Bloomfield, MI 48323
248 877 4098
cousens@cousenslaw.com
P12273

PAUL M. MERSINO
BUTZEL LONG
Attorney for Defendants
150 W Jefferson, Suite 100
Detroit, Michigan  48226
mersino@buztel.com
313-225-7000
P72179

STEPHEN R. KLEIN
Attorney for Defendants
Barr & Klein, PLLC
1629 K St. NW, Suite 300
Washington DC  20006
202-804-6676
steve@barrklein.com
P74687

ANN M. SHERMAN
Deputy Solicitor General
Attorney for Intervening Party
State of Michigan
Michigan Department of Attorney General
POB 30212
Lansing, Michigan  48909
517-335-7628
ShermanA@michigan.gov

JOSEPH E. SANDLER
Attorney for Plaintiff
Sandler Reiff Lamb Rosenstein &
Birkenstock PC
1090 Vermont Ave., N. W., Suite 750
Washington, D.C.  20005
202-479-1111
sandler@sandlerreiff.com

---

## PLAINTIFF'S BRIEF OPPOSING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Jorge Breached Her Duty of Loyalty. . . . . . . . . . . . . . . . . . . . . . . 4

          1.    Jorge Had A Duty of Loyalty; That is the Law of the Case . . . 4

          2.    Jorge Had A Duty of Loyalty . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Jorge Violated Michigan's Eavesdropping Prohibition . . . . . . . . . . 11

      C.    Defendants Violated 18 U.S.C. 2511(2)(d) . . . . . . . . . . . . . . . . . . 17

          1.    Jorge's Torts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          2.    The Statute Is Constitutional . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.    Plaintiff Has Proved Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

**U. S. Constitution**

U.S. Const., Am. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

**Federal Statutes**

Title VII of the Civil Rights Act of 1968
 42 U.S.C. 2000e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States Wire Tapping Act, 18 U.S.C. 2511 . . . . . . . . . 1, 3, 17, 18, 20, 22, 23

**Decisions Made by the U. S. District Courts**

*AFT Michigan v. Project Veritas*,
 378 F.Supp.3d 614 (E.D.Mich., 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Boddie v. American Broadcasting Companies, Inc.*,
 694 F.Supp. 1304 (N.D.Ohio, 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Democracy Partners v. Project Veritas
 Action Fund*, 285 F.Supp.3d 109 (D.D.C., 2018) . . . . . . . . . . . . . . . 18, 19, 21, 22

*Democracy Partners, LLC v. Project Veritas
 Action Fund*, 2025 WL 1088090 (D.D.C., 2025) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gen-Wealth, Inc. v. Freckman*,
 2021 WL 1941752 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*King v. Sanders*,
 2015 WL 1530661 (E.D.Mich.,2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mike Vaughn Custom Sports, Inc. v. Piku*,
 15 F.Supp.3d 735 (E.D.Mich.,2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nedschroef Detroit Corp. v.
 Bemas Enterprises LLC*,
 106 F.Supp.3d 874 (E.D.Mich.,2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ii

*Pepper v. U.S.*,  562 U.S. 476;
  131 S.Ct. 1229 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir., 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Smith v. Stone*, 40 Fed.Appx. 197,
  2002 WL 1478619 (6th Cir., 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Solon v. Kaplan*, 398 F.3d 629 (7th Cir, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. Edelso*n, 581 F.2d 1290 (C.A.Ill.,1978)  . . . . . . . . . . . . . . . . . . . . . . . . 22

**Michigan Statutes**

M.C.L. 750.539c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

M.C.L. 750.539a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Decisions Made by the Michigan Supreme Court**

*Betts v. Ann Arbor Public School*s,
  403 Mich. 507; 271 N.W.2d 498 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Decisions Made by the Michigan Court of Appeals**

*Dickerson v. Raphael,*
  222 Mich.App. 185 (1997); 564 N.W.2d 85 . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Empire Iron Mining Partnership v. Tilden Twp*.,
  337 Mich App 579, 977 N.W.2d 128 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lewis v. LeGrow*, 258 Mich. App. 175,
  670 N.W.2d 675 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Townsend*, 2018 WL 6815958 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sullivan v. Gray*,
  117 Mich.App. 476; 324 N.W.2d 58 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Warren City Council v. Buffa*,
  346 Mich.App. 528; 12 N.W.3d 681 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Other Authority**

H.R.Rep. No. 99–647, 99th Cong.2d Sess. (1986) . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

## Introduction

The Court should reject the Defendants' misplaced motion to dismiss three of the claims against them because Plaintiff has presented ample facts in support of its counts 3 (eavesdropping), 7 (duty of loyalty) and 8 (Federal Wiretap). The Court should note that Defendants have not sought dismissal of counts 1 (fraud), 2 (trespass) and 5 (conspiracy). As such the Court should view those claims as essentially uncontested and grant Plaintiff's motion for summary judgment on those claims. And the Court should also reject any contention that 18 U.S.C. § 2511(2)(d) is somehow unconstitutional because it is not.

1.

This case is premised on allegations which Defendants freely admit: Defendant Jorge engaged in outright fraud when she presented herself to AFT Michigan as a student who was interested in public education. She used her access to the AFT Michigan building to covertly record conversations; to access computer files of Federation staff; to photograph documents which were not intended for public review. She then forwarded to Project Veritas the product of her efforts. At no time did Jorge act in the interests of AFT Michigan. Her sole objectives were those of Project Veritas.

Defendants attempt to explain Jorge's behavior as in furtherance of some kind of investigation; an investigation without parameters or a goal other than to tarnish

the reputation of a major labor organization and to harm organizations representing educators, generally.

2.

Project Veritas claims to be "a newsgathering organization." That is a claim which has been rejected by virtually every responsible group of journalists and legitimate civil liberties organizations. See,

https://www.brennancenter.org/our-work/research-reports/deceptive-tactics-manuf acture-evidence-face-consequences-both-and-out. A jury found Project Veritas liable for damages caused by its effort to target Democracy Partners, a consulting firm. Efforts to vacate the verdict have been denied. *Democracy Partners, LLC v. Project Veritas Action Fund*, 2025 WL 1088090, at *14 (D.D.C., 2025). The facts there closely mimic those here. A spy lied to gain access to the organization and proceeded to use that access to covertly record and review private records.

While it may not be necessary for the Court to reach any conclusions regarding the legitimacy of the Project Veritas activities, it is important to recognize the circumstances under which this matter arose. Defendants did not infiltrate AFT Michigan for any lofty purpose. They were engaged in a political activity in an effort to diminish the role of labor organizations in the political process. This was not a legitimate investigation. It was an effort to create a hit piece; an effort which resulted

in a wildly misleading video publication which intentionally distorts the circumstances surrounding a negotiated resignation of an educator.

The video incudes statements by Project Veritas founder James O'Keefe suggesting that the educator in question could continue to work in a public school district. However, during his deposition Mr. O'Keefe acknowledged his ignorance of MCL 380.1230b which requires educators seeking employment in a Michigan school district to consent to a prior employer disclosing instances of "unprofessional conduct." That would have applied to the situation in the O'Keefe video but the O'Keefe statements make no mention of this statute. A reasonable journalist would have at least acknowledged this statute. O'Keefe did not make any effort to fully review the impact of the educator's resignation on the likelyhood that the person would again work in a Michigan School District.

Given this premise, the Court should reject any effort by Defendants to legitimize their infiltration of AFT Michigan.

3.

There are three issues presented by the Defendants. They argue, first, that Defendant Jorge had no duty of loyalty to AFT Michigan and therefore could not have breached any duty. They argue, second, that Jorge was physically present during private conversations and therefore was allowed to record these private interchanges *simply because she was visible* even though she did not engage any other participant.

They argue, third, that Plaintiff has not proved any underlying tort in support of Plaintiff's claim under 18 U.S.C. 2511(2)(d) although Defendants do not contest Plaintiff's claim of fraud, trespass and breach of duty of loyalty. They finally ask the Court to declare this statute unconstitutional.

The Court should grant Plaintiff's motion for summary judgment and deny that of the Defendants.

**Argument**

A.   Jorge Breached Her Duty of Loyalty

1.   Jorge Had A Duty of Loyalty; That is the Law of the Case

(a)

This Court has previously concluded that Defendant Jorge had a duty of loyalty to AFT Michigan when she sought and was awarded an unpaid internship with the Federation. The Court recognized this duty in its opinion rejecting Defendants' motion to dismiss Count VII of the complaint. While declining to find that Jorge had a fiduciary duty, the Court stated:

> "On the other hand, the Court will recognize a duty of loyalty in this context. See, e.g., *Wysong Corp. v. M.I. Indus.*, 412 F.Supp.2d 612, 624 (E.D. Mich. 2005) (holding "[a]n employee breaches a duty of loyalty ... by competing against his employer without fully disclosing the (sic) his interest in the competing enterprise"); see also *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F.Supp.3d 874, 883 (E.D. Mich. 2015) (holding Michigan " 'law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal' " (citation omitted) )."

*AFT Michigan v. Project Veritas*, 378 F.Supp.3d 614, 623 (E.D.Mich., 2019)

The question of the duty of loyalty was fully briefed and argued in the parties' exchange on the Defendants' motion to dismiss. The Court should conclude that this decision is now the law of the case; the issue has been decided.

5

(b)

The law of the case doctrine teaches that a Court should continue to apply

decisions reached earlier in a litigation when similar issues arise:

> Although we have described the "law of the case [a]s an amorphous
> concept,"
>
>> "[a]s most commonly defined, the doctrine posits that when a
>> court decides upon a rule of law, that decision should continue to
>> govern the same issues in subsequent stages in the same case."
>> *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75
>> L.Ed.2d 318 (1983). This doctrine "directs a court's discretion, it
>> does not limit the tribunal's power." *Ibid*. Accordingly, the
>> doctrine "does not apply if the court is 'convinced that [its prior
>> decision] is clearly erroneous and *507 would **1251 work a
>> manifest injustice.'" *Agostini v. Felton*, 521 U.S. 203, 236, 117
>> S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting *Arizona*, 460 U.S.,
>> at 618, n. 8, 103 S.Ct. 1382; alteration in original)."

*Pepper v. U.S.*, 562 U.S. 476, 506–07; 131 S.Ct. 1229, 1250–51 (2011)

And:

> "Law of the case doctrine provides that "a decision on an issue made by
> a court at one stage of a case should be given effect in successive steps
> of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th
> Cir.1990). "Unlike the more precise requirements of *res judicat*a, law of
> the case is an amorphous concept. As most commonly defined, the
> doctrine posits that when a court decides upon a rule of law, that
> decision should continue to govern the same issues in subsequent stages
> in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); see
> also *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th
> Cir.1991). However, "[l]aw of the case directs a court's discretion, it
> does not limit the tribunal's power." *Arizona*, 605 U.S. at 618. While
> technical rules of preclusion do not strictly apply when a "party moves
> the rendering court in the same proceeding to correct or modify its
> judgment," it is a "fundamental precept of common-law adjudication"

that "an issue once determined by a competent court is conclusive." *Id*. While a court "'has the power to revisit prior decisions of its own or of a coordinate court in any circumstance ... as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Moses*, 929 F .2d at 1137 (quoting *Arizona* 460 U.S. at 618)."

*King v. Sanders*, 2015 WL 1530661, at *3 (E.D.Mich.,2015)

The Court has previously accepted that Defendant Jorge had a duty of loyalty to AFT Michigan when she accepted a position as an intern. That issue should not now be revisited or relitigated.

(c)

Defendants have not asked the Court to reject its previous decision nor provided any reasons why it should do so. Indeed, Defendants have not even acknowledged the Court's opinion. Defendants have an obligation to at least present some argument to justify rejection of a previous ruling. They have not presented anything to support such a request. Nor could they. Jorge had a duty of loyalty to AFT Michigan when she asked to be assigned as an intern. She presented herself as someone who would work in the Union's interest and not attempt to harm it. Finding that she had no duty of loyalty would reward her fraud and her lies. The Court should decline to endorse Jorge's blatant misconduct.

2.      Jorge Had A Duty of Loyalty

(a)

The premise of Defendants' argument is that Jorge had no duty of loyalty and that the Federation accepted the risk of inviting a spy into its operations. Defendants premise this argument on the failure of the Federation to vet Jorge extensively and its acceptance of her lies as truth. While the mistakes of the past cannot be rectified this Court is not bound to endorse or approve Jorge's misrepresentations.

Jorge was an unpaid intern. But she possessed all of the elements of an employee despite the lack of compensation. Michigan recognizes an implied contract of hire. In *Betts v. Ann Arbor Public School*s, 403 Mich. 507, 512; 271 N.W.2d 498, 499 (1978) the Michigan Supreme Court concluded that an unpaid student teacher was protected by the Worker's Compensation Act although he was not compensated for his time.

> "The WCAB majority's decision that Betts was an employee of the Ann Arbor Public Schools rested primarily on its finding that Betts served under an implied contract of hire. Again, we find the board correct."

*Id.*, at 513.

Under Michigan common law, an individual need not be compensated to be considered "employed" for certain purposes. An individual may be a party to an "implied contract" of hire.

Jorge applied to be engaged as an intern. As Defendants admit she knew she was not to be compensated with money. But as they also admit Jorge told Plaintiff that she wanted the experience of working with a labor organization involved in public education. Further, as Jorge admits, she was engaged in certain projects and exposed to discussions regarding issues in education. Her work for the Federation was useless but it was what she said she wanted to do. Hence, she received the consideration she sought. She cannot now claim that she was fully detached from the Federation.

(b)

In Michigan employees have a clear duty of loyalty to their employer. *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F.Supp.3d 874, 882 (E.D.Mich.,2015), aff'd, *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 646 Fed.Appx. 418 (6th Cir., 2016) (employees are agents of their employer and owe their principal a duty of loyalty). See also *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F.Supp.3d 735, 754 (E.D.Mich.,2014). See also *Gen-Wealth, Inc. v. Freckman*, 2021 WL 1941752, at *13 (2021) [As an employee, Freckman did owe Gen-Wealth a duty of "honesty, loyalty, restraint from self-interest and good-faith." *In re Green Charitable Trust*, 172 Mich. App. 298, 313; 431 N.W.2d 492 (1988)].

(c)

An individual may be protected by law even if they are not paid. Under Title

VII of the Civil Rights Act of 1968, 42 U.S.C. 2000e, the term "employee" is not well

defined in the statute but it has been developed since the statute was adopted:

> "Title VII defines "employee," subject to exceptions not relevant here,
> as "an individual employed by an employer." 42 U.S.C. § 2000e(f).
> Recent Supreme Court precedent sheds light on this circular definition.
> See Clackamas Gastroenterology Assocs. v. Wells, 538 U.S. 440, 123
> S.Ct. 1673, 155 L.Ed.2d 615 (2003). In Clackamas, the Court addressed
> whether shareholder-directors of a professional corporation counted as
> "employees" towards the fifteen-employee threshold for covered
> employers under the Americans with Disabilities Act of 1990 ("ADA").
> Id. at 442, 123 S.Ct. 1673; 42 U.S.C. § 12111(5). Because it found the
> ADA's definition of "employee" circular, the Court looked to the
> common-law definition of the master-servant relationship, focusing on
> the element of control. Clackamas, 538 U.S. at 448, 123 S.Ct. 1673. It
> highlighted six non-exhaustive factors as relevant to whether the
> shareholder-directors were employees:

> > "Whether the organization can hire or fire the individual or set the
> > rules and regulations of the individual's work

> > "Whether and, if so, to what extent the organization supervises
> > the individual's work

> > "Whether the individual reports to someone higher in the
> > organization

> > "Whether and, if so, to what extent the individual is able to
> > influence the organization

> > "Whether the parties intended that the individual be an employee,
> > as expressed in written agreements or contracts
> > "Whether the individual shares in the profits, losses, and
> > liabilities of the organization."

*Solon v. Kaplan*, 398 F.3d 629, 632 (7th Cir, 2005)

(d)

Defendant Jorge was subject to all of these restrictions. AFT Michigan reserved the right to terminate her. Her work was supervised by an AFT Michigan staff person. Jorge reported to her supervisor. Jorge was asked to produce material for the Federation of Teachers. The Federation expected that Jorge would act in a manner consistent with its staff. Simply put, Jorge looked like an employee, acted as if she were an employee and therefore had all of the duties of an employee. She had a duty of loyalty to the Federation of Teachers; a duty which she breached every moment she was acting for Project Veritas instead of the Federation.

(e)

Jorge did not have to be told to not share information with Project Veritas. In the employment context it is not necessary to articulate certain rules as they are obvious; some workplace actions are offenses because the conduct is inherently wrong. For example, an individual need not be told not to steal from her employer. They need not be told that they may not engage in violence in the work place. They need not be told not to engage in criminal conduct while engaged in work. So too, an employee need not be specifically told that they cannot share information with a competitor or act contrary to the interest of their employer. No one had to tell

11

Defendant Jorge that she was prohibited from sharing information with an entity dedicated to harming AFT Michigan.

Project Veritas has goals that are directly contrary to those of AFT Michigan. Project Veritas hired Marissa Jorge because she opposed teacher unions and indeed labor organizations in general. Jorge was always acting in the interest of Project Veritas and not the Federation of Teachers. *No one had to tell Jorge that she could not attempt to harm the Federation; it was inherent in her obligation even as an unpaid intern.*

Defendant Jorge breached her duty of loyalty to AFT Michigan every day she appeared at the Federation offices. Her goals were those of Project Veritas not those of AFT Michigan. Her objective was to gather information which was not available to the public and send it to Project Veritas for it to use. In short, Jorge never acted in the interest of the Federation but only in the interest of her actual employer, Project Veritas. She breached her duty of loyalty from the minute she walked into the Federation office.

B.    Jorge Violated Michigan's Eavesdropping Prohibition

1.

Defendants attempt to amend Michigan's eavesdropping statute to add a requirement that does not exist. Defendants argue that a person may record conversations if they are physically visible to the persons being recorded even if the

recorder is merely looking at others talk. This would functionally destroy the purpose of the Michigan statute and lead to an absurd result. As described by Defendants, a person may eavesdrop if they can be seen through a window but cannot eavesdrop if they cannot be seen. This element of "visibility" is not part of the law nor should it be.

2.

(a)

Defendants ask the Court to distort the meaning of Michigan's eavesdropping statute. First, the statute applies to "private discourse of others:"

> "Eavesdrop" or "eavesdropping" means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse. Neither this definition or any other provision of this act shall modify or affect any law or regulation concerning interception, divulgence or recording of messages transmitted by communications common carriers."

M.C.L. 750.539a.

Jorge recorded two conversations in which she was not a participant and which was the "private discourse of others." Defendants suggest, but do not argue, that the two conversations were no longer "private discourse of others" because Jorge was visible. That is not the law.

The first conversation was an attorney-client exchange which Jorge happened to witness. The second was a long meeting at Eastern Michigan University to which

Jorge was invited to watch. Jorge was not authorized to record either conversation.

Nor was she invited to participate in either conversation or speak during it.

> "A Conversation is "private" within meaning of eavesdropping statute
> prohibiting use of device to eavesdrop upon private conversation
> without consent of all parties, if it is intended for or restricted to use of
> particular person or group or class of persons and is intended only for
> the persons involved."

*Dickerson v. Raphael,* 222 Mich.App. 185 (1997); 564 N.W.2d 85, appeal granted,
459 Mich. 902; 589 N.W.2d 281, reversed in part, 461 Mich. 851; 601 N.W.2d 108
(1999).

Both conversations were the "discourse of others" because the conversation

was intended to be heard only by those persons who were present. The "particular

class of persons" was limited. In the first instance the "class" was Mr. Mickles, alone.

In the Eastern Michigan University instance the class of persons were those who were

invited to the meeting.

Both exchanges were intended to be confidential and to not be shared with

others. They were restricted to the persons who were authorized to listen. No one was

authorized to record them.

(b)

Physical presence is not a license to record conversations of others. The statute

applies to persons who are either present or not present:

> "Any person who is present or who is not present during a private
> conversation and who wilfully uses any device to eavesdrop upon the
> conversation without the consent of all parties thereto, or who

14

> knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both."

M.C.L. 750.539c

Defendants attempt to evade the application of the statute by adding a concept that is not included in the law. They assert that a person may freely covertly record if "their presence is known" and they are "within earshot of the conversation." The statute does not grant such liberty.

First, the person's "presence" does not authorize covert recording. The statute applies to persons either "present" or "not present." "Presence" does not void the statute. This was expressly rejected by the Michigan Court of Appeals in *Sullivan v. Gray*, 117 Mich.App. 476, 482; 324 N.W.2d 58, 60 (1982) where the Court stated:

> "The words "[a]ny person who is present or who is not present" merely acknowledge that eavesdropping may be committed by one who is actually in close physical proximity to a conversation or by one who is some distance away but eavesdrops utilizing a mechanical device. Quite plainly, one may be "present" during a conversation without being a party to the conversation and without his presence being apparent to those conversing. For example, the eavesdropping party could literally be under the eaves outside an open window."

*Sullivan v. Gray*, 117 Mich.App. 476, 481; 324 N.W.2d 58, 60 (1982)

*Physical presence is not a license to eavesdrop.* What matters is whether the recorder obtains a recording of the "discourse of others." A person may not record a conversation in which they are not a participant by definition; recording is precluded

because the recorder is recording the "private discourse of others."  See *People v. Townsend*, 2018 WL 6815958, at *6 (2018):

> "We note that the victim was not eavesdropping. "Eavesdropping," as defined in MCL 750.539a(2), is limited to the "private discourse of others," and thus a participant in a conversation "may record it without 'eavesdropping' because the conversation is not the 'discourse of others.'""

*Lewis v. LeGrow*, 258 Mich. App. 175, 185, 670 N.W.2d 675 (2003)

And that is the point. An observer who is not included in a conversation but who simply witnesses it may not record because what they are recording is the discourse of others; *they are not recording their own conversation.*

(c)

Under *Sullivan v. Grey* a person may covertly record a conversation to which they are a "party." A participant in a conversation is more than a passive observer; they must actively participate. Were it otherwise the statute would have no meaning. Under Defendants' construction of the law a person may covertly record a conversation if they are standing in view of others or are behind a glass wall. So a person may record the "private discourse of others" if they are standing adjacent to a private meeting. All that would matter, say Defendants, is that they are visible. This leads to the absurd result of permitting eavesdropping by a person standing by an open window. The person could not record if they were not visible. But they could record the same conversation from the same place if they were visible. Recording of

16

any conversation–by anyone including persons who are not participants–would be authorized simply by virtue of the recorder's physical location. Nothing in the law supports this concept.

The Court should reject Defendants' interpretation of the Michigan statute as their view would render the statute nugatory or at least make it applicable in only a small number of events.

"The Court should avoid interpretation of statutes which would lead to absurd results or which would nullify the purpose of a statute. Courts should avoid constructions that give rise to absurd results." *Warren City Council v. Buffa*, 346 Mich.App. 528, 544; 12 N.W.3d 681, 691 (2023) citing *Empire Iron Mining Partnership v. Tilden Twp*., 337 Mich App 579, 594, 977 N.W.2d 128 (2021)

The Court should reject the construction of the statute urged by Defendants. Their view would permit anyone to record anything or anyone if the person recording can be seen. It would make the Michigan statute meaningless and essentially eliminate the restriction that the Michigan Legislature created. A "participant" may record their own conversation. They may not record conversation of others when they are simply an observer and not a participant.

3.

Defendants ask this Court to find M.C.L. 750.539c unconstitutional. However they do not present any argument or legal basis for their contention. Instead they ask the Court to take notice of previously filed briefs. But Defendants do not identify any part of any one brief or argument on which they rely or which they ask the Court to review.

The failure to provide argument and authority for an argument should be viewed as a waiver of the argument. A party may not raise an issue and expect a Court to independently research the matter.

> "Because we generally deem arguments that are not briefed on appeal to have been abandoned or waived, see, e.g., *Ewolski v. City of Brunswick*, 287 F.3d 492, 516–17 (6th Cir.2002), the knock-and-announce claim is not before us at this time and the district court's denial of qualified immunity controls."

*Smith v. Stone*, 40 Fed.Appx. 197, 200, 2002 WL 1478619, at *3 (6th Cir., 2002)

Defendants have not briefed nor argued the constitutionality of the Michigan statute. The Court should conclude that the contention has been waived.

## C.     Defendants Violated 18 U.S.C. 2511(2)(d)

Defendants seek to evade the impact of 18 U.S.C. 2511 by contending that Plaintiff has not proved an underlying tort. They then attack the statute by claiming that it is unconstitutional. Neither argument has merit.

First, it is readily apparent that Defendant Jorge was engaged in an ongoing series of torts when she posed as an intern interested in assisting AFT Michigan. Each day she appeared she trespassed, engaged in fraudulent misrepresentation of who she was and why the was there and each day she appeared she breached her duty of loyalty to AFT Michigan. Her torts were ongoing and continuous,

Second, there is nothing unconstitutional about this statute. It has been reviewed by the United States Court of Appeals for the 6th Circuit and challenges to it rejected.

The Court should conclude that the Jorge recordings violated section 2511(2)(d).

1. Jorge's Torts

(a)

Marissa Jorge engaged in a series of torts every day she appeared at AFT Michigan. Her fraud did not stop once she was engaged as an intern. Her trespass did not stop when she obtained access to the Federation building through lies. And her breach of duty of loyalty occurred every moment of every day she appeared at the Federation offices.

The premise of Defendants' argument is that Jorge did not commit a tort after she was engaged as an intern. They rely on an incomplete excerpt from *Democracy Partners v. Project Veritas Action Fund*, 285 F.Supp.3d 109, 124 (D.D.C., 2018). But their citation is so incomplete as to be misleading. The entire quote is:

"The Court agrees with the PV defendants that the plaintiffs have not plausibly alleged that the "purpose" of the recordings was to commit trespass or make a fraudulent misrepresentation because both of those alleged torts took place before any recordings were made. See *Planned Parenthood*, 214 F.Supp.3d at 828 (purpose must be to commit a "further tortious act"). *But the Court does not agree that a "determinative factor" in making the recordings could not have been to commit a breach of fiduciary duty*. First, the Court has already rejected defendants' primary contention that the complaint does not adequately allege the existence of a fiduciary duty. See *id*. (denying motion to dismiss claim under Federal Wiretap Act where complaint plausibly alleged at least one tortious act after the interception). Second, despite the PV defendants' assertion that their "immediate purpose" at the time the recordings were made was something other than what plaintiffs allege, that is not something the Court can consider at this stage of the proceedings. See also *CAIR* 2014, 31 F.Supp.3d at 259 (allowing similar claim to proceed at summary judgment stage because "if [the intern] understood himself to be bound by a fiduciary duty of non-disclosure, then it appears obvious that the breach of this fiduciary duty was the primary motivation, or at least a motivating factor, in his interception of the communications at issue").

"As plaintiffs have plausibly alleged at least one tortious purpose that occurred after the interception, the one-party consent defense does not provide a basis for dismissing the wiretap claims."

*Id*., emphasis added

*Democracy Partners v. Project Veritas Action Fund*, 285 F.Supp.3d 109, 124 (D.D.C., 2018)

(b)

Defendants ask the Court to ignore everything which followed the first sentence. But read in whole, the cited paragraph confirms Plaintiff's arguments. On a motion to dismiss, the District Court found that Plaintiff had adequately plead a

violation of 18 U.S.C. 2511 with regard to recordings made after the recorder was hired. It concluded that the recordings could have been made in furtherance of a specific tort. In this case, breach of the recorder's fiduciary duty. The Court thus rejected Project Veritas efforts to dismiss claims under section 2511 and expressly rejected the argument Defendants make here.

Defendant Jorge recorded conversations in furtherance of her continuous torts of fraud, trespass and breach of duty of loyalty. There is no question of fact with regard to her torts.

2.      The Statute Is Constitutional

(a)

Project Veritas challenges the validity of section 2511(2)(d) on two grounds; that the statute violates the First Amendment to the Constitution of the United States; that it is unconstitutionally vague. This is not the first time Project Veritas has made these arguments. It presented the same claims to the United States District Court for the District of Columbia in *Democracy Partners v. Project Veritas Action Fund*, 453 F.Supp.3d 261, 289 (D.D.C., 2020). Both arguments were rejected.

As to the First Amendment, the District Court held that

> "For a content-neutral statute to survive intermediate scrutiny, it must be "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Act Now to Stop War & End Racism Coal. v. District of Columbia, 846 F. 3d 391, 407 (D.C. Cir. 2017). The wiretapping statutes satisfy both

requirements. The significant government interest is the deterrence of criminal or tortious acts such as blackmail that are facilitated by secret wiretaps. The exception is narrowly tailored to that end as its scope precisely tracks the behavior the government has a significant interest in deterring. Finally, the exceptions leave open ample alternative means of communication as defendants may continue to gather news from their sources, just not by using secret recordings when such recordings are for a criminal or tortious purpose."

*Democracy Partners v. Project Veritas Action Fund*, 453 F.Supp.3d 261, 289 (D.D.C., 2020)

As to vagueness, the Court held:

"First, defendants' argument is not really about the "vagueness" of the term "tortious purpose." A statute is only unconstitutionally vague if its terms are "'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (emphasis added) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Here, defendants are not claiming that they have to "guess" at the meaning of "tortious purpose." Rather they are objecting to the breadth of the statute's exception to the one-party consent rule.

"Second, there is no legal authority that supports an argument that the term "tortious purpose" is unconstitutionally vague. On the contrary, the Seventh Circuit explicitly rejected the argument in *United States v. Edelson*, where it stated "we are not persuaded by the appellant's claim that the terms 'criminal,' 'tortious' and 'injurious act' are so vague that 'men of common intelligence must necessarily guess at (their) meaning and differ as to (their) application.' ... [W]e find the statute to be sufficiently explicit to 'inform those who are subject to it what conduct on their part will render them liable to its penalties.' " 581 F.2d 1290, 1292 (7th Cir. 1978) (quoting *Connally v. General Constr. Co.*, 269 U.S. at 391, 46 S.Ct. 126).

"Accordingly, defendants' vagueness challenge to the tortious purpose exception is without merit.

22

*Democracy Partners v. Project Veritas Action Fund*, 453 F.Supp.3d 261, 290 (D.D.C., 2020)

See also *U.S. v. Edelso*n, 581 F.2d 1290, 1292 (7th Cir. 1978) (On the contrary, we find the statute to be sufficiently explicit to "inform those who are subject to it what conduct on their part will render them liable to its penalties.").

Project Veritas raised similar objections to an Oregon statute prohibiting unannounced recordings of oral conversations. See *Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir., 2025). There the United States Court of Appeals for the 9th Circuit rejected claims that the state statute was somehow a restriction on rights protected by the First Amendment. First, as the Court held in *Democracy Partners*, the Court concluded that section 2511 was "content neutral" and (as Defendant concedes) is subject to intermediate scrutiny. *Project Veritas v. Schmidt*, 125 F.4th 929, 950 (C.A.9 (Or.), 2025). As such the statute must be "narrowly tailored:"

> "To survive intermediate scrutiny, a content-neutral regulation of speech must be "narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." Ward, 491 U.S. at 791, 109 S.Ct. 2746 (quoting Clark, 468 U.S. at 293, 104 S.Ct. 3065)."

*Project Veritas v. Schmidt*, 125 F.4th 929, 952 (9th Cir., 2025)

The Court rejected Project Veritas' contentions. The statute was sufficiently narrowly tailored to be constitutional.

(b)

The essence of Defendants' argument is that Congress could not prohibit certain conduct based on the purpose for the prohibited activity. Here, Defendants claim that Congress could not prohibit recording of conversations if the purpose for the recording was to support or commit a tort or a crime. Defendants' briefing on this issue is convoluted and confusing. They seem to assert that the purpose for any activity can never be the basis for a statutory prohibition. But cite no clear authority for that point.

Concerns regarding the validity of 18 U.S.C. 2511(d)(2) were addressed in 1986 when the statute was amended to delete the phrase "or other injurious act" from the subsection. See *Boddie v. American Broadcasting Companies, Inc.*, 694 F.Supp. 1304 (N.D.Ohio, 1988). The amendment was intended to address concerns regarding the intent of the recorder. As the legislative history confirmed, H.R.Rep. No. 99–647, 99th Cong.2d Sess. at 40 (1986), "The amendment is intended to remove only the shadow of a finding that Section 2511 had been violated by interceptions made in the course of otherwise responsible newsgathering."

In short the arguments raised by Defendants were addressed in 1986 by modification of the statute. There is no current authority supporting Defendants' contentions.

(c)

It appears that Defendant here is attempting to tee up an argument for an appeal as it has not presented any new theories or arguments which have not been rejected by courts in other jurisdictions. Project Veritas has no valid basis to contend that this statute–now more than 50 years old and frequently amended–is somehow unconstitutional.

D.      Plaintiff Has Proved Damages

Defendants claim that Plaintiff has not proved damages from Jorge's breach of duty of loyalty. This argument ignores the decision of this Court of April 11, 2025, ECF No. 237, PageID.7575,  where the Court confirmed that Plaintiff may present testimony from its expert with regard to damages. The Defendants' argument has been rejected by that decision. Plaintiff will provide evidence of the economic consequences of Jorge's torts.

**Conclusion**

The Court should deny the Defendants' motion for summary judgment and grant that of Plaintiffs.

 /s/ Mark H. Cousens
4933 Fairway Ridge Circle
W. Bloomfield, Michigan  48323
cousens@cousenslaw.com
248-877-4098
May 19, 2025                              P12273

## Certificate of Service

I hereby certify that on May 19, 2025 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to attorneys of record.

/s/ Mark H. Cousens
4933 Fairway Ridge Circle
W. Bloomfield, Michigan  48323
cousens@cousenslaw.com
248-877-4098

May 19, 2025                          P12273

26